**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES *ex rel.* LANDIS,<br><br>                    Plaintiffs,<br><br>     v.<br><br>TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL,<br><br>                    Defendants. | Civil Action No. 10-00976 (RLW) |

**TAILWIND SPORTS CORP.'S AND TAILWIND SPORTS, LLC'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT AND RELATOR'S SECOND AMENDED COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES**

**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

In this case, Floyd Landis and the federal government attempt to sue Tailwind Sports Corp. and Tailwind Sports, LLC (collectively, "Tailwind" or "Tailwind Defendants"), two long-defunct entities, on decade-old contracts for an alleged breach and damages that occurred beyond the reach of the applicable statute of limitations. Plaintiff's attempt to sue the Tailwind Defendants is a textbook illustration of why statutes of limitations and corporate dissolution statutes exist in the first place. The United States waited nearly ten years after the last operative contract expired to file this lawsuit. During that time, both of the Tailwind Defendants ceased all operations, dissolved, and wound up their affairs. Tailwind has no office and no directors, officers, or employees. For that reason alone, the plaintiffs have been unable to effectively serve Tailwind. In fact, the delay has caused plaintiffs to resort to measures as desperate as trying to serve the father-in-law of a former Tailwind officer. Tailwind is gone. It cannot be sued, it cannot be served, and all claims against it have long expired. Therefore, counsel hereby move the Court to dismiss all claims against Tailwind.

## BACKGROUND

In 1995, the United States Postal Service ("USPS") contracted to sponsor a professional cycling team owned and managed by Montgomery Sports, Inc. United States' Compl. ("U.S. Compl.") ¶ 15.[1] In accordance with the terms of the agreement (the "1995 Sponsorship Agreement"), USPS chose to renew its sponsorship each year through the end of 2000. U.S. Compl. ¶ 15. By at least November of 2000, however, USPS had learned that French authorities were investigating allegations that the USPS team had used performance-enhancing drugs during its victorious run in the 2000 Tour de France. U.S. Compl. ¶ 19. That same month, according to

---

[1] The facts recited in the background section are taken from the plaintiffs' complaints and are presumed true only for the purpose of this motion.

the United States' Complaint, USPS became aware that Lance Armstrong was responding to "media inquiries regarding the doping allegations." U.S. Compl. ¶ 63E. Although the government claims USPS was sufficiently "concerned" to add doping-related provisions to the Sponsorship Agreement, it never opened any kind of investigation or inquiry into the public allegations against the USPS team. Instead, on December 26, 2000—just one month after learning of the doping allegations—USPS entered into a new and expanded four-year sponsorship agreement (the "2000 Sponsorship Agreement") with Tailwind Sports, LLC, then operating under the name DFP Cycling, LLC. *See* U.S. Compl. ¶¶ 9, 18-19. The 2000 Sponsorship Agreement called for USPS to pay DFP Cycling, LLC at least $31.6 million over the contract's four-year term. U.S. Compl. ¶ 25. According to the government, it "paid [the] invoices submitted by Tailwind pursuant to the . . . 2000 Agreement[]." U.S. Compl. ¶ 70. USPS paid its last claim to Tailwind on June 1, 2004, more than eight years before the government filed its Complaint in intervention. U.S. Compl. ¶¶ 69-72; Ex. A to Tailwind's Mot. to Dismiss (2000 Sponsorship Agreement, Ex. A ("Obligations of Sponsor")).

On January 19, 2001, DFP Cycling, LLC, changed its name to Tailwind Sports, LLC. U.S. Compl. ¶ 8. Plaintiffs' pleadings acknowledge that Tailwind Sports, LLC "merged with and into Tailwind Sports Corporation" on July 16, 2002. U.S. Compl. ¶¶ 8-9; Landis Second Amended Complaint ("Landis SAC") ¶ 9; *see also* Ex. B to Tailwind's Mot. to Dismiss (Tailwind Sports, LLC Delaware Entity Status Report). From the date of the merger until the 2000 Sponsorship Agreement expired by its own terms at the end of 2004, Tailwind Sports Corp. owned and managed the USPS team. U.S. Compl. ¶ 9. Tailwind Sports Corp. filed a certification of dissolution with Delaware's Secretary of State on December 31, 2007. U.S. Compl. ¶ 9; Landis SAC ¶ 9; Ex. C to Tailwind's Mot. to Dismiss (Tailwind Sports Corp.

2

Delaware Entity Status Report)). Three years later, by operation of law, it ceased to exist entirely.

