# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES *ex rel*. LANDIS,<br><br>                              Plaintiffs,<br><br>         v.<br><br>TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL,<br><br>                              Defendants. | Civil Action No. 10-00976 (RLW) |

## DEFENDANT LANCE ARMSTRONG'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

## ORAL ARGUMENT REQUESTED

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendant Lance Armstrong hereby moves this Court to dismiss the United States' Complaint because it fails to state and plead with particularity a claim upon which relief may be granted.  The grounds for this motion are set forth in the accompanying memorandum of points and authorities.  A proposed order is attached.

1

768163

Respectfully submitted,

KEKER & VAN NEST LLP

Dated:  July 23, 2013

By:   */s/ Elliot R. Peters*
_____
JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
DAVID W. RIZK (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

2

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES *ex rel*. LANDIS, | |
| Plaintiffs, | Civil Action No. 10-00976 (RLW) |
| v. | |
| TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL, | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LANCE ARMSTRONG'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

III.     ANALYSIS................................................................................................4

     A.     The government's entire case against Armstrong is barred by the statute of limitations. ................................................................................................4

         1.     Every single alleged "false claim" falls outside the limitations period. ................................................................................................5

         2.     The government cannot rely on the discovery rule to save its case.............7

         3.     The government's actual knowledge and faulty pleading bar it from seeking to toll the statute of limitations via the fraudulent concealment doctrine. ................................................................9

         4.     Regardless of the government's knowledge, all False Claims Act claims prior to June 10, 2000 are barred by the ten-year statute of repose. ................................................................................................11

     B.     The false statements claim must be dismissed because the government pleaded it under an inoperative statute................................................................13

     C.     The government fails to state a reverse false claim. ..............................................14

IV.     CONCLUSION................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*325-343 E. 56th St. Corp. v. Mobil Oil Corp.*
  906 F. Supp. 669 (D.D.C. 1995).........................................................................13

*\*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*
  190 F.3d 729 (6th Cir. 1999) ........................................................................15, 16

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)........................................................................................11, 15

*Bergen v. Rothschild*
  648 F. Supp. 582 (D.D.C. 1986) ...................................................................10, 11

*Hobson v. Wilson*
  737 F.2d 1 (D.C. Cir. 1984) ...............................................................................9

*\*Hoyte v. Am. Nat'l Red Cross*
  439 F. Supp. 2d 38 (D.D.C. 2006), *aff'd*, 518 F.3d 61 ...........................15, 16

*Int'l Ass'n of Machinists & Aero. Workers, Dist., AFL-CIO. Lodge 64 v. NLRB*
  130 F.3d 1083 (D.C. Cir. 1997)........................................................................10

*Kaempe v. Myers*
  367 F.3d 958 (D.C. Cir. 2004).............................................................................2

*Larson v. Northrop Corp.*
  21 F.3d 1164 (D.C. Cir. 1994)..........................................................................10

*Lawrence v. Acree*
  665 F.2d 1319 (D.C. Cir. 1981)...........................................................................6

*Lewis v. Bayh*
  577 F. Supp. 2d 47 (D.D.C. 2008)......................................................................4

*McDonald v. Sun Oil Co.*
  548 F.3d 774 (9th Cir. 2008) ...........................................................................12

*Miller v. Holzmann*
  No. C 95-1231, 2007 WL 710134 (D.D.C. Mar. 7, 2007), *rev'd in part on other
  grounds by United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871
  (D.C. Cir. 2010) .................................................................................................6

*P. Stolz Family P'ship L.P. v. Daum*
    355 F.3d 92 (2d Cir. 2004) ............................................................12

*Pena v. A. Anderson Scott Mortg. Group, Inc.*
    692 F. Supp. 2d 102 (D.D.C. 2010) ................................................10

*Smith-Haynie v. District of Columbia*
    155 F.3d 575 (D.C. Cir. 1998) .........................................................4

*Solano v. Delmed, Inc.*
    759 F. Supp. 847 (D.D.C. 1991) .......................................................8

*United States ex rel. Alexander v. Dyncorp, Inc.*
    924 F. Supp. 292 (D.D.C. 1996) .....................................................12

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*
    255 F. Supp. 2d 351 (E.D. Pa. 2002) ................................................6

*United States ex rel. Brown v. Aramark Corp.*
    591 F. Supp. 2d 68 (D.D.C. 2008) .................................................12

*United States ex rel. Cantekin v. Univ. of Pittsburgh*
    No. 91-0715, 1997 U.S. Dist. LEXIS 22868 (W.D. Pa. Aug. 25, 1997) ................12

*United States ex rel. Head v. Kane Co.*
    798 F. Supp. 2d 186 (D.D.C. 2011) ................................................13

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*
    2007 U.S. Dist. LEXIS 18951 (D.D.C. Mar. 19, 2007) ..............................7

*\*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*
    505 F. Supp. 2d 1 (D.D.C. 2007) ......................................................9

