## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*
FLOYD LANDIS,

                *Plaintiffs*,

    v.

CAPITAL SPORTS & ENTERTAINMENT
HOLDINGS, INC.
300 West 6th Street, Suite 2150
Austin, TX  78701; and

WILLIAM J. STAPLETON
c/o Capital Sports & Entertainment
Holdings, Inc.
300 West 6th Street, Suite 2150
Austin, TX  78701; and

BARTON B. KNAGGS
c/o Capital Sports & Entertainment
Holdings, Inc.
300 West 6th Street, Suite 2150
Austin, TX  78701

                *Defendants.*

Civil No. 1:10-cv-00976-RLW

***ORAL HEARING REQUESTED***

## DEFENDANTS CAPITAL SPORTS & ENTERTAINMENT HOLDINGS, INC., WILLIAM J. STAPLETON AND BARTON B. KNAGGS' MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

Pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure,

and based upon the accompanying Memorandum of Points and Authorities, the

Declaration of Marc S. Harris, executed July 23, 2013, and the exhibit attached

thereto, and the Request for Judicial Notice filed concurrently herewith,

Defendants Capital Sports & Entertainment Holdings, Inc., William J. Stapleton,

and Barton B. Knaggs (collectively, the "Moving Defendants"), by their

undersigned counsel, hereby move this Court, before the Honorable Robert L.

Wilkins, United States District Judge, for an Order dismissing Relator Floyd

Landis' Second Amended Complaint for Violations of Federal False Claims Act

with prejudice, and granting such other and further relief as the Court deems just

and proper.

Dated this 23rd day of July, 2013

/s/  Marc S. Harris
Marc S. Harris (admitted pro hac vice)
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
(213) 613-4655 – Telephone
(213) 613-4546 – Facsimile
mharris@scheperkim.com

Attorneys for Defendants Capital Sports &
Entertainment Holdings, Inc., William J.
Stapleton and Barton B. Knaggs

Dated this 23rd day of July, 2013

/s/  John P. Pierce
John P. Pierce (D.C. Bar No. 475101)
THEMIS PLLC
2305 Calvert Street, NW
Washington, DC 20008
(202) 567-2050 – Telephone
(202) 567-2051 – Facsimile
jpierce@themis.us.com

Attorneys for Defendants Capital Sports &
Entertainment Holdings, Inc., William J.

Stapleton and Barton B. Knaggs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>CAPITAL SPORTS & ENTERTAINMENT HOLDINGS, INC.<br>300 West 6th Street, Suite 2150<br>Austin, TX  78701;<br><br>WILLIAM J. STAPLETON<br>c/o Capital Sports & Entertainment Holdings, Inc.<br>300 West 6th Street, Suite 2150<br>Austin, TX  78701;<br><br>BARTON B. KNAGGS<br>c/o Capital Sports & Entertainment Holdings, Inc.<br>300 West 6th Street, Suite 2150<br>Austin, TX  78701;<br><br>        *Defendants*. | Civil No. 1:10-cv-00976-RLW |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CAPITAL SPORTS & ENTERTAINMENT HOLDINGS, INC.'S, WILLIAM J. STAPLETON'S AND BARTON B. KNAGGS' MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS AND SUMMARY OF ALLEGATIONS ...........2

III.  ARGUMENT........................................................................................5

    A.    Legal Standards on a Motion to Dismiss. ...........................................5

    B.    All of Landis' Claims Against Stapleton, Knaggs, and CSE
        Must Be Dismissed As Time-Barred.................................................7

        1.    The Majority Approach – That The FCA Establishes a
            Six-Year Statute of Limitations for Claims Brought by
            Relators – Is Correct. ...............................................................9

        2.    Under the Majority Approach, Landis' Claims Must Be
            Dismissed. ...............................................................................16

        3.    If the Court Adopts the *Hyatt* Minority Interpretation of
            the FCA Statute of Limitations, Landis' Claims Are
            Time-Barred. ..........................................................................17

        4.    If the Court Adopts the *Pogue* Minority Interpretation of
            the FCA Statute of Limitations, Landis' Claims Are
            Time-Barred. ..........................................................................18

    C.    Counts Four through Eight Must Be Dismissed On the
        Additional Ground That They Fail To State a Valid Claim. ..............21

        1.    Count Four Fails to State a Valid "Reverse False Claim"
            Cause of Action. .....................................................................21

        2.    Landis' "Post-FERA" Claims in Counts Five through
            Eight Must Be Dismissed........................................................23

IV.   CONCLUSION ..................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*325-343 E. 56th St. Corp. v. Mobil Oil Corp.*,
  906 F. Supp. 669 (D.D.C. 1995) ....................................................21

*\*Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*,
  190 F.3d 729 (6th Cir. 1999) ......................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................... 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................... 5

*\*Hopper v. Solvay Pharms., Inc.*,
  588 F.3d 1318 (11th Cir. 2009) ...............................................24

*\*Hoyte v. Am. Nat'l Red Cross*,
  439 F. Supp. 2d 38 (D.D.C. 2006), *aff'd*, 518 F.3d 61 (D.C. Cir. 2008) ......22

*Levine v. Am. Psychological Ass'n (In re APA Assessment Fee Litig.)*,
  862 F. Supp. 2d 1 (D.D.C. 2012) ............................................. 6

*Lewis v. Bayh*,
  577 F. Supp. 2d 47 (D.D.C. 2008) ........................................... 6

*Red Lake Band of Chippewa Indians v. United States DOI*,
  642 F. Supp. 2d 1 (D.D.C. 2009) ............................................11

*Saadeh v. Farouki*,
  107 F.3d 52 (D.C. Cir. 1997) ...................................................10

*Sibley v. Breyer*,
  456 F. 2d 43 (D.D.C. 2006) ....................................................20

*Sierra Club v. Leavitt*,
  355 F. Supp. 2d 544 (D.D.C. 2005)...........................................16

*Smith-Haynie v. District of Columbia*,
  155 F.3d 575 (D.C. Cir. 1998) ................................................. 5

*Thistlethwaite v. Dowty Woodville Polymer, Ltd.*,
  6 F. Supp. 2d 263 (S.D.N.Y. 1998) ........................................... 9

ii

*United States ex rel. Colunga v. Hercules*, No. 89-cv-954,
    1998 U.S. Dist. LEXIS 21811 (D. Utah Mar. 6, 1998) ................................ 8

*United States ex rel. Eisenstein v. Cty. of New York*,
    556 U.S. 928 (2009) ................................................................................. 11

*\*United States ex rel. El Amin v. George Washington Univ.*,
    26 F. Supp. 2d 162 (D.D.C. 1998) ........................................................ passim

*United States ex rel. Finney v. Nextwave Telecom, Inc.*,
    337 B.R. 479 (S.D.N.Y. 2006) ................................................................ 10

*United States ex rel. Fisher v. Network Software Assoc.*,
    180 F. Supp. 2d 192 (D.D.C. 2002) ...................................................... 6, 9

