# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES *ex rel*. LANDIS, | |
| Plaintiffs, | Civil Action No. 10-00976 (RLW) |
| v. | **ECF** |
| TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL, | |
| Defendants. | |

## MOTION FOR AN ORDER COORDINATING DEPOSITIONS

## ORAL ARGUMENT REQUESTED

Pursuant to Federal Rules of Civil Procedure 16 and 26, Defendant Lance Armstrong respectfully moves for an order coordinating depositions in this action with depositions in parallel federal and state proceedings.  The grounds for this motion are set forth in the accompanying memorandum of points and authorities.  A proposed order is attached.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated:  September 23, 2013

By:   */s/ Sharif E. Jacob*

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

779995.02

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES *ex rel*. LANDIS,<br><br>     Plaintiffs,<br><br>  v.<br><br>TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL,<br><br>     Defendants. | Civil Action No. 10-00976 (RLW) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER COORDINATING DEPOSITIONS

779995.02

## I. INTRODUCTION

For over thirty years, federal and state courts have been coordinating depositions in parallel federal and state litigation.  Courts have recognized that joint federal-state depositions "reduce the costs, delays, and duplication of effort that often stem from such dispersed litigation."  David F. Herr, Annotated Manual for Complex Litigation § 20.31 (4th ed. 2013). Lance Armstrong has been sued in five different actions in five different state and federal courts around the nation.  Although the claims vary, in every suit the plaintiff seeks money damages (or a penalty) arising from the use of performance-enhancing drugs a decade ago.  The suits revolve around the same factual allegations of use, seek to recover money from overlapping defendants, and identify common third-party witnesses.  Deposing the same witnesses multiple times across those suits is a waste of the courts' and the parties' resources.

The government has stated that it is unwilling to coordinate depositions, preferring the status quo.  But under the government's do-nothing approach, each of the defendants and third-party witnesses in the parallel actions would sit for up to five duplicative depositions and each of the courts would have to receive and rule on objections to multiple deposition transcripts per witness.  Moreover, these depositions will almost certainly focus on the U.S. Postal Team's use of performance enhancing drugs—***a fact that no one disputes***.  Asking the same witnesses the same questions over and over again about salacious but uncontested conduct may feed the daily rags, but does nothing to uncover probative evidence in this or any of the parallel actions.  Given the risk of duplicative, burdensome and indeed harassing deposition discovery, Defendants respectfully request that the Court enter the accompanying proposed protective order coordinating the depositions in this action with those in the parallel federal and state proceedings.

## II. BACKGROUND

On January 17, 2013, Lance Armstrong publicly disclosed in an interview with Oprah Winfrey that rampant use of performance enhancing drugs in professional cycling touched almost every team in the peloton, including his own.  Unlike every other professional cyclist who came clean, Armstrong's honesty was rewarded with a barrage of lawsuits.  Within days of the interview a race to the courthouse ensued.  Over the next month, plaintiffs' attorneys, insurance companies, and even the federal government successively filed five actions alleging ever-more creative theories based on the same core facts.  Each of the five complaints alleged that the plaintiff had somehow been harmed by surreptitious doping that took place over a decade ago:

- On January 22, 2013, Robert Stutzman filed a complaint in the Eastern District of California against Lance Armstrong, William Stapleton, Thomas Weisel, and various publishers seeking tens of millions dollars on behalf of a class of California consumers who allegedly purchased Armstrong's books believing that Armstrong was not doping,[1] *see* Decl. of Sharif E. Jacob Ex. A;

- On February 7, 2013, SCA Promotions, Inc. ("SCA") sued Lance Armstrong, Tailwind Sports, Inc., and William Stapleton in the District Court of Dallas County, Texas, claiming that Armstrong's acknowledgment allows SCA to claw back payments under a settlement agreement and arbitration award, *see* Jacob Decl. Ex. C;

- On February 22, 2013, the United States filed a notice of intent to intervene in a *qui tam* action previously filed by disgraced cyclist Floyd Landis against Armstrong, Stapleton, Tailwind Sports, Inc., Thomas Weisel, and others alleging that the government received no value in return for sponsoring Armstrong's cycling team despite the government's own studies showing that it received over

---

[1] Stuzman's class action has been dismissed without prejudice in part as to Lance Armstrong, and in full as to the remaining defendants.  *See* Memorandum and Order, Stutzman v. Armstrong, No. 13-CV-0116 (E.D. Cal. Sept. 10, 2013).

