# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES *ex rel.* LANDIS,<br><br>   Plaintiffs,<br><br>  v.<br><br>TAILWIND SPORTS CORP., TAILWIND<br>SPORTS LLC, LANCE ARMSTRONG, and<br>JOHAN BRUYNEEL,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 10- 00976 (RLW)<br><br><br>ECF |

<br><br><br>

## UNITED STATES' OPPOSITION TO TAILWIND SPORTS CORP.'S AND TAILWIND SPORTS LLC'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................2

ARGUMENT ................................................................................................4

I.    STANDARD OF REVIEW ....................................................................4

      A.    Rule 12(b)(2) ..............................................................................4

      B.    Rule 12(b)(5) ..............................................................................5

      C.    Rule 12(b)(6) ..............................................................................5

II.   THE COURT HAS JURISDICTION OVER TAILWIND ...................................6

      A.    Because Tailwind Sports Corp. Concedes That It Merged With and Assumed
            The Liabilities of Tailwind Sports LLC, Tailwind Sports LLC Can Be
            Dismissed From This Action ...................................................…..6

      B.    Tailwind Sports Corp. is Subject to Suit and the United States
            Timely Served Tailwind Sports Corp. and Its Agents ................................7

            1.   Tailwind Sports Corp. is Subject to Suit ...........................................7

            2.   Tailwind Sports Corp. Was Properly Served With the United States'
                 Complaint in Intervention ...........................................................15

III.  THIS LAW SUIT WAS FILED WITHIN THE STATUTE OF LIMITATIONS ......18

IV.   THE UNITED STATES HAS ADEQUATELY PLED AN FCA CLAIM
      AGAINST TAILWIND ...........................................................................18

CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Federal Cases:**

*Abou-Hussein v. Mabus,*
  Civil Action No. 12-0913 (RBW), 2013 WL 3753553 (D.D.C.  July 17, 2013) ..................... 5, 6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................................... 5

*BLH, Inc. v. United States,*
  2 Cl. Ct. 463 (1983) ......................................................................................................... 7

*Rivera-Gomez v. de Castro,*
  843 F.2d 631 (1st Cir. 1988) ......................................................................................... 19

*Cement Kiln Recycling Coalition v. EPA,*
  255 F.3d 855 (D.C. Cir. 2001) ...................................................................................... 19

*Coleman v. Community Trust Bank,*
  (In re Coleman), 426 F.3d 719 (4th Cir. 2005) ............................................................. 19

*Cornell Univ. v. Illumina, Inc.,*
  CA 10-433-LPS-MPT, 2013 WL 3216087  (D. Del. June 25, 2013) ........................... 6-7

*Crane v. N.Y. Zoological Society,*
  894 F.2d 454 (D.C. Cir. 1990) ........................................................................................ 4

*Harris v. CitiMortgage, Inc.,*
  878 F. Supp. 2d 154 (D.D.C. 2012) ................................................................................ 6

*Hilska v. Jones,*
  217 F.R.D. 16 (D.D.C. 2003) .......................................................................................... 5

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
  498 F. Supp.2 d 389 (D. Mass. 2007) .......................................................................... 14

*Int'l Pulp Equip. Co. v. St. Regis Kraft Co.,*
  54 F. Supp. 745 (D. Del. 1944) ................................................................................. 9, 16

*Int'l Pulp Equip. Co. v. St. Regis Kraft Co.,*
  55 F. Supp. 860 (D. Del. 1944) ................................................................................. 9-10

*Light v. Wolf,*
  816 F.2d 746 (D.C. Cir. 1987) ........................................................................................ 5

*Marnavi S.p.A. v. Keehan,*
  900 F. Supp. 2d 377, 389 (D. Del. 2012) ................................................................. 15

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,*
  526 U.S. 344 (1999) ....................................................................................................... 5

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,*
  484 U.S. 97 (1987) .......................................................................................................... 5

*Paul v. Didizian,,*
  --- F. Supp. 2d ----, Civil Action No. 12–1196, 2013 WL 3930536 (D.D.C. July 31, 2013) ....... 5

*Raines v. U.S. Department of Justice,*
  424 F. Supp. 2d 60 (D.D.C. 2006) ........................................................................... 19

*Resource Ventures, Inc. v. Resources Management Intern., Inc.,*
  42 F. Supp. 2d 423 (D. Del. 1999) .......................................................................... 14

*Ross v. Venezuelan-Am. Indep. Oil Producers Assoc.,*
  230 F. Supp. 701 (D. Del. 1964) .............................................................................. 16

*Rossmann v. Chase Home Finance, LLC,*
  772 F. Supp. 2d 169 (D.D.C. 2011) .......................................................................... 4

*Simpkins v. District of Columbia,*
  108 F.3d 366 (D.C. Cir. 1997) ................................................................................... 5

*Smith-Johnson S.S. Corp. v. United States,*
  231 F. Supp. 184 (D.Del. 1964) ........................................................................... 13-15

*United States ex rel. Purcell v. MWI Corp.,*
  254 F. Supp. 2d 69 (D.D.C. 2003) ........................................................................... 14

*United States ex rel. Serrano v. The Oaks Diagnostics, Inc.,*
  568 F. Supp. 2d 1136 (C.D. Cal. 2008) ................................................................... 14

*United States v. Philip Morris, Inc.,*
  116 F. Supp. 2d 116 (D.D.C. 2000) ........................................................................... 4

**State Cases:**

*In re Citadel Indus., Inc.,*
  423 A.2d 500 (Del. Ch. 1980) ............................................................................. 7-8, 13

*In re Krafft-Murphy Co., Inc.,*
  62 A.3d 94 (Del. Ch. 2013) ......................................................................................... 8

