IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* FLOYD LANDIS, | ) ) ) ) | No. 1:10-cv-00976-RLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | Oral Argument:  November 18, 2013 |
| TAILWIND SPORTS CORPORATION, *et al.,* | ) ) ) | |
| Defendants. | ) ) | |

**RELATOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT LANCE ARMSTRONG'S
<u>MOTION TO DISMISS THE UNITED STATES' COMPLAINT</u>**

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................1

II. BACKGROUND FACTS......................................................................2

III. ARGUMENT....................................................................................4

    A. Plaintiffs' claims based on conduct in 1998 and later are
       timely because the FCA statute of limitations has been suspended
       by the Wartime Suspension of Limitations Act (WSLA)........................4

        1. The FCA statute of limitations was suspended September 18, 2001........6

           a. Amended WSLA.............................................................7

           b. Pre-amendment WSLA......................................................8

        2. The FCA statute of limitations remained suspended
           at the time relator filed his complaint..........................................8

        3. Plaintiffs' claims are timely under either version of the WSLA.........10

           a. Because the United States was "at war" under the
              pre-amendment WSLA, all of plaintiffs' claims are timely.............10

           b. At a minimum, plaintiffs' claims based on false claims
              violations after September 30, 1998 are timely under
              the post-amendment WSLA..............................................10

        4. The WSLA would apply even if the FCA statute of
           limitations were a "statute of repose."......................................12

IV. CONCLUSION................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S. Ct. 428 (1947)......................................... 13

*Federal Housing Finance Agency v. UBS Americas, Inc.*,
   712 F.3d 136 (2nd Cir. 2013)...................................................................................... 13

*Glus v. Brooklyn E. Dist. Terminal*,
   359 U.S. 231, 232, 79 S. Ct. 760, 762, 3 L. Ed. 2d 770 (1959)..................................... 1

*Hamdi v. Rumsfeld*, 542 U.S. 507, 518, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) ......... 7

*Hughes Aircraft v. U.S. ex rel. Schumer*, 520 U.S. 939, 950, 117 S. Ct. 1871 (1997) ..... 11

*Landgraf v.USI Film Products*, 511 U.S. 244, 280 (1994)................................................ 11

*Lee v. Madigan*, 358 U.S. 228, 231, 79 S. Ct. 276, 3 L. Ed. 2d 260 (1959)....................... 7

*McDonald v. Sun Oil Co.*, 548 F.3d 774 (9th Cir. 2008)................................................... 12

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
   Nos. 12–3295, 12–3298, 2013 WL 4516997 (10th Cir. Aug. 27, 2013) ....................... 12

*Stogner v. California*, 539 U.S. 607, 618, 123 S. Ct. 2446, 2453 (2003)........................... 11

*\*U.S. ex rel. Carter v. Halliburton*, 710 F.3d 171, 178-79 (4th Cir. 2013).............. passim

*U.S. ex rel. McCans v. Armour & Co.*, 146 F. Supp. 546, 551 (D.D.C. 1954)................... 4

*U.S. ex rel. Paulos v. Stryker Corp.*,
   No. 11-0041-CV-W-ODS, 2013 WL 2666346, \*1 (W.D. Mo. June 12, 2013).............. 4

*U.S. ex rel. Paulos v. Stryker Corp.*,
   No. 11-0041-CV-W-ODS, 2013 WL 2666346, at \*1 ..................................................... 4

*U.S. ex rel. Paulos v. Stryker Corp.*,
   No. 11–0041–CV–W–ODS, 2013 WL 2666346, at \*15 ............................................... 6

*U.S. v. Seale*, 542 F.3d 1033 (5th Cir. 2008) .................................................................... 11

*United States v. Anghaie*,
   No. 1:09-CR-37-SPM/AK, 2011 WL 720044 (N.D. Fl. Feb. 21, 2011) ....................... 7

*United States v. Anghaie*,
   No. 1:09–CR–37–SPM/AK, 2011 WL 720044, at \*2 (N.D. Fl. Feb. 21, 2011) .. 5, 6, 11

*\*United States v. Bnp Paribas SA*, 884 F. Supp. 2d 589 (S.D. Tex. 2012) ............. 4,5,6,11

*\*United States v. Grainger*, 346 U.S. 235, 73 S. Ct. 1069 (1953)............................. 4, 5, 9

*United States v. Latimer*, No. CR–11384–R, 2012 WL 1023569, at \*2 (W.D. Okla. Mar.
   27, 2012) ..................................................................................................................... 6, 11

