IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* FLOYD LANDIS,<br><br>Plaintiffs,<br><br>v.<br><br>TAILWIND SPORTS CORPORATION,<br>*et al.*,<br><br>Defendants. | ) | No. 1:10-cv-00976-RLW<br><br>Oral Argument: November 18, 2013 |

**RELATOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT LANCE ARMSTRONG'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND .................................................................................................... 2

ARGUMENT ........................................................................................................ 3

I. LEGAL STANDARDS APPLICABLE TO MOTION TO DISMISS .............................. 3

II. THE FALSE CLAIMS ACT CONFERS STANDING ON RELATOR. .......................... 4

A. The Supreme Court Held in *Stevens* that a Relator Has Article III Standing. .................... 4

B. Under the rationale of *Stevens*, a relator retains standing after Government intervention. ........................................................................ 5

C. The *Feldman* case relied on by Defendants wrongly characterized the *Holzmann* case in this District. ........................................................................ 8

III. ANSWERING RELATOR'S COMPLAINT WILL NOT CAUSE THE INTERVENED DEFENDANTS UNDUE BURDEN OR UNNECESSARY EXPENSE. .......................... 9

IV. THE POST-FERA VERSION OF THE FCA APPLIES, BUT THE ISSUE IS NOT DISPOSITIVE. ........................................................................ 13

V. CONCLUSION ........................................................................ 14

**TABLE OF AUTHORITIES**

CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ........................................................................................ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ........................................................................ 3

*Daniels v. District of Columbia*, 894 F. Supp. 2d 61 (D.D.C. 2012)............................................ 3

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997). ........................... 4

*Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318 (11th Cir. 2009). ............................................. 13

*In re Pharm. Indus. Average Wholesale Price Litig.*, No. 07-10248-PBS, 2007 WL 4287572 (D. Mass. Dec. 6, 2007). ......................................................................................................... 6

*In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914 (D.D.C. 1994). ......................................................................................................................... 3

**Miller v. Holzmann*, No. 95-1231 (RCL/JMF), 2006 WL 3196433 (D.D.C. Oct. 31, 2006). . 8, 9, 12, 14

**Miller v. Holzmann*, No. 95-1231-RCL, 2007 WL 710132 (D.D.C. Mar. 6, 2007). ............. 9, 11

*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir.1999). .................................................... 9

U.S. *ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905 (9th Cir.1998).......................................... 6

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011). ................ 13

**U.S. ex rel. Carter v. Halliburton*, 710 F.3d 171, 178-79 (4th Cir. 2013)................................... 2

*U.S. ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641 (S.D.N.Y. 2011). .............. 7, 8, 11

*U.S. ex rel. Head v. Kane*, 798 F. Supp. 2d 186 (D.D.C. 2011). .................................................. 4

*U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir.1993). ........................................................ 7

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94 (2d Cir. 2010). ............................... 13

*U.S. ex rel. Klump v. Dynamics Corp.*, No. 1:95CV1016, 1998 U.S. Dist. LEXIS 21930 (S.D. Ohio, Sept. 30, 1998)......................... 10

**U.S. ex rel. Long v. SCS Bus. & Technical Inst, Inc.*, 173 F.3d 870 (D.C. Cir. 1999). ...... 5, 6, 11

*U.S. ex rel. Magee v. Lockheed Martin*, No. 09-0324, 2010 U.S. Dist. LEXIS 23295 (S.D. Miss. Mar. 12, 2010). ................................. 6

**U.S. ex rel. Miller v. Bill Harbert, Int'l*, 608 F.3d 871 (D.C. Cir. 2010). ............................. 8, 11

*U.S. ex rel. Purcell v. MWI*, 254 F. Supp. 2d 69 (D.D.C. 2003)................................................... 8

**TABLE OF AUTHORITIES**

*U.S. ex rel. Raggio v. Jacintoport, LLC*,
No. 10-01908 (BJR), 2013 WL 2462109 (D.D.C. June 7, 2013). ................................ 10, 11, 12

**U.S. ex rel. Roby v. Boeing Co.*, 995 F. Supp. 790 (S.D. Ohio 1998). ...................................... 10

*U.S. ex rel. Sanders, et al. v. Allison Engine Company*, 703 F.3d 930 (6th Cir. 2012)................ 13

*U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262 (5th Cir. 2010). ................................ 13

**U.S. ex rel. Wilkins v. N. Am. Constr.*, 173 F. Supp. 2d 601 (S.D. Tex. 2001)............. 5, 9, 10, 11

*U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818 (7th Cir. 2011). ............................ 13

**Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000). ............................ 4, 5, 7

**STATUTES**

31 U.S.C. § 3729............................................................................................................. 7, 8

