# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES *ex rel.* LANDIS, <br><br>      Plaintiffs, <br><br>v. <br><br>TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL, <br><br>      Defendants. | Civil Action No. 10-00976 (RLW) <br><br>ECF |

## REPLY IN SUPPORT OF LANCE ARMSTRONG'S MOTION TO DISMISS THE UNITED STATES' COMPLAINT

## I. INTRODUCTION

The government's opposition to Lance Armstrong's motion to dismiss is notable for its concessions. As Armstrong's motion explained, the government's prayer for treble damages based on claims paid prior to June 10, 2000 is barred by the False Claims Act's ten-year statute of repose. 31 U.S.C. § 3731(b)(2). Unable to overcome the statute of repose, the government concedes that it may not "recover[] for any claims prior to June 10, 2000." In other words, faced with Armstrong's motion, the government has abandoned its allegation that it is entitled to over $28 million in treble damages under the False Claims Act.

In light of this concession, the government now proceeds under the False Claims Act based on claims paid between June 10, 2000 and June 1, 2004. However, the government does not dispute that all of those claims are barred on their face by the statute of limitations. So the government pins the survival of its claims on tolling. But another government concession makes tolling impossible. Having failed to plead fraudulent concealment, the government concedes that it cannot rely on that doctrine to toll the statute of limitations. Therefore, the government's tolling argument is governed by the "discovery-due diligence" standard. *See, e.g., United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 170 (D.D.C. 2007). In a futile attempt to evade the limitations periods, the government protests time and again that its attorneys in the Department of Justice did not have "actual knowledge" that the U.S. Postal Service team was doping. That argument is a straw man. The "discovery-due diligence" standard does not require actual knowledge of doping. Instead, the government bears the burden to plead that "within the statutory period, [it made] a diligent inquiry into the facts and circumstances that would support [its] claim, so as to determine whether and whom to sue." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1, 8 (D.D.C. 2007) (internal quotation marks and citation omitted). But the government has failed to allege that it engaged in any investigation at all during the limitations period, although it acknowledges that it knew about the doping

1

allegations for more than a decade. Having sat on its rights for years—neither investigating the allegations it was aware of nor filing suit—the government has no claims left to pursue.

Furthermore, the government's false statement and reverse false claim counts are defective. The false statements count fails because—as the district courts in the District of Columbia Circuit have unanimously held—the government has pleaded it under an inoperative statute. *See United States ex rel. Barko v. Halliburton Co.*, No. 05-1276, 2013 U.S. Dist. LEXIS 94389, *23 n.94 (D.D.C. July 8, 2013) (collecting authorities). The reverse false statement count fails because the government is unable to plead that any of the defendants owed the government a non-contingent obligation to pay money. *See Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38, 43 (D.D.C. 2006). Lance Armstrong therefore respectfully requests that the Court dismiss the government's complaint in its entirety.

## II. ANALYSIS

### A. All of the government's claims are barred by the statutes of limitations.

*1. The government has conceded that the False Claim Act's statute of repose bars all claims prior to June 10, 2000.*

The government pleaded False Claim Act counts dating to 1995. *See, e.g.*, United States' Compl. ¶¶ 15-18, 26, 70-72, 75-82. However, unable to overcome the absolute bar imposed by the Act's ten-year statute of repose, the government has abandoned all FCA "claims prior to June 10, 2000."[1] United States' Opp. to Armstrong's Mot. to Dismiss at 10, ECF No. 114 ("United States Opp."). Because the government alleged those claims in its complaint, Armstrong respectfully requests that the Court dismiss with prejudice the FCA claims prior to June 10, 2000.

---

[1] Without citing any authority, the government argues that the limitations period for reverse false claims does not begin to toll when the underlying claim is submitted. That is not the law. The statute of limitations begins running when the defendant "present[s] an allegedly false claim to the [government]." *United States v. Van Oosterhout*, 96 F.3d 1491, 1493-1494 (D.C. Cir. 1996).

2

### 2. *The government cannot toll the statute of limitations on its remaining claims because it had notice that the U.S. Postal Team was doping but failed to investigate.*

The government does not contest that all the FCA claims it has pleaded fall beyond the reach of the Act's six-year statute of limitations.[2] *Iweala v. Operational Techs. Servs.*, 634 F. Supp. 2d 73, 80 (D.D.C. 2009) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)). Therefore, the only remaining dispute regarding Armstrong's motion to dismiss claims as time-barred is whether the government is entitled to tolling.