Landis, a former USPS team cyclist, filed his original Complaint on June 10, 2010. Dkt. No. 1. After requesting extensions of the intervention deadline for almost three years, the government finally filed a Notice of Election to Intervene on February 22, 2013. Dkt. No. 41. Landis filed his SAC on the same day, asserting False Claims Act ("FCA") counts against all of the Defendants against whom the government had intervened, including both Tailwind entities. Dkt. No. 42. The allegations in the government's Complaint closely resemble those in Landis' Second Amended Complaint. Dkt. No. 44. The government asserts four FCA counts, one count of common law fraud, and one count for breach of contract against Tailwind.

The government requested a summons to serve the Tailwind entities through the Delaware Secretary of State on May 7, 2013, *see* Dkt. No. 47, but no Return was ever filed on the record. Both parties also later requested summonses to serve the Tailwind entities at a Texas address. *See* Dkt. Nos. 50, 54. On May 30, 2013, the government filed a Return of Service naming Tailwind Sports Corp. as the served party, and an affidavit stating that the government had attempted to serve Tailwind by serving William Stapleton, a former Tailwind officer. *See* Dkt. No. 60. On the same day, the government attempted to serve Tailwind Sports Corp. by serving counsel for Barton Knaggs, another former Tailwind officer. It filed a Return stating it had served counsel, but subject to counsel's objection that he was not authorized to accept service for Tailwind. Dkt. No. 72 ("Attorney Marc S. Harris acknowledged receipt of the Summons and Complaint in Intervention on May 30, 2013, and informed the United States that he . . . makes no representation, and waives no defense with respect to the effect of that service as it relates to Defendant Tailwind Sports Corp."). Landis adopted the same strategy, and

attempted to serve Tailwind by serving counsel for Stapleton and Knaggs, who again accepted service of the documents, but only after stating that he was not accepting service for Tailwind. Dkt. No. 74. Finally, Landis also attempted to serve Tailwind through Thomas Weisel, including by leaving process with Thomas Weisel's father-in-law. Dkt. No. 76.

## ARGUMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), the Tailwind Defendants move this Court to dismiss both Landis's Second Amended Complaint and the United States' Complaint. As set forth below, as well as set forth in Lance Armstrong's Motion to Dismiss the United States' Complaint and in Lance Armstrong's Motion to Dismiss Relator's Second Amended Complaint,[2] this Court lacks subject matter jurisdiction over Landis's claims, the Tailwind Defendants have not been properly served, this Court lacks personal jurisdiction over the Tailwind Defendants, and both Landis and the United States fail to state a claim upon which relief can be granted due to the operation of state corporate law and applicable statutes of limitation.

### I. TAILWIND SPORTS, LLC DOES NOT EXIST AND WAS NEVER SERVED.

Tailwind Sports, LLC ceased to exist on July 1, 2002. No party filed a lawsuit against Tailwind Sports, LLC until June 10, 2010, and service was not even attempted until approximately three years later. Because Tailwind Sports, LLC did not exist when it was sued or served, it must be dismissed as a defendant with prejudice.

The capacity of a corporate entity to sue or be sued is governed by the laws of the state of incorporation. *BLH, Inc. v. United States*, 2 Cl. Ct. 463, 466-67 (Cl. Ct. 1983). Under Delaware

---

[2] Tailwind joins, and incorporates by reference, the arguments in both of Armstrong's Motions to Dismiss.

law, once a merger is consummated, "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation …." 8 Del. C. § 259(a); *accord id.* § 264 (providing for the merger of a corporation and an LLC). Recognizing that corporate entities exist only by legislative act, courts have understood and interpreted § 259(a) as precluding the exercise of jurisdiction over, or service of process on, the non-surviving entity after the merger is complete. *Sevits v. McKiernan-Terry Corp.*, 264 F. Supp. 810, 811 (S.D.N.Y. 1966) ("under Delaware law it is settled that the separate corporate existence of a constituent corporation ceases upon merger and the emerging corporation is the only corporation with capacity to be sued and process cannot be served on the constituent corporation."); *United States v. Borden Co.*, 28 F. Supp. 177, 182-83 (N.D. Ill. 1939) (court has no jurisdiction over, and process cannot be served on, non-surviving merged corporation); *Beals v. Wash. Int'l., Inc.*, 386 A.2d 1156, 1160-61 (Del. Ch. 1978) (same).