*\*United States ex rel. Purcell v. MWI Corp.*
    520 F. Supp. 2d 158 (D.D.C. 2007) ..................................................7

*United States ex rel. S. Prawer & Co. v. Verrill & Dana*
    946 F. Supp. 87 (D. Me. 1996) .......................................................15

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*
    709 F. Supp. 2d 52 (D.D.C. 2010) ..................................................13

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*
    389 F.3d 1251 (D.C. Cir. 2004) ......................................................12

*United States SEC v. Brown*
    740 F. Supp. 2d 148 (D.D.C. 2010) ..............................................10, 11

iii

*United States v. Am. Nat'l Red Cross*
    518 F.3d 61 (D.C. Cir. 2008)................................................................15

*United States v. Carell*
    782 F. Supp. 2d 553 (M.D. Tenn. 2011)..................................................13

*\*United States v. Intrados/Int'l Mgmt. Group*
    265 F. Supp. 2d 1 (D.D.C. 2002)...........................................................5, 8

*\*United States v. Island Park*
    791 F. Supp. 354 (E.D.N.Y. 1992) ......................................................8, 10

*United States v. Q Int'l Courier, Inc.*
    131 F.3d 770 (8th Cir. 1997) ..............................................................15, 16

*\*United States v. Sci. Applications Int'l Corp.,*
    653 F. Supp. 2d 87 (D.D.C. 2009)......................................................13, 14

*United States v. Sci. Applications Int'l Corp.*
    626 F.3d 1257 (D.C. Cir. 2010) .........................................................13, 14

*United States v. Toyobo Co,.*
    811 F. Supp. 2d 37 (D.D.C. 2011).........................................................13

*United States v. Van Oosterhout*
    96 F.3d 1491 (D.C. Cir. 1996)................................................................5

*\*Walker v. Pharm. Research & Mfrs. of Am.*
    439 F. Supp. 2d 103 (D.D.C. 2006)......................................................8, 9

*Wiggins v. State Farm Fire & Cas. Co.*
    153 F. Supp. 2d 16 (D.D.C. 2001)...........................................................9

*Wuliger v. Owens*
    365 F. Supp. 2d 838 (N.D. Ohio 2005)...................................................12

**Federal Statutes**

28 U.S.C. § 2415..................................................................................5, 6, 7

28 U.S.C. § 2416(c) ..................................................................................5, 7

31 U.S.C. § 3729(a)(3)..................................................................................6

31 U.S.C. § 3729(a)(7).......................................................................14, 15, 16

31 U.S.C. § 3729(c) ....................................................................................14

31 U.S.C. § 3731(b)(1) ...............................................................................4, 6

iv

31 U.S.C. § 3731(b)(2) ...................................................................................................5, 7, 11

31 U.S.C. § 3731(c) ................................................................................................................5

Fraud Enforcement and Recovery Act of 2009 ("FERA"),
   Pub. L. No. 111–21, 123 Stat. 1617..................................................................................13, 14

**Federal Rules**

Federal Rule of Civil Procedure 8 ............................................................................................11

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................6, 13, 15

Federal Rule of Civil Procedure Rule 9(b) ..................................................................................9

# I.  INTRODUCTION

The government waited over a decade to file suit against Lance Armstrong for one reason and one reason only:  It got everything it bargained for from Armstrong and his cycling team. The government named its consideration in the sponsorship agreements that form the basis for this suit:  tens of millions of dollars' worth of publicity, top billing on Armstrong's and his teammates' jerseys, exposure to over 30 million spectators at international cycling events, hundreds of hours of television coverage, and brand exposure in every major American newspaper.  In its complaint, the government does not deny that it received each and every one of these benefits.

The government alleges that a single fact was hidden, and relies on that allegation to justify sitting on its claims for a decade:  The Postal Service Cycling Team, like many other teams in the peloton, was doping.  But the government is unable even to feign surprise at this alleged revelation.  Instead, the government admits in its complaint that—during the very period it was enjoying the full benefits of its sponsorship agreement—it was well-aware of intense national and international media coverage of the team's doping and widespread doping throughout the sport, and even that French authorities had opened an "investigation into allegations that the [Postal Service] cycling team used performance enhancing drugs."  United States' Compl. ¶ 63, ECF No. 44.

Although the government now pretends to be aggrieved by these allegations, its actions at the time are far more telling:  Did it immediately fire the Postal Service Team?  Did it suspend the team pending an investigation?  Did it refer the matter to its phalanx of lawyers and investigators at the Department of Justice for review?  It did not.  Rather than exercise its right to terminate the sponsorship agreement, it instead renewed its contract to sponsor the team.  The rationale behind the government's decision is obvious.  Armstrong had recently won the 2000 Tour de France.  The government wanted a winner and all the publicity, exposure, and acclaim that goes along with being his sponsor.  It got exactly what it bargained for.