*United States ex rel. Foster v. Bristol-Myers Squibb Co.*,
    587 F. Supp. 2d 805 (E.D. Tx. 2008) ........................................................ 9

*United States ex. rel. Gale v. Omnicare, Inc.*, No. 1:10-cv-127,
    2012 U.S. Dist. LEXIS 138150 (N.D. Ohio Sept. 26, 2012) ...................... 9

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. 07-cv-247,
    2008 U.S. Dist. LEXIS 78251 (W.D. Tex. Sept. 2, 2008) ........................... 8

*\*United States ex rel. Head v. Kane Co.*,
    798 F. Supp. 2d 186 (D.D.C. 2011) ......................................................... 24

*United States ex rel. Howard v. Lockheed Martin Corp.*,
    499 F. Supp. 2d 972 (D. Ohio 2007) .................................................... 9, 10

*United States ex rel. Hudalla v. Walsh Constr. Co.*,
    834 F. Supp. 2d 816 (N.D. Ill. 2011) ..................................................... 18

*United States ex rel. Hyatt v. Northrop Corp.*,
    91 F.3d 1211 (9th Cir. 1996) ............................................................... 7, 18

*United States ex rel. King v. Solvay S.A.*,
    823 F. Supp. 2d 472 (S.D. Tex. 2011) ...................................................... 9

*United States ex rel. Klein v. Omeros Corp.*,
    897 F. Supp. 2d 1058 (W.D. Wash 2012) .............................................. 18

*United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*,
    777 F. Supp. 195 (N.D.N.Y. 1991) .......................................................... 8

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
    505 F. Supp. 2d 1 (D.D.C. 2007) ........................................................ 8, 19

iii

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,*
  474 F. Supp. 2d 75 (D.D.C. 2007) ........................................ 8, 11, 18, 19, 21

*United States ex rel. Purcell v. MWI Corp.,*
  520 F. Supp. 2d 158 (D.D.C. 2007)............................................19

*United States ex rel. S. Prawer & Co. v. Verrill & Dana,*
  946 F. Supp. 87 (D. Me. 1996)....................................................22

*United States ex rel. Salmeron v. Enter. Recovery Sys., Inc.,*
  464 F. Supp. 2d 766 (N.D. Ill. 2006)........................................ 8

*\*United States ex rel. Sanders v. N. Am. Bus. Indus.,*
  546 F.3d 288 (4th Cir. 2008)............................................... Passim

*United States ex rel. Sanders v. N. Am. Bus. Indus.,* No. 02-3084
  2007 U.S. Dist. LEXIS 46029 (D. Md. Jun. 25, 2007) ........................12, 15

*United States ex rel. Schuhardt v. Washington Univ.,*
  228 F. Supp. 2d 1018 (E.D. Mos. 2002)...................................... 9

*\*United States ex rel. Sikkenga v. Regence Bluecross Blueshield,*
  472 F.3d 702 (10th Cir. 2006)............................................. Passim

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* No. 06-cv-11848,
  2006 U.S. Dist. LEXIS 63850 (E.D. Mich. Sept. 7, 2006) ........................ 10

*United States ex rel. Ven-A-Care Of The Florida Keys, Inc. v. Actavis
  Mid Atlantic LLC,* 659 F. Supp. 2d 262 (D. Mass. 2009) ........................... 8

*United States ex rel. Vosika v. Starkey Labs, Inc.,* No. 01-cv-709,
  2004 U.S. Dist. LEXIS 18349 (D. Minn. Sept. 8, 2004)............................10

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.,*
  709 F. Supp. 2d 52 (D.D.C. 2010) ............................................24

*\*United States v. Am. Nat'l Red Cross,*
  518 F.3d 61 (D.C. Cir. 2008) ..................................................22

*United States v. Carell,*
  782 F. Supp. 2d 553 (M.D. Tenn. 2011)....................................24

*United States v. Intrados/Inter'l Mgmt. Grp.,*
  265 F. Supp. 2d 1 (D.D.C. 2002) ..............................................6, 19, 20, 21

*United States v. Island Park,*
  791 F. Supp. 354 (E.D.N.Y. 1992)..........................................19

iv

*United States v. Q Int'l Courier, Inc.*,
    131 F.3d 770 (8th Cir. 1997)...................................................................22

*United States v. Science Applications Int'l Corp.*,
    653 F. Supp. 2d 87 (D.D.C. 2009), *vacated in part on other*
    *grounds by* 626 F.3d 1257 (D.C. Cir. 2010) ...............................................24

*\*United States v. Toyobo Co.*,
    811 F. Supp. 2d 37 (D.D.C. 2011) ............................................................24

*United States v. VanOosterhout*,
    898 F. Supp. 25 (D.D.C. 1995), *aff'd*, 96 F.3d 1491 (D.C. Cir. 1996) .......... 6

## Federal Statutes

123 Stat. 1617 ........................................................................................23

28 U.S.C. § 2416(c) ............................................................................13, 14

31 U.S.C. § 3729(a)(7).....................................................................2, 21, 22

31 U.S.C. § 3731(b) ................................................................................. 7

31 U.S.C. § 3731(b)(1) ...................................................................... Passim

31 U.S.C. § 3731(b)(2) ...................................................................... Passim

Fed. R. Civ. P. 12(b)(6)............................................................................21

## Other

FERA 2009, Pub. L. No. 111–21, 123 Stat. 1617............................................. 23

H.R. REP NO. 99-660 (1986) ................................................................... 12

S. REP. NO. 99-345, at 15 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266.............. 12

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Relator Floyd Landis filed the instant case more than eight years after he became aware of, and participated in, the conduct underlying his claims.  Landis alleges that, while he was a member of a cycling team sponsored by the United States Postal Service  (the "USPS Team"), he and his teammates used performance enhancing drugs and techniques ("PEDs") in violation of the rules of various international cycling bodies.  He now contends that his conduct, and the conduct of his teammates, violated the terms of the sponsorship agreements with the Postal Service and that claims for payment under the sponsorship agreements were therefore "false and fraudulent" under the federal False Claims Act ("FCA").

In addition to the substantial factual shortcomings of Landis' complaint, his belated claims against William Stapleton, Barton Knaggs, and Capital Sports and Entertainment ("CSE") (collectively, the "Moving Defendants") are barred by the statute of limitations.  Landis filed his suit in June 2010, more than six years after the final claim for payment was made under the last of the Postal Service sponsorship agreements.  Where, as here, the government declines to intervene in a FCA case,[1] the *qui tam* relator is not entitled to invoke the tolling provision of

---

[1] After a lengthy investigation, the government intervened against certain defendants, but declined to intervene with respect to Landis' claims against the

31 U.S.C. § 3731(b)(2).  Rather, the six-year statute of limitations of § 3731(b)(1) applies.  Moreover, even if this Court were to apply the three-year tolling provision of § 3731(b)(2), Landis' claims would be time-barred because both he and the government were aware of a potential claim at least as early as 2002.