2

one hundred million dollars' worth of advertising and exposure, *see* Notice of

Election to Intervene, Febr. 22, 2013, ECF No. 41;

- On February 28, 2013, Acceptance Insurance Co. filed suit against Lance
  Armstrong and Tailwind Sports Corp. seeking the recovery of bonuses a
  predecessor in interest paid over a decade ago, *see* Jacob Decl. Ex. D; and

- That same day, Robert Martin filed a complaint against Lance Armstrong and
  others in the Central District of California alleging that a nationwide class of
  consumers should get their money back for purchasing Armstrong-endorsed
  sports drinks because they are disappointed that he took performance enhancing
  drugs, *see* Jacob Decl. Ex. E.

The five suits involve overlapping defendants. All the suits were filed against Lance

Armstrong. William Stapleton, Armstrong's former agent, is named as a defendant in three of

the suits. *See* Second Am. Compl., Febr. 22, 2013, ECF No. 42; Jacob Decl. Exs. B-C. Thomas

Weisel, a former investor in Armstrong's cycling team, is named as a defendant in two. *See*

Second Am. Compl.; Jacob Decl. Ex. B.

The suits contain a core of common factual allegations. The five complaints all allege

that Armstrong used performance-enhancing drugs. *See* United States' Compl. ¶¶ 4, 28-32, 35,

Apr. 23, 2013, ECF No. 44; Second Am. Compl. ¶¶ 82-112; Jacob Decl. Ex. C ¶ 3, Ex. D ¶ 6,

Ex. E ¶ 9. The suits also allege that Armstrong made various public statements denying that use.

*See e.g.*, United States' Compl. ¶¶ 62-63, 67; Second Am. Compl. ¶¶ 121-129; Jacob Decl. Ex. B

¶ 45, Ex. C ¶¶ 40, 46, Ex. D ¶¶ 22, 24-26, 36, Ex. E ¶ 9. The allegations are so similar that

many of the complaints even cite each other. *See, e.g.*, Jacob Decl. Ex. D ¶¶ 44-45 (citing the

relator's complaint); *see also* Ex. B ¶ 14 (same).

The complaints also plainly rely on the same witnesses and testimony. All of the

complaints cite to statements that various witnesses made to the US Anti-Doping Agency as part

of an investigation into widespread doping throughout cycling. Second Am. Compl. ¶¶ 216-224;

3

Jacob Decl. Ex. B ¶¶ 15, 53, Ex. C ¶ 15, Ex. E ¶ 33.  The complaints also refer to statements that were made by witnesses during a 2005 arbitration between SCA Promotions, Inc. and Armstrong.  *See* United States' Compl. ¶ 68(B); Jacob Decl. Ex. Ex. B ¶ 15; C ¶¶ 2, 7-8; Ex. D ¶¶ 37-38.  And all of the complaints cite to Armstrong's statements to Oprah Winfrey during the January 17 interview.  *See* United States' Compl. ¶ 61; Second Am. Compl. ¶ 225; Jacob Decl. Ex. B ¶¶ 50-51, Ex. C ¶¶ 2, 19, Ex. D ¶¶ 23, 49, Ex. E ¶¶ 9-10, 32.

Given the extensive overlap of factual issues, counsel for Mr. Armstrong has begun reaching out to counsel for the parties in the five parallel actions in an effort to eliminate duplicative discovery.  Jacob Decl. ¶ 8.  Defendants Lance Armstrong, William Stapleton, Barton Knaggs, Johan Bruyneel, Capital Sports & Entertainment Holdings, Inc., Tailwind Sports Corp., Tailwind, LLC, and Plaintiffs in the Stutzman class action have agreed to conduct joint federal-state depositions.  *See* Jacob Decl. ¶¶ 9, 11.

No discovery has taken place in this action.  In fact, the government hasn't even made its Rule 26(f) disclosures.  Nor have any depositions taken place in any of the parallel actions.  *See* Jacob Decl. ¶ 8.  Mr. Armstrong's deposition has been noticed for November 21, 2013 in *Acceptance Ins. Co. v. Armstrong*, pending in the 126th Judicial District Court of Travis County, Texas.  *Id.*  An identical motion seeking coordinated depositions is being filed in that action.