*In re RegO Co.*,
  623 A.2d 92 (Del. Ch. 1992) .......................................................................... 7

*Russell v. Olmedo*,
  275 A.2d 249 (Del. 1971) ...........................................................................10-11

*U.S. V.I. v. Goldman, Sachs & Co.*,
  937 A.2d 760(Del. Ch. 2007), ......................................................................... 8

*W.A. Green Company v. Mitchell C. Cope*,
  466 S.W.2d 860 ............................................................................................ 17

**Federal Statutes:**

28 U.S.C. § 2416(c) ......................................................................................... 18

31 U.S.C. § 3729 ............................................................................................. 11

31 U.S.C. § 3731(b)(2) ..................................................................................... 18

31 U.S.C. § 3731(c) .....................................................................................13, 14

31 U.S.C. § 3729(a)(3) ..................................................................................... 21

**State Statutes:**

Cal. Corp. Code § 2011 .................................................................................... 17

8 Del. Code § 136(c) ........................................................................................ 16

8 Del. Code § 259 ............................................................................................. 7

8 Del. Code § 278 ....................................................................................8-9, 14, 15

8 Del. Code § 321(b) ........................................................................................ 16

10 Del. Code §3114 ......................................................................................... 16

**Federal Rules:**

Fed. R. Civ. P. 3 .............................................................................................. 9

Fed. R. Civ. P. 4 .............................................................................................5, 16

Fed. R. Civ. P. 4(e)(1) ...................................................................................... 16

Fed. R. Civ. P. 6(b)(1)(A) ................................................................................. 18

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 4

Fed. R. Civ, P. 12(b)(2)..................................................................................................4

Fed. R. Civ. P. 12(b)(5)..................................................................................................5

Fed. R. Civ. P. 12(b)(6)..................................................................................................4

Fed. R. Civ. P. 15(c)(1)(A) ...........................................................................................14

Fed. R. Civ. P. 17(b)(2)..................................................................................................7

**State Rules:**

Tex. R. Civ. P. 29.........................................................................................................17

**Other:**

5B Fed. Prac. & Pro. Civ. § 1357 (3d ed.).....................................................................6

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (1990)..........4

## INTRODUCTION

From 1996 through 2004, the United States Postal Service sponsored a professional cycling team owned by Tailwind Sports Corp. and its predecessors (collectively, "Tailwind"). The Postal Service's purpose in undertaking the sponsorship was to draw upon the public's affinity for this US cycling team and to associate itself with the qualities the team purportedly represented – hard work, dedication, speed, and agility.  Naturally, that purpose would be substantially undermined if the team did not compete according to the rules of cycling, and so as part of its bargain with the Postal Service, Tailwind agreed that its team would follow cycling's rules, especially the rules prohibiting the use of performance enhancing drugs.  In reliance on that promise, the Postal Service paid Tailwind more than $40 million.  The Postal Service also indelibly linked its image with the team's – placing its familiar logo prominently on the chest, back, and side panels of the team's uniform, as well as on the team's vehicles, website, media guides, press releases, and casual clothing.  The team was called "the United States Postal Service Pro Cycling Team."

Only recently did the Government and the rest of the world learn that Tailwind had completely ignored its promise to field a clean team.  Quite to the contrary, at least ten members of the Postal Service team routinely violated the rules prohibiting the use of performance enhancing substances.  At the same time that team managers and doctors encouraged and supported illicit drug use by these riders, team executives repeatedly assured the Postal Service and the public that the team was not doping.  In a very public saga that unfolded throughout the course of 2012, the rider who was the face of the Postal Service team, Lance Armstrong, was stripped of the seven Tour de France titles he had claimed and was banned from cycling for life. As a result, the sponsorship has not enhanced the Postal Service's reputation, as the Postal Service

had once hoped it would, but instead will forever link the Postal Service with the sordid scandal that brought down Lance Armstrong.

Tailwind contends that it should escape liability for the nine-year, $40 million fraud described above through corporate dissolution and its own acts of concealment. The Court should deny Tailwind's motion. As fully discussed below, (1) Tailwind is subject to suit under Delaware's corporate winding-up statute; (2) the United States properly served Tailwind Sports Corp. and its agents, and (3) this action is not barred by the statute of limitations. The United States further demonstrates below that it has adequately pled a False Claims Act ("FCA") claim against Tailwind, even though Tailwind waived this issue by failing to raise it properly.

## BACKGROUND

The Government's complaint names two business entities as defendants – Tailwind Sports LLC ("TS LLC") and Tailwind Sports Corp. ("TS Corp.," and collectively with TS LLC and their predecessors, "Tailwind").[1]  TS LLC was organized as a limited liability company under the laws of the State of Delaware on April 5, 1999.[2]  Gov't Compl. ¶ 8.  TS LLC owned and operated the United States Postal Service (the "USPS") Pro Cycling Team (the "USPS team") from 1999 until its merger with TS Corp. on July 16, 2002. *Id.*  TS Corp. is a corporation organized and existing under the laws of the State of Delaware. *Id.* at ¶ 9.  It was formed on June 25, 2002, and continued to own and operate the USPS team through the time that the USPS ended its sponsorship of the team in 2004. *Id.*  TS Corp. dissolved by filing a certificate of dissolution with the Secretary of the State of Delaware on December 31, 2007. *Id.*; Exh. 1.

---

[1] For the sake of clarity, this brief generally refers to "Tailwind," except in those instances where the identity of the particular business entity is relevant to the discussion. References to "Tailwind" should be understood to refer to whichever business entities owned the USPS team during the time periods relevant to the particular discussion.