*United States v. Loman*,
   No. CR–12–265–M, 2013 WL 185587, at \*1 (W.D. Okla. May 1, 2013) ................... 11

*U.S. ex rel. McCans v. Armour & Co.*, 146 F. Supp. 546, 551 (D.D.C. 1954)
   *aff'd*, 254 F.2d 90 (D.C. Cir. 1958) (per curiam),
   *cert. denied*, 358 U.S. 834, 79 S. Ct.. 57, 3 L. Ed. 2d 152 (1958)................................ 6

*United States v. Murphy-Cook & Co., Inc.*, 123 F. Supp. 806 (E.D. Pa. 1954).................. 4

*United States v. Pearson*,
   No. 2:09cr43-KS-MTP, 2010 WL 3120038, at \*1 (S.D. Miss. August 4, 2010) ..... 7, 11

*United States v. Pfluger*, 685 F.3d 481 (5th Cir. 2012) ...................................................... 9

*United States v. Prosperi*, 573 F. Supp. 2d 436, 442 (D. Mass. 2008)...................... 4, 7, 8

*United States v. Salvatore*, 140 F. Supp. 470 (E.D. Pa. 1956).......................................... 4

*United States v. Seale*, 570 F.3d 650 (5th Cir. 2009)....................................................... 11

*United States v. Smith*, 342 U.S. 225, 72 S. Ct. 260 (1952) .............................................. 4

*United States v. Strange Bros. Hide Co.,* 123 F. Supp. 177 (N.D. Iowa 1954) .................. 4
*United States v. Temple,* 147 F. Supp. 118 (N.D. Ill. 1956) ................................................ 4
*United States v. Western Titanium, Inc.,*
    No. 08–CR–4229–JLS, 2010 WL 2650224, at *2 (S.D. Cal. 2010) .......................... 5, 7
*Waldburger v. CTS Corp.*, 723 F.3d 434 (4th Cir. 2013) ................................... 12

**Statutes**
18 U.S.C. § 3287 ................................................................................................. 1, 5, 6, 8
28 U.S.C. § 2416(d) ........................................................................................................ 7
31 U.S.C. § 3731(b)(2) ............................................................................................ 1, 3, 12
31 U.S.C. § 3731(c) ....................................................................................................... 2
50 U.S.C. § 1829 ........................................................................................................... 7
*50 U.S.C. 1544 (b)* ....................................................................................................... 5

**Other Authorities**
AUMF at § 2(b)(1) ......................................................................................................... 6
AUMFI at § 3(c)(1) ........................................................................................................ 6
Pub. L. 107-243, 116 Stat. 1498 (2002 ......................................................................... 6

**Rules**
Fed. R. Civ. P. 15 ........................................................................................................... 2

## I.    INTRODUCTION

This False Claims Act ("FCA") case alleges that defendants made false claims for tens of millions of dollars of sponsorship payments from the United States Postal Service while simultaneously engaging in a complex, secret doping scheme to win bicycle races. When the sponsorship was over, defendants continued to deny and hide their misconduct for many years, until relator's actions, including filing this suit, set in motion a chain of events that eventually led to defendant Armstrong finally admitting on national television that he had doped and cheated to win.

Having successfully concealed their fraud for well over a decade, defendants--including Armstrong--now argue that it is too late to sue them, because the United States should have discovered the fraud earlier.  Courts have long barred such "inequitable reliance on statutes of limitations," applying the maxim "no man may take advantage of his own wrong."  *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232, 79 S. Ct. 760, 762, 3 L. Ed. 2d 770 (1959).

Relator joins in the United States' opposition contending that its claims based on FCA violations committed after June 10, 2000 are timely under the Act's tolling provision, 31 U.S.C. § 3731(b)(2).  Relator also opposes Lance Armstrong's motion to dismiss the United States' Complaint on the additional grounds that the Wartime Suspension of Limitations Act, 18 U.S.C. § 3287 ("WSLA"), has suspended the Act's statute of limitations, thus permitting the plaintiffs to pursue FCA claims against defendant Armstrong and the other intervened and non-intervened defendants for the full period of the defendants' admitted fraud back to 1998.  It is well established that the WSLA suspends the False Claims Act's statute of limitations in non-military cases, and the only Circuit court to rule on the issue has held that the WSLA applies equally in intervened and non-intervened *qui tam* cases alike.  *U.S. ex rel. Carter v. Halliburton*, 710 F.3d 171, 178-79 (4th Cir. 2013).

Relator also joins in the United States' opposition to defendant Armstrong's motion to dismiss Count II of the Government's complaint, which alleges false statements, and Count III, which alleges "reverse false claims."  For purposes of judicial economy, relator will not repeat the same arguments here.