31 U.S.C. § 3729(a)(1)(B) .............................................................................................. 17

31 U.S.C. § 3730............................................................................................................. 10

31 U.S.C. § 3730(b) ..................................................................................................... 8, 10

31 U.S.C. § 3730(c)(1)............................................................................................. 8, 10, 12

31 U.S.C. § 3730(c)(2)(A) ............................................................................................ 8, 10

31 U.S.C. § 3730(c)(2)(B) ............................................................................................ 8, 11

31 U.S.C. § 3730(c)(2)(C) ....................................................................................... 4, 12, 13

31 U.S.C. § 3730(c)(2)(D)......................................................................................... passim

31 U.S.C. § 3730(c)(2)(D)(iv) ........................................................................................ 13

31 U.S.C. § 3730(d) .................................................................................................... 10, 18

31 U.S.C. § 3730(e)(4)(A) .............................................................................................. 13

*Wartime Suspension of Limitations Act, 18 U.S.C. § 3287 ("WSLA") .................................... 2

# TABLE OF AUTHORITIES

## RULES

Fed. R. Civ. P. 12(b)(1)........................................................................................ 4, 12, 17

Fed. R. Civ. P. 12(d) .............................................................................................................. 7

Fed. R. Civ. P. 56(d) .............................................................................................................. 7

Fed. R. Civ. P.12(b)(6)........................................................................................... 4, 7, 12, 17

## INTRODUCTION

Defendant Lance Armstrong was a member of the United States Postal Service Pro Cycling Team ("USPS Team" or "the Team"). It is now undisputed that defendant Armstrong doped, cheated and lied to win while riding for the Team. This action alleges, *inter alia*, that defendant Armstrong caused the submission of false claims for tens of millions of dollars in sponsorship payments by the U.S. Postal Service. As detailed below, the United States has intervened in the action against defendant Armstrong and others.

Defendant Armstrong has moved to dismiss relator's Second Amended Complaint ("SAC" or "Complaint") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting "[i]t is hornbook law that the government's intervention in a *qui tam* case strips the relator of standing to pursue his claims." Defendant Lance Armstrong's Motion to Dismiss Relator's Second Amended Complaint ("MTD") at 1.[1] Defendant Armstrong should have consulted a more substantive reference than a "hornbook," though, for the governing authority plainly indicates that a relator does not, in fact, lose his Article III standing upon the government's intervention in his case. Moreover, even after intervention, the relator has a statutory right to "unrestricted participation" in the case except under certain circumstances not present here. 31 U.S.C. §§ 3730(c)(2)(C) and (D).

In support of his position, defendant Armstrong contends that "[t]he claims and facts supporting the [United States' and relator's] complaints are in all material respects identical." MTD at 3. But at least one material difference in the claims being asserted by the two plaintiffs is the period of conduct being pursued under the two complaints. The Department of Justice has elected only to pursue the United States' claims under the False Claims Act, 31 U.S.C. §§ 3729, *et seq*. ("FCA"), back to June 2000, then rely on its common law claims to collect damages for earlier years. The relator, by contrast, seeks to assert FCA claims on behalf of the United States against defendant Armstrong and the other defendants for the full time period during which fraud

---

[1] The Tailwind Defendants and defendant Bruyneel have joined in defendant Armstrong's motion. *See* Tailwind MTD at 4 n. 2; Bruyneel MTD at 1. Those motions are thus also opposed by this response.

has been admitted to have occurred, which includes 1998 and later.[2] The relator seeks to pursue the earlier claims on behalf of the United States based on the Wartime Suspension of Limitations Act, 18 U.S.C. § 3287 ("WSLA"), which suspends the statutes of limitations on Government fraud claims during times of military conflict, such as the conflicts in Afghanistan and Iraq. It is well established that the WSLA suspends the FCA's statute of limitations in non-military matters, and the only Circuit court to rule on the issue has held that the WSLA applies equally in intervened and non-intervened *qui tam* cases. *U.S. ex rel. Carter v. Halliburton*, 710 F.3d 171, 178-79 (4th Cir. 2013).[3]

For these reasons, and given that it would serve the purposes of judicial economy for defendant Armstrong to answer the complaint so as to narrow the issues in dispute, defendant Armstrong and the other intervened defendants should answer the relator's Complaint.

## BACKGROUND

The U.S. Postal Service sponsored the USPS Team between 1996 and 2004. SAC ¶¶ 24-32; United States Complaint ("U.S. Compl.") ¶ 2.[4] Defendant Armstrong rode for the USPS Team between 1998 and 2004. SAC ¶¶ 44, 45, 110, 111; U.S. Compl. ¶ 2, 10. Between 1999 and 2004, Armstrong won the Tour de France six times. SAC ¶ 110. As he has now admitted, it was all a lie. SAC ¶ 225; U.S. Compl. ¶ 61.