But another government concession makes tolling impossible. Having failed to plead it, the government concedes that is "not invoking the common law doctrine of fraudulent concealment." United States Opp. at 11 n.6. Where the parties agree that fraudulent concealment is not at issue, the "discovery-due diligence" standard governs tolling. *See, e.g., Purcell*, 520 F. Supp. 2d at 170; *Miller*, 505 F. Supp. 2d at 7. "Under the 'discovery-due diligence' standard, the running of the statute of limitations does not begin at the point the plaintiff has sufficient information to prevail at trial, or even when a plaintiff is aware that the conduct at issue is actionable under the law." *Purcell*, 520 F. Supp. 2d at 170. Instead, the "limitations period begins to run under the 'should have known' standard at the point in time that the government official charged with bringing the civil action 'discovers, or by reasonable diligence could have discovered, the basis of the lawsuit.'" *Miller*, 505 F. Supp. 2d at 7. "[A] plaintiff may not wait passively until evidence of actual injury surfaces." *Id.* at 8 (citation omitted). "Rather, a plaintiff must, within the statutory period, make a diligent inquiry into the facts and circumstances that would support that claim, so as to determine whether and whom to sue." *Id.* (citation omitted). When fraudulent concealment is not at issue, the plaintiff bears the

---

[2] The government likewise concedes that all of its unjust enrichment and fraud claims fall outside of their respective six- and three-year statutes of limitations. *See* 28 U.S.C. §§ 2415(a)-(b).

3

782542.01

burden to plead that it exercised due diligence. *See, e.g.*, *Smith v. United States*, 518 F. Supp. 2d 139, 156 & n.11 (D.D.C. 2007). Under the "discovery-due diligence" standard, "a plaintiff's failure to exercise due diligence in discovering the material facts underlying the cause of action is fatal to those claims." *Miller*, 505 F. Supp. 2d at 8.

The government's complaint cannot survive the "discovery-due diligence" standard.[3] The complaint pleads that the government had actual knowledge that "French authorities had begun an investigation into allegations that Armstrong and the USPS cycling team used banned substances in winning the 2000 Tour de France." United States' Compl. ¶¶ 19, 63, ECF No. 44. Not only did the government possess actual knowledge of the allegations, it "was concerned about them." United States' Compl. ¶ 19.[4] But the government nowhere alleges that any of its departments or agencies opened an investigation within the limitations period, or, indeed, took any of the steps that courts have routinely required to establish "due diligence." The government has failed its burden to show that it exercised due diligence.

The government was on notice of doping by its cycling team but failed to conduct any investigation. So the government seeks to blame its apathy on defendants' alleged denials. But the government failed to plead fraudulent concealment—and has now affirmatively repudiated

---

[3] Nor does the government's complaint survive the tolling standard applicable when fraudulent concealment is at issue. *See* Mot. at 9, ECF No. 93.

[4] The government argues that Armstrong's motion to dismiss cannot prevail because it depends on "contested questions of fact." United States Opp. at 8. The motion depends on nothing of the sort. Armstrong's motion depends solely on the allegations in the government's complaint, which are sufficient to show the government's notice. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) (holding that a complaint may be dismissed on statute of limitations grounds "when the facts that give rise to the defense are clear from the face of the complaint."); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 51 (D.D.C. 2008) (same). Seeking cover from its own allegations, the government tries to manufacture a fact dispute by inventing allegations that appear nowhere in its complaint and seeking judicial notice of an unpleaded newspaper article. United States Opp. at 11 n. 7 & 12 n.8. The government's attempt to "supplement" its complaint directly contradicts binding precedent of this Circuit. "[F]actual allegations in briefs or memoranda of law . . . may ***never be considered when deciding a 12(b)(6) motion.***" *Henthorn v. Department of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (emphasis added). Moreover, a plaintiff cannot add allegations to his complaint by submitting documents and seeking judicial notice. *See Hurley v. Life Ins. Co. of N. Am.*, 2005 U.S. Dist. LEXIS 43038, *8 n.3 (D.D.C. July 7, 2005).