The facts are undisputed. The government and Landis both admit that Tailwind Sports, LLC "merged with and into Tailwind Sports Corporation" on July 16, 2002. U.S. Compl. ¶¶ 8-9; Landis SAC ¶ 9. Therefore, it ceased to exist on that date. To the extent the government or the relator may have attempted to serve Tailwind Sports, LLC, their efforts were without legal effect. *Sevits*, 264 F. Supp. at 812; *Beals*, 386 A.2d at 1161. Because Tailwind Sports, LLC does not exist and was never served, the Court should dismiss all claims against it with prejudice.

## II.  TAILWIND SPORTS CORP. NO LONGER EXISTS, CANNOT BE SUED, AND WAS NEVER SERVED.

Tailwind Sports Corp. formally dissolved on December 31, 2007 and, pursuant to Delaware's corporate winding up statute, it permanently ceased to exist for any purpose three years later. 8 Del. C. § 278. By the time the parties attempted to serve it, Tailwind Sports Corp.

was no longer capable of being sued or receiving service of process. Therefore, plaintiffs' claims should be dismissed with prejudice.

### A. Tailwind Sports Corp. Ceased to Exist Years Ago, and Is Incapable of Being Sued or Served.

The capacity of a corporation to sue and be sued is governed by the law of the state in which it is incorporated. *BLH*, 2 Cl. Ct. at 466-67. Delaware law provides a three-year winding up period following dissolution, during which the dissolved corporation may be sued. 8 Del. C. § 278.[3] After the three-year period has run, however, courts have no power to revive the dead corporate body. *In re Citadel Indus., Inc.*, 423 A.2d 500, 507 (Del. Ch. 1980) ("[T]he statute, as amended, gives this Court no power to 'continue' a corporation for winding up purposes on an application made after the statutory three-year period has expired and thus after the corporation has ceased to exist as a legal entity."). Tailwind was dissolved on the final day of 2007, and its winding-up period expired three years later on December 31, 2010—well before any party even attempted to serve Tailwind. Plaintiffs' claims are therefore barred by § 278.

In this action, both plaintiffs seek to notify a dead corporation of old claims well after the winding-up period has run. Neither party has a valid excuse for the delay they interposed on this process. Landis, of course, claims to have been aware of the alleged doping for eight or nine years before he filed the instant claims against Tailwind. *See* Landis SAC ¶¶ 81-82. As for the

---

[3] The statute provides:

> With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed.

8 Del. C. § 278.

government, not only did it delay filing suit for over a decade after learning of its potential claims, it also waited for over two more years before it intervened in this action.

Although an action is often said to have "begun" on the date it is filed, that notion is meaningless for purposes of § 278 unless the defendant receives relatively prompt notice of the claims, or at the least the basic allegations, advanced against it. *See Russell v. Olmedo*, 275 A.2d 249, 250 (Del. 1971). In the absence of notice, after all, the corporation and its officers cannot hope to wind up the corporation's affairs in an orderly and timely fashion. Here, Landis may have technically filed his complaint within the winding up period, but he did not notify Tailwind of the action for years; Tailwind did not have any notice whatsoever until long after the corporation was dissolved and wound up. By the same token, the assertion of entirely new claims (such as are included in the government's complaint) after the three-year winding up period has expired defeats the policy of § 278. *See, e.g., Smith-Johnson S.S. Corp. v. United States*, 231 F. Supp. 184, 187 (D. Del. 1964) (rejecting counterclaims sounding in admiralty filed seven years after original action); *Citadel*, 423 A.2d at 507. Under these circumstances, this lawsuit cannot bring Tailwind back from the dead.

To conclude otherwise would be to disregard the fundamental purposes of Delaware's winding up statute. Section 278 protects claimants and stockholders alike. *Terr. of the U.S. V.I v. Goldman, Sachs & Co.*, 937 A.2d 760, 789 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008). It ensures the former a reasonable period in which to bring their claim, and satisfies the latter's "need for a definite period in which a corporation may pursue the ordinary winding up of its affairs." *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1196 (Del. 1993); *Terr. of the U.S. V.I*, 937 A.2d at 790 ("statutes such as § 278 set forth a period during which post-dissolution claims can be made and after which stockholders should have repose").