1

That was more than a decade ago.  It is now far too late for the government to revisit its choice to reap the benefits of sponsorship rather than investigate allegations of doping.  The statute of limitations for a False Claims Act suit is six years and runs from the date of each claim.  Floyd Landis filed this suit on June 10, 2010.  Therefore, if the government's claim was paid before June 10, 2004, any suit to recover on that claim is barred.  The government paid its last alleged "false claim" nine days earlier, and decided not to investigate its potential claims against Armstrong four years before that.  Because the government waited to file its claims until after every applicable limitations period expired, while it basked in the favorable publicity of its sponsorship, Armstrong respectfully requests that the Court dismiss the government's lawsuit with prejudice.

## II.    BACKGROUND

All of the government's claims arise out of two contracts the Postal Service entered into to sponsor the U.S. Postal Service Cycling Team.  The contracts at issue are old.  The Postal Service entered into the first contract on October 1, 1995—almost eighteen years ago.  Attach. A [1995 Sponsorship Agreement].[1]  The Postal Service entered into the 1995 contract because it wanted to be "the sole title sponsor of the Team."  *Id.* Recital B.  The Postal Service agreed to pay a fee in exchange for exclusive sponsorship, first billing on the team's jersey, promotion, and advertising.  *Id.* Ex. A.  The Postal Service sought and obtained publicity estimated to have an advertising equivalency value of approximately $10 million for 1996 alone—including on-site marketing exposure at international cycling events to over 37 million spectators, over 100 hours of television coverage, and print media exposure in major American newspapers and sports publications.  *Id.* Ex. A § 2, Ex. D.  The Postal Service also negotiated a variety of perquisites for its employees and executives, including "[f]ree VIP hospitality at all major U.S. cycling events" and opportunities to win vacations to races.  *Id.*  The government does not allege that Tailwind

---

[1] On a motion to dismiss for failure to state a claim, courts may consider documents appended to the motion whose authenticity is not disputed if they are referred to in the complaint and are integral to the plaintiff's claim.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

failed to provide any of this consideration.  Having received those benefits, the government made all of the payments as specified in the 1995 Agreement and its subsequent modifications and extensions.  Compl. ¶ 71.

In late 2000, the Sponsorship Agreement came up for renewal.  At that time, the Postal Service had actual knowledge of specific allegations that its team was doping.  *Id*. ¶ 19.  The government admits that prior to November 2000, the Postal Service was aware that French authorities had begun an "investigation into allegations that the [Postal Service] cycling team used performance enhancing drugs."  *Id*. ¶¶ 19, 63.  As of November 30, 2000, the government was also aware of various "media inquiries regarding the doping allegations."  *Id.* ¶ 63(E).  The government claims not just that it was aware of these allegations, but that it was "concerned about them."  *Id.* ¶ 19.

What did the "the United States official charged with responsibility to act" do to investigate the doping allegations about which the government was concerned?  Absolutely nothing.  The government does not allege that the Department of Justice opened an investigation into allegations of doping.  In fact, the government does not allege that the Postal Service sought to have its Inspector General or the Department of Justice launch any type of investigation.

Instead, the Postal Service renewed the Sponsorship Agreement.  One month after learning of the French investigation, the Postal Service decided to enter into a new four-year contract to sponsor the Postal Service Cycling Team.  The Postal Service agreed in the newly-signed 2000 Sponsorship Agreement to make payments to Tailwind totaling $31.6 million in exchange for a long list of promotional benefits.  Attach. B [2000 Sponsorship Agreement].  The 2000 Agreement provided the Postal Service with the right to place its logos prominently on the cycling team's uniforms, merchandise, vehicles, and promotional materials.  *See id.* ¶¶ 5(a), 9(a).  The 2000 Agreement also called for Tailwind to provide the Postal Service with extensive television and print media exposure.  *Id.* at ¶ 9(b).

3

The Postal Service also received various hospitality and promotional services. For example, the 2000 Sponsorship Agreement called for provision of "a complete VIP hospitality program for selected guests of [the Postal Service] at the Tour de France," including "[a]ccess to a private hospitality tent at the finish stage on the Champs Elysees," as well as "private Team receptions, including exclusive dinners in Paris and invitations to the final night dinner at race conclusion." *Id.* These provisions reflected the hope and expectation of the Postal Service that Lance Armstrong would ride up the Champs-Élysées in yellow and win the Tour de France.

The government does not contest that the Postal Service received this consideration. Accordingly, the Postal Service "paid [the] invoices submitted by Tailwind pursuant to the . . . 2000 Agreement[]." The government concedes that it paid all of the allegedly false claims "from 1998 to 2004." Compl. ¶ 70. The Postal Service paid its last claim to Tailwind on June 1, 2004, more than six years before Floyd Landis filed his lawsuit, and more than eight years before the government filed its complaint in Intervention. Compl. ¶¶ 69-72; Attach. B, Ex. A, § 3 (listing a final payment of $2,165,000 on June 1, 2004).