Counts Four through Eight of the Second Amended Complaint ("SAC") must be dismissed on the additional ground that the statutes upon which they purport to rely are simply inapplicable to this case.  Count Four purports to allege a "reverse false claim" theory under 31 U.S.C. § 3729(a)(7), which applies only where the defendant fails to make a required payment to the government.  Here, the sponsorship agreements call for payments *by* the government, not *to* the government.  Counts Five through Eight are based on a 2008 amendment to the FCA, which, by its terms, applies only to allegedly false claims that were pending on or after June 7, 2008.  The SAC alleges no such claims.

Accordingly, all of Landis' claims against the Moving Defendants must be dismissed.

## II.   STATEMENT OF FACTS AND SUMMARY OF ALLEGATIONS

Landis filed his initial complaint in this action under seal on June 10, 2010. On February 22, 2013, the United States declined to intervene against the Moving Defendants, and Landis filed his SAC.  (Doc. Nos. 41 and 42).

Moving Defendants and defendant Thomas Weisel.  (United States' Notice of Election to Intervene in Part (Doc. No. 41)).

According to the SAC, the Postal Service made 43 payments to Tailwind Sports Corporation and its predecessors (collectively, "Tailwind") between January 10, 2001 and October 20, 2004, pursuant to a sponsorship agreement entered into in December 2000 (the "2000 Sponsorship Agreement").[2]  (*See* SAC ¶¶ 29, 33-34, Ex. 1).  The SAC alleges that the claims for payment made by Tailwind under the 2000 Sponsorhip Agreement with the Postal Service were "false or fraudulent" because members of the cycling team used PEDs during the term of the sponsorship.  The SAC posits that the sponsorship agreements, Postal Service contracting policies, and the contracts between the cyclists and Tailwind prohibited the use of PEDs or "blood doping," but that certain team members, including Landis himself, engaged in such prohibited activity.  The SAC discusses at length doping in cycling generally, the roles of governing bodies policing doping in cycling, and the doping and denials of doping by members of the USPS Team, including Landis.  (SAC ¶¶ 60-130).  The SAC also devotes substantial space to Defendants Weisel and Tailwind, spending 66 paragraphs discussing those two defendants.  (SAC ¶¶ 131-197).

In contrast, the discussion of the Moving Defendants is quite thin.  The SAC sparsely describes Stapleton as Lance Armstrong's agent and the founder, President, and principal owner of CSE, a sports management firm.  (SAC ¶¶11-12).

---

[2] Landis fails to allege when the operative *claims* to the Postal Service were made, only that *payments* were made on the referenced dates.

It indicates that Knaggs was Vice President of CSE and also served, for a short period of time, as a director and officer of Tailwind.  (SAC ¶15).  The SAC alleges that around late 2003 or early 2004, during the final months of the Postal Service sponsorship, Stapleton and Knaggs became board members and officers of Tailwind, and that CSE became a part owner of Tailwind around May 2004.  (SAC ¶¶ 11, 14-15).  The SAC then asserts, "thus, along with others, [the Moving Defendants] formally authorized the submission of claims to the Postal Service by Tailwind for payment during the period relevant to this complaint."  (SAC ¶¶14-15).[3]  Other than noting corporate ownership interests, their contacts with Washington, D.C., and one allegation each concerning Stapleton's and Knaggs' purported knowledge of doping on the USPS Team (¶¶ 90, 115), the SAC alleges virtually nothing about the Moving Defendants.

Despite this lack of clarity and specificity, the SAC's allegations contain sufficient detail to establish one fact concerning the Moving Defendants:  Landis' causes of action against them are time-barred.  Although Landis fails to allege when the allegedly false claims for payment were submitted by Tailwind, he acknowledges that virtually all of the payments made to Tailwind by the Postal

---

[3] Landis does not allege which "claims" were authorized or submitted by the Moving Defendants.  According to the SAC, the final sponsorship payment under the last sponsorship agreement was due on June 1, 2004.  (SAC ¶ 30).  Exhibit 1 to the SAC reflects that this payment by the Postal Service was made on May 14, 2004.

Service were made before June 10, 2004, *i.e.*, more than six years before Landis filed his complaint.  (*See* SAC, Ex. 1).  Moreover, Landis admits in his complaint that he knew of the facts he alleges rendered the claims that prompted these payments false and fraudulent, namely the use of PEDs by himself and other USPS Team members, as early as 2002.  (*See, e.g.*, SAC ¶¶ 82, 86, 88, 110).  Nonetheless, he did not file his initial complaint in this action until June 10, 2010 – long after collecting his share under the contracts and testing positive for PEDs in 2006, and more than six years after virtually all (if not all) of the claims for payment were made.

## III.   ARGUMENT

### A.   Legal Standards on a Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Dismissal for failure to comply with the statute of limitations is appropriate "when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *accord Lewis*

*v. Bayh*, 577 F. Supp. 2d 47, 51 (D.D.C. 2008).  "In addition to the facts alleged in the complaint, the Court may consider 'any documents either attached to or incorporated by reference in the complaint, matters of which the court may take judicial notice, and matters of public record.'"  *Levine v. Am. Psychological Ass'n (In re APA Assessment Fee Litig.)*, 862 F. Supp. 2d 1, 6 (D.D.C. 2012) (citations omitted).

In a FCA case, the statute of limitations begins to run on the date the allegedly false claim was submitted for payment to the government.  *United States v. VanOosterhout*, 898 F. Supp. 25, 29 (D.D.C. 1995), *aff'd*, 96 F.3d 1491 (D.C. Cir. 1996).  Causes of action based on claims submitted outside the statute of limitations may be dismissed at the motion to dismiss stage.  *See United States ex rel. El Amin v. George Washington Univ.*, 26 F. Supp. 2d 162, 173 (D.D.C. 1998) (granting motion to dismiss untimely FCA claims); *United States ex rel. Fisher v. Network Software Assoc.*, 180 F. Supp. 2d 192, 194 (D.D.C. 2002) (dismissing all FCA violations that pre-date the statute of limitations period); *United States v. Intrados/Inter'l Mgmt. Grp.*, 265 F. Supp. 2d 1, 11 (D.D.C. 2002) (dismissing untimely FCA violations where "plaintiff itself admits that it knew of the material facts giving rise to its claims in a sufficient time to file its complaint before the expiration of the statute of limitations").

**B.** **All of Landis' Claims Against Stapleton, Knaggs, and CSE Must**

**Be Dismissed As Time-Barred.**

The FCA statute of limitations provides as follows:

> A civil action brought under section 3730 may not be brought –
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed,
>
> or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with the responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b).