Pursuant to Civil Local Rule 7(m), counsel for Mr. Armstrong met and conferred with counsel for the government and the relator.  Both have stated that they will oppose this motion. Jacob Decl. ¶ 12.

### III. ANALYSIS

"It is clear from experience that pretrial discovery by deposition[] . . . has a significant potential for abuse."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).  To offset the potential for abuse, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Id.* at 36; *accord*

4

*McKesson HBOC, Inc. v. Islamic Republic of Iran*, 226 F.R.D. 56, 57 (D.D.C. 2004) ("Rule

26(c) gives the court broad discretion to limit discovery in a particular case.").  In particular, the

court may "specify[] terms, including time and place, for the . . . discovery" and "prescribe[] a

discovery method other than the one selected by the party seeking discovery."  Fed. R. Civ. Proc.

26(c)(1)(B)-(C).

Although entry of a protective order is usually subject to the court's discretion, "the court

***must limit the frequency or extent of discovery*** otherwise allowed" where either:

> [1] the discovery sought is unreasonably cumulative or duplicative, or can be
> obtained from some other source that is more convenient, less burdensome, or less
> expensive; [or]
>
> [2] the burden or expense of the proposed discovery outweighs its likely benefit,
> considering the needs of the case, the amount in controversy, the parties'
> resources, the importance of the issues at stake in the action, and the importance
> of the discovery in resolving the issues.

Fed. R. Civ. Proc. 26(b)(2)(C) (emphasis added).

"Discovery creates the greatest need and presents the greatest opportunity for

coordination between state and federal courts."  Apple, et al., *Manual for Cooperation Between

State and Federal Courts,* at 17 (1997) (internal quotation marks omitted).  "If not subject to

effective judicial control, the discovery process in complex and multijurisdictional cases can

generate enormous amounts of duplicative material, place excessive financial burdens on both

plaintiffs and defendants, and can quickly overload court dockets."  *Id.*

"By coordinating discovery in complex and multijurisdictional cases, state and federal

courts reduce duplicative discovery, minimize the resource expenditures associated with

discovery for both parties, effectively manage judicial caseloads, and enhance the likelihood of

global settlements."  *Id.* at 16.  "If the cases are pending before different judges, the judges

should attempt to coordinate the depositions of common witnesses."  David F. Herr, Annotated

Manual for Complex Litigation § 11.455 (4th ed. 2013).  To avoid duplicative discovery, federal

and state courts now routinely coordinate the "scheduling and cross-noticing of joint federal-state

depositions." *Id.* § 20.313; *accord Pfohl Bros. Landfill Site Steering Comm. v. Pfohl Enters.*, 187 F.R.D. 462, 464 (W.D.N.Y. 1999).

Given the decades of court experience with joint federal-state depositions, a set of best practices has emerged.  Federal and state courts presiding over parallel litigation regularly order that:

- Deposition notices must be served on all parties to the parallel actions;

- Within a fixed time from receipt of the deposition notice, any party in the parallel actions may cross-notice the deposition for use in its own action;

- Counsel must meet and confer in an effort to schedule depositions at mutually convenient times and places;

- Deposing counsel are prohibited from re-asking questions previously answered during the deposition; and

- Each witness is deposed once across all parallel actions.

These best practices are memorialized in numerous federal orders regarding coordination of discovery in parallel state and federal actions.  *See, e.g.*, *In re St. Jude Med., Inc.*, MDL No. 1396, 2002 U.S. Dist. LEXIS 28020, 5-6 (D. Minn. May 24, 2002); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 1999 U.S. Dist. LEXIS 1797, *14-*15 (E.D. Pa. Feb. 10, 1999); Order No. 7 at 2, *In re Toyota Motor Corp. Products Liability Litig.*, No. 8:10-ML-2151 (C.D. Cal. Aug. 26, 2010); CMO No. 3, *In re Genetically Modified Rice Litig.*, No. 4:06-ml-1811 (E.D. Mo. June 7, 2007); Practice and Procedure Order No. 2, *In re Prempro Products Liability Litig.*, No. 4:03-cv-1507 (E.D. Ark. July 3, 2003).  Given the obvious efficiencies, state courts have welcomed the concept of coordination and issued identical orders in parallel state proceedings. *Compare* Pretrial Order No. 11, *In re Digitek Products Liability Litig.*, MDL No. 1968 (S.D.W. Va. Feb. 4, 2009), *with* State and Federal Coordination Order, *In re Digitek Litigation*, Civ. No. 08-C-5555 (W. Va. Cir. Ct. Jan. 23, 2009); *see also In re Diet Drugs Prods. Liab. Litig.*, 1999 U.S. Dist. LEXIS 1797, at *11 (noting that identical joint federal-state deposition orders were