[2] At the time of its formation, TS LLC was known as DFP Cycling LLC. Gov't Compl. ¶ 8. On January 19, 2001, it changed its name to Tailwind Sports LLC. *Id.*

From 1996 through 2004, the USPS sponsored the United States Postal Service Pro Cycling Team. Gov't Compl. at ¶¶ 15-21. Lance Armstrong was the lead rider for the team from 1999 through 2004, and Johan Bruyneel was the *directeur sportif,* or coach, of the team from 1999 through 2007. *Id.* at ¶¶ 10-11. The Sponsorship Agreements between the USPS and Tailwind prohibited the team's riders from using substances or methods that were banned by cycling's governing bodies, and further required the team to take "immediate action" in the event that a rider used such substances or methods in violation of the governing cycling bodies' rules or the Agreements. *Id.* at ¶¶ 15-21. In the 2000 Sponsorship Agreement, a provision was added in which Tailwind affirmatively certified and represented that each rider on the cycling team had a morals and drug clause in their contracts with Tailwind. *Id.* at ¶ 21.

Unbeknownst to the USPS, Tailwind oversaw and participated in a monumental sports doping scandal, in breach of their 1995 and 2000 sponsorship agreements with the USPS. *See id.* at ¶¶ 27-61. Not only did Tailwind fail to inform the USPS of the widespread use of performance enhancing drugs and techniques by their riders, but their riders, officers and agents misrepresented to the USPS and the general public that the riders on the team, including Lance Armstrong, were clean. *Id.* at ¶¶ 62-70. Had it been known by the USPS that the cycling team was violating the Sponsorship Agreements, and that Tailwind knew about and facilitated the use of banned substances and techniques, the USPS would have terminated the Sponsorship Agreements and sought repayment of all funds paid to Tailwind. *Id.* at 72. It was not until Floyd Landis came forward that the truth began to surface and become known to the USPS and the United States Department of Justice. Gov't Compl. at ¶ 73.

## ARGUMENT

### I.   STANDARD OF REVIEW

Tailwind seeks dismissal of the Government's complaint under Federal Civil Rules 12(b)(2), (b)(5) and (b)(6). Although Tailwind also cites, in passing, to Rule 12(b)(1) as a basis for dismissal in the opening paragraph of its argument section, it relies upon this Rule only in support of its motion to dismiss the relator's complaint. Tailwind Br. at 4.[3]

#### A.   Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for personal jurisdiction over a defendant. *Rossmann v. Chase Home Finance, LLC*, 772 F. Supp. 2d 169, 171 (D.D.C. 2011) (citing *Crane v. N.Y. Zoological Society*, 894 F.2d 454, 456 (D.C. Cir. 1990)). Although the Court need not treat all of a plaintiff's allegations as true when determining whether personal jurisdiction exists, any factual discrepancies with regard to the existence of personal jurisdiction should be resolved in plaintiff's favor. *See Crane*, 894 F.2d at 456. The Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (1990)).

---

[3] We note that, because the United States has intervened in this action and filed its own complaint in intervention against Tailwind, relator's complaint has been superseded with respect to its claims against Tailwind. That is, relator has no operative complaint or claims against Tailwind. Consequently, when Tailwind's motion seeks to dismiss relator's complaint against it, it is seeking the dismissal of a complaint that simply does not exist. For that reason, the Court may hold that relator's complaint has been superseded in all respects as to the intervened defendants in this action and deny Tailwind's motion to dismiss relator's complaint as moot.

### B.    Rule 12(b)(5)

A court ordinarily may not exercise personal jurisdiction over a party named as a

defendant in the absence of service of process (or waiver of service by the defendant). *See*

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (*citing Omni*

*Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a ... court may

exercise personal jurisdiction over a defendant, the procedural requirement of service of summons

must be satisfied."). Pursuant to Federal Rule of Civil Procedure 12(b)(5), "if the plaintiff does

not properly effect service on a defendant, then the defendant may move to dismiss the complaint"

without prejudice. *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003); *see also Simpkins v. District*

*of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997). "The party on whose behalf service is made

has the burden of establishing its validity when challenged; to do so, he must demonstrate that the

procedure employed satisfied the requirements of the relevant portions of [Federal Rule of Civil

Procedure 4] and any other applicable provision of law." *Paul v. Didizian*, --- F. Supp. 2d ----,

Civil Action No. 12–1196, 2013 WL 3930536, *2 (D.D.C. July 31, 2013) (Kollar-Kotelly, J.),

*citing Light v. Wolf*, 816 F.2d 746, 750 (D.C. Cir. 1987) (internal quotation omitted).

### C.    Rule 12(b)(6)

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Abou-*

*Hussein v. Mabus*, Civil Action No. 12-0913 (RBW), 2013 WL 3753553, *3 (D.D.C.

July 17, 2013), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In making this assessment, a

plaintiff receives the benefit of all inferences that can be derived from the facts alleged, and the

Court may consider only the facts alleged in the complaint, any documents either attached to or

incorporated in the complaint, and matters of which the Court may take judicial notice. *Abou-*

*Hussein*, at \*3. 2. The burden is on the moving party to prove that the plaintiff has failed to

articulate a claim upon which relief could be granted. *Harris v. CitiMortgage, Inc.*, 878

F.Supp.2d 154, 158 (D.D.C. 2012). *See also* 5B Fed. Prac. & Pro. Civ. § 1357 (3d ed.) ("All

federal courts are in agreement that the burden is on the moving party to prove that no legally

cognizable claim for relief exists").