## II.    BACKGROUND FACTS

In their respective complaints, the United States and relator allege that defendants violated the False Claims Act by submitting, and conspiring to submit, false claims, false statements, and reverse false claims to get and keep sponsorship payments to the United States Postal Service Pro Cycling Team ("USPS Team" or "the Team"), all the while knowing that the Team was secretly taking illegal drugs and doping to win, in violation of contract terms.  *See generally* Relator's Second Amended Complaint, Docket Entry ("DE") 42 ("SAC"); United States' Complaint, DE 44 ("U.S. Compl.").  Plaintiffs further allege that defendants concealed their fraud from the United States both while it was occurring and for years afterward, extending even beyond the filing of relator's original complaint.  *See, e.g.,* U.S. Compl. ¶¶ 4, 19, 27-61, 62-73; SAC ¶¶ 57-59, 79, 80-120, 121-130.

Relator filed his original complaint on June 10, 2010.  DE 1.  He filed a first amended complaint on December 23, 2010, D.E. 10, and a second amended complaint on February 22, 2013.  DE 42.  After intervening against defendant Armstrong and defendants Johan Bruyneel, Tailwind Sports Corporation and Tailwind Sports, LLC, the United States filed its complaint on April 23, 2013.  DE 44.  For purposes of the statute of limitations, relator's second amended complaint and the United States' complaint relate back to relator's original complaint.  Fed. R. Civ. P. 15; 31 U.S.C. § 3731(c).[1]

---

[1]      Relator joins in the United States' position that its complaint relates back under the applicable statutory provision.  Defendant Armstrong contends that "even with the benefit of the relator's June 10, 2010 filing date, none of the government's claims survive."  Defendant Lance Armstrong's Motion to Dismiss the United States' Complaint ("MTD") at 5 n.3.

Accordingly, the relevant filing date for purposes of the statute of limitations analysis is June 10, 2010.

Plaintiffs allege that, between 1996 and 2004, defendants submitted and were paid for false claims to the U.S. Postal Service totaling more than $41 million.  SAC ¶¶ 24-35 & Exh. 1; U.S. Compl. ¶¶ 5, 71.  False claims totaling more than $32 million were paid after June 10, 2000, *i.e.,* within ten years prior to the filing of relator's complaint.  *See* SAC ¶ 35 (alleging payment under 1995 Sponsorship Agreement of at least $825,000 on or about August 25, 2000); *id.* ¶ 33 & Exh. 1 (alleging payments under 2000 Sponsorship Agreement totaling at least $31,442,262.57 between January 1, 2001 and October 20, 2004); *see also* U.S. Compl. ¶¶ 25-26, 71.  Plaintiffs' FCA claims to recover these amounts are timely under the FCA's tolling provision.  31 U.S.C. § 3731(b)(2).  False claims totaling approximately $40 million were paid between 1998 and 2004.  SAC ¶¶ 24, 26, 27, 33, 35, Ex. 1; U.S. Compl. ¶¶ 25-26, 71.  Plaintiffs' FCA claims to recover these amounts are timely because the FCA's statute of limitations was suspended by the WSLA.[2]

_____

[2]     As explained *infra*, the WSLA provides a basis for the plaintiffs to assert claims relating to conduct prior to 1998, but relator only seeks to assert claims dating back to 1998.  The plaintiffs' complaints include specific allegations of doping by Armstrong in 1998 and later.  *See, e.g.,* U.S. Compl. ¶ 10 (all of Armstrong's competition results after August 1, 1998 disqualified); ¶ 26 ("From 1998 through 2004, the USPS paid Tailwind and its predecessors approximately $40 million;" Armstrong's salary was $17.9 million (not including bonuses) "from 1998 through 2004"); ¶ 27 ("From at least 1998 through 2004, the USPS cycling team routinely engaged in the use of performance-enhancing drugs . . . ."); ¶ 31 ("Armstrong and his fellow USPS team members engaged in doping on a regular and consistent basis throughout the period from 1998 through 2004"); ¶ 35 ("Throughout his tenure on the team, from 1998 through 2004, Armstrong regularly employed prohibited substances and methods"); ¶ 61 (in Oprah interview, Armstrong admitted using banned substances and methods "starting in the mid-1990s"); SAC ¶¶ 87, 110-111, 135.