In April and May 2010, former USPS cyclist Floyd Landis came forward and disclosed the truth about the USPS Team's doping to officials with the United States Anti-Doping Agency ("USADA"), the Food and Drug Administration, and USA Cycling, as well as to the media. SAC ¶¶ 211-221. On June 10, 2010, relator Landis filed the instant *qui tam* action.[5] Docket

---

[2] In addition, as detailed below, relator's complaint also includes additional factual allegations not included in the United States' complaint.

[3] Relator's arguments relative to the application of the WSLA are set forth in detail in his opposition to Defendant Lance Armstrong's Motion to Dismiss the United States' Complaint and are incorporated herein by reference.

[4] Relator respectfully requests that the Court take judicial notice of the United States' Complaint.

[5] Defendant Armstrong opens his factual summary by stating that Landis filed the instant *qui tam* action "[t]wenty days . . . after publicly admitting to doping." MTD at 1. As noted, Mr.

Entry ("DE") 1. He filed a First Amended Complaint on December 23, 2010, DE 10, and a Second Amended Complaint on February 22, 2013. DE 42.

The SAC names the following parties as defendants: Tailwind Sports Corporation, Tailwind Sports, LLC, Montgomery Sports, Inc., Capital Sports and Entertainment Holdings, Inc., Thomas W. Weisel, Lance Armstrong, Johan Bruyneel, William J. Stapleton, Barton B. Knaggs, and Ross Investments, Inc. (collectively, "Defendants").

The United States filed a Notice of Intervention in this action on February 22, 2013 as to defendants Tailwind Sports Corporation, Tailwind Sports, LLC, Lance Armstrong and Johan Bruyneel (collectively, the "Intervened Defendants"). DE 41. The United States stated in its Notice of Intervention that it "is not intervening at this time with respect to William Stapleton, Barton Knaggs, Capital Sports and Entertainment Holdings, Inc., and Thomas Weisel," and the United States has currently taken no position as to intervention against defendants Montgomery Sports, Inc. and Ross Investments, Inc. (collectively, the "Non-Intervened Defendants"). *Id.* The United States filed its own complaint in the action against the Intervened Defendants on April 23, 2013. DE 44 ("U.S. Compl.").

**ARGUMENT**

## I. LEGAL STANDARDS APPLICABLE TO MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 65 (D.D.C. 2012) (citing *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994)).

---

Landis came forward to relevant authorities in April 2010 and filed suit in June 2010. SAC ¶¶ 211-221.

"In deciding a Rule 12(b)(6) motion, the court may consider any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record." *U.S. ex rel. Head v. Kane*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011) (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).[6]

## II. THE FALSE CLAIMS ACT CONFERS STANDING ON RELATOR.

### A. The Supreme Court Held in *Stevens* that a Relator Has Article III Standing.

Defendant Armstrong argues that "[t]he Supreme Court has held that of his own accord a relator like Landis has no standing to sue on behalf of the government because he has not been injured." But the Supreme Court case on which Armstrong relies -- *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000) -- stands for the exact opposite proposition. It states that in an FCA case, "the United States' injury in fact suffices to confer standing on [the relator]." *Id.* at 774.

The Court relied on several provisions of the False Claims Act in support of its conclusion. For example, the Act states that "[a] person may bring a civil action for a violation of section 3729 *for the person* and for the United States Government." *Id.* at 772 (quoting 31 U.S.C. § 3730(b)) (emphasis added). It also gives the relator "the right to continue as a party to the action" even after the Government has intervened in the case and assumed "primary responsibility" for prosecuting the action. *Id.* (quoting 31 U.S.C. § 3730(c)(1)).

---

6 In an apparent effort to influence the Court's views of Mr. Landis, defendant Armstrong has disregarded these requirements and referenced extrinsic matters not in the pleadings. *See, e.g.*, MTD at 1 ¶ 2. Relator objects to Armstrong's "speaking" motion and respectfully requests that the Court exclude the extrinsic statements from its decision. If the Court were to convert defendants' motion to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), then relator would respectfully request an opportunity for discovery pursuant to Federal Rule of Civil Procedure 56(d).

It is also worth noting that the *qui tam* provisions of the False Claims Act have been based, from the very beginning, on the idea of "setting a rogue to catch a rogue." Cong. Globe, 37th Cong., 3d Sess. 955-956 (1863) (remarks of Senator Howard). Moreover, a deferred prosecution agreement represents an acceptance of responsibility, unlike defendant Armstrong's continued attempts to avoid accountability for his actions.

The FCA provides that the Government may dismiss the action only "if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A); *Stevens*, 529 U.S. at 772. Moreover, if the relator objects to a proposed settlement, the Government may settle the action over those objections only "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B); *Stevens*, 529 U.S. at 772.