4

any reliance on the doctrine. The government therefore cannot rely on defendants' denials as justification for its inaction.[5] And having admitted that it had actual knowledge of the French investigation and was "concerned" about the significance of these allegations, the government has likewise failed to allege or even to suggest facts that would meet its obligation to demonstrate "due diligence."

*United States v. Tech Refrigeration*—a decision of the Northern District of Illinois that has repeatedly been distinguished by courts in the District of Columbia Circuit[6]—does not support the government's argument that it lacked notice of doping. *See* United States Opp. at 16 (citing 143 F. Supp. 2d 1006, 1010 (N.D. Ill. 2001)). Contrary to the government's repeated protestations, *Tech Refrigeration* correctly recognized that "[i]f the complaint allege[s] facts demonstrating that the tolling provision [of the FCA] does not apply, the government would have pleaded itself out of court, requiring dismissal of the complaint." *Id.* at 1007. But in *Tech Refrigeration*, the complaint ***contained no allegations suggesting that the government had notice of the alleged fraud***. *Id.* In an attempt to overcome the allegations in the complaint, the defendants sought to have the court consider documents purporting to show the government's notice of the alleged fraud. *Id.* at 1008. But the court declined to do so. *Id.*

---

[5] While repudiating any reliance on fraudulent concealment, the government argues that "the heightened knowledge standard" "applicable to the fraudulent concealment doctrine" applies. United States Opp. at 13 n.10. The government cannot have its cake and eat it too. If the government seeks to rely on defendants' alleged fraudulent concealment to toll the statute of limitations, the government must plead with particularity its due diligence pursuant to Rule 9(b). *See Pena v. A. Anderson Scott Mortg. Group, Inc.*, 692 F. Supp. 2d 102, 109 (D.D.C. 2010); *United States SEC v. Brown*, 740 F. Supp. 2d 148, 158 (D.D.C. 2010); *Bender v. Rocky Mountain Drilling Assoc.'s*, 648 F. Supp. 330, 335 (D.D.C. 1986). If it does not wish to rely on allegations that defendants' concealed their conduct, then it bears the burden to allege that "within the statutory period, [the government] 'ma[d]e a diligent inquiry into the facts and circumstances that would support that claim', so as to determine whether and whom to sue." *Miller*, 505 F. Supp. 2d at 8 (citation omitted). The government has done neither so its complaint must be dismissed in its entirety. *See* Armstrong's Mot. to Dismiss the United States' Compl. Part III.A2.

[6] *See, e.g., United States v. Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d 1, 12 (D.D.C. 2002).

5

782542.01

In dicta, the court explained that even if it had considered the extraneous documents, they were insufficient to defeat the complaint because the documents failed to provide any information about what the government actually knew. *Id.* at 1010. The primary document submitted—a subpoena from the Inspector General—did not reveal anything about the government's knowledge. *Id.* Because defendants failed to submit any of the documents produced in response to the subpoena, the court had no basis to conclude that the government's subpoena led it to uncover any allegations of fraud. *Id.* Nor did the court have before it evidence about why the government chose to issue the subpoena. *Id.* at 1008.

Here, unlike *Tech Refrigeration*, there is no need to resort to documents outside the government's complaint to determine what the U.S. Postal Service knew. The government has instead "pleaded itself out of court" by alleging that it had actual knowledge of and was "concerned" about allegations that the U.S. Postal Service Team was doping. Therefore, *Tech Refrigeration*'s dicta is irrelevant.

    3.  *The Postal Service's knowledge is imputed to the Department of Justice.*

Having pleaded that the Postal Service knew that French authorities were investigating doping on its cycling team, the Department of Justice is now desperate to distance itself from its own allegations (and its own client). To do so, the government makes two entirely unsupported legal arguments. First, the government argues that the statute of limitations was tolled because "the Department of Justice ("DOJ") was [un]aware of the investigation" by French authorities. United States Opp. at 17. Given that neither the False Claims Act nor the government's own cases require Department of Justice attorneys to have actual knowledge, the government quickly capitulates. *Id.* at 18 (admitting that "[a]ctual knowledge by a Department of Justice official is not necessary to begin the running of the statute of limitations."); *see also* 31 U.S.C. § 3731(b)(2) (providing that the government is not entitled to tolling when "facts material to the right of action . . . reasonably should have been known by the official of the United States

charged with responsibility to act in the circumstances); *Tech Refrigeration*, 143 F. Supp. 2d at 1010 (ruling that government agency knowledge may be imputed to the Department of Justice).