7

The statute also contemplates the considerable difficulties imposed on the judicial system by permitting parties to advance claims against long-deceased corporations. *Accord Citadel*, 423 A.2d at 506 ("Once a corporation is dissolved, the following three-year period run, all known debts paid, all remaining assets distributed to shareholders, books and records destroyed, and officers and directors gone on to other endeavors, how can any court be expected to get everyone reconvened and reorganized so as to 'continue' the corporation as an entity for further winding up purposes?"). To permit this lawsuit, which was not unsealed until years after the completion of Tailwind's dissolution and winding up period, to revive a long-dead corporation would be to eviscerate the purpose of section 278.

At the very least, the government may not claim the date Landis filed his original Complaint as the date on which the action was "begun." It is well-settled that § 278 is not a statute of limitations—it is, rather, a corporate winding up statute—and, consequently, relation-back principles do not apply. *Smith-Johnson S.S. Corp.*, 231 F. Supp. at 186 ("While § 278 represents a legislative policy declaring that all suits by or against dissolved corporations must be commenced within three years after dissolution, it is not, in itself a statute of limitations."); *see also Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 389 (D. Del. 2012) (rejecting argument that newly-filed case continued arbitration proceeding filed within winding-up period). As a result, even if this court were to find Landis's complaint not barred by section 278, the government could not save its own untimely complaint through the relation-back provision of the False Claims Act, 31 U.S.C. § 3731(c). That provision permits relation-back *only* "[f]or statute of limitations purposes." *Id.* Because corporate winding up statutes are not statutes of limitation,

that provision does not permit the government's complaint to relate back to Landis's complaint.[4] Neither this Court nor federal law possesses the power to revive a corporate entity that is strictly a creature of state law. *Jackson Nat'l Life Ins. Co. v. Greycliff Partners*, 226 B.R. 407, 420 (E.D. Wis. 1998) (citing *Citadel*, 423 A.2d at 507) (section 278 "gives this Court no power to 'continue' a corporation for winding up purposes on an application made after the statutory three-year period has expired and thus after the corporation has ceased to exist").

As a practical matter, "all things must come to an end at some point." *Citadel*, 423 A.2d at 506-07. That point has passed. Not only are Landis' and the government's claims untimely, but Tailwind Sports Corp. is long since legally deceased and, in the interest of repose, it must be permitted to rest. Plaintiffs' claims against it should be dismissed with prejudice.

**B.    Tailwind Sports Corp. Was Not Properly Served.**

A dissolved corporation may not be served through former agents, officers, or directors of the dissolved corporation. *See Int'l Pulp Equip. Co. v. St. Regis Kraft Co.*, 54 F. Supp. 745, 748-49 (D. Del. 1944). Therefore, as a matter of law, Landis and the United States' attempts to serve Tailwind's former officers on behalf of Tailwind Sports Corp. were ineffective. In addition, counsel for Messrs. Knaggs and Stapleton specifically protested that he was not accepting service on behalf of Tailwind. The parties also have not served the Delaware of

---

[4] Although some courts, including the *Smith-Johnson S.S. Corp.* court, have analogized corporate winding up statutes and statutes of limitation, they are fundamentally different creatures of law and the distinction between them has long been recognized. *See, e.g.*, 16A William M. Fletcher, *Cyclopedia of the Law of Corporations* § 8144.20 (2013) (distinguishing between statutory winding up periods under state corporate law and statutes of limitation); 19 Am. Jur. 2d Corporations § 2428 ("[Corporate] survival statutes are not statutes of limitation."). "While a statute of limitation relates only to the remedy and acts to bar the remedy after a certain period of time, a survival statute operates on the right or claim itself." *Deere & Co. v. JPS Dev., Inc.*, 592 S.E.2d 175, 177 (Ga. App. 2003) (citing *Van Pelt v. Greathouse*, 364 N.W.2d 14, 20 (Neb. 1985)); *see also Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1188 (7th Cir. 1980); *St. Francis Reg'l Med. Ctr. v. Critical Care, Inc.*, 997 F. Supp. 1413, 1434 (D. Kan. 1997); *MBC, Inc. v. Engel*, 397 A.2d 636, 638 (N.H. 1979); *State ex rel. Nat'l Super Mkts., Inc. v. Dowd*, 1 S.W.3d 595, 598 (Mo. Ct. App. E.D. 1999).

Secretary of State, so there can be no question that they utterly failed to notify Tailwind Sports Corp. of the claims.[5]  This Court therefore lacks personal jurisdiction over Tailwind Sports Corp., and should dismiss it as a putative defendant.