### III.     ANALYSIS

#### A.     The government's entire case against Armstrong is barred by the statute of limitations.

Dismissal pursuant to Federal Rule of Civil Procedure for failure to comply with the statute of limitations is appropriate "when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *accord Lewis v. Bayh*, 577 F. Supp. 2d 47, 51 (D.D.C. 2008). The False Claims Act supplies its own statute of limitations. The government must bring its action within six years of submission of the false claim. 31 U.S.C. § 3731(b)(1).[2] As with most limitations periods, the

---

[2] Section 3731(b) provides that:

A civil action under section 3730 may not be brought—
    (1) more than 6 years after the date on which the violation of section 3729 is committed, or

six-year statute of limitations is subject to an exception under the discovery rule. However, Congress has severely constrained the scope of that exception in the False Claims Act statute. First, the exception is not available where the government files suit "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C. § 3731(b)(2). Second, under no circumstance may the government proceed on a suit filed "more than 10 years after the date on which the violation is committed." *Id.*

In a suit by the United States, an "unjust enrichment claim is subject to the six-year limitations period" and a fraud claim "is subject to the three-year limitations period" found in 28 U.S.C. § 2415(a)-(b). *United States v. Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d 1, 12 (D.D.C. 2002). The discovery rule operates in the same fashion for the False Claims Act and the common law claims. *Id.*; *see also* 28 U.S.C. § 2416(c).

       1.    *Every single alleged "false claim" falls outside the limitations period.*

   Every single claim the government alleges that it paid as a result of false claims or false statements occurred more than six years before relator Floyd Landis filed suit.[3] Landis filed his complaint on June 10, 2010. Landis Compl., ECF No. 1. The government alleges that it paid its last claim to Tailwind on June 1, 2004. Compl. ¶¶ 69-72; Attach. B, Ex. A, § 3.

Under the False Claims Act, the limitations period begins to run no later than the date on which each claim is paid.[4] *Intrados/Int'l Mgmt. Grp.*, 265 F. Supp. 2d at 9; *accord United States*

---

      (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

[3] Although the numerous differences between the relator's first complaint—which fails to allege any false claims or false statements by Armstrong—and the government's complaint cast serious doubt on whether the "Government['s] pleading . . . relate[s] back to the filing date of the [relator's] complaint," even with the benefit of the relator's June 10, 2010 filing date, none of the government's claims survive. 31 U.S.C. § 3731(c).

[4] It is almost certainly the case that each claim issued prior to payment of that claim, but, because

*v. Van Oosterhout*, 96 F.3d 1491, 1493-1494 (D.C. Cir. 1996) ("As it is the six-year statute that applies to this case, the key question is when [the defendant] is alleged to have committed a 'violation of section 3729' by presenting an allegedly false claim to the [government].").[5]

Here, the government alleges that it made every single payment to Tailwind more than six years before the relator filed suit. [6]  *See* 31 U.S.C. § 3731(b)(1); 28 U.S.C. § 2415(a). According to the complaint, the Postal Service "paid invoices submitted by Tailwind pursuant to the 1995 [and] 2000 Agreements." Compl. ¶ 70.  The government concedes that it paid all of the allegedly false claims "from 1998 to 2004." Compl. ¶ 70.  The 1995 and 2000 Sponsorship Agreements set forth the dates of the payments and plainly state that the last payment of $2,165,000 occurred on June 1, 2004. Attach. B, Ex. A, § 3.  Because the relator filed suit on June 10, 2010, more than six years after the last payment, the face of the government's complaint makes clear that its entire case is barred by the operative statutes of limitations.  Therefore, Armstrong respectfully requests that the Court dismiss the government's complaint with prejudice.

---

the motion seeks relief under Federal Rule of Civil Procedure 12(b)(6), Armstrong relies on the payment dates alleged in the government's complaint.

[5] The limitations period for conspiracy claims bought pursuant to 31 U.S.C. § 3729(a)(3) also begins to accrue when the claim is made, or, at the latest, when paid.  "[T]he statute of limitations in a civil damages action for conspiracy runs separately from each overt act that is alleged to cause damage to the plaintiff."  *Lawrence v. Acree*, 665 F.2d 1319, 1324 (D.C. Cir. 1981).  "[O]vert acts committed outside statutory limitation period are not actionable even if they are part of a continuing conspiracy that included overt acts within limitation period."  *Id.* n.7.  Therefore, "[i]n the context of [a] conspiracy claim," the limitations period runs from "each submission . . . of a voucher or invoice for payment."  *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 255 F. Supp. 2d 351, 415 (E.D. Pa. 2002); *accord Miller v. Holzmann*, No. C 95-1231, 2007 WL 710134 at *3 (D.D.C. Mar. 7, 2007) (finding that the limitations period for conspiracy runs from the date of each claim), *rev'd in part on other grounds by United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 878 (D.C. Cir. 2010).  Here, the government alleges that it was damaged by Tailwind's submission of invoices pursuant to the sponsorship agreements. Compl. ¶¶ 69-72.

[6] The limitations period for the unjust enrichment claim began to run on the same date as the False Claims Act claims:  June 10, 2004.  *See* 28 U.S.C. § 2415(a). The limitations period for the fraud claim began three years later on June 10, 2007.  *See id.* 2415(b).