This provision has been interpreted by various courts to apply to *qui tam* actions (*i.e.*, actions pursued by a relator after the government has declined to intervene) in three different ways. The majority view is that § 3731(b)(2)'s tolling provision applies only in cases in which the government has intervened. As such, § 3731(b)(1)'s six-year statute of limitations applies to all cases brought by relators. *See, e.g.*, *El Amin*, 26 F. Supp. 2d at 172. Other courts have held that the statute of limitations should be read to apply as if the relator were an "official of the United States" under § 3731(b)(2). *See United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1214-18 (9th Cir. 1996). Under this interpretation, the three-

year statute of limitations begins running when the relator gains knowledge of the

wrongdoing, limited by the ten-year statute of repose in § 3731(b)(2).  The third

viewpoint, adopted by a small minority of courts, holds that § 3731(b)(2) applies to

all FCA suits, including those brought by relators, and the three-year statute of

limitations begins to run when *the government* knows or should know of the facts

relevant to the cause of action.  *See, e.g.*, *United States ex rel. Pogue v. Diabetes*

*Treatment Ctrs. of Am.*, 474 F. Supp. 2d 75, 85 (D.D.C. 2007).[4]

As discussed below, the majority approach, applying the six-year limitations

period of § 3731(b)(1) to actions brought by relators, is the most appropriate

---

[4] The Moving Defendants are aware of only five published district court cases that have adopted this interpretation: *Pogue*; *United States ex rel. Ven-A-Care Of The Florida Keys, Inc. v. Actavis Mid Atlantic LLC*, 659 F. Supp. 2d 262 (D. Mass. 2009); *United States ex rel. Salmeron v. Enter. Recovery Sys., Inc.*, 464 F. Supp. 2d 766 (N.D. Ill. 2006); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 777 F. Supp. 195, 204-05 (N.D.N.Y. 1991); and *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1 (D.D.C. 2007).  Of the five cases, two were decided by the same district judge (*Pogue* and *Miller*).  The Moving Defendants are aware of two unpublished district court cases that have adopted this interpretation: *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. 07-cv-247, 2008 U.S. Dist. LEXIS 78251 (W.D. Tex. Sept. 2, 2008) and *United States ex rel. Colunga v. Hercules*, No. 89-cv-954, 1998 U.S. Dist. LEXIS 21811, (D. Utah Mar. 6, 1998).  Both unpublished cases have since been rejected.  In *Fresenius* the district court reversed itself after later concluding that applying the six-year limitations period to all cases brought by relators "is decidedly the majority approach in federal courts of appeals [and district courts around the country]."  *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. 07-cv-247, 2010 U.S. Dist. LEXIS 37636, *7 (W.D. Tex. Jan. 21, 2010).  Similarly, *Colunga* has been soundly rejected by the Tenth Circuit. *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 722-26 (10th Cir. 2006).  The Moving Defendants are aware of no circuit court decisions adopting this approach.

application of the statute.  However, even applying the tolling provision of

§ 3731(b)(2) does not salvage Landis' claims.

> **1.**     **The Majority Approach – That The FCA Establishes a Six-Year Statute of Limitations for Claims Brought by Relators – Is Correct.**

The appropriate approach – as reached by the majority of courts considering

this issue – is that § 3731(b)(2) only applies in cases in which the United States has

intervened, and the six-year statute of limitations in § 3731(b)(1) applies to all

claims brought by relators.  *See, e.g.*, *El Amin*, 26 F. Supp. 2d at 172-73; *Fisher*,

180 F. Supp. 2d at 194; *United States ex rel. Sanders v. N. Am. Bus. Indus.*,

546 F.3d 288, 294-96 (4th Cir. 2008); *Sikkenga*, 472 F.3d at 725-26; *United States*

*ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 981 (D. Ohio

2007); *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d

805, 816 (E.D. Tx. 2008); *Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 6 F.

Supp. 2d 263, 265 (S.D.N.Y. 1998); *United States ex rel. Schuhardt v. Washington*

*Univ.*, 228 F. Supp. 2d 1018, 1029 (E.D. Mos. 2002) (*rev'd in part on other*

*grounds by* 390 F.3d 563 (8th Cir. 2004)); *United States ex rel. Gale v. Omnicare,*

*Inc.*, No. 1:10-cv-127, 2012 U.S. Dist. LEXIS 138150, at * 13-14 (N.D. Ohio

Sept. 26, 2012); *United States ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 538

(S.D. Tex. 2011), *vacated in part on other grounds*, No. 06-2662, 2012 U.S. Dist.

LEXIS 42482 (S.D. Tex. Mar. 28, 2012); *United States ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 486 (S.D.N.Y. 2006); *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, No. 06-cv-11848, 2006 U.S. Dist. LEXIS 63850, at *13-14 (E.D. Mich. Sept. 7, 2006); *United States ex rel. Vosika v. Starkey Labs. Inc.*, No. 01-cv-709, 2004 U.S. Dist. LEXIS 18349, at *6-7 (D. Minn. Sept. 8, 2004). The plain language of the statute, the legislative history, and policy concerns all compel this interpretation of the FCA's statute of limitations.

"In resolving a question of statutory interpretation, a court's starting point is always the language of the statute." *Saadeh v. Farouki*, 107 F.3d 52, 57 (D.C. Cir. 1997) (citation omitted). The statutory language demonstrates the tolling provision of § 3731(b)(2) applies only to cases in which the government intervenes. Section 3731(b)(2) makes no mention of the *qui tam* relator and refers to an "official of the United States." As noted by the court in *El Amin*, "[t]his indicates that subsection (b)(2) was not intended to apply to a qui tam relator." 26 F. Supp. 2d at 172-73; *see also Howard*, 499 F. Supp. 2d at 981 ("[section] 3731(b)(2) by its terms only applies to 'the official of the United States with responsibility to act,' and not to relators").

Moreover, "applying the statute's language to a relator's action makes no sense whatsoever." *Sanders*, 546 F.3d at 294. Because the government's knowledge of "facts material to the right of action" does not notify the relator of

anything, "that knowledge cannot reasonably begin the limitations period for a relator's claims." *Id.*; *see also Sikkenga*, 472 F.3d at 726 (basing the statute of limitations on the knowledge of a non-party, the government, runs "afoul of the absurdity doctrine" of statutory construction").[5]  "Furthermore, once the material facts supporting a right of action are known to the United States, it is doubtful that the government official 'charged with responsibility to act in the circumstances' could be charged with any responsibility other than to see that the government brings or joins an FCA action within the limitations period." *Sanders*, 546 F.3d at 294.  "After all, government officials are certainly not 'charged with responsibility' to ensure that a relator brings a timely FCA claim." *Id.*

This interpretation is supported by the legislative history, which specifically references the government, and not *qui tam* relators, in connection with the tolling provision.[6]  Section 3731(b)(2)'s tolling provision was part of the 1986

---

[5] *See United States ex rel. Eisenstein v. Cty. of New York*, 556 U.S. 928, 933 (2009) (holding that the government's retaining an interest in an FCA case in which it has not intervened does not make it a "party" to the litigation).