entered in state court); *In re Oklahoma Breast Implant Cases*, 847 P.2d 772 (Okla. 1993) (ordering federal-state coordination of depositions).  The proposed protective order accompanying this motion conforms to these practices.

Here, coordination of depositions in the five parallel actions against Armstrong and others will eliminate duplicative discovery, reduce unnecessary litigation expense, and conserve judicial resources.  *See* Fed. R. Civ. Proc. 26(b)(2)(C).  The five actions share numerous common fact issues, including the use of performance enhancing drugs by Armstrong, the other defendants' knowledge of doping, the existence and scope of denials of doping, and third-party knowledge of doping.  Obviously, joint federal-state depositions prevent the *parties* from having to submit to duplicative depositions regarding the same factual issues.  But coordination also saves *non-party witnesses* from being deposed multiple times.  *Compare* Jacob Decl. Ex. B ¶¶ 52, 58 (identifying Tyler Hamilton, Betsy Andreu, and Emma O'Reilly as third-party witnesses to doping), *with id.* Ex. D ¶¶ 22-23, 33 (identifying Betsy Andreu and Emma O'Reilly as third-party witnesses), *and* United States' Compl. ¶¶ 38, 68(C) (identifying Tyler Hamilton and Emma O'Reilly as third-party witnesses).

The best practices reflected in the accompanying proposed order also reduce the burden on the Court.  The method of cross-noticing prescribed by the proposed order is self-executing.  Joint state-federal depositions save the courts from having to receive and rule on objections to five duplicative deposition transcripts for each party witness.  By setting minimum expectations for counsels' conduct during depositions, the proposed order reduces the likelihood that the Court will need to rule on deposition-related disputes.

Finally, deposing each of the witnesses five times about the same conduct—much of which occurred over a decade ago—is likely to lead to harassment.  Given the passage of time since the alleged doping, plaintiffs could turn the depositions into a treasure hunt for inconsistencies in decaying memories of ancient events.  The allegations of doping are highly salacious and seem to be a source of endless interest to the press.  These conditions create fertile

7

ground for abuse of the deposition process.  The government is aware that Mr. Armstrong's deposition has been noticed in the action filed by Acceptance Insurance in Texas state court. Instead of seeking the truth, lawyers may be incentivized to depose Mr. Armstrong over and over again to repeatedly ask him the same questions in an effort to generate minor inconsistencies across multiple depositions.  Given the media attention, there is also a serious risk of grandstanding.  At the same time, in light of Armstrong's very public admissions, these salacious matters are ***not likely ever to be contested or at issue in the proceedings***.  So while there is a risk of duplicative, burdensome and indeed harassing deposition discovery of Mr. Armstrong, and others involved in the underlying events, the probity of that evidence in light of the actual issues to be litigated in this case is minimal.  Mr. Armstrong, for example, intends vigorously to contest this *qui tam* case, but does not intend to argue that he never took erythropoietin or had a transfusion.  So hours of his testimony on those issues, in multiple deposition sessions, can serve no purpose other than harassment.  The best practices for joint federal-state depositions dispose of that tactic by allowing only one deposition of each witness and by prohibiting duplicative questioning within each deposition.

## IV. CONCLUSION

Because joint federal-state depositions eliminate duplicative discovery and reduce the burdens on the witnesses and the Court, Defendants respectfully request that the Court enter the accompanying proposed order coordinating federal and state depositions.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated:  September 23, 2013

By:   */s/ Sharif E. Jacob*

8

---

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

9