## II.    THE COURT HAS JURISDICTION OVER TAILWIND

The basis for Tailwind's procedural defenses to the United States' complaint in

Intervention are that (1) TS LLC no longer exists as a legal entity under Delaware State corporate

law; (2) the Delaware three year winding-up period for dissolved corporations expired before this

action was commenced; and (3) Tailwind has not been properly served with the complaint in

Intervention.  The United States addresses each of these arguments below.[4]

### A.    Because TS Corp. Concedes That It Merged With and Assumed the Liabilities of TS LLC, TS LLC Can Be Dismissed From This Action

In its motion, Tailwind concedes that TS LLC statutorily merged with and into TS Corp.

and that TS Corp. assumed all assets and liabilities of TS LLC. Tailwind Br. at 2-3. *See also*

Tailwind Br. at Exh. 2 (ECF No. 91-2).  It is axiomatic under Delaware corporate law that, when

two companies merge and the successor corporation is a Delaware corporation, the succeeding

corporation "steps into the shoes" of the predecessor corporation and assumes all debts, liabilities,

and duties of the predecessor corporation. *Cornell Univ. v. Illumina, Inc.*, CA 10-433-LPS-MPT,

2013 WL 3216087 \*12 (D. Del. June 25, 2013) ("Under Delaware law, the surviving entity of a

---

[4]   While Tailwind asserts that it "joins" and "incorporates" the arguments set forth in Lance
Armstrong's Motions to Dismiss, they do not identify which "arguments." Tailwind Br. at 4 and
n. 2. Thus, the United States will address only those arguments specifically set forth in Tailwind'
Motion to Dismiss, and will "join" and "incorporate" the arguments set forth in the United States'
Opposition to Lance Armstrong's Motions to Dismiss (filed concurrently with this Opposition).

merger absorbs all rights and responsibilities of the parties to a merger") (citing 8 Del. Code Ann.
§ 259).

In light of, and contingent upon, TS Corp.'s concession that it absorbed all rights and
liabilities of TS LLC, the United States agrees that TS LLC can be dismissed from this action. TS
LLC's conduct remains relevant to this action, however, because that conduct is now imputed to
its successor, TS Corp., due to the merger in July 2002. Thus, TS Corp. is liable for both the pre-
merger and post-merger FCA violations set forth in the Government's complaint.

**B.**      **Tailwind Sports Corp. is Subject to Suit and the United States Timely Served
            Tailwind Sports Corp. and Its Agents**

Tailwind claims that it is incapable of being sued because it dissolved on December 31,
2007 pursuant to Delaware corporate law, and further alleges that it was never served. Tailwind
Br. at 5-10. The question of whether Tailwind can be sued is a question of Delaware state law.
Fed. R. Civ. P. 17(b)(2) ("Capacity to sue or be sued … for a corporation, [is determined] by the
law under which it is organized."); *see also BLH, Inc. v. United States*, 2 Cl. Ct. 463, 466-67
(1983) ("In all federal courts, including this court, a corporation's capacity to sue or be sued is to
be determined by the law of the state of incorporation."). For the reasons stated below,
Tailwind's arguments are without legal or factual merit.

### 1.   Tailwind Sports Corp. is Subject to Suit

Generally, under the common law the dissolution of a corporation "was its civil death; not
only could a corporation not thereafter be sued, but pending suits against it abated." *In re RegO
Co.*, 623 A.2d 92, 95 (Del. Ch. 1992). "[D]issolution thus stood as a substantial risk to corporate
creditors, threatening to deprive them of a party to sue on their claims." *Id.* To address this risk
and provide protection to creditors and other interested parties, statutes were enacted to create "a
formal winding-up period in which claims can be asserted, settled or adjudicated." *Id. See also*

*In re Citadel Indus., Inc.*, 423 A.2d 500, 503 (Del. Ch. 1980) ("statutory authority [was] necessary to prolong the life of a corporation past its date of dissolution"). "[U]nder modern statutes, any suit against the corporation, which was filed before dissolution or during the three year statutory wind-up period, does not abate, even on the expiration of the wind-up period." *Id.* (citing 8 Del. Code § 278).

Section 278 of the Delaware (Corporate) Code mandates that a dissolved corporation automatically continues for a term of three years following the corporation's dissolution. *In re Citadel Indus., Inc.*, 423 A.2d at 506. Specifically, Section 278 states, in relevant part:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities []. With respect to any action, suit or proceeding begun by or against the corporation either *prior to or within 3 years after the date of its expiration or dissolution*, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed [].

8 Del. Code Ann. § 278 (emphasis added). After the expiration of the three-year period, a judgment may be entered against the dissolved corporation for claims "that were brought before that period expired." *See U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 789 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008). Thus, under Section 278, "actions commenced within the three-year period do not abate, and continue indefinitely until their conclusion." *In re Krafft-Murphy Co., Inc.*, 62 A.3d 94, 101 (Del. Ch. 2013) (emphasis added).

8

Tailwind dissolved on December 31, 2007. Tailwind Br. at 5. Accordingly, any actions against Tailwind were required to have "begun" on or before December 31, 2010. 8 Del. Code Ann. § 278. This action began when relator filed his *qui tam* complaint on June 10, 2010, almost seven months *before* the running of the three-year winding-up period permitted by the statute. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Under Section 278, then, Tailwind's existence continues at least until any judgments, orders or decrees in this matter have been executed.