## III.    ARGUMENT

**A.    Plaintiffs' claims based on conduct in 1998 and later are timely because the FCA statute of limitations has been suspended by the Wartime Suspension of Limitations Act (WSLA).**

Plaintiffs' claims based on FCA violations committed from at least 1998 and later are timely because the running of the FCA statute of limitations has been suspended by the WSLA.  The WSLA was originally enacted in 1942 to extend the time to bring criminal fraud charges relating to offenses against the United States during times of war. It was amended in 1944 to extend its coverage to civil claims, including claims under the False Claims Act.  *See U.S. ex rel. McCans v. Armour & Co.*, 146 F. Supp. 546, 551 (D.D.C. 1954) (stating that 1944 amendment to the WSLA "brought the False Claims Act within its purview" and applying the Act in declined *qui tam* case, but holding claims still barred), *aff'd*, 254 F.2d 90 (D.C. Cir. 1958) (per curiam), *cert. denied*, 358 U.S. 834, 79 S. Ct.. 57, 3 L. Ed. 2d 152 (1958).[3]  The operation of the WSLA is not limited to war-related frauds but has been applied equally to "decidedly unmilitary" cases involving matters such as purchases of wool financed by the Commodity Credit Corporation, Farmers Home Administration services, healthcare fraud, and the "Big Dig" federal highway project in Boston.[4]

---

[3]    *See also U.S. ex rel. Carter v. Halliburton*, 710 F.3d 171, 179 (4th Cir. 2013) (applying WSLA to civil FCA claims in declined *qui tam* case); *U.S. ex rel. Paulos v. Stryker Corp.,* No. 11-0041-CV-W-ODS, 2013 WL 2666346, *1 (W.D. Mo. June 12, 2013) (same); *United States v. Bnp Paribas SA*, 884 F. Supp. 2d 589 (S.D. Tex. 2012) (civil FCA claims); *United States v. Salvatore*, 140 F. Supp. 470 (E.D. Pa. 1956) (holding, in civil FCA case, "[t]here is no doubt the War-Time Suspension of Limitations Act applies in this case"); *United States v. Temple,* 147 F. Supp. 118 (N.D. Ill. 1956); *United States v. Murphy-Cook & Co., Inc.*, 123 F. Supp. 806 (E.D. Pa. 1954); *United States v. Strange Bros. Hide Co.,* 123 F. Supp. 177 (N.D. Iowa 1954).

[4]    *See, e.g.*, *United States v. Grainger*, 346 U.S. 235, 73 S. Ct. 1069 (1953) (WSLA suspended statute of limitations on conspiracy to defraud Commodity Credit Corporation ("CCC") in connection with imaginary or inflated purchases of wool); *United States v. Smith*, 342 U.S. 225, 72 S. Ct. 260 (1952) (false statement in connection with application for Farmers Home Administration services); *U.S. ex rel. Paulos v. Stryker Corp.*, No. 11-0041-CV-W-ODS, 2013 WL 2666346, at *1 (improper marketing of pain pumps in violation of applicable federal healthcare program rules); *United States v. Bnp Paribas*

The WSLA operates to suspend the running of the applicable statute of limitations during times of war, plus an additional period of years, after which the statute of limitations begins to run again. *United States v. Grainger*, 346 U.S. at 246.  Prior to 2008, the WSLA read in relevant part as follows:

> When the United States is at war the running of any statute of limitations applicable to any offense . . . involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, . . . shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress.

18 U.S.C. § 3287 (2006).

Affirming the continued importance of the WSLA in current times, Congress amended the statute on September 30, 2008.[5]  The triggering language now reads: "When the United States is at war *or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544 (b)).* . . ." 18 U.S.C. § 3287 (emphasis added).  The amendment also increased the suspension period from "three years" to "5 years" after the termination of

---

*SA*, 884 F. Supp. 2d 589 (S.D. Tex. 2012) (civil False Claims Act claims involving CCC guarantees); *United States v. Prosperi*, 573 F. Supp. 2d 436, 442 (D. Mass. 2008) (criminal charges involving Boston highway project known as the "Big Dig"); *see also id.* (noting that *Grainger* involved a "decidedly unmilitary" conspiracy to defraud the CCC and holding that "[i]n light of *Grainger*, it makes no difference that the fraud in this case involved a construction project unrelated to the Iraqi or Afghani conflicts").

[5]     Courts have listed the date of the amendment as October 14, 2008. *See, e.g., United States v. Bnp Paribas SA*, 884 F. Supp. 2d 589, 601 (S.D. Tex. 2012); *United States v. Anghaie*, No. 1:09–CR–37–SPM/AK, 2011 WL 720044, at *2 (N.D. Fl. Feb. 21, 2011); *United States v. Western Titanium, Inc.*, No. 08–CR–4229–JLS, 2010 WL 2650224, at *2 (S.D. Cal. 2010).