Based on a review of the foregoing provisions, the Supreme Court held that "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Stevens,* 529 U.S. at 773. Consistent with *Stevens,* the Court of Appeals for the District of Columbia Circuit has specifically stated that relators retain their standing in a *qui tam* action even after Government intervention. "The relator appears to remain a party whether or not the United States intervenes. In either situation, the relator's rights must be protected under the statute." *U.S. ex rel. Long v. SCS Bus. & Technical Inst, Inc.*, 173 F.3d 870, 885 (D.C. Cir. 1999) (noting that under section 3730(c)(1) "the relator 'shall have the right to continue as a party to the action,' subject to certain limitations, even after the United States intervenes"), *supplemented on a separate issue by,*173 F.3d 890 (D.C. Cir. 1999). "We simply do not see how the government's potential exercise of its power [to intervene] renders the relator any less a party." *Id.*

**B. Under the rationale of *Stevens*, a relator retains standing after Government intervention.**

Although the D.C. Circuit has not considered the precise issue raised by Armstrong's motion, another court, which closely analyzed the question, cited to *Stevens* in rejecting an identical motion. In *United States ex rel. Wilkins v. North American Construction*, 173 F. Supp.2d 601, 645 (S.D. Tex. 2001) (Rosenthal, J.), the court held that "[a]lthough the question of whether a relator's complaint is superseded by the government's complaint was not before the Court [in *Stevens*], nothing in the opinion suggests that the government and defendants can eliminate the relator's participation in the lawsuit except under the circumstances set forth in the

[FCA].” This Court should likewise hold, consistent with *Stevens*, that relator continues to have standing after Government intervention.

Defendant cites other district court cases from outside this Circuit in support of his claim that “[t]he government may strip the relator of standing by intervening in the action.” MTD at 4. But the cases he cites do not provide useful guidance.

The conclusion of the court in the first case -- *In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. 07-10248-PBS, 2007 WL 4287572, at *4 (D. Mass. Dec. 6, 2007) – was not that the relator had lost his standing. The court’s brief decision to dismiss was based on the notion that “‘there is one claim, the government’s.’” *Id.* (quoting *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir.1998)). In this context, the court made the comment that “once the government has intervened, the relator has no separate free-standing FCA cause of action.” *Id.* at *4. The court did not say, however, that government intervention stripped the relator of standing in the FCA part of the case. It was only with regard to the relator’s effort to assert the Government’s common law claims (as part of his “whole-hog” adoption of the government’s complaint) that the court held the relator “lacks standing.” *Id.*

Moreover, even if this Court agreed with *In Re Pharmaceutical Industry’s* observation that “there is one claim” in a *qui tam* case, that would not form a basis in this Circuit for a conclusion that the relator lacks standing after Government intervention, for it is entirely consistent for the relator to have standing in an intervened *qui tam* action along with the United States and for there to be just one action against the defendant. *See U.S. ex rel. Long v. SCS Bus. & Technical Ins., Inc.*, 173 F.3d at 884 (“[W]e do not think the relator's technical status as a ‘real party in interest’ is inconsistent with the conclusion of our sister circuits that the United States is a ‘real party in interest’ as well.”).[7]

---

[7] In *United States ex rel. Magee v. Lockheed Martin*, No. 09-0324, 2010 U.S. Dist. LEXIS 23295 at *8 (S.D. Miss. Mar. 12, 2010), the court repeated the same line from *In re Pharmaceutical Industry* that “relator has no separate free-standing FCA cause of action,” but that case also did not hold that the relator had lost standing.

The one case that directly supports Armstrong's argument is wrongly decided. In *United States ex rel. Feldman v. City of New York,* 808 F. Supp. 2d 641, 649 (S.D.N.Y. 2011), the court dismissed the relator's complaint for lack of standing. After noting that it could "identify no material aspect of the Relator's Amended Complaint not covered by the Government's Amended Complaint," the court concluded that the relator's amended complaint was "superseded in its entirety by the Government's Amended Complaint and therefore dismisse[d] [the relator's] Amended Complaint for want of standing." *Id.* The court went on to add, that "this dismissal in no way diminishes Feldman's continuing statutory rights delineated in § 3730 of the FCA, including, most notably, his entitlement to 15-25% of any monetary award recovered by the Government in this action. *See* 31 U.S.C. § 3730(d)." *Id.*