The government also concedes that an agency's knowledge may be imputed to the Department of Justice to cut off tolling. United States Opp. at 18. But without any authority, the government simply posits that imputation can only occur where the federal agency has "actual knowledge of the underlying fraud." *Id.* at 19. That limitation is not found in any of the cases cited by the government or any other party. So the government argues that its proposed limit on the imputation doctrine may instead be inferred from *United States v. Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y. 1992), and *United States v. Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d 1, 12 (D.D.C. 2002).

Not only is the government's proposed limitation not found in those cases, their reasoning is flatly inconsistent with the government's argument. Neither *Intrados* nor *Island Park* applied an actual knowledge standard to the relevant government agency as a prerequisite to imputation. Instead, both cases held the government agencies to the notice standard that governs when fraudulent concealment is at issue. *See Island Park*, 791 F. Supp. at 370 ("[T]he government here must establish that it was ignorant of its causes of action until June of 1989."); *Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d at 11 ("[T]he plaintiff did not exercise due diligence in uncovering the fraud and the complaint's facts do not reveal otherwise."). The courts imputed the agencies' knowledge to the Department of Justice not because the level of knowledge satisfied some higher standard, but simply because the Department of Justice was the attorney for those agencies. As *Island Park* explained, the knowledge of an agency is properly imputed to the Department of Justice because it is "the 'litigator' for the rest of the government." 791 F. Supp. at 363-364.

Regardless, even if the government's concocted standard were to apply, there is simply no dispute that—as the complaint itself avers—the Postal Service had actual knowledge of and was concerned about the French investigation into doping by the U.S. Postal Team. Even under

7

the government's own standard then, the Postal Service's actual knowledge would be properly imputed to its attorneys at the Department of Justice.

The law provides that if the government actually cared to seek any damages arising out of doping by its cycling team, it had to at least investigate those allegations in a timely manner. Having failed to do so for more than a decade after becoming "concerned" about the allegations, the government's complaint must be dismissed.

**B.     The District Courts of the District of Columbia circuit have unanimously rejected the government's argument that the 2009 amendments to the false claim clause apply to lawsuits filed on or after June 7, 2008.**

The Fraud Enforcement and Recovery Act of 2009 ("FERA") explicitly provides that its amendments to the false statement clause do not apply to "claims" pending before June 7, 2008. Pub. L. No. 111-21, 123 Stat. 1617, 1625, § 4(f). The government does not contest that the last of its alleged false claims was paid on payments on June 1, 2004. *See Iweala*, 634 F. Supp. 2d at 80. Therefore, Count II of the government's complaint—which only pleads a false statements claim under the Act as amended by FERA—must be dismissed.

Every court in the District of Columbia Circuit to have considered the issue has concluded that "claims" means just what it says: namely, "claims for payment." *See United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 49 (D.D.C. 2011); *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 195 n.10 (D.D.C. 2011); *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55 (D.D.C. 2010); *United States v. Sci. Applications Int'l Corp.*, 653 F. Supp. 2d 87, 106-107 (D.D.C. 2009), *vacated in part on other grounds by* 626 F.3d 1257, 1280 (D.C. Cir. 2010). The government urges this court to create an intra-circuit split and hold that "claims" means something entirely different: "cases." As support, the government marshals the Sixth Circuit's decision in *Sanders v. Allison Engine*. However, the District Court for the District of Columbia Circuit has not followed *Sanders*, but has instead continued to adhere to its own prior precedent even after *Sanders*. *See Barko*, 2013 U.S. Dist. LEXIS 94389, *23 & n.94.

8

Moreover, this Court cannot follow the Sixth Circuit without contravening Supreme Court precedent. As explained in the Motion to Dismiss, the plain language of FERA provides that the amendments to the false statements clause only apply to "claims under the False Claims Act (31 U.S.C. 3729 *et seq.*) that are pending on or after" June 7, 2008. 123 Stat. at 1625, § 4(f). The government argues that construing "claims" to means "claims" renders the phrase "under the False Claims Act" nugatory. Not only is that phrase not rendered nugatory, it confirms that "claims" means "claims." The phrase "claims under the False Claims Act" simply refers to the explicit definition of claims in the False Claims Act, which—unsurprisingly—defines claims as "any request of demand . . . for money or property." 31 U.S.C. § 3729(b)(2)(A). "Statutory definitions control the meaning of statutory words, of course." *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949). The government has given no reason to disregard the express language of the statute.[7]