## III. THE GOVERNMENT'S CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS.

All of the government's claims are barred by the applicable statute of limitations.  The government's FCA and fraud claims are barred for the same reasons set forth in Lance Armstrong's Motion to Dismiss the United States' Complaint, which Tailwind joins.  Likewise, the government's contract claim—alleged only against Tailwind—is also barred.  The government's breach of contract claim had a six-year statute of limitations, which began to run on June 1, 2004, when the USPS made its final payment to Tailwind.  The government did not file its complaint until more than eight years later.  Even if the government's claim could relate back to Landis's complaint, which it cannot, the claim would still be time-barred: Landis's complaint was not filed until June 10, 2010 – more than six years after the accrual of the contract claim.  Accordingly, the government's claim for breach of contract should be dismissed.

### A. The Government's Breach of Contract Claim Accrued, at the Latest, on June 1, 2004.

Under federal law, "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . ." 28 U.S.C § 2415(a).  The "general limitations rule" is "that a cause of action accrues once a plaintiff has a 'complete and present cause of action.'" *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1793 (2010) (citation omitted); *Gabelli v. SEC*, 559 U.S. 633, 133 S. Ct. 1216, 1120 (2013) (same).  Consistent with this rule, contract claims accrue for purposes of § 2415(a) once all elements, including breach and damages, are "complete and present" and capable of being

---

[5] As noted, the government requested a summons to serve Tailwind through the Delaware Secretary of State on May 7, 2013, *see* Dkt. No. 47, but no Return was ever filed on the record.

plead—not at the time of discovery.[6] *Merck*, 130 S.Ct. at 1793; *Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 861 (10th Cir. 1993); *FDIC v. Belli*, 981 F.2d 838, 840 (5th Cir. 1993); *United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir. 1984). Thus, for example, in *Lujan* the Tenth Circuit held that the government's claim for breach accrued "on the date the contract was breached, which was [also] the date the royalties were due and payable. It is upon that date that [defendant] breached a duty owed the government under the contract *and the events necessary to the government's claim had occurred*." *Lujan*, 4 F.3d at 861 (emphasis added).

Here, the government contends Tailwind breached the Sponsorship Agreements repeatedly throughout 1998 to 2004 by "engaging in the use of substances and methods prohibited" under the contracts, and "by failing to take action against riders who employed such prohibited substances and methods." *See* U.S. Compl. ¶ 92. The government's theory of damages, of course, is that it made a series of payments to Tailwind pursuant to the schedule set forth in the Sponsorship Agreements. Since USPS made its final payment on June 1, 2004, more than eight years before the government filed its Complaint, it follows that its contract claims accrued, at the very latest, on that date.

### B. Tolling Does Not Apply Because the Government was Aware of the Alleged Breaches and Declined to Investigate Them.

The government was well aware of its potential claims even before its final claim accrued, so tolling does not apply.[7] The relevant tolling provision states:

> For the purpose of computing the limitations periods established in § 2415, there shall be excluded all periods during which ... facts material to the right of action are not known and reasonably could not have been known by an official of the United States charged with the responsibility to act in the circumstances ....

---

[6] Although the D.C. Circuit has occasionally applied a discovery rule to contract claims, it has done so when applying local, rather than federal, law. *See, e.g., Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 460-61 (D.C. Cir. 1989).

[7] To the extent the government contends those principles are applicable, Tailwind joins in the arguments set forth in Armstrong's Motion to Dismiss.

28 U.S.C § 2416(c).  Under this section,[8] there are two relevant inquiries: "(1) what is a material fact to the government's right of action; and (2) when should the government reasonably have known of the material fact."  *Lujan*, 4 F. 3d at 862.  Facts constituting the alleged breach are plainly material.  *Id.*  In other words, "it is not necessary that relevant officials have all details of a claim before the statutory period begins to run; once the facts making up the 'very essence of the right of action' are reasonably knowable, the § 2416 bar is dropped."  *Kass*, 740 F.2d at 1497.  Analogous False Claims Act jurisprudence from this Court likewise teaches that "the running of the statute of limitations does not begin at the point the plaintiff has sufficient information to prevail at trial, or even when a plaintiff is aware that the conduct at issue is actionable under the law."  *United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 170 (D.D.C. 2007) (applying 31 U.S.C. § 3731(b)(2)).  Rather, "the limitations period starts to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress."  *Id*. (quotation marks omitted).