2.       *The government cannot rely on the discovery rule to save its case.*

The government admits that it had actual knowledge of "facts material to the right of action" more than three years before Landis filed suit.  31 U.S.C. § 3731(b)(2).  Because the relator filed his complaint on June 10, 2010, the government cannot rely on the alternative three-year limitations period if it learned of "facts material to the right of action" prior to June 10, 2007.[7]  The government has given a binding and incontrovertible judicial admission that it was aware of "material facts" approximately seven years before—in November 2000.  Compl. ¶ 19.  Therefore, the government may not rely on the discovery rule to prevent dismissal.

As explained above, Congress has provided for a limited exception to the six-year statute of limitations in Section 3731(b)(2).[8]  Section 3731(b)(2) provides an alternative "three-year period [that] begins to run from the point in time the government knew or reasonably should have known of facts material to the right of action."  *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 2007 U.S. Dist. LEXIS 18951, 13-15 (D.D.C. Mar. 19, 2007).  "[T]he three-year statute of limitations is to be measured, as the statute says, from the date the relevant government official knows or should know of the facts relevant to the cause of action."  *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, Inc., 474 F. Supp. 2d 75, 85 (D.D.C. 2007).  "[T]he running of the statute of limitations does not begin at the point the plaintiff has sufficient information to prevail at trial, or even when a plaintiff is aware that the conduct at issue is actionable under the law."  *United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 170 (D.D.C. 2007).  Instead, "the limitations period starts to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress."  *Id.*(internals quotations and citation omitted).  The limitations period begins running when the

---

[7] The discovery period for fraud ended on the same date.  *See* 28 U.S.C. §§ 2415(b); 2416(c).  The discovery period for unjust enrichment ended on June 10, 2004.  *See* 28 U.S.C. § 2415(a); 2416(c).

[8] Congress provided for a similar discovery rule for the limitations period applicable to the unjust enrichment and fraud claims.  *See* 28 U.S.C. § 2416(c).

7

plaintiff learns that an investigation has been convened to determine whether the conduct at issue occurred.  *See Walker v. Pharm. Research & Mfrs. of Am.*, 439 F. Supp. 2d 103, 110 (D.D.C. 2006).  Where a federal agency has knowledge of the fraud, the agency's knowledge is imputed to the official of the United States charged with responsibility to act—especially where allegations of the fraud are the subject of media reports.  *See United States v. Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y. 1992); *accord Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d at 12.

Here, the government has admitted that it had actual knowledge of the alleged fraud.  The only fact that the government claims was hidden is "Defendants' . . . doping activity."  Compl. ¶ 73.  But the government admits over and over again that it had actual knowledge of allegations that the Postal Service Team was doping prior to the June 10, 2007 expiration of the discovery period for the false claims act claims.[9]  In fact, the government admits that prior to November 2000, it was aware that "French authorities had begun a preliminary investigation into allegations that the [Postal Service] cycling team used performance enhancing drugs."  *Id*. ¶¶ 19, 63.  As of November 30, 2000, the government was also aware of various "media inquiries regarding the doping allegations."  *Id.*  ¶ 63(E).  The government was not merely aware of these allegations, "the Postal Service was concerned about them."  *Id.*  ¶ 19.

But, despite its knowledge and concern, the "official of the United States charged with responsibility to act" did absolutely nothing.  In fact, the only thing the government did was enter into a new four-year Sponsorship Agreement entitling it to special perks in connection with the Tour de France and insert provisions giving it certain rights in the events of "negative publicity associated with" a failed drug test.  *Id.*  ¶¶ 19-20.  The government did not open an investigation until many years later.  *See Id*. ¶ 73.  The excuse it gives is "Defendants' failure to disclose their doping activity and their repeated denials."  *Id.*  But the notice standard does not require "defendants [to] submit[] a written confession addressed to plaintiffs."  *Solano v. Delmed, Inc.*, 759 F. Supp. 847, 854-855 (D.D.C. 1991).  Prior to June 10, 2004, the government had actual

---

[9] In fact, the government's admissions show that it learned of material facts before June 10, 2004, the expiration of the discovery period for the unjust enrichment claim.

knowledge of a French investigation into doping by the Postal Service team, was aware of numerous media reports of doping, and became concerned about the allegations.  Since it did nothing, it cannot use the discovery rule to escape the statute of limitations for any of its claims.

> 3.     *The government's actual knowledge and faulty pleading bar it from seeking to toll the statute of limitations via the fraudulent concealment doctrine.*

The government may attempt to toll the statute of limitations by invoking the fraudulent concealment doctrine.  However, it is cannot do so for two independent reasons.  First, binding District of Columbia Circuit precedent precludes the government from invoking the doctrine to argue that a defendant concealed facts where the government was already on sufficient notice.  *See Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984).  Second, the government failed to allege fraudulent concealment with the specificity required by Federal Rule of Civil Procedure Rule 9(b).