[6] Where the language is unclear, "the statute's legislative history can assist the court in identifying legislative intent." *Red Lake Band of Chippewa Indians v. United States DOI*, 642 F. Supp. 2d 1, 24 (D.D.C. 2009).  Although one court in this district has held that the statutory language is unambiguous, *Pogue*, 474 F. Supp. 2d at 85, given the varying interpretations of the statutory language, an examination of the legislative history is appropriate.  *See El Amin*, 26 F. Supp. 2d at 172-73 (confirming interpretation of the plain language of the section 3731(b) through analysis of the legislative history); *Sikkenga*, 472 F.3d at 723 (acknowledging that the text of § 3731(b)(2) is ambiguous, and "could be read to exclude qui tam relators when the United States has not intervened").

amendments to the FCA.  *See Sikkenga*, 472 F.3d at 723.  The Senate Report on

the 1986 FCA amendments observed that the new provision would "permit *the*

*Government* to bring an action within 6 years of when the false claim is submitted

(current standard) or within 3 years of when the Government learned of a violation,

whichever is later . . . ."  S. REP. NO. 99-345, at 15 (1986), *reprinted in* 1986

U.S.C.C.A.N. 5266, 5280 (emphasis added); *see also El Amin*, 26 F. Supp. 2d at

173 ("[T]he 1986 Amendment's legislative history indicates that Congress was

concerned about the government not being able to bring an FCA cause of action

because of difficulties in detecting fraud."); *Sanders v. N. Am. Bus. Indus.*, No. 02-

3084, 2007 U.S. Dist. LEXIS 46029, at *4-5 (D. Md. Jun. 25, 2007).  The House

Report similarly states:

> It was brought to the attention of the Committee that
> fraud is often difficult to detect and the statute of
> limitations should not preclude *the Government* from
> bringing a cause of action under this Act if they were not
> aware of the fraud.  The Committee agreed that this was
> unfair and so expanded the statute of limitations.
> However, the Committee did not intend to bring fraud
> actions *ad infintum* [sic], and therefore imposed a strict
> 10 year limit on False Claims Act cases.

H.R. REP. NO. 99-660, at 25 (1986).  These references specifically to claims

brought by "the government" demonstrate the Congressional intent for

§ 3731(b)(2) to apply only to such claims.

Some courts have noted that an express reference to "the government" in the FCA context does not necessarily exclude relators – as the text and the legislative history of the FCA use the terms "government" and "United States" to refer to suits brought by the Attorney General or *qui tam* relators. *See Sikkenga*, 472 F.3d at 724.  However, § 3731(b)(2) does not use either term, but rather references an "official of the United States."  This unique language has caused additional confusion given that "Attorney General" is used in other provisions of the FCA, and the Senate debate discussing the amendment specifically referenced "an official of the United States Department of Justice."  *See Sikkenga*, 472 F.3d at 724.  Once again, the legislative history provides clarity.  The "official of the United States" language was borrowed from 28 U.S.C. § 2416(c) – the general tolling provision *for claims brought by the United States*.  During the Senate debates, Senator Grassley explained:  "The committee has added a tolling provisions [sic] to the False Claims Act which is adopted directly from 28 U.S.C. § 2416(c)."  *Sikkenga*, 472 F.3d at 724 (quoting 132 CONG. REC. S11,238 (1986)). Similarly, Assistant Attorney General Richard K. Willard, explained the amendment's connection to 28 U.S.C. § 2416(c) in his testimony to the House Judiciary Committee:

> The general statute of limitations for the Federal
> Government, 28 U.S.C. §2416(c) does include a tolling
> provision.  The problem is the False Claims Act, as I
> understand it at least, has its own statute of limitations

and is not subject to the general provision.  So what we are proposing to do is to conform the False Claims Act to the general rule under the common law in most States, and for that matter, *for the Federal Government, to provide this limited tolling period where the fraudulent conduct has been concealed, as it frequently is, from the Government, and we don't find out about it until later.*  I can say Mr. Chairman, that I frequently see requests to sue come in right on the brink of the statute of limitations, and sometimes beyond, causing us to miss out on some claims *we could otherwise bring* because it has just taken that long to discover the fraud and get a case ready to pursue.  *This amendment would give us a little more flexibility in bringing some cases that otherwise would be barred.*

*Id.* at 724, n.31 (quoting False *Claims Act Amendments:  Hearings Before the H. Subcomm. on Admin. Law and Government Relations of the H. Comm. on the Judiciary*, 99th Cong. 118, 159 (1986) (statement of Mr. Richard K. Willard, Assistant Attorney General, Dep't of Justice)) (emphasis added).  From this history it is clear that § 3731(b)(2) was intended to give *the government* "a little more flexibility in bringing cases that otherwise would be barred," and is not applicable to cases brought by private litigants.

Finally, limiting § 3731(b)(2)'s tolling provision to only claims in which the government intervenes best serves the purpose of the FCA and statutes of limitations.  As noted by the court in *Sanders*, "a ten-year statute of limitations for private litigants is quite exceptional; the six-year limitations period set forth in § 3731(b)(1) is much more in accordance with the norm of American

jurisprudence." *Sanders*, 2007 U.S. Dist. LEXIS 46029, at *5.  Thus, absent a clear directive to the contrary, the six-year limitations period should apply to private litigants.  Moreover, the purpose of amending the FCA "was not only to provide the Government's law enforcers with more effective tools, but to encourage any individual knowing of Government fraud to bring that information forward." *Sikkenga*, 472 F.3d at 725.  If the tolling provision applied to a relator's claims and was based on the government's knowledge, relators would have financial incentive to sit on their claims, allowing false claims to build up to maximize the relator's recovery.  This would delay exposure of the fraud and increase the injury to the government.  *See El Amin*, 26 F. Supp. 2d at 173.  This problem is particularly pronounced, where, as here, the relator participated in the events allegedly rendering the claims false, and personally received money from the allegedly false claims submitted.  The SAC establishes Landis knew of the facts allegedly rendering the claims false in 2002, yet did not bring the claims to the government's attention until eight years later.

To the extent Landis advocates for either minority interpretation applying § 3137(b)(2)'s tolling provision to claims brought by relators, this Court should reject his arguments.  In addition to being inconsistent with the above analysis and against the weight of authority, the minority interpretations of the statutory language present practical problems.  First, "[i]t is an elementary principle of

statutory construction that, in construing a statute, [this Court] must give meaning to all the words in the statute." *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 548 (D.D.C. 2005) (citing *Lewis v. Barnhart*, 285 F.3d 1329, 1332 (11th Cir. 2002) (per curiam) (citations omitted) (emphasis in original)).  Yet, as the Tenth Circuit noted in *Sikkenga*: "If relators could avail themselves of the tolling provisions of § 3731(b)(2), then we are hard pressed to describe a circumstance where the six year statute of limitations in § 3731(b)(1) would be applicable." *Sikkenga*, 472 F.3d at 726.  Second, if § 3731(b)(2) applies to claims brought by relators, but the limitations period is governed by the government's knowledge, the interpretation would subject government agencies and officials to disruption and expense in responding to discovery requests "in actions in which the government affirmatively chose to avoid those concerns by declining to intervene." *Sanders*, 546 F.3d at 295.  Accordingly, the appropriate interpretation of § 3731(b) is that it establishes a six-year statute of limitations for claims in which the government has chosen not to intervene.