Tailwind's argument that Section 278 does not apply because the complaint was not served within the three-year abatement period is unavailing. Under Delaware corporate law, an action has "begun" for purposes of the three year winding up period when it is filed. In *Int'l Pulp Equip. Co. v. St. Regis Kraft Co.*, a plaintiff filed a complaint within the three-year winding up period but served the summons and complaint upon the corporation's state-appointed trustee. 54 F. Supp. 745, 746 (D. Del. 1944) (*Int'l Pulp Equip. Co. I*). Because Delaware law did not designate the state-appointed trustee as an entity authorized to accept service on behalf of a dissolved corporation, the court granted the corporate defendant's motion to quash and set aside the service of the original summons. *Id.* at 748-749. In that same decision, however, the court further instructed that, under Delaware corporate law, service upon a dissolved corporation would have been proper if the summons and complaint had been served upon the Delaware Secretary of State, even if that service was outside of the three-year time period. *Id.* at 759 (the survival of an action under the statute "is bottomed on the rule that the instant action commenced by the filing of the complaint," not on the service upon the corporation or the Delaware Secretary of State). Heeding the court's direction, the plaintiff obtained a new summons and served the complaint and the new summons upon the Secretary of State of Delaware. *Int'l Pulp Equip. Co.*

9

*v. St. Regis Kraft Co.*, 55 F. Supp. 860 (D. Del. 1944) (*Int'l Pulp Equip. Co. II*). Because the complaint and second summons were served upon the Delaware Secretary of State outside of the three-year winding up period, the corporate defendant moved to quash and set aside the later summons, and further moved to dismiss the action entirely as out of time. *Id.* This time, the court denied the motions, finding that under Section 278 of the Delaware corporate statutes, the filing of the complaint commenced the action for the purpose of determining when the action had begun, and that service of the complaint outside of that time period did not render the complaint untimely, so long as it was filed prior to the expiration of the three year period. *Id.*

Similarly, Tailwind is incorrect in arguing that Section 278 does not apply because Tailwind did not receive notice of the claims against it within three years of its dissolution. Tailwind Br. at 7 (citing *Russell v. Olmedo*, 275 A.2d 249, 250 (Del. 1971). First, as explained above, whether Tailwind may be sued turns on when the action is "begun," or filed. By its terms, the Delaware statute does not require notice and does not take account of when the defendant was served or otherwise learned of the claims against it, leaving such considerations to other legal rules generally applicable to the timing of the service of the complaint. Here, the United States complied with all such rules, and Tailwind does not suggest otherwise.

The Delaware Supreme Court's decision in *Russell v. Olmedo*, 275 A.2d 249 (Del. 1971), does not, as Tailwind suggests, require notice to the defendant within Delaware's three-year abatement period. To the contrary, *Russell* supports the Government's position that an action is deemed to have begun upon the plaintiff's satisfaction of the rules governing the commencement of an action. In *Russell*, the court addressed the impact of a plaintiff's failure to comply with state civil procedure rules on the running of the statute of limitations. Under then-applicable Delaware law, an action was commenced "by the filing with the Prothonotary of a complaint and a praecipe

directing the issuance of the writ specified." *Id.* at 250. Plaintiff filed both a complaint and praecipe prior to the running of the statute of limitations, but included on the face of the praecipe an instruction that the praecipe not be released to the sheriff for service of the writ without further instruction from plaintiff's counsel, which he did not give until after the statute of limitations had run. *Id.*

The Delaware Supreme Court held that the instruction to hold the praecipe meant that the praecipe did not "direct[] the issuance of the writ" and, therefore, failed to comply with Delaware rules regarding the commencement of an action. *Id.* Notably, the court deemed the action "commenced" on November 19, 1968, which was the date that plaintiff filed a new praecipe that complied with Delaware rules, and not on December 3, 1968, which was the date that defendant was served with the complaint. *Id.* Thus, contrary to Tailwind' suggestion, *Russell* does not stand for the proposition that an action is not commenced until the defendant receives notice; rather, it stands for the proposition that an action is commenced when the applicable rules for the commencement of an action have been satisfied. Here, Federal law and procedure, through the FCA and the Federal Rules of Civil Procedure, set forth the applicable rules for commencing an action, and there is no dispute that the relator complied with those rules.

Second, Tailwind is simply wrong in suggesting that it did not have notice of this action. Tailwind's officers were made aware of both the existence of a *qui tam* action against Tailwind and nature of the allegations well before the close of Tailwind's three-year winding up period. On August 23, 2010, counsel for the United States sent a letter to Thomas Weisel, who was Tailwind's founder and had been the Chairman of its Board of Directors upon dissolution, stating

> [A] civil action has been filed by a whistleblower under the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729 et seq., that names you and your company, Tailwind Sports LLC (including its affiliated companies and its predecessors and successors in interest), as defendants.

11

> The complaint relates to certain conduct in connection with the agreement
> by the United States Postal Service (USPS) to sponsor the USPS cycling
> team from 1996 through 2004. Specifically, the complaint alleges that
> Tailwind Sports and others obtained sponsorship money from USPS in
> potential violation of the False Claims Act or common law. The Civil
> Division of the Department of Justice and the local United States
> Attorney's office currently are investigating these allegations in order to
> determine whether it will intervene in the action.

*See* Exhs. 1 and 2. On the same day, the Government sent letters containing virtually identical

language to two former chief executive officers of TS LLC and TS Corp. *See* Exhs. 3 and 4. The

Government also sent a similar letter to Lance Armstrong, who was a member of Tailwind's

board of directors upon dissolution, informing him that he had been named as a defendant in a *qui*

*tam* complaint. Exhs. 1 and 5. On November 23, 2010, the Government sent a letter to Marc

Harris, the attorney for William Stapleton and Barton Knaggs, who were directors and also the

chief executive officer and president of Tailwind, respectively, upon its dissolution. Exhs. 1 and

6. The letter stated that Stapleton's and Knaggs's conduct in connection with the agreement by

the USPS to sponsor the USPS cycling team was being investigated by the Department of Justice

and that a *qui tam* action had been filed. Exh. 6. The letter further stated that DOJ was

investigating whether Stapleton and Knaggs had violated the False Claims Act "by knowingly

submitting claims for payment when the USPS cycling team had been employing prohibited

substances and practices in violation of the sponsorship agreement." *Id.* Thus, Tailwind

indisputably had notice of this action.