    However, September 30, 2008 appears to be the correct date. *See* 18 U.S.C. § 3287, Note re: Amendments (2008 amendments initially added by Pub. L. 110-329, div. C, title VIII, § 8117, 122 Stat. 3647, Sept. 30, 2008; identical amendments enacted again by Pub. L. 110-417, § 855, 122 Stat. 4356, October 14, 2008; second enactment repealed effective October 14, 2008 by Pub. L. 111-84, § 1073(c) & (c)(7), 123 Stat. 2190, October 28, 2009).

hostilities "as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress." *Id.*

### 1. The FCA statute of limitations was suspended September 18, 2001.

Under either version of the statute, the FCA statute of limitations was suspended as of September 18, 2001. On that date, Congress passed the Authorization for the Use of Military Force ("AUMF") which was the basis for the use of United States armed forces in Afghanistan. Pub. L. 107-40, 15 Stat. 224 (2001). On October 11, 2002, Congress passed the Authorization for the Use of Military Force against Iraq ("AUMFI"), Pub. L. 107-243, 116 Stat. 1498 (2002). The AUMF and the AUMFI both explicitly state that they are "intended to constitute specific statutory authorization within the meaning of section 5(b) of the War Powers Resolution." AUMF at § 2(b)(1); AUMFI at § 3(c)(1).

### a. Amended WSLA

The amended WSLA is triggered "[w]hen the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution . . . ." 18 U.S.C. § 3287. Accordingly, both the AUMF and the AUMFI clearly trigger a suspension period under that version of the Act, starting on September 18, 2001. *U.S. ex rel. Paulos v. Stryker Corp.,* No. 11–0041–CV–W–ODS, 2013 WL 2666346, at *15; *United States v. Loman,* No. CR–12–265–M, 2013 WL 1855876, at *1 (W.D. Okla. May 1, 2013); *United States v. Bnp Paribas SA,* 884 F. Supp. 2d 589, 607-08 (S.D. Tex. 2012); *United States v. Latimer,* No. CR–11384–R, 2012 WL 1023569, at *2 (W.D. Okla. Mar. 27, 2012); *United States v. Anghaie,* No. 1:09–CR–37–SPM/AK, 2011 WL 720044, at *2 (N.D. Fl. Feb. 21, 2011).

### b. Pre-amendment WSLA

As noted above, the pre-amendment version of the WSLA applies when the United States is "at war" and does not include explicit reference to authorizations of military force under the War Powers Resolution. Although courts are divided as to whether this language requires a formal declaration of war, the majority of courts,

including the only court of appeal to address the issue, have concluded that the authorized use of military force in Afghanistan and Iraq also triggered the earlier version of the statute.  *See U.S. ex rel. Carter v. Halliburton*, 710 F.3d 171, 178-79 (4th Cir. 2013); *United States v. Bnp Paribas SA*, 884 F. Supp. 2d 589, 606-07 (S.D. Tex. 2012); *United States v. Pearson*, No. 2:09cr43-KS-MTP, 2010 WL 3120038, at *1 (S.D. Miss. August 4, 2010); *United States v. Prosperi*, 573 F. Supp. 2d 436, 442 (D. Mass. 2008).[6]

In reaching this conclusion in *United States ex rel. Carter v. Halliburton*, the Fourth Circuit first stated that it could not just assume that the phrase "at war" means a war declared by Congress, noting the Supreme Court's admonition that "Congress in drafting laws may decide that the Nation may be 'at War' for one purpose, and 'at peace' for another."  710 F.3d at 178 (quoting *Lee v. Madigan*, 358 U.S. 228, 231, 79 S. Ct. 276, 3 L. Ed. 2d 260 (1959)).  Looking to the language of the WSLA, the Fourth Circuit noted that "had Congress intended the phrase 'at war' to encompass only declared wars, it could have written the limitation of 'declared war' into the Act as it has in numerous statutes."  *Id.* at 178.[7]

The court next noted that interpreting the phrase "at war" to mean only declared wars "would be an unduly formalistic approach that ignores the realities of today."  *Id.* The United States has not declared war since World War II but has engaged in several "extensive military engagements" since that time, and the Supreme Court "has found that the laws of war apply to non-declared wars, for example the war in Afghanistan."  *Id.* at 178-79 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 518, 124 S. Ct. 2633, 159 L. Ed. 2d 578

---

[6]     *But see United States v. Anghaie*, No. 1:09-CR-37-SPM/AK, 2011 WL 720044 (N.D. Fl. Feb. 21, 2011); *United States v. Western Titanium, Inc.*, 2010 WL 2650224 (S.D. Cal. July 1, 2010).