The *Feldman* decision regarding standing is directly inconsistent with the Supreme Court's holding in *Stevens*.[8] On the one hand, the court held that the relator in an intervened case loses standing; on the other, the court held the relator still retains the statutory rights delineated in § 3730. But the rights the court says the relator retains in § 3730 are the very same rights that formed the basis for the Supreme Court's conclusion in *Stevens* that the FCA creates standing for the relator. *See Stevens,* 529 U.S. at 772 (citing 31 U.S.C. § 3730(b) (FCA permits relator to "bring a civil action for a violation of section 3729 *for the person* and for the United States Government"); § 3730(c)(1) ("right to continue as a party to the action" even after government intervention); § 3730(c)(2)(A) (entitlement to hearing re proposed dismissal by government); § 3730(c)(2)(B) (entitlement to hearing re proposed settlements by government)). The reasoning of *Feldman* is thus logically inconsistent. Moreover, the decision provides no explanation for how the relator is supposed to exercise his statutory rights under the FCA if he has lost his standing in the case and his claims have been dismissed. What precise role he has in the case is simply undefined.

---

[8] The *Feldman* court appears not to have considered *Stevens* when deciding this issue, instead citing *United States ex rel. Kelly v. Boeing Company,* 9 F.3d 743, 748 (9th Cir.1993) for the proposition that relators have standing to pursue *qui tam* actions. *Feldman,* 808 F. Supp. 2d at 648. The court only cites *Stevens* in a separate part of its opinion for the proposition that municipal corporations constitute persons under the Act. *Id.* at 649 n.3.

### C. The *Feldman* case relied on by Defendants wrongly characterized the *Holzmann* case in this District

Another weakness of *Feldman* is that it misconstrues authority from this district. In support of its conclusion, the *Feldman* court cites *Miller v. Holzmann*, No. 95-1231 (RCL/JMF), 2006 WL 3196433, at *3 (D.D.C. Oct. 31, 2006),[9] parenthetically summarizing the holding as follows: "relator's complaint survived as to certain defendants because the Government did not intervene with respect to those defendants." *Feldman*, 808 F. Supp. 2d at 648. Contrary to this characterization, though, the decision in *Holzmann* specifically required the defendant to answer the complaints of both the United States *and* the relator following the United States' intervention in the case.

The issue of whether the intervened defendants should have to answer both the relator's complaint and the government's complaint in *Holzmann* was initially raised with Magistrate Judge Facciola. After referring to the government's complaint in intervention as an amended complaint for purposes of the relation-back doctrine,[10] the Magistrate Judge made the following observation in declining to recommend dismissal of relator's complaint:

> Finally, I do not see what practical difference dismissing relator's complaint makes. Answering the same allegations in both complaints is hardly burdensome; a legal secretary can do that in a few moments. Insofar as the relator's claims and allegations are identical to the government's, they can be met with the same proof.
>
> I appreciate that two defendants . . . complain that they will be whipsawed if they have to confront allegations in relator's complaint that contradict allegations made in the government's complaint. . . . Methinks they doth protest too much. Good trial lawyers live for their opponents' contradicting each other and those differences, if exploited by defendants, will hardly do them any harm.

---

[9] This is the same case later captioned on appeal as *United States ex rel. Miller v. Bill Harbert International*, 608 F.3d 871 (D.C. Cir. 2010).

[10] Other courts in the D.C. Circuit and elsewhere have also referred to the government's complaint in intervention as akin to an amended complaint in the context of a relation back analysis. *See U.S. ex rel. Miller v. Bill Harbert Int'l*, 608 F.3d at 908 (referring to the government's complaint in intervention as "an amendment" of the relator's complaint for purposes of relation back analysis); *U.S. ex rel. Purcell v. MWI*, 254 F. Supp. 2d 69,75 (D.D.C. 2003) (Government's complaint is "an amendment of the relator's complaint").

*Holzmann*, 2006 WL 3196433, at *2.

In reviewing the Magistrate's report, Judge Lamberth commented that "Magistrate Judge Facciola found that the fact that the government's Complaint in Intervention is deemed an amendment of the relator's complaint does not render ineffective the claims brought by the relator." *Miller v. Holzmann*, No. 95-1231-RCL, 2007 WL 710134, at *1 (D.D.C. Mar. 6, 2007). He then added that "[t]his Court is persuaded that Magistrate Judge Facciola's reasoning is sound, and finds no reason to disturb it." *Id.* at *1 n.1. Indeed, the defendants did not even contest the magistrate's decision on that point. *Id.* The *Holzmann* case was thus incorrectly cited in *Feldman* and directly supports relator on this issue and not Armstrong. Though the Government's complaint in intervention is treated as an amended complaint for purposes of the relation back doctrine, that does not relieve intervened defendants of an obligation to answer the relator's complaint.

Based on the foregoing, there is no basis for Armstrong's requested dismissal under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6), for the Court clearly continues to have subject matter jurisdiction over relator's complaint and there is no basis to conclude that the relator's Complaint fails to state a claim.