Moreover, the Supreme Court has repeatedly held that when Congress uses different words in adjoining sections of a statute, Congress intended the words to have different meanings. *See, e.g., Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 62-63 (2006). It is hard to imagine a clearer application of that principle than the FERA retroactivity provision. FERA provides in two adjoining sub-sections that the false statements clause amendments only apply to "*claims* . . . pending on or after" June 7, 2008, whereas the amendments relating to intervention, civil investigative demands, and jurisdiction apply to "*cases* pending on" May 20, 2009:

> Effective Date and Application.—The amendments made by this section shall take effect on the date of enactment of this Act and shall apply to conduct on or after the date of enactment, except that—

---

[7] From there, the government's arguments about the meaning of "claims" get increasingly far-fetched. The government argues that the False Claims Act's own definition of claims cannot control because the definition is qualified by the phrase "[f]or purposes of [] section" 3729 of the False Claims Act. True enough. But FERA's retroactivity provision explicitly cites section 3729—the section that contains the definition. *See* 123 Stat. at 1625, § 4(f) (providing that claims means "claims under the False Claims Act (**31 U.S.C. 3729** *et seq.*) (emphasis added)).

9

>   (1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and *apply to all claims under the False Claims Act ( 31 U.S.C. 3729 et seq.) that are pending on or after that date*; and
>
>   (2) section 3731(b) of title 31, as amended by subsection (b); section 3733, of title 31, as amended by subsection (c); and section 3732 of title 31, as amended by subsection (e); *shall apply to cases pending on the date of enactment.*

123 Stat. at 1625, § 4(f) (emphasis added).

Simply stated, Congress perfectly understood the difference between "claims" and "cases," and crafted the statute in a way that recognizes this distinction. The government's only argument in response to Congress' striking use of different language in adjoining subsections is that these subsections were originally drafted by two different chambers of Congress and therefore the right hand must not know what the left is doing. The government's argument does not give Congress' legislative process due respect and certainly ignores the Supreme Court's admonition to "presume that, where words differ as they differ here, Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Burlington N. & Santa Fe Ry.*, 548 U.S. at 63 (internal quotation marks and citation omitted).

Finally, the government argues that the Court need not address Armstrong's motion to dismiss Count II because the government's complaint states a claim under the false statements clause prior to its amendment by FERA. That argument is irrelevant and, at best, premature. The government did not plead a claim under the false statements clause prior to its amendment by FERA. The government purposefully pleaded one false statements count under the False Claims Act as amended by FERA. *See* Compl. ¶ 77 (citing 31 U.S.C. § 3729(a)(1)(B) (2009)). As the government correctly points out, the unamended false statement clause has entirely different elements and is controlled by the holdings of *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008) and *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004). The government's argument that a false statement claim under the pre-FERA act survives *Allison Engine* and *Totten* is both wrong and premature. The government has not pleaded any such claim and therefore Lance Armstrong has had no moment to have it

dismissed. If the government is trying to take the position that it did in fact plead a false statements claim under the unamended act, then Count II fails to survive even the notice pleading standard of Federal Rule of Civil Procedure 8(a). *See Brown v. Chevy Chase Bank*, No. 09-1899, 2009 U.S. Dist. LEXIS 93800, *1 (D.D.C. Sept. 24, 2009) ("The purpose of the minimum standard of Rule 8 is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense and to determine whether the doctrine of *res judicata* applies."). Armstrong therefore respectfully requests that Count II be dismissed.

    **C.**    **The government's argument that Congress amended the reverse false claims clause to extend liability to contingent obligations is factually inaccurate.**

The District of Columbia Circuit has held that "[t]he plain language of the [reverse false claims act clause] (whether read by a lawyer or layman) requires that there be an obligation to make payment to the Government." *Hoyte ex rel. United States v. Am. Nat'l Red Cross*, 518 F.3d 61, 70 (D.C. Cir. 2008). And, as the government concedes, the District Court for the District of Columbia Circuit had held that the reverse false claims clause does not extend to contingent liabilities. United States' Opp. 30 n.21 (citing *Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38, 43 (D.D.C. 2006) (holding that reverse false claim liability only extends to "a present, existing debt or liability, owed at the time the alleged false statement is made, and not some future or contingent liability."). The government has not pleaded that any defendant owes a non-contingent liability to pay money to the government. Therefore, Count IV—which pleads reverse false claims liability—must be dismissed.