As to the second question, "district courts should not view a failure to exercise reasonable diligence, inconvenience, and even some hardship on the part of government as grounds for tolling the limitations period."  *Lujan*, 4 F. 3d at 863; *FDIC v. Wheat*, 970 F.2d 124, 128 (5th Cir. 1992) (limitations period triggered by constructive knowledge).  For instance, "if a breach is very egregious or the government is somehow informed that the breach occurred, then the statute of limitations may commence to run at the time of the breach."  *Lujan*, 4 F.3d at 863 n.7.  Applying this standard in *Lujan*, the Tenth Circuit barred the government's claim for unpaid royalties on an oil and gas lease, reasoning that its failure to audit the relevant records and

---

[8] Although no federal court in the District of Columbia has discussed the discovery rule set forth in § 2416(c) at length, several courts have suggested that it operates like the discovery rule implemented by the False Claims Act, 31 U.S.C. § 3731(b)(2).  *See, e.g., United States v. Intrados/Int'l Mgmt. Grp.*, 265 F. Supp. 2d 1, 12 (D.D.C. 2002); *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 77 (D.D.C. 2003).  Accordingly, Tailwind joins the arguments advanced in Lance Armstrong's Motion to Dismiss regarding the timeliness of the government's claims.

discover its claims for a period of six years was unreasonable *per se* given that the lessee was only required to maintain records for six years. *Id.* at 864.

Here, the government has admitted to knowledge of the "material facts" as early as November of 2000. U.S. Compl. ¶ 19 (USPS learned French authorities were investigating Armstrong and the USPS cycling team); *id.* ¶ 63E (USPS aware of "media inquiries regarding the doping allegations"). The government can hardly deny it understood the doping allegations to be relevant given that USPS was allegedly so "concerned" that "prior to execution of the 2000 Agreement" it "inserted into the sponsorship agreement several additional provisions relating to the use of banned substances and methods." *Id.* Because the government was aware of "the very essence of the right of action" it now asserts, or at least was on notice of its "need [to] investigate to determine whether [it was] entitled to redress," it is not entitled to the benefit of § 2516(c)'s tolling provision. *Kass*, 740 F.2d at 1497; *Purcell*, 520 F. Supp. 2d at 170.

## IV. LANDIS AND THE UNITED STATES FAIL TO ADEQUATELY PLEAD AN FCA CLAIM AGAINST THE TAILWIND DEFENDANTS.

The plaintiffs have failed to plead an FCA claim against the Tailwind Defendants.[9] The plaintiffs have failed to adequately allege that Tailwind submitted a false claim to the USPS as defined under the FCA. They fail to adequately allege the falsity of any claims or that the absence of doping was a prerequisite to payment under the 1995 or 2000 Sponsorship Agreements. Additionally, the plaintiffs fail to adequately allege that any claim was made by Tailwind with the requisite scienter. Similarly, the conclusory allegations of conspiracy fail to satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).

---

[9] To the extent applicable, Tailwind joins and incorporates by reference Defendants Thomas W. Weisel and Ross Investments, Inc.'s Motion to Dismiss Relator's Second Amended Complaint on these points, as well as the other arguments asserted in their Motion to Dismiss.

## V.   LANDIS HAS NO VIABLE CLAIMS AGAINST EITHER TAILWIND CORPORATION.

Now that the government has intervened, Floyd Landis lacks Article III standing for the reasons set forth in Lance Armstrong's Motion to Dismiss Relator's Second Amended Complaint, which Tailwind joins.  Therefore, Tailwind respectfully requests that the Court dismiss Landis' remaining claims against Tailwind with prejudice.

### CONCLUSION

For the reasons set forth above, Tailwind respectfully request that the Court dismiss plaintiffs' claims against Tailwind with prejudice.

Respectfully submitted,
ZUCKERMAN SPAEDER LLP

Dated:  July 23, 2013

By:  /s/ Blair G. Brown
Blair G. Brown (D.C. Bar No. 372609)
Rachel F. Cotton (D.C. Bar No. 997132)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Washington, DC  20036
(202) 778-1800 – Telephone
(202) 822-8106 – Facsimile
bbrown@zuckerman.com
rcotton@zuckerman.com

*Counsel for Tailwind Sports Corp. and Tailwind Sports, LLC*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on July 23, 2013, I electronically filed Tailwind Sports Corp.'s and Tailwind Sports, LLC's Motion to Dismiss the United States' Complaint and Relator's Second Amended Complaint and Supporting Points and Authorities through the Court's CM/ECF system.

    /s/ Rachel F. Cotton

Rachel F. Cotton (D.C. Bar No. 997132)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Washington, DC  20036
(202) 778-1876 – Telephone
(202) 822-8106 – Facsimile
rcotton@zuckerman.com