Fraudulent concealment fails at the threshold.  The District of Columbia Circuit has repeatedly held that "[t]he doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim."  *Hobson*, 737 F.2d at 35; *accord Walker*, 439 F. Supp. 2d at 110.  Once the plaintiff becomes aware of "the injury to the plaintiff and its cause, . . . the clock begins to run for statute of limitations purposes."  *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1, 8-9 (D.D.C. 2007).  "Neither a lack of knowledge of the specific pattern of fraudulent activity, or an inability to know the particular identities of some of the perpetrators of the fraud alters this result."  *Id.*  Nor does the plaintiff need to know "the full extent or duration of the injury."  *Wiggins v. State Farm Fire & Cas. Co.*, 153 F. Supp. 2d 16, 21 (D.D.C. 2001).  As explained in Part III.A.2, *supra*, the government was aware by no later than November of 2000 of allegations of the injury of which it now complains—doping by the Postal Service cycling team.  Therefore, the government may not invoke the doctrine of fraudulent concealment.

9

But even if the government had not already admitted knowledge of sufficient facts to put it on notice, fraudulent concealment would fail for an independent reason:  the government has not pled it with the specificity required by Rule 9(b).  "[A] plaintiff must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that [it] used due diligence in trying to uncover the facts."  *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) (citation omitted).  The plaintiff must allege that "(1) there has been deliberate concealment of (2) material facts relating to the alleged wrongdoing and (3) the wronged party does not know of those facts and could not have discovered them through reasonable diligence."  *Int'l Ass'n of Machinists & Aero. Workers, Dist., AFL-CIO. Lodge 64 v. NLRB*, 130 F.3d 1083, 1087 (D.C. Cir. 1997) (internal quotation marks and citations omitted).  "[T]he elements of fraudulent concealment are conjunctive; thus, the absence of any one of the three will defeat the operation of that tolling doctrine."  *Island Park*, 791 F. Supp. at 370.

Dismissal is appropriate where the plaintiff failed to allege with particularity that it exercised due diligence to uncover its claim.  *Pena v. A. Anderson Scott Mortg. Group, Inc.*, 692 F. Supp. 2d 102, 109 (D.D.C. 2010).  "[C]ourts read Rule 9(b) as requiring the fraudulent concealment plaintiff to plead with as much particularity as possible . . . failure of the plaintiffs to discover, within the limitations period, operative facts that are the basis of the cause of action, [] the particular facts concealed . . . and [] the dates and circumstances of the eventual discovery of the underlying fraud."  *Bergen v. Rothschild*, 648 F. Supp. 582, 587 (D.D.C. 1986).  The government is not entitled to equitable tolling when its complaint fails to allege facts showing that it exercised diligence throughout the tolling period, the date on which the government discovered the claims, and the government's complete ignorance of the alleged fraud during the limitations period.  *United States SEC v. Brown*, 740 F. Supp. 2d 148, 158 (D.D.C. 2010).  "[C]onclusory allegations of fraudulent concealment" do not toll the statute of limitations.  *Bender v. Rocky Mountain Drilling Assoc.'s*, 648 F. Supp. 330, 335 (D.D.C. 1986).

10

Here, the government has utterly failed to allege its diligence.  The government's entire allegation of diligence is confined to a single conclusory sentence:

> As a result of Defendants' failure to disclose their doping activity and their repeated denials of such activity, the United States official charged with responsibility to act in the circumstances did not know nor should have known the facts material to any right of action any earlier than the date on which Landis filed his qui tam complaint, June 10, 2010, and the United States believes it is probable that the date is later.

Compl. ¶ 73.  The government's one-sentence conclusory allegation does nothing more than parrot the statutory language of 31 U.S.C. § 3731(b)(2).  The Court is not even bound to accept the truth of government's recitation under Federal Rule of Civil Procedure 8.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  *A fortiori*, its recitation misses the Rule 9(b) pleading standard by a wide margin.  The government does not provide a single fact indicating what "the United States official charged with responsibility to act" was doing to diligently uncover the alleged doping from November 2000—when the government admittedly became "concerned" about doping—until June 10, 2007, when the three-year limitations period expired.  *See Brown*, 740 F. Supp. 2d at 158.  Nor does the government's complaint contain any allegations at all about how or when it claims to have actually discovered the doping.  *See Bergen*, 648 F. Supp. at 587.  Therefore, even if the government hadn't already admitted that it had actual knowledge of allegations of defendants' doping, the government is precluded from relying on the fraudulent concealment doctrine for failure to plead diligence with the particularity required by Rule 9(b).

> 4.    *Regardless of the government's knowledge, all False Claims Act claims prior to June 10, 2000 are barred by the ten-year statute of repose.*

The False Claims Act contains a "ten-year statute of repose."  *Pogue*, 474 F. Supp. 2d at 84.  It provides that "in no event [may any party file a False Claims Act lawsuit] more than 10 years after the date on which the violation is committed."  31 U.S.C. § 3731(b)(2).  The statute of repose requires dismissal of any False Claims Act claim submitted or paid more than ten years

prior to the government's filing of the suit.  *See United States ex rel. Cantekin v. Univ. of Pittsburgh*, No. 91-0715, 1997 U.S. Dist. LEXIS 22868 (W.D. Pa. Aug. 25, 1997).