### 2.     Under the Majority Approach, Landis' Claims Must Be Dismissed.

Applying the six-year statute of limitations to Landis' complaint results in the dismissal of all of the claims.  Landis filed his initial complaint under seal on June 10, 2010.  Landis has not alleged that any claim for payment was made after

June 10, 2004. Accordingly, he has failed to state a valid claim, and his complaint must be dismissed. *See El Amin*, 26 F. Supp. 2d at 173 (granting motion to dismiss untimely FCA claims).

To be sure, Landis does allege that four *payments* (totaling $68,170.45) were made by the Postal Service to Tailwind after June 10, 2004 (SAC, Ex. 1); however, he does not allege that (a) the claims that triggered the payments were made within the statute of limitations; or (b) the payments related to the sponsorship agreements at issue in this case.[7] Unless Landis can specifically plead that *claims for payment* were submitted after June 10, 2004, and that the post-June 10 claims were false or fraudulent, his complaint must be dismissed in its entirety.

### 3.    If the Court Adopts the *Hyatt* Minority Interpretation of the FCA Statute of Limitations, Landis' Claims Are Time-Barred.

For the reasons noted above, this Court should follow the majority rule and apply the six-year limitations period of § 3731(b)(1). However, even if the Court were to adopt the Ninth Circuit's interpretation of the FCA statute of limitations,

---

[7] For example, the SAC alleges that the final payment under the 2000 Sponsorship Agreement was due on June 1, 2004. (SAC ¶ 30). Exhibit 1 to the SAC reflects a payment of $1,877,000 on May 14, 2004. Given their timing, the four small payments after that date do not appear to relate to the 2000 Sponsorship Agreement. (*See* SAC Ex. 1). Indeed, the notations in Exhibit 1 ("SF Grand Prix" and "Victory #6") for two of the payments appear to reflect that the payments were for something other than the sponsorship of the USPS Team. (*See Id.*).

Landis' SAC would still be time-barred.  In *Hyatt*, the Ninth Circuit held that

§ 3731(b)(2)'s tolling provision applies to claims brought by relators, and the

three-year statute of limitations begins to run when the relator gains knowledge of

the wrongdoing.  *See Hyatt*, 91 F.3d at 1214-18; *United States ex rel. Hudalla v.*

*Walsh Constr. Co.*, 834 F. Supp. 2d 816, 824 (N.D. Ill. 2011); *United States ex rel.*

*Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1064-65 (W.D. Wash 2012).  The

SAC alleges that Landis engaged in doping activities while riding for the USPS

Team, beginning in 2002.  (SAC ¶88).  Yet, he did not file his complaint until 8

years later, in June 2010.  Accordingly, he brought his claims more than three

years after he knew the "facts material to the right of action" and his claims are

untimely under § 3731(b)(2).  Because his claims are also barred under

§ 3731(b)(1)'s six-year statute of limitations, they should be dismissed under the

*Hyatt* minority approach.

> **4.**     **If the Court Adopts the *Pogue* Minority Interpretation of**
> **the FCA Statute of Limitations, Landis' Claims Are Time-**
> **Barred.**

Finally, even if the Court adopts the minority approach followed in *Pogue*,

Landis' claims must be dismissed as untimely.  Under this approach, claims are

time-barred if they are filed more than six years from the FCA violation, and more

than three years from the point in time the government knew or reasonably should

have known of facts material to the right of action.  *Pogue*, 474 F. Supp. 2d at 85.

To determine if the government should have known facts material to the right of

action, "courts have repeatedly applied a discovery-due diligence standard, which

is rooted in principles of equitable tolling."  *United States ex rel. Miller v. Bill*

*Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1, 6-7 (D.D.C. 2007).  The period

begins to run when the government official "discovers, or by reasonable diligence

could have discovered, the basis of the lawsuit."  *Id.* at 7.  "[T]he running of the

statute of limitations does not begin at the point the plaintiff has sufficient

information to prevail at trial, or even when a plaintiff is aware that the conduct at

issue is actionable under the law."  *United States ex rel. Purcell v. MWI Corp.*, 520

F. Supp. 2d 158, 170 (D.D.C. 2007).  Rather, "the limitations period starts to run

on the first date that the injured party possesses sufficient critical facts to put him

on notice that a wrong has been committed and that he need investigate to

determine whether he is entitled to redress."  *Id.* (internal quotation marks

omitted).  Where a federal agency has knowledge of the fraud, the agency's

knowledge is imputed to the official of the United States charged with

responsibility to act – especially where allegations of the fraud are the subject of

media reports.  *See United States v. Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y.

1992); *accord Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d at 12.

While the SAC makes sporadic reference to media reports and investigations of doping on the USPS Team as early as 1999 and 2000 (*e.g.*, ¶¶122-128), it does not include any specific information regarding the government knowledge of these allegations.  However, in its complaint in this action, the government has admitted that it had actual knowledge of the alleged fraud as early as 2000.[8]  The government alleges that, in November 2000, prior to entering into the 2000 Sponsorship Agreement, "various media outlets reported that French authorities had begun an investigation into allegations that Armstrong and the USPS cycling team used banned substances in winning the 2000 Tour de France."  (Declaration of Marc S. Harris, Ex. 1 ¶ 19).   The government further admits that "the Postal Service was concerned about [the allegations]," and added provisions to the 2000 Sponsorship Agreement to address those concerns.  *Id.*

The government's complaint also makes clear that, despite its knowledge of, and concern regarding, PED use on the USPS Team, the "official of the United States charged with responsibility to act" did not pursue a FCA case.  Indeed, the government complaint admits that the Postal Service entered into the 2000 Sponsorship Agreement *after* becoming aware of an investigation regarding PED

---

[8] The Moving Defendants have concurrently filed a Request for Judicial Notice, asking the Court to consider the government's complaint in this case in connection with the instant motion.  *See Sibley v. Breyer*, 456 F. 2d 43, 45 (D.D.C. 2006) (In deciding a motion to dismiss, the Court may consider "matters about which the Court may take judicial notice.").

use by the USPS Team.  (*Id.* ¶¶ 19-20).  Therefore, the government "knew or reasonably should have known of facts material to the right of action" more than three years before the initial complaint was filed in June 2010.  Accordingly, the complaint was filed outside § 3731(b)(2)'s three-year tolling provision and is time-barred even under the minority approach adopted in *Pogue.*

In sum, no matter which statute of limitations approach this Court adopts, Landis' claims against the Moving Defendants must be dismissed.

**C.**  **Counts Four through Eight Must Be Dismissed On the Additional Ground That They Fail To State a Valid Claim.**

"[A] complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) for lacking a cognizable legal claim."  *325-343 E. 56th St. Corp. v. Mobil Oil Corp.*, 906 F. Supp. 669, 673 (D.D.C. 1995).  Count Four of the SAC fails to state a claim under 31 U.S.C. § 3729(a)(7).  Counts Five through Eight purport to rely on an amendment to the FCA that was not in effect at the time of the conduct at issue. Accordingly, none of these counts state a valid claim for relief.