Tailwind's other argument – that the Government's complaint does not relate back to

relator's complaint – misses the point. The Government's complaint need not "relate back" for

purposes of Section 278. That is, whenever an "action" has "begun" against the corporation

within three years of its dissolution, the corporation's existence continues for the purpose of

responding to that action under Section 278. The present action unquestionably began when

relator filed his complaint; the date when the Government's complaint in intervention is deemed to have been filed is irrelevant under Section 278.

Tailwind points out that the Government's complaint asserts "new claims," presumably referring to the Government's common law claims, which it argues "defeats the policy of § 278." Tailwind Br. at 7 (citing *Smith-Johnson S.S. Corp. v. United States*, 231 F. Supp. 184, 187 (D. Del. 1964); *In re Citadel Indus., Inc.*, 423 A.2d 500, 507 (Del. Ch. 1980)). But Tailwind overlooks the fact that the Government's common law claims are based on the same conduct as the relator's initial complaint, and that the Government's complaint merely asserts additional legal theories based on that conduct. Tailwind also fails to articulate any policy that would be undermined by these facts. It merely cites to *Smith-Johnson* and *Citadel*, but those cases state only that Section 278 is an "expression of legislative policy normally prohibiting the commencement of an action by or against dissolved corporations more than three years after dissolution." *Smith-Johnson*, 231 F.Supp. at 187; *Citadel Indus., Inc.*, 423 A.2d at 507. As explained above, this action *was* commenced within three years of Tailwind's dissolution. There certainly is no basis in the Delaware statute, policy, or common sense to suggest that, once a corporation's existence has been extended under Section 278, a party cannot assert additional legal theories or add factual detail based on the same core facts set out in the initial complaint. And even if there were such a basis, Tailwind's existence must at least continue for the purpose of adjudicating the Government's FCA claims, which clearly were set forth in the relator's complaint.

Furthermore, even if relation back were necessary, Tailwind is incorrect when it argues that the Government's complaint relates back "only for statute of limitations purposes." Tailwind Br. at 8 (internal quotations and italics omitted). While it is true that the Government's complaint

13

relates back "[f]or statute of limitations purposes" under the FCA, 31 U.S.C. § 3731(c), the Government's complaint relates back for other purposes under Rule 15(c)(1) of the Federal Rules of Civil Procedure.[5] One such purpose is the determination of when an action has been commenced for purposes of Section 278. *Resource Ventures, Inc. v. Resources Management Intern., Inc.*, 42 F.Supp.2d 423, 428 (D. Del. 1999) (holding that action began on date initial complaint was filed under Section 278 where plaintiff's amended complaint satisfied the requirements for relation back under Fed. R. Civ. P. 15(c)(1)(C)). Here, the Government's complaint relates back to relator's complaint for *all purposes* under both Fed. R. Civ. P. 15(c)(1)(A) and (B). As explained above, the Government's claims are based upon the same "conduct, transactions, or occurrences" set forth in the relator's complaint. Thus, the Government's complaint relates back to relator's complaint directly under Rule 15(c)(1)(B), which provides for the relation back of claims "that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The Government's complaint also relates back under Rule 15(c)(1)(A), which provides for relation back when "the law that provides the applicable statute of limitations allows relation back," because the statute of limitations applicable to the FCA, 31 U.S.C. § 3731(c), specifically provides for relation back of the Government's claims to the extent that they "arise out of the conduct, transactions, or occurrences set forth, or attempted to be set forth," in the relator's complaint.

Neither of the cases cited by Tailwind suggests that the relation back rules must be disregarded in determining the date an action is begun under Section 278. In *Smith-Johnson*, the

---

[5] The Government's complaint in intervention is an "amendment" for Rule 15(c) purposes. *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 75 (D.D.C. 2003) (stating that "the government's complaint in intervention is amendment of the relator's complaint" under Rule 15). *See also, United States ex rel. Serrano v. The Oaks Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1141 (C.D. Cal. 2008); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 498 F. Supp. 2d 389, 398 (D. Mass. 2007).

court considered only whether a new counterclaim could be asserted against a dissolved corporation after the abatement period had run. 231 F. Supp. at 186. In concluding that a counterclaim is a separate "action" under Section 278, the court simply did not have occasion to consider the applicability of relation back principles because those principles did not arguably apply. Likewise, in *Marnavi S.p.A. v. Keehan*, the plaintiff did not invoke relation back, as such, but instead argued that its lawsuit was a "continuation" of a prior arbitration proceeding. 900 F. Supp. 2d 377, 389 (D. Del. 2012). Thus, the court did not express any view on the impact of relation back to the question of when an action has commenced for Section 278 purposes.

Both *Smith-Johnson* and *Marnavi S.p.A.* therefore lack a significant element which is present in this case – the existence of applicable rules that require relation back. In other words, each of those cases held that the plaintiff's complaint was not deemed filed within the abatement period, not because the relation back rules do not apply generally to the question of when an action has "begun" under Section 278, but because there was no provision providing for relation back on the facts of the case. Here, as noted, the FCA expressly provides for relation back of the United States' Complaint in Intervention to the relator's initial *qui tam* complaint.

Thus, there is no question that the instant action was commenced within the Delaware winding up period or that Tailwind had notice of the action. Tailwind's motion therefore should be denied.

### 2.  Tailwind Sports Corp. Was Properly Served With the United States' Complaint in Intervention

The United States promptly initiated and effected service of process. Under the Federal Civil Rules, service of process upon a domestic corporation may be made in several ways: (1) by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made;" (2) by delivering a copy

of the summons and complaint to an officer, managing or general agent, or any other agent authorized to accept service of process; or (3) by mailing a copy to the agent if permitted by statute. Fed. R. Civ. P. 4(e)(1) and 4(h)(1).  Because TS Corp. was incorporated in the State of Delaware, Delaware law governs with respect to service in that State. Fed. R. Civ. P. 4(e)(1).