[7]     *See also id.* (citing 28 U.S.C. § 2416(d) (tolling provision for civil claims by the United States seeking money damages applies only when "the United States is in a state of war declared pursuant to article I, section 8, of the Constitution of the United States."); 50 U.S.C. § 1829 ("Notwithstanding any other provision of law, the President, through the Attorney General, may authorize physical searches without a court order . . . to acquire foreign intelligence information for a period not to exceed 15 calendar days following a declaration of war by the Congress.")).

(2004)).  The court found that such military conflicts "result in situations in which fraud can easily be perpetuated against the United States just as much as a formally declared war."  *Id.* at 179.

Finally, the Fourth Circuit concluded that "[t]he purpose of the WSLA — to combat fraud at times when the United States may not be able to act as quickly because it is engaged in 'war' — would be thwarted were we to find that the United States must be involved in a declared war for the Act to apply."  *Id.*  This Court should likewise give effect to the remedial purpose of the WSLA and find that the United States was "at war" for purposes of the pre-amendment WSLA when Congress passed the AUMF and AUMFI.[8]

### 2.    The FCA statute of limitations remained suspended at the time relator filed his complaint.

Under either version of the WSLA, the FCA's statute of limitations remained suspended through the filing of relator's complaint on June 10, 2010, because the "termination of hostilities" as defined in the statute had not yet occurred as of that date. "The pre-amendment and post-amendment WSLA both specify that termination shall not occur until the Act's formalities have been met."  *Carter*, 710 F.3d at 170.  Under the pre-amendment WSLA, termination occurs when "proclaimed by the President or by a

---

[8]    Notably, the two unpublished district court decisions to the contrary were issued prior to the Fourth Circuit's *Carter* decision.  *See Anghaie* and *Western Titanium*, *supra* note 6.  Moreover, both courts were reacting to the approach taken in *United States v. Prosperi*, 573 F. Supp. 2d 436, 442 (D. Mass. 2008), which at the time was the only court to have considered whether the AUMF and AUMFI triggered the pre-amendment WSLA. In *Prosperi*, the court adopted a four-part "functional test" to determine whether the country was "at war."  The *Western Titanium* court felt that such a test was too uncertain and thus adopted the "bright line" rule that only a declared war was covered.  The *Anghaie* court followed *Western Titanium* without discussion.
     Here, relator is not asking the court to adopt the *Prosperi* four-part test, but merely to hold, consistent with the Fourth Circuit, that the AUMF and AUMFI were sufficient to trigger the pre-amendment WSLA.  Like a declaration of war, an authorization of military force pursuant to section 5(b) of the War Powers Resolution requires action by Congress and is a "bright line" test.

concurrent resolution of Congress." 18 U.S.C. § 3287 (2006).  Similarly, in the current version, termination happens when "proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress." 18 U.S.C. § 3287.

To date, two courts of appeal have considered the issue and found no "termination of hostilities" as defined in the WSLA.  In *United States v. Pfluger*, 685 F.3d 481 (5th Cir. 2012), the Fifth Circuit held that "[s]ince neither Congress nor the president met the formal requirements for terminating the WSLA's suspension of limitations as of May 2004 (nor yet to this date [June 26, 2012]), we hold that § 3287 applies . . . ." *Id.* at 485; *see also Carter*, 710 F.3d at 179 ("Neither Congress nor the President had met the formal requirements of the Act for terminating the period of suspension when the claims at issue were presented for payment [in 2005].").

One district court attempted to create its own test, based on a "functional approach," rather than the presidential proclamation or concurrent resolution required by the statute.  *See Prosperi*, 573 F. Supp. 2d at 454-55 (citing 2001 date of recognition of Hamid Karzai's government in Afghanistan and 2002 date of President George W. Bush's comment aboard the USS Abraham Lincoln re:  conclusion of major combat operations in Iraq).  Both the Fourth and Fifth Circuits subsequently concluded, however, that hostilities continued long past these dates.  *See also Hamdi v. Rumsfeld*, 542 U.S. at 521 (concluding as of 2004 that "[a]ctive combat operations against Taliban fighters apparently are ongoing in Afghanistan").