## III. ANSWERING RELATOR'S COMPLAINT WILL NOT CAUSE THE INTERVENED DEFENDANTS UNDUE BURDEN OR UNNECESSARY EXPENSE.

In addition to having Article III standing in intervened *qui tam* cases, relators are generally entitled to "unrestricted participation" in such cases, *see* 31 U.S.C. §§ 3730(c)(2)(C) and (D), with the understanding that the United States has "primary responsibility for prosecuting the action." 31 U.S.C. § 3730(c)(1).

"The sole method by which a defendant may limit the relator's role [in an intervened case] is provided for in § 3730(c)(2)(D)." *Wilkins*, 173 F. Supp. 2d at 644; *see also Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 n. 7 (11th Cir.1999) ( "The Act makes clear . . . . that with certain exceptions . . . relators have unrestricted participation in the litigation."). Section 3730(c)(2)(D) provides: "Upon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of

harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation." 31 U.S.C. § 3730(c)(2)(D).

Notably, while the FCA provides elsewhere for the dismissal of the relator's complaint under specified circumstances,[11] section 3730(c)(2)(D) provides only that the court may "limit [the relator's] participation." It provides no basis to dismiss the relator's complaint, as defendants request. Moreover, in the immediately preceding section of the False Claims Act, which permits the United States (rather than the defendant) to seek limits on the relator's participation in the case, the types of limitations specifically referenced are limits on "the number of witnesses," "length of the testimony of such witnesses," and limits on "cross-examination of witnesses." 31 U.S.C. § 3730(c)(2)(C)(i)-(iii).[12] These examples illustrate how a relator can properly be limited when circumstances justify it.

Attempts by defendants to constrain relators' participation in FCA cases under section 3730(c)(2)(D) based on claims of burden or expense have generally been limited and unsuccessful. *See e.g., U.S. ex rel. Roby v. Boeing Co.*, 995 F. Supp. 790, 796 (S.D. Ohio 1998) (denying defendant's motion to dismiss the relator and holding that the relator's separate pleadings and separate discovery did not harass or cause delay or burden to defendant); *Wilkins*, 173 F. Supp. 2d at 644 (rejecting motion to dismiss relator's claim in absence of evidence that relator's participation was "for purposes of harassment, or that it would cause defendants an undue burden or unnecessary expense"); *U.S. ex rel. Klump v. Dynamics Corp.*, No. 1:95CV1016, 1998 U.S. Dist. LEXIS 21930, at *3-4 (S.D. Ohio, Sept. 30, 1998) (finding no evidence the relator's participation gave rise to harassment or undue expense for the defendant within the meaning of section 3730(c)(2)(D)).

In United States *ex rel. Raggio v. Jacintoport, LLC*, No. 10-01908 (BJR), 2013 WL 2462109, at *1-2 (D.D.C. June 7, 2013), a court in this district took the unusual step of granting a motion to dismiss or, in the alternative, to strike a relator's complaint under

---

11 *See, e.g.*, 31 U.S.C. § 3730(e)(4)(A).

12 After listing these examples, the section also includes a catchall option of "otherwise limiting the participation by the person in the litigation." 31 U.S.C. § 3730(c)(2)(C)(iv).

section 3730(c)(2)(D).[13] As noted above, in relator's view that section provides no authority for dismissal; it simply allows for practical limits on the relator's participation, under specified circumstances, short of dismissal. Also important here, though, is that the *Raggio* case was fundamentally different on its facts from the present case. In *Raggio*, after the Government intervened in the case, the relator amended his complaint "to conform his claims for relief to the claims for relief set forth in the United States' Complaint in Intervention." *Id.* at *1. The complaints of the United States and the relator were thus "substantively identical." *Id.* "Because of the similarity between the two complaints," the court held that relator's unrestricted participation (*i.e.*, requiring defendants to respond to his complaint) would be an "undue burden or unnecessary expense," then granted the defendant's motion to dismiss or, in the alternative, to strike.[14] *Id.* at *2.

In the instant case, the relator has not "conformed" his complaint to the government's complaint.[15] The two complaints both describe defendants' doping conspiracy, but the relator's complaint, which is sixty-five pages plus an exhibit, contains additional factual allegations relevant to the Intervened Defendants (*i.e.*, Armstrong,[16] Bruyneel[17] and Tailwind[18]) that are not

---

[13] Notably, the decision was not based on a lack of standing. *Raggio*, 2013 WL 2462109, at **1-2.