To save its defective claim, the government urges this Court to create an(other) intra-circuit split and a split with the First, Second, Fifth, Sixth, Seventh, and Eighth Circuits by holding that the reverse false claims clause creates liability for future, contingent obligations.[8]

---

[8] *See Hoyte*, 439 F. Supp. 2d at 43 (citing cases); *see also United States ex rel. S. Prawer & Co. v. Verrill & Dana*, 962 F. Supp. 206, 209 (D. Me. 1997); *United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 332 (S.D.N.Y. 2004).

It is an invitation the Court should decline. To get there, the government takes a tortured route. The government admits that the operative statute as construed by this court ***does not extend to contingent obligations***. So the government takes the Court on a detour, arguing that FERA's admittedly-inoperative 2009 amendments extend liability to contingent obligations. United States Opp. at 26 n.18 & 28.

But the government's argument then hits a wall: The 2009 amendments expressly exclude contingent obligations. The 2009 amendments defined the term obligation to mean "***an established duty***, whether or not fixed."[9] 31 U.S.C. § 3729(b)(3) (emphasis added). So the government suspends its argument from the finest thread. The government argues—despite the lack of any reference to contingent obligations in the plain text of the amended Act—that the legislative history of FERA stretches the text to cover contingent obligations.

However, the government failed to inform the Court that Congress specifically amended FERA to ensure that it would never extend to contingent obligations. FERA began as Senate Bill No. 386. *See* 155 Cong. Rec. S4531, 4531 (Apr. 22, 2009). Senate Bill No. 386 originally defined the term obligation to include "a contingent duty." *Id.* at 4532.

But former Senator Jon Kyl (R-Ariz.) proposed an amendment deleting "contingent duty" from the definition. *Id.* at 4539, 4543. Senator Kyl explained that the entire purpose of his amendment was to "modif[y] the bill's definition of the term 'obligation' as used in the reverse False Claims Act to exclude contingent obligations." *Id.* at 4543. Senator Kyl noted that it was unlikely that the Department of Justice would ever file suit to enforce a claim for a contingent liability, but explained that "the FCA can also be enforced by private relators who often may be motivated by personal gain and not always exercise the same good judgment that the

---

[9] The government points to the portion of the amendment making reverse false claims liability applicable to obligations "whether or not fixed." That argument is a red herring. Armstrong's motion did not argue that Tailwind had an obligation to pay variable sums to the government. He argued that Tailwind had no obligation to pay the government at all—and the government cannot plug the hole by relying on a contingent obligation.

12

Government usually does." *Id.* at 4539. "To preclude such a reading of the act, [Senator Kyl's] amendment strikes contingent obligations from the FCA's new definition of 'obligation.'" *Id.* Senator Kyl's amendment passed 94 to 1. *Id.* at 4543. Senator's Kyl's definition of obligation is the definition now-present in the reverse false claims clause as amended by FERA. *Compare id.* at 4539, *with* 31 U.S.C. § 3729(b)(3); *see also* FERA, 123 Stat. at 1623, § 4(b)(3).

The government's argument that the legislative history supports the conclusion that the False Claims Act reaches contingent obligations is specious. The government's entire argument rests on a Congressional interpretation of the act *prior to* its amendment by Senator Kyl. *See* United States' Opp. (citing S. Rep. No. 111-10, at 14 (March 23, 2009)).[10] Because the government has conceded that it cannot allege that any defendant owed the government a non-contingent liability to pay money, the reverse false claims Count fails.

---

[10] The government also devotes three pages to an argument that the reverse false claims clause does not require privity. The government's privity argument is irrelevant. Armstrong argued in his motion to dismiss that—regardless of any privity relationship he may or may not have—the government has not and cannot plead that *any defendant* owed a non-contingent obligation to the government. Mot. at 16.

### III. CONCLUSION

By admitting that the Postal Service knew in 2000 that its cycling team was being investigated for doping, the government "has pleaded itself out of court." Therefore, Lance Armstrong respectfully requests that the Court dismiss the government's complaint with prejudice.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated: October 22, 2013      By:   /s/ Elliot R. Peters

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

782542.01