A statute of repose "is not concerned with the plaintiff's diligence; it is concerned with the defendant's peace."  *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008).  "[A] statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102-103 (2d Cir. 2004).  Therefore, a statute of repose "cannot be tolled under the fraudulent concealment or discovery doctrines."  *Wuliger v. Owens*, 365 F. Supp. 2d 838, 845 (N.D. Ohio 2005).

Regardless of the government's knowledge, it cannot collect under the False Claims Act for claims that it paid prior to June 10, 2000, the expiration of the repose period.  All told, the Postal Service made payments on alleged false claims totaling at least $9,344,125 prior to June 10, 2000.[10]  The government is not entitled to collect damages for any of them under the False Claims Act.  Therefore, Armstrong respectfully requests that the Court dismiss with prejudice all False Claims Act claims arising out of payments made prior to June 10, 2000.

---

[10] The payments, and their dates, are consistent with the payment dates alleged in the relator's operative complaint.  *See* Second Am. Compl. ¶¶ 24-27, ECF No. 42.  To the extent that the government contests Armstrong's reliance on the contractually agreed-upon payment dates, or argues that its own complaint is too vague to allow for a determination of the payment dates, Armstrong hereby moves to dismiss the government's entire complaint pursuant to Federal Rule of Civil Procedure 9(b).  A complaint must be dismissed where it does not allege the dates of the false claims.  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004).  Simply alleging that claims occurred between an "open-ended time span" fails to provide defendants with "sufficient information to allow for preparation of a response."  *Id.*; *see also United States ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 75 (D.D.C. 2008) (dismissing False Claims Act complaint pursuant to Rule 9(b) because the plaintiff failed to plead the "dates upon which invoices or cost reports . . . were made or submitted by" the defendants); *United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F. Supp. 292, 303 (D.D.C. 1996) (dismissing False Claims Act complaint because the plaintiff failed "to state the date or dates on which the allegedly false invoices were submitted").

**B.   The false statements claim must be dismissed because the government pleaded it under an inoperative statute.**

"[A] complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) for lacking a cognizable legal claim." *325-343 E. 56th St. Corp. v. Mobil Oil Corp.*, 906 F. Supp. 669, 673 (D.D.C. 1995). In count II of its complaint, the government attempts to plead a claim for false statements pursuant to the False Claims Act as amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111–21, 123 Stat. 1617. *See* Compl. ¶ 77 (citing 31 U.S.C. § 3729(a)(1)(B) (2009)). But by its own terms, the FERA amendment to the false statements clause does not apply to the government's stale allegations.

In May 2009, FERA amended the False Claims Act provision governing false statements. The amendment to the false statements clause was made retroactive only to "claims" pending on or after June 7, 2008. 123 Stat. at 1625, § 4(f). The majority of courts to have considered the issue have held that "claims" means just what it says, "claims for payment." *See, e.g.*, *Hopper v. Solvay Pharms.*, Inc., 588 F.3d 1318, 1326 (11th Cir. 2009); *see also United States v. Carell*, 782 F. Supp. 2d 553, 558 (M.D. Tenn. 2011) ("This Court joins that majority and concludes that the "claims" language in the amendments to the FCA means exactly that—claims."). Likewise, the district courts of the District of Columbia Circuit have unanimously concluded that the FERA amendments to the false statements clause are only retroactive to "claims" pending on or after June 7, 2008, not cases pending as of that date. *See, e.g., United States v. Toyobo Co,.*, 811 F. Supp. 2d 37, 49 (D.D.C. 2011); *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 195 n.10 (D.D.C. 2011). In fact, the one court in the District of Columbia Circuit to have ruled the other way later realized its mistake and reversed itself. *See United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55 (D.D.C. 2010) ("[I]t was error to conclude that FERA's amended provisions applied retroactively to the claims at issue here.").

In *United States v. Science Applications International Corp.*, the court rejected the government's argument that the FERA amendment to the false statements clause applied retroactively to all cases pending on or after June 7, 2008. *See* 653 F. Supp. 2d 87, 106-107

13

(D.D.C. 2009), *vacated in part on other grounds by* 626 F.3d 1257, 1280 (D.C. Cir. 2010).  As the court explained, the plain language of the FERA amendment contradicts the government's argument.  FERA itself provides that it is only retroactive to pending "claims," not pending cases.  *Id.* at 107.  The False Claims Act defines claim to mean a "request or demand . . . for money or property," not a case.  31 U.S.C. § 3729(c).  Moreover, the FERA amendment itself distinguishes between "claims" and "cases."  "Subsection 4(f)(2) [of the FERA amendment], immediately after the provision at issue reads 'section 3731(b) of title 31, as amended . . . shall apply to *cases* pending on the date of enactment."  *Sci. Application, 653 F. Supp. 2d at 107* (citing 123 Stat. at 1625).