**1.**  **Count Four Fails to State a Valid "Reverse False Claim" Cause of Action.**

Landis has failed to adequately plead his fourth count for a reverse false claim pursuant to 31 U.S.C. § 3729(a)(7).  A defendant only incurs reverse false claim liability under § 3729(a)(7) if he "knowingly makes, uses, or causes to be

made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(7); *United States v. Am. Nat'l Red Cross*, 518 F.3d 61, 63 (D.C. Cir. 2008) ("In a reverse false claim action under FCA section 3729(a)(7), the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.").  To recover under § 3279(a)(7), the plaintiff must demonstrate that the defendant owed a specific, legal obligation to pay the government money or property at the time the alleged false record or statement was made.  *Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38, 43 (D.D.C. 2006), *aff'd*, 518 F.3d 61 (D.C. Cir. 2008); *Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 190 F.3d 729, 734 (6th Cir. 1999); *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997). "[A] plaintiff may not state a reverse false claim unless the pertinent obligation attached *before* the defendant made or used the false record or statement."  *Am. Textile Mfrs. Inst., Inc.*, 190 F.3d at 734.  Therefore, future, contingent obligations to pay the government under a breach of contract theory do not give rise to reverse false claim liability.  *Am. Nat'l Red Cross*, 439 F. Supp. 2d at 44; *see also United States ex rel. S. Prawer & Co. v. Verrill & Dana*, 946 F. Supp. 87, 93 (D. Me. 1996).

Here, Landis asserts in Count Four that "defendants avoided the obligation to return funds paid by the United States, by concealing and failing to disclose the doping of USPS Team athletes."  (SAC ¶ 257).  However, he alleges no facts or contractual provision establishing any such obligation.  Instead, he asserts that defendants knew that the USPS Team was in violation of the sponsorship agreements and that "funds being paid to Tailwind and CSE should therefore be returned to the USPS."  (SAC ¶ 209).  Landis' theory runs directly counter to the authorities cited above, and must be dismissed.

## 2.      Landis' "Post-FERA" Claims in Counts Five through Eight Must Be Dismissed.

Four of the counts in the SAC purport to state claims under the FCA "as amended by FERA."  (SAC, Counts 5-8, ¶¶ 259-277).  Presumably, Landis is referring to the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111–21, 123 Stat. 1617.  However, the 2009 FERA amendment to the FCA does not apply to Landis' claims.  Accordingly, Counts Five, Six, Seven, and Eight must be dismissed.

In May 2009, FERA amended the FCA provision governing false statements.  The amendment was made retroactive only to "claims" pending on or after June 7, 2008.  123 Stat. at 1623, § 4(f).  The majority of courts to have considered the issue have held that "claims" means "claims for payment."  *See,*

*e.g.*, *Hopper v. Solvay Pharms.*, Inc., 588 F.3d 1318, 1327 (11th Cir. 2009); *see also United States v. Carell*, 782 F. Supp. 2d 553, 558 (M.D. Tenn. 2011) ("This Court joins that majority and concludes that the "claims" language in the amendments to the FCA means exactly that – claims."). Likewise, the district courts of this circuit have unanimously concluded that the FERA amendments are only retroactive to "claims" pending on or after June 7, 2008, not *cases* pending as of that date. *See, e.g.*, *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 49 (D.D.C. 2011); *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 195 n.10 (D.D.C. 2011); *United States v. Science Applications Int'l Corp.*, 653 F. Supp. 2d 87, 107 (D.D.C. 2009), *vacated in part on other grounds by* 626 F.3d 1257, 1280 (D.C. Cir. 2010). In fact, the one court in the District of Columbia Circuit to have ruled the other way later realized its mistake and reversed itself. *See United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55 (D.D.C. 2010) ("[I]t was error to conclude that FERA's amended provisions applied retroactively to the claims at issue here."). Accordingly, for FERA's amended provision to apply retroactively, the plaintiff must allege claims for payment pending on or after June 7, 2008. *See Toyobo*, 811 F. Supp. 2d at 49, n.6.

Here, Landis has not alleged that any claim for payment was pending on or after June 7, 2008. To the contrary, he admits that the final payment under the last of the sponsorship agreements was due on June 1, 2004. (SAC ¶¶30-32).

Therefore, Landis has no legal basis to allege causes of action under the post-FERA FCA, and Counts Five, Six, Seven, and Eight must be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Moving Defendants respectfully request this Court to dismiss with prejudice all causes of action asserted against them in the SAC because they are barred by the FCA's statute of limitations.  The Court should dismiss Counts Four through Eight on the additional ground that the SAC fails to state a valid claim.

Respectfully submitted,

Dated this 23rd day of July, 2013          /S/ Marc S. Harris
                                           Marc S. Harris (Admitted *Pro Hac Vice*)
                                           SCHEPER KIM & HARRIS LLP
                                           601 West Fifth Street, 12th Floor
                                           Los Angeles, CA 90071-2025
                                           (213) 613-4655 – Telephone
                                           (213) 613-4656 – Facsimile
                                           mharris@scheperkim.com

                                           Attorneys for Defendants Capital Sports &
                                           Entertainment Holdings, Inc., William J.
                                           Stapleton and Barton B. Knaggs


Dated this 23rd day of July, 2013          /s/  John P. Pierce
                                           John P. Pierce (D.C. Bar No. 475101)
                                           THEMIS PLLC
                                           2305 Calvert Street, NW
                                           Washington, DC 20008
                                           (202) 567-2050 – Telephone
                                           (202) 567-2051 – Facsimile
                                           jpierce@themis.us.com

Attorneys for Defendants Capital Sports &
Entertainment Holdings, Inc., William J.
Stapleton and Barton B. Knaggs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS,<br><br>                              *Plaintiffs*,<br><br>         v.<br><br>CAPITAL SPORTS & ENTERTAINMENT HOLDINGS, INC.<br>300 West 6th Street, Suite 2150<br>Austin, TX  78701;<br><br>WILLIAM J. STAPLETON<br>c/o Capital Sports & Entertainment Holdings, Inc.<br>300 West 6th Street, Suite 2150<br>Austin, TX  78701;<br><br>BARTON B. KNAGGS<br>c/o Capital Sports & Entertainment Holdings, Inc.<br>300 West 6th Street, Suite 2150<br>Austin, TX  78701;<br><br>                              *Defendants.* | Civil No. 1:10-cv-00976-RLW |

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO
DISMISS RELATOR'S SECOND AMENDED COMPLAINT**

William J. Stapleton, Barton B. Knaggs, and Capital Sports & Entertainment

Holdings, Inc. (collectively, the "Moving Defendants") respectfully request this

Court take judicial notice pursuant to Federal Rule of Evidence 201 of the United

States' Complaint against Tailwind Sports Corp., Tailwind Sports LLC, Lance

Armstrong, and Johan Bruyneel filed in this action and attached to the concurrently filed Declaration of Marc S. Harris as Exhibit 1.