Under Delaware law, if an action is commenced against a dissolved Delaware corporation within three years of its dissolution, and the officers of the corporation are not residents of the State of Delaware, then service of process can be made on Delaware's Secretary of State.  8 Del. Code Ann. §§ 136(c), 321(b); 10 Del. Code Ann §3114.  *See Ross v. Venezuelan-Am. Indep. Oil Producers Assoc.*, 230 F. Supp. 701, 702 (D. Del. 1964); *Int'l Pulp Equip. Co. I*, 54 F. Supp. 745, 749 (D. Del. 1944) ("The Secretary of State's capacity to accept service on behalf of a dissolved corporation is one of the conditions upon which a Delaware corporation pursues its right to do business under a Delaware charter"); *id.* ("The view that the Secretary of State may now be served in the case at bar (even though subsequent to the filing of the complaint more than three years from the date of dissolution have expired) is bottomed on the rule that the instant action commenced by the filing of the complaint").  Here, because TS Corp. was dissolved, the United States properly served the Delaware Secretary of State.  ECF No. 102.

Although service on Tailwind through the Delaware Secretary of State was sufficient, the United States also served three of Tailwind's corporate officers.  On May 25, 2013, the United States served Tailwind through William Stapleton, who, as previously noted, was Tailwind's chief executive officer and a member of its board of directors upon its dissolution.  ECF 60; Exh. 1.  Tailwind was served through Stapleton in Texas, ECF 60, so Texas law governs the validity of service.  Under Texas law, a dissolved corporation may be served through its former officers pursuant to Rule 29 of the Texas Rules of Civil Procedure, which reads:

16

> When no receiver has been appointed for a corporation which has dissolved, suit may be instituted on any claim against said corporation as though the same had not been dissolved, and *service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved*, and judgment may be rendered as though the corporation had not been dissolved.

Tex. R. Civ. P. 29 (emphasis added). *See also W.A. Green Company v. Mitchell C. Cope*, 466 S.W.2d 860, 861 (Tex. Civ. App. 1971) ("Rule 29, Vernon's Texas Rules of Civil Procedure, expressly provides that in a suit against a corporation which has been dissolved service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved."). Thus, service of Tailwind through Stapleton plainly was permissible under Texas law.

On June 16, 2013, the United States also served Tailwind through Thomas Weisel, who, as previously noted, was the chairman of Tailwind's board of directors upon its dissolution. ECF 103; Exh. 1. The Government served Tailwind through Weisel in California, according to the laws of California. Specifically, California Corporate Code § 2011 provides that a dissolved corporation "may be served by delivering a copy [of the complaint and summons] to an officer, director or person having charge of its assets or, if no such person can be found, to any agent upon whom process might be served at the time of dissolution." Cal. Corp. Code §2011(b). As chairman of Tailwind's board of directors, Weisel is subject to service on behalf of Tailwind.

And on May 30, 2013, the United States served Tailwind through Barton Knaggs, who, as previously noted, was Tailwind's president and a member of its board of directors upon its dissolution. ECF 72; Exh. 1. By agreement, the government served Knaggs through his attorney, via electronic mail. ECF 72. Knaggs resides in the state of Texas, and his attorney practices law from an office in the state of California. As demonstrated above, the law of each of Texas and California permits service of dissolved corporations through officers such as Knaggs. Service of

Tailwind through Knaggs is therefore valid regardless of whether it is deemed to have occurred in Texas or California.

Thus, service upon Tailwind was properly effected through multiple avenues: by service through the Delaware Secretary of State, pursuant to the Delaware Corporate Code; and upon three corporate officers of Tailwind, pursuant to the state law where the service occurred. Any of these means of service would have been sufficient by itself. Tailwind's motion to dismiss for insufficient service therefore should be denied.[6]

## III.   THIS LAW SUIT WAS FILED WITHIN THE STATUTE OF LIMITATIONS

As explained in detail in the United States' Opposition to Defendant Lance Armstrong's Motion to Dismiss, the Government's claims are subject to tolling under both 31 U.S.C. § 3731(b)(2) and 28 U.S.C. § 2416(c). U.S. Opp. to Armstrong's Motion to Dismiss at ¶ II, filed September 23, 2013. The United States' arguments set forth in that Opposition apply to Tailwind's argument that the statute of limitation bars the Government's claims against it. Rather than repeat those arguments here, the United States incorporates the relevant portions of its brief as if set forth herein.

## IV.   THE UNITED STATES HAS ADEQUATELY PLED AN FCA CLAIM AGAINST TAILWIND

In their Motion, Tailwind makes a sparse, conclusory and unsupported argument that the United States failed to plead an FCA violation adequately and further failed to allege a conspiracy under the heightened pleading standard of Federal Civil Rule 9(b). Tailwind Br. at 13. The

---

[6] If the Court were nonetheless to determine that some additional means of service on Tailwind Sports Corporation were required, the Government respectfully requests, pursuant to Federal Rule of Civil Procedure 6(b)(1)(A), that the time to serve the defendants be extended by a reasonable period to permit relator and the United States an opportunity to accomplish any such additional service as might be ordered by the Court. The Government's request is timely per the Court's July 2, 2013 Order, ECF 78, in which the plaintiffs' time to move for an extension of the time to serve any defendant in this case was extended to September 23, 2013.

Government's Complaint in Intervention, however, sets forth in exacting and sufficient detail

Defendants' alleged scheme to hide the truth from the U.S. Postal Service officials, their

misrepresentations to the Government, and their ill-gotten gains.