The Fifth Circuit also specifically rejected the *Prosperi* court's "functional approach," holding that "the plain and unambiguous language of the WSLA mandates formal requirements for the termination clause to be met." *Pfluger*, 685 F.3d at 485.  In support of this conclusion, the Fifth Circuit relied on *United States v. Grainger*, 346 U.S. 235, 73 S. Ct. 1069 (1953), in which the Supreme Court held that World War II hostilities did not terminate until a formal proclamation by President Truman on December 31, 1946, even though there were other possible dates, such as the surrender by Japan, which could be said to have marked the end of that war.  *Id.*

9

> Rather than catalog the many presidential and congressional
> announcements, tributes, and statements about World War II ending with
> the Japanese surrender, or analyze the status of the troops' return to
> civilian life, the Court instead looked at the precise language of the WSLA
> itself and the specific formal requirements mandated by its text.

*Id.*

Based on the foregoing, this Court should also hold that a "termination of hostilities" occurs only when the objective criteria required by the WSLA's plain and unambiguous language have been satisfied, which had not occurred as of the time relator filed his complaint.

### 3.   Plaintiffs' claims are timely under either version of the WSLA.

#### a.   Because the United States was "at war" under the pre-amendment WSLA, all of plaintiffs' claims are timely.

Applying the above analysis to the facts of this case, the WSLA was triggered by the AUMF under either version of the statute.  The United States was "at war" under the pre-amendment statute, and the statute as amended specifically covered authorizations of military force such as the AUMF.  Accordingly, the running of the FCA's statute of limitations was suspended as of the date of the AUMF, September 18, 2001.  Because the earliest false claims described in plaintiffs' complaints occurred in 1996, SAC ¶ 24, even under the FCA's six-year statute of limitations, all of plaintiffs' claims were still timely when the suspension period began on September 18, 2001.[9]  The WSLA suspended the further running of the FCA's statute of limitations as to all claims that had already occurred as of that date, as well as additional false claims occurring after that date.  At the time relator filed his complaint on June 10, 2010, there had not yet been a "termination of hostilities" as defined in the WSLA, and thus the running of the FCA's

---

[9]     As noted *supra*, relator only seeks to pursue claims dating back to 1998, from which point forward there are specific allegations of doping in the pleadings against the defendants.

statute of limitations was still suspended at that time.  Therefore, all of plaintiffs' claims are timely.

      **b.**     **At a minimum, plaintiffs' claims based on false claims violations after September 30, 1998 are timely under the post-amendment WSLA.**

Even if the Court were to find that the United States was not "at war" under the pre-amendment version of the WSLA, plaintiffs' claims relating to actionable conduct after September 30, 1998 would survive under the post-amendment version of the statute. Application of the post-amendment WSLA to plaintiffs' claims would be appropriate, so long as those claims had not previously expired at the time the WSLA was amended.  *See United States v. Loman*, No. CR–12–265–M, 2013 WL 185587, at *1 (W.D. Okla. May 1, 2013); *United States v. Bnp Paribas SA*, 884 F. Supp. 2d 589, 608 (S.D. Tex. 2012); *United States v. Latimer*, No. CR–11384–R, 2012 WL 1023569, at *2 (W.D. Okla. Mar. 27, 2012); *United States v. Anghaie*, No. 1:09–CR–37–SPM/AK, 2011 WL 720044, at *2 (N.D. Fl. Feb. 21, 2011) (applying post-amendment WSLA to criminal wire fraud and money laundering counts "for which the limitations period would have lapsed after the WSLA amendment"); *Armour,* 146 F. Supp. at 550-51 (where July 1, 1944 amendment brought plaintiffs' claims within scope of WSLA, FCA statute of limitations ran until July 1, 1944, but then was suspended pursuant to post-amendment WSLA).  *But see United States v. Pearson*, No. 2:09cr43-KS-MTP (S.D. Miss. August 4, 2010).[10]

---

[10]     The *Pearson* court stated, without further discussion, that "[t]he Court will apply the version of the statute in effect at the time of the actions alleged in the indictment as instructed by *U.S. v. Seale*, 542 F.3d 1033 (5th Cir. 2008), and will not apply the 2008 revisions."  The *Seale* decision had actually been vacated as of the time of the *Pearson* opinion in 2010.  *United States v. Seale*, 570 F.3d 650 (5th Cir. 2009).