[14] In reaching its decision, the court cited *Feldman* but not the D.C. Circuit court cases referenced above, *viz*, *U.S. ex rel. Long v. SCS Bus. & Technical Inst, Inc.*,173 F.3d 870, 885 (D.C. Cir. 1999) and *U.S. ex rel. Miller v. Bill Harbert International Construction*, 608 F.3d 871 (D.C. Cir. 2011). The decision also does not reference the decisions in *Miller v. Holzmann*, 95-1231 (RCL), 2007 WL 710132, at *1 (concurring with magistrate's recommendation that intervened defendant should have to answer both complaints) or *Wilkins*, 173 F. Supp.2d 601 (S.D. Tex. 2001) (explaining how *Stevens* consistent with conclusion that relator had standing after intervention).

[15] In fact, the United States' complaint was filed sixty days *after* relator filed his Second Amended Complaint. *See* DE 42 (SAC) & 44 (U.S. Compl.).

[16] *See, e.g.*, SAC at ¶¶ 20-21 (describing Armstrong's ownership in Tailwind); ¶¶ 44-52, 202 (alleging details of Armstrong's rider contract); ¶ 59 (alleging Armstrong was present at USPS event in D.C. in 2001); ¶ 84, 102 (alleging Armstrong's wife was present when Armstrong gave relator testosterone and EPO); ¶ 86-87, 89 (describing 2002 conversations between relator and Armstrong re: doping and admissions of Armstrong re: same); ¶¶ 132-33, 135-36, 150, 196 (describing relationship between Armstrong and defendant Weisel and alleging that Weisel knew about doping, including by Armstrong but failed to take any action); ¶¶ 87 (alleging Armstrong

in the United States' Complaint, which runs twenty-eight pages.[19]  Accordingly, unlike in *Raggio*, it would not be an "unnecessary expense" for the Intervened Defendants to respond to relator's allegations.  Indeed, it would serve the purposes of judicial economy if the Intervened Defendants were to answer the relator's complaint, for their answers could potentially narrow the issues in dispute in the case.  By contrast, if the Intervened Defendants are not required to answer the relator's Complaint, that would just make it necessary for the plaintiffs to promulgate discovery to determine the positions of the Intervened Defendants regarding the additional allegations of fact in the SAC.

Also relevant with regard to the topic of judicial economy is the fact that this case, like *Holzmann* (and unlike *Raggio*), involves both intervened and non-intervened defendants.  Accordingly, assuming for purposes of discussion that the Non-Intervened Defendants are

---

admitted participating in paying off UCI's Hein Verbruggen to cover up positive drug test); ¶¶ 97-98 (alleging which other riders were present along with Armstrong during doping prior to 2003 Tour de France); ¶ 109 (describing Armstrong and entire team receiving transfusions in bus during 2004 Tour de France); ¶ 110 (describing additional doping by Armstrong observed by relator); ¶ 120 (alleging conversation in 2006 in which Armstrong told relator to deny doping).

[17]   *See, e.g.,* SAC at ¶¶ 13, 20-21 (describing transactions by which Bruyneel became an owner of defendant Tailwind); ¶ 81 (describing 2001 conversation between relator and Bruyneel re: doping); ¶ 87 (alleging that Bruyneel participated in pay off of UCI's Verbruggen to cover up a positive drug test by Armstrong in 2001); ¶ 103 (alleging conversation between relator and Bruyneel in 2003 re use of HGH); ¶¶ 107-08 (describing role of Bruyneel and his assistant in doping prior to the 2004 Tour de France); ¶¶ 113-17 (alleging conversation between relator and Bruyneel in which Bruyneel acknowledged that bicycles provided by sponsors were being sold to buy drugs).

[18]   *See, e.g.,* SAC at ¶¶ 6-15, 18-21 (alleging facts re: corporate history of Tailwind entities and ownership interest of other defendants in Tailwind); ¶¶ 42-52, 152 (describing rider contracts with Tailwind, including Armstrong's contract); ¶¶ 53-59 (allegations re conduct of Tailwind and other defendants in Washington, D.C.); ¶¶ 155-195 & 229-238 (allegations re defendant Weisel's personal use of Tailwind assets, the undercapitalization of Tailwind, Tailwind Board members' financial ties to Weisel, and disregard of corporate entities).

[19]   Indeed, in his separate motion to dismiss the United States' complaint on statute of limitations grounds, defendant Armstrong cites to the specific payment dates of false claims which are listed by date and amount in relator's complaint, but not in the United States' complaint.  *See* Armstrong MTD United States' Complaint at 12 n.10.  Thus, Armstrong himself seeks to rely on relator's allegations, while simultaneously arguing that he should not be required to answer those allegations.

ordered to answer relator's complaint, then that would provide another reason to have the Intervened Defendants also answer the relator's complaint, for doing so would help to identify disputed issues by making clear whether there were disagreements between the different defendants -- intervened and non-intervened -- as to the specific factual allegations in the relator's complaint. This consideration is especially valid in this case, for the Intervened and Non-Intervened Defendants are alleged to have participated in the same conspiracy to submit false claims, and discovery will thus proceed against all defendants regarding the facts of the conspiracy without regard to their intervention status.