The legislative history also supports the conclusion that "claims" means "claims."  "The Senate Report's explanation of FERA's amendments to the FCA . . . utilizes 'claims' to refer to a defendant's request for payment and 'cases' when discussing civil actions for FCA violations."  *Id.* (citing S. Rep. No. 110-10 (2009)).  Finding the plain language of the amendment and the legislative history to be in accord, the district court held that "claims" means "requests or demands for money or property," not cases.  On appeal, the government did not press its argument to the contrary.  *See United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010).

Here, the government has not alleged that any claim for payment was pending on or after June 7, 2008.  To the contrary, the government admits that it paid its last claim to Tailwind on June 1, 2004.  Compl. ¶¶ 69-72; Attach. B, Ex. A, § 3.  Therefore, the government has no legal basis to allege count II under the post-FERA False Claims Act.  Armstrong respectfully requests that the Court dismiss the government's claim for false statements.

### C.      The government fails to state a reverse false claim.

The government has failed to adequately plead its fourth count for a reverse false claim pursuant to 31 U.S.C. § 3729(a)(7).  The government has not—and cannot—plead that Armstrong had an obligation to pay money to the government at the time of the alleged false

14

statements.  The only source of liability the government alleges are sponsorship agreements that require the government to pay Tailwind—not Armstrong to pay the government.  Therefore, the government has not and cannot allege a reverse false claim, and its attempt to do so should be dismissed with prejudice.

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  Section 3729(a)(7) creates liability for reverse false claims.  A defendant only incurs reverse false claim liability if he "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease *an obligation to pay or transmit money or property to the Government*."  31 U.S.C. § 3729(a)(7) (emphasis added).

"In a reverse false claim action under FCA section 3729(a)(7), the defendant's action does not result in improper payment *by the government to the defendant*, but instead results in *no payment to the government when a payment is obligated*."  *United States v. Am. Nat'l Red Cross*, 518 F.3d 61, 63 n.1 (D.C. Cir. 2008) (emphasis added) (internal quotations and citation omitted). To recover under section 3279(a)(7), the plaintiff must demonstrate that the defendant owed a specific, legal obligation to pay the government money or property at the time the alleged false record or statement was made.  *Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38, 43 (D.D.C. 2006), *aff'd*, 518 F.3d 61; *American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 734 (6th Cir. 1999); *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997). "[A] plaintiff may not state a reverse false claim unless the pertinent obligation attached **before** the defendant made or used the false record or statement."  *American Textile Mfrs. Inst., Inc.*, 190 F.3d at 734.  "Where an obligation arises if and only if a defendant makes a false statement or files a false claim  . . . , an action under the False Claims Act will not lie."  *Id.*  Therefore, future, contingent obligations to pay the government under a breach of contract theory do not

15

give rise to reverse false claim liability.  *Hoyte*, 439 F. Supp. 2d at 44; *see also United States ex rel. S. Prawer & Co. v. Verrill & Dana*, 946 F. Supp. 87, 93 (D. Me. 1996).

Here, the government has not and cannot allege that Armstrong (or any other defendant) had a specific, non-contingent legal obligation *to pay the government* at the time of the alleged false statements.  The government has not alleged a single contract that requires the defendants to pay the government.  *See* Compl. ¶¶ 15-26 (alleging sponsorship agreements that require the Postal Service to pay Tailwind).  In a doomed attempt to overcome this deficiency, the government alleges that "[i]n making the false statements . . . , the Defendants intended to avoid Tailwind's obligation to repay the United States the amounts it had received."  Compl. ¶ 72.  In other words, the government alleges that the defendants made false statements to avoid a potential, contingent decision by the government to seek repayment under a breach of contract theory.  That theory fails to state a claim for relief.  *American Textile Mfrs. Inst., Inc.*, 190 F.3d at 734.  Because any contract liability had not been reduced to an obligation to pay prior to the alleged false statements, the government's section 3729(a)(7) claim fails.  *See Hoyte*, 439 F. Supp. 2d at 43; *accord American Textile Mfrs. Inst., Inc.*, 190 F.3d at 734; *Q Int'l Courier, Inc.*, 131 F.3d at 773.  The government cannot state any viable theory of a reverse false claim under the Sponsorship Agreements.  Therefore, Armstrong respectfully requests that the Court dismiss the government's fourth count with prejudice.

## IV.   CONCLUSION

The government's claims are time-barred.  The face of the government's complaint makes clear that all its claims occurred prior to the limitations period.  Therefore, the government's False Claims Act, fraud, and unjust enrichment claims should be dismissed with prejudice.

16

768163

Respectfully submitted,
KEKER & VAN NEST LLP

Dated:  July 23, 2013

By:   */s/ Elliot R. Peters*

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
DAVID W. RIZK (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

17