The Court may take judicial notice of any document "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). When supplied with the necessary information to demonstrate accuracy, judicial notice is mandatory. Fed. R. Evid. 201(d). In deciding a motion to dismiss, the Court may consider "matters about which the Court may take judicial notice." *Sibley v. Breyer*, 456 F. 2d 43, 45 (D.D.C. 2006).

Relevant court proceedings are proper subjects of judicial notice. *Covad Comm'ns Co. v. Bell Atl. Corp.*, 407 F. 3d 1220, 1222 (D.C. Cir. 2005) (taking judicial notice of facts on the public record in court proceeding); *see also Koch v. Walter*, No. 10-0150, 2013 U.S. Dist. LEXIS 45958, at *11-12 (D.D.C. Mar. 30, 2013) (taking judicial notice of plaintiff's formal administrative complaint as a public record). As discussed in the Moving Defendants' motion to dismiss, the United States' Complaint is relevant to the Moving Defendants' motion to dismiss. Accordingly, the Court should take judicial notice of it.

Respectfully submitted,

Dated this 23rd day of July, 2013

/s/ Marc S. Harris
Marc S. Harris (Admitted *Pro Hac Vice*)
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
(213) 613-4655 – Telephone

(213) 613-4656 – Facsimile
mharris@scheperkim.com

Attorneys for Defendants Capital Sports &
Entertainment Holdings, Inc.,
William J. Stapleton and Barton B. Knaggs


Dated this 23rd day of July, 2013    /s/  John P. Pierce_____
John P. Pierce (D.C. Bar No. 475101)
THEMIS PLLC
2305 Calvert Street, NW
Washington, DC 20008
(202) 567-2050 – Telephone
(202) 567-2051 – Facsimile
jpierce@themis.us.com

Attorneys for Defendants Capital Sports &
Entertainment Holdings, Inc., William J.
Stapleton and Barton B. Knaggs

## <u>CERTIFICATE OF SERVICE</u>

I, Marc S. Harris, hereby certify that on the 23rd day of July, 2013, I will

electronically file or have filed the foregoing:

1. Defendants Capital Sports & Entertainment Holdings, Inc., William J. Stapleton and Barton B. Knaggs' Motion to Dismiss Relator's Second Amended Complaint;

2. Memorandum of Points and Authorities In Support of Defendants Capital Sports & Entertainment Holdings, Inc.'s, William J. Stapleton's and Barton B. Knaggs' Motion to Dismiss Relator's Second Amended Complaint; and

3. Request for Judicial Notice in Support of Motion to Dismiss Relator's Second Amended Complaint; and

with the Clerk of Court using the District Court for the District of Columbia

CM/ECF system, which will then send a notification of such filing (NEF) to the

following:

| | |
|---|---|
| Robert E. Chandler<br>U.S. Department of Justice<br>Civil Division, Fraud Section<br>601 D. Street, NW, Suite 900<br>Washington, DC  20530<br>Tel:  (202) 514-4678 (Main)<br>Fax:  (202) 514-0280<br>robert.chandler@usdoj.gov | *Counsel for Intervenor Plaintiff United States of America* |
| Darrel C. Valdez<br>Mercedeh Momeni<br>United States Attorney's Office<br>555 Fourth Street, NW<br>Washington, D.C. 20530<br>Tel:  (202) 307-2843<br>Tel:  (202) 307-0821 (Momeni direct)<br>darrell.valdez@usdoj.gov<br>mercedeh.momeni@usdoj.gov | *Co-Counsel for Intervenor Plaintiff United States of America* |

| | |
|---|---|
| Paul D. Scott<br>Lani Anne Remick<br>Jon L. Praed<br>LAW OFFICES OF PAUL D. SCOTT, P.C.<br>The Embarcadero<br>Pier 9, Suite 100<br>San Francisco, California 94111<br>Tel: (415) 981-1212<br>Fax: (415) 981-1215<br>pdscott@lopds.com<br>laremick@lopds.com<br>jlpraed@lopds.com | *Counsel for Relator Floyd Landis* |
| Robert D. Luskin<br>PATTON BOGGS LLP<br>2550 M Street, NW<br>Washington, DC  20037<br>Tel:  (202) 457-6000<br>Fax:  (202) 457-6315<br>rluskin@pattonboggs.com | *Counsel for Defendant Lance Armstrong* |
| John W. Keker<br>David W. Rizk<br>Elliot R. Peters<br>R. James Slaughter<br>Sharif E. Jacob<br>KEKER & VAN NEST LLP<br>633 Battery Street<br>San Francisco, CA 94111<br>Tel:  (415) 391-5400<br>Fax:  (415) 397-7188<br>jkeker@kvn.com<br>drizk@kvn.com<br>epeters@kvn.com<br>rslaughter@kvn.com<br>sjacob@kvn.com | *Co-Counsel for Defendant Lance Armstrong* |
| Christopher M. Viapiano<br>Sullivan & Cromwell LLP<br>1701 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20006<br>Tel:  (202) 956-6985<br>Tel:  (202) 956-7500 (Direct)<br>Fax:  (202) 956-7056<br>viapianoc@sullcrom.com | *Co-Counsel for Defendants Thomas W. Weisel and Ross Investments, Inc.* |

| Thomas E. Zeno<br>Rebecca A. Worthington<br>SQUIRE SANDERS (US) LLP<br>1200 19th Street, NW, Suite 300<br>Washington, D.C. 20036<br>Tel: (202) 626-6600<br>Fax: (202) 626-6780<br>thomas.zeno@squiresanders.com<br>rebecca.worthington@squiresanders.com | *Counsel for Defendant Johan Bruyneel* |
|---|---|
| Blair G. Brown<br>Rachel F. Cotton<br>Zuckerman Spaeder LLP<br>1800 M Street, NW<br>Suite 1000<br>Washington, D.C.  20036-5807<br>Tel: (202) 778-1800 (Main)<br>Fax: (202) 822-8106<br>bgbrown@zuckerman.com<br>rcotton@zuckerman.com | *Counsel for Tailwind Sports Corp. and Tailwind Sports, LLC* |

and caused the above-listed documents to be served on the following, non-ECF participant:

**BY MAIL:**  I caused copies of the above-listed document(s) to be placed in a sealed envelope or package addressed to the persons at the addresses listed below for collection and mailing, following our ordinary business practices.  I am readily familiar with Scheper Kim & Harris LLP's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

| Brendan P. Cullen<br>Sullivan & Cromwell LLP<br>1870 Embarcadero Road<br>Palo Alto, CA  94303<br>Tel:  (650) 461-5650<br>Fax:  (650) 461-5700<br><br>*(Non-ECF Participant)* | *Counsel for Defendants Thomas W. Weisel and Ross Investments, Inc.* |
|---|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am a member of the bar of this Court at whose direction the service was made.

Executed on July 23, 2013, at Los Angeles, California.

/s/  Marc S. Harris
Marc S. Harris (Admitted *Pro Hac Vice)*
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
(213) 613-4655 – Telephone
(213) 613-4656 – Facsimile
mharris@scheperkim.com