Preliminarily, Tailwind' perfunctory and unsupported argument regarding the sufficiency

of the Government's pleading should be deemed waived because it gives no indication of *why* the

United States' Complaint in Intervention is insufficient.  It is not the obligation of the court "to

research and construct legal arguments open to parties," but rather "a litigant has an obligation 'to

spell out its arguments squarely and distinctly.'" *Raines v. U.S. Department of Justice*, 424 F.

Supp. 2d 60, 66 n. 3 (D.D.C. 2006) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st

Cir. 1988)).  "A litigant does not properly raise an issue by addressing it in a cursory fashion with

only bare-bones arguments." *Cement Kiln Recycling Coalition v. EPA*, 255 F.3d 855, 869 (D.C.

Cir. 2001) (internal quotation marks omitted); *see also Coleman v. Community Trust Bank (In re

Coleman),* 426 F.3d 719, 729 n.8 (4th Cir. 2005) ("In its initial brief, the Bank twice alludes to

this proposition, each time in a single sentence with no argument in favor of the position.

Because the brief contains no argument supporting this claim, we do not consider it").  Because

Tailwind failed to cite to any law, facts or other matters to support their conclusory assertion, this

argument should be deemed waived.

Moreover, Tailwind's Rule 9(b) argument fails on the merits.  The Complaint in

Intervention specifically alleges that the Sponsorship Agreements required the cycling team to

comply with the rules of the governing cycling bodies, that those bodies prohibited the use of

doping, and that Lance Armstrong and the other Tailwind riders violated this prohibition.  ¶¶ 16,

27-31.  Moreover, the complaint alleges that Tailwind made false statements intended to hide the

team's conduct.  As a result of this conduct, the complaint contends that the USPS paid invoices

submitted by Tailwind under the Sponsorship Agreements totaling approximately $40 million. Gov't Compl. at ¶4. Accordingly, the United States' complaint clearly alleges that Tailwind submitted false claims and made false statements in furtherance of those false claims.

The United States' complaint also has properly pled that doping was a material breach of the sponsorship agreements.[7]  Indeed, the sponsorship agreement specifies that both the obligation of the team to comply with the governing cycling bodies' prohibition on doping and the obligation of Tailwind to take action if it learned of any such doping were conditions of default. *Id.* at ¶¶ 17, 30, 66, 69 and 70; Tailwind Br. Exh. 1 ¶ 8. The complaint further specifies  that the anti-doping provisions of both sponsorship agreements were considered by the USPS to be "material" terms of the agreements, and that the USPS would not have paid Tailwind had they known of the team's doping activities. *Id.* at ¶¶ 23, 27, 69 and 73. *See also* Gov't Compl. at ¶ 4 (the riders knowingly caused "material violations of the sponsorship agreements," the team's coach "knew" of and "facilitated" the doping, and the corporate representatives made "false statements, both publicly and directly to the USPS, that were intended to hide the doping so that invoices would be paid").

Furthermore, the United States has specifically alleged that Tailwind, including its director and other employees, "knowingly" failed to comply with the material terms of the 1995 and 2000 sponsorship agreements with the USPS, submitted invoices for payment to the USPS, caused the USPS to pay monies in reliance upon Tailwind' express and implied denials of the prohibited, conduct; and conspired to hide the team's conduct. Gov't Compl. at ¶¶ 4, 5, 27, 31, 32, 36, 65, 66, 69, 70, 75, 78, 81, and 84. For example, the complaint alleges that the team's director, Johan Bruyneel, knew about the team's use of illicit performance enhancing drugs and practices, and

---

[7]  The United States has also addressed the materiality of the Agreements' anti-doping provisions in its Statement of Interest regarding the Motion to Dismiss of Thomas Weisel, filed September 23, 2013.

that he encouraged his riders' doping by providing doping products, informed riders about where they could obtain doping products, and instructed riders regarding when and where they should meet doctors for illicit treatments. *Id.* at ¶¶ 27, 32, 36, 43, 48, 53.

Finally, the United States has properly pled a conspiracy under the FCA. 31 U.S.C.A. § 3729(a)(3). The United States has alleged that Tailwind, through their officers and employees, including Bruyneel and Gorski, (1) conspired with their contract riders on the U.S. cycling team, and other outside contractors, such as physicians and service corporations, to have a false claim paid, Gov't Compl. at ¶¶ 4, 26, 27, 31, 32, 33, 40, 42, 65, 69, 70 and 72; (2) made false statements in furtherance of the conspiracy in order to hide the conduct from the USPS, Gov't Compl. at ¶¶ 62-73; and (3) caused the USPS to pay approximately $40 million. Gov't Compl. at ¶¶ 5, 71 and *generally*.

## CONCLUSION

For all the foregoing reasons, and those additional arguments adopted by reference from the United States' Opposition to Lance Armstrong's Motion to dismiss and the Statement of Interests in Response to Thomas Weisel's Motion to Dismiss Relator's Complaint, the Court should deny Tailwind's motion to dismiss.

Respectfully submitted,


STUART F. DELERY
Assistant Attorney General


RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Assistant United States Attorney


  /s/ Darrell C. Valdez                              .
DARRELL C. VALDEZ, D.C. Bar # 420232
MERCEDEH MOMENI
Assistant United States Attorneys
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202)252-2507 / (202) 252-2515


  /s/ Robert E.Chandler                              .
MICHAEL D. GRANSTON
ROBERT E. CHANDLER
DAVID M. FINKELSTEIN
Attorneys, Department of Justice
Civil Division
Post Office Box 261
Ben Franklin Station
Washington, DC  20044
(202)514-4678


22