     In any event, the *Pearson* court's cursory holding is against the clear weight of authority under the WSLA and is inconsistent with applicable Supreme Court precedent. *See Stogner v. California*, 539 U.S. 607, 618, 123 S. Ct. 2446, 2453 (2003) (noting unanimity of courts that extension of existing limitations periods does not implicate *ex post facto* concerns where the prior limitations periods have not expired); *Hughes Aircraft v. U.S. ex rel. Schumer*, 520 U.S. 939, 950, 117 S. Ct. 1871 (1997) (commenting, in context of a False Claims Act case, that "extending a statute of limitations *after the pre-existing period of limitations has expired* impermissibly revives a moribund cause of

The 2008 amendments to the WSLA were signed into law on September 30, 2008.  For purposes of this motion to dismiss it must be assumed that, as of that date, plaintiffs' FCA claims based on false claims paid after September 30, 1998 (*i.e.,* within ten years) were still timely, because plaintiffs have adequately alleged that section 3731(b)(2)'s tolling provision and ten-year statute of limitations applies.  Thus, the application of the post-amendment WSLA to such claims would not improperly "revive" any claims that had previously expired, and all of plaintiffs' claims based on FCA violations after September 30, 1998 would be timely.

### 4.    The WSLA would apply even if the FCA statute of limitations were a "statute of repose."

Although defendant Armstrong avoids any reference to the WSLA, he does assert that "under no circumstance may the government proceed on a suit filed 'more than 10 years after the date on which the violation is committed,'" MTD at 5, repeatedly refers to section 3731(b)(2) as a "statute of repose," *id.* at 11-12, and asks the Court to dismiss all claims submitted or paid more than ten years prior to suit being filed.  *Id.* at 11-12.

To the extent defendants intend to argue that the WSLA's reference to suspending "the running of any *statute of limitations*" does not include a so-called "statute of repose," courts have repeatedly rejected this exact argument in interpreting federal "extender statutes" similar to the WSLA.  In fact, the very case cited by defendants, *McDonald v. Sun Oil Co.,* 548 F.3d 774 (9th Cir. 2008), provides an example. *See* MTD at 12.  The Ninth Circuit rejected defendants' argument that section 309 of CERCLA, which extends any applicable state "statute of limitations," did not apply because the Oregon statute relied on by defendants was a "statute of repose," not a "statute of limitations."  *Id.* at 779-84; *see also Nat'l Credit Union Admin. Bd. v. Nomura Home*

action") (emphasis added); *Landgraf v.USI Film Products*, 511 U.S. 244, 280 (1994) (application of new statute to events occurring before its enactment does not have an impermissible "retroactive effect" where it does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed").

*Equity Loan, Inc.*, Nos. 12–3295, 12–3298, 2013 WL 4516997 (10th Cir. Aug. 27, 2013) (rejecting repose vs. limitation distinction in context of FIRREA extender statutes); *Waldburger v. CTS Corp.*, 723 F.3d 434 (4th Cir. 2013) (section 309 of CERCLA); *Federal Housing Finance Agency v. UBS Americas, Inc.*, 712 F.3d 136 (2nd Cir. 2013) (federal housing extender statute).

As all of these cases have noted, Congress, the Supreme Court and other federal courts have used the terms "statute of repose" and "statute of limitation" interchangeably, especially as of the time the WSLA was originally enacted. *See, e.g., McDonald v. Sun Oil*, 548 F.3d at 781 & nn.3-4; *UBS Americas*, 712 F.3d at 142-43 (noting that Supreme Court, other courts and Congress use the term "statute of limitation" to refer to statutes of repose). *See also Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S. Ct. 428 (1947) ("That statute, like other statutes of limitation, was a statute of repose."). In addition, in the context of a remedial statute designed to extend the period to file suit--such as the various "extender statutes" or the WSLA--any ambiguity should be resolved in favor of the purpose of the statutes to preserve plaintiffs' ability to file suit. *See, e.g., Nomura Home Equity*, 2013 WL 4516997 at ** 33-34; *McDonald v. Sun Oil*, 548 F.3d at 782-83.

## IV.   CONCLUSION

Based on the foregoing, relator respectfully requests that defendant Armstrong's motion to dismiss be denied.

/

/

/

/

/

/

/

13

Dated:  September 23, 2013

> _____/s/_____
> Paul D. Scott
> pdscott@lopds.com
> California State Bar No. 145975
> Admitted Pro Hac Vice
> _____/s/_____
> Lani Anne Remick
> laremick@lopds.com
> California State Bar No. 189889
> U.S.D.C. No. PA0045
> Jon L. Praed
> U.S.D.C. No. 450764
> D.C. Bar No. 51665
> LAW OFFICES OF PAUL D. SCOTT, P.C.
> Pier 9, Suite 100
> San Francisco, California 94111
> Tel: (415) 981-1212
> Fax: (415) 981-1215
>
> Attorneys for Relator Floyd Landis