## IV. THE POST-FERA VERSION OF THE FCA APPLIES, BUT THE ISSUE IS NOT DISPOSITIVE.

Defendant Armstrong argues that the differences between the counts included in the relator's and government's complaints are not relevant, based on the argument that "only the pre-FERA statute is operative." MTD at 6. As noted above, however, the differences in the relator's and the government's claims are not limited to which version of the FCA is cited. Relator also seeks to rely on the WSLA to pursue FCA claims on behalf of the United States against defendant Armstrong and the other defendants for 1998 through June 2000, whereas the Department of Justice has elected to only pursue FCA claims back to June 2000 and can rely on its common law claims for the earlier period. Moreover, relator's complaint includes numerous factual allegations not present in the United States' complaint. Accordingly, while relator strongly disagrees with Armstrong's contention that FERA does not apply to this case,[20] the

---

[20] In his motion to dismiss relator's Second Amended Complaint, Armstrong specifically cites authority concerning the new "false statements" language added by FERA to the False Claims Act at 31 U.S.C. § 3729(a)(1)(B). *See* MTD at 6. The majority of circuit courts to have considered this issue, however, have held that the new FCA provision applies to cases (and not claims for payment) filed on or after June 7, 2008. *See U.S. ex rel. Sanders, et al. v. Allison Engine Company*, 703 F.3d 930 (6th Cir. 2012); *U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 n.2 (7th Cir. 2011); *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *rev'd and remanded on other grounds*, 131 S. Ct. 1885 (2011); *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 n.1 (5th Cir. 2010); *but see Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 n.3 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 3465 (2010); *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1051 n.1 (9th Cir. 2011).

point is not critical here, for relator's legitimate interests in pursuing FCA claims for the full period of admitted fraud back to 1998 and in also efficiently developing the facts and narrowing the issues in dispute are both sufficient and eminently reasonable grounds for requiring defendant Armstrong and the other Intervened Defendants to answer his complaint.

In sum, there is thus no basis to conclude under section 3730(c)(2)(D) that relator's participation is "for purposes of harassment or would cause the defendant undue burden or expense." *See Holzmann*, 2006 WL 3196433, at *2 (intervened defendants answering complaints of both government and relator described as "hardly burdensome").[21]

## V. CONCLUSION

For the above reasons, the Court should deny defendant Armstrong's motion to dismiss. There is no basis under Rule 12(b)(1) to dismiss the Second Amended Complaint for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim.

Even if the Court were to conclude that the relator and Government were pursuing identical claims, and that answering both the relator's and the Government's complaints would somehow be an "undue burden" on the Intervened Defendants and their phalanx of counsel, that would still not justify dismissal of relator's complaint against the Intervened Defendants. In such circumstances, which relator believes do not exist here, it would be sufficient simply to hold that the Government's complaint supersedes the relator's Second Amended Complaint as to the allegations against the Intervened Defendants and that those defendants therefore are not required to answer the relator's complaint. This would at least leave in place the pleading which forms the basis for relator's standing and the predicate for his own claims in the case. *See* 31 U.S.C. § 3730(d). But defendant Armstrong has not sought this relief. Accordingly, under all

---

[21] In a closing footnote Armstrong states, "[t]o the extent the Court determines that the relator's pleading of pre-and post-FERA claims renders the relator's claims non-duplicative, Armstrong respectfully requests that the Court dismiss the relator's post-FERA claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Lance Armstrong's Mot. to Dismiss the United States' Compl. Part III.B." Relator would respectfully refer the Court to his response to Defendant Thomas W. Weisel and Ross Investment, Inc.'s Motion to Dismiss Relator's Second Amended Complaint for his arguments regarding the validity of his post-FERA claims. Relator also joins in the United States opposition to these arguments.

circumstances, relator respectfully requests that the Intervened Defendants simply be ordered to answer the Second Amended Complaint.

Dated: September 23, 2013

Respectfully submitted,

____________/s/_______________
Paul D. Scott
pdscott@lopds.com
California State Bar No. 145975
Admitted *Pro Hac Vice*
____________/s/_______________
Lani Anne Remick
laremick@lopds.com
California State Bar No. 189889
USDC D.C. Bar No. PA0045
Jon L. Praed
USDC #450764
DC Bar #51665
LAW OFFICES OF PAUL D. SCOTT, P.C.
Pier 9, Suite 100
San Francisco, California 94111
Tel: (415) 981-1212
Fax: (415) 981-1215

Attorneys for Relator Floyd Landis