**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES *ex rel.* LANDIS, | |
| Plaintiffs, | Civil Action No. 10-00976 (RLW) |
| v. | |
| TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL, | **ECF** |
| Defendants. | |

**REPLY IN SUPPORT OF LANCE ARMSTRONG'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT**

782541.01

## I.     INTRODUCTION

Floyd Landis' attempts to usurp the government vividly illustrate why this Court should stamp out his rebellion.  In his reply, Landis does not even try to identify an Article III injury. To the contrary, Landis' counsel admits that Landis was not harmed by—but in fact perpetuated and multiplied the fraud he now complains of, describing him as a "rogue."  From this perch, Landis seeks to overrule almost every major decision the government has made in this litigation:

- The government has intervened in the action against Armstrong, superseding the relator's complaint "in all respects."  United States' Opp. to Tailwind's Mot. to Dismiss 4 n.3, ECF No. 105.  According to the government, Landis' complaint against Armstrong "simply does not exist." *Id.*  Landis—unable to accept that the government has in fact intervened—insists that he has separate claims and that his non-existent complaint must be answered.

- The government pleaded but abandoned all pre-June 2000 False Claims Act claims, as they are barred by the Act's ten-year statute of repose.  Landis seeks to force the government to pursue those barred claims against its will.

- The government chose not to argue that the war on terror and the second Iraq war distracted it from investigating doping by the United States Postal Service team. *See* Wartime Suspension of Limitations Act ("WSLA"), 18 U.S.C. § 3287. Landis asks the Court to foist this meritless theory of liability on the government as part of his attempt to force the government to pursue tenuous theories it has chosen to discard.

The Constitution and the False Claims Act bar Landis from hijacking this litigation.  As the government explained, Landis has "no operative complaint or claims against" Armstrong. United States' Opp. to Tailwind's Mot. to Dismiss 4 n.3; *see also United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 649 (S.D.N.Y. 2011); *United States ex rel. Raggio v. Jacintoport Int'l LLC*, No. 10-01908, 2013 U.S. Dist. LEXIS 80091, *5-6 (D.D.C. June 7, 2013).

1

Moreover, Landis lacks Article III standing to reinstate claims the government has abandoned or to assert theories of liability the government has foregone. *See United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998). In fact, the Constitution's separation of powers prevents Landis from using the Court to overrule the government's litigation decisions. *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003). The False Claims Act itself provides that post-intervention the government is in charge of the litigation and cannot be "bound" by anything Landis does. 31 U.S.C. § 3730(c)(1). And even if the Court had jurisdiction to reach Landis' argument on the merits, it would find them lacking. The District of Columbia Circuit has held that "the [Wartime Suspension of Limitations] Act does not apply to offenses under the False Claims Act." *Marzani v. United States*, 168 F.2d 133, 136 (D.C. Cir. 1948). Therefore, Lance Armstrong respectfully requests that the Court dismiss Floyd Landis' complaint and strike his opposition to Armstrong's motion to dismiss the government's complaint.

## II.   ANALYSIS

### A.   Landis lacks Article III standing to plead any FCA claims against Armstrong.

"Standing is an 'irreducible constitutional minimum.'" *Randolph v. INGLife Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 6 (D.D.C. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). Where the plaintiff lacks Article III standing, the court lacks jurisdiction to hear his claims. *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012). Therefore, a court will not proceed to consider the merits of a plaintiff's claims until he has assured the court of his standing. *Id.*

To establish Article III standing, a plaintiff must prove that he has "(1) suffered an injury in fact . . . (2) which is fairly traceable to the challenged act, and (3) is likely to be redressed by a favorable decision." *Randolph*, 486 F. Supp. 2d at 6. "The party seeking to invoke the jurisdiction of the federal court 'bears the burden of establishing these elements." *Grocery Mfrs. Ass'n*, 693 F.3d at 174 (citation omitted).

2

Despite his burden, Landis has failed to establish that he has suffered an injury in fact. Landis simply refuses to answer the fundamental Article III question—how he has been injured by the conduct he alleges. The U.S. Supreme Court has held that a relator has standing to assert a *qui tam* claim—if at all—only to the extent that the government has assigned the claim to the relator. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). The relator himself has not suffered a separate injury—and thus he does not have a separate claim.[1] *Id.* at 774. "In a *qui tam* case, only the government has a dog in the fight." *Barajas*, 147 F.3d at 910. Thus, there is but one claim, and it belongs to the government. *Id.* Now that the government has intervened against Armstrong, Landis simply has no claim to assert against him. *See, e.g., United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 649 (S.D.N.Y. 2011); *Raggio*, 2013 U.S. Dist. LEXIS 80091, *5-6. Having failed to identify any plausible basis for standing, this Court need not even consider the arguments Landis purports to advance on the merits. *See Grocery Mfrs. Ass'n*, 693 F.3d at 174. Landis' complaint against Armstrong must be dismissed with prejudice. *See, e.g., United States ex rel. Becker v. Tools & Metals, Inc.*, No. 05-0627, 2009 U.S. Dist. LEXIS 27507, *18-19 (N.D. Tex. Mar. 31, 2009).

Recognizing that he lacks any separate claims from the government, Landis seeks to fabricate a difference between his claims and those of the government. Landis claims that the government is seeking liability under the False Claims Act to June 2000, whereas the relator is seeking liability as far back as September 30, 1998.[2] A cursory glance at the complaints

---

[1] Landis argues that he has standing because the Supreme Court inferred it from the limited statutory participation interests Congress has given a *qui tam* relator. Relator's Mem. P. & A. in Opp. to Armstrong's Mot. to Dismiss the United States' Compl. at 12, ECF No. 109 ("Relator's Opp. re U.S. Compl."). That argument is a misreading of *Stevens*. While the Court did survey the statutory provisions Landis cites in his opposition, the Court explicitly ruled that the interests conferred by those provisions ***did not confer standing***. The Court explained that the statutory interests were "merely a 'byproduct' of the suit itself [and] cannot give rise to a cognizable injury in fact for Article III standing purposes." *Stevens*, 529 U.S. at 773.

[2] Both the government and relator have abandoned their claim for FCA damages from 1995 through September 30, 1998. *See* United States' Opp. to Armstrong's Mot. to Dismiss 10, ECF No. 114; Relator's Opp. re U.S. Compl. at 12. However, both the government and the relator pleaded those damages in their respective complaints. *See, e.g.*, United States' Compl. ¶¶ 15-18,

demonstrates that Landis' argument has no basis in fact. In considering the overlap between a relator's and government's claim for Article III standing purposes, courts universally rely upon the allegations in their respective complaints. *See, e.g., Raggio*, 2013 U.S. Dist. LEXIS 80091, *6 (dismissing "[b]ecause of the similarity between the two complaints); *see also Feldman*, 808 F. Supp. 2d at 648-649 ("Comparing the two Amended Complaints, the [defendant] accurately notes that the Government asserts the same causes of action under the FCA as [the relator] . . . and that the two Amended Complaints are predicated on nearly identical factual allegations of wrongdoing."); *United States ex rel. Badr v. Triple Canopy, Inc.*, No. 11-0288, 2013 U.S. Dist. LEXIS 88423, *16 n.1 (E.D. Va. June 19, 2013) (same). Here, both the government and the relator pleaded false claim, false statement, reverse false claim, and conspiracy claims dating to 1995. *See, e.g.*, United States' Compl. ¶¶ 15-18, 26, 70-72, 75-82; Second Am. Compl. ¶¶ 24-28, 208, 210, 239-276. In fact, both the government and the relator devoted numerous paragraphs to liability arising from the 1995 Sponsorship Agreement. *Id.* And both of their complaints rely on the same core allegations of doping by the U.S. Postal Service team. For that reason, the government has taken the unqualified position that "relator's complaint has been superseded in all respects as to the intervened defendants." United States' Opp. to Tailwind's Mot. to Dismiss 4 n.3. "The Government's complaint therefore sets forth the only operable claims against Armstrong." United States' Opp. to Armstrong's Mot. to Dismiss 2 n.2, ECF No. 114 ("United States Opp.").

### B.    Landis lacks Article III standing to press claims abandoned by the government.

In an attempt to disguise his lack of standing, the relator points to his limited statutory role post-intervention as evidence of his right to "unrestricted participation." Relator's Opp. to U.S. Compl. at 9. As explained above, the Supreme Court has already held that any statutory

---

26, 70-72, 75-82; Second Am. Compl. ¶¶ 24-28, 208, 210, 239-276. Therefore, Armstrong respectfully requests that the Court order dismissal of those abandoned claims with prejudice in its ruling on the motions to dismiss.

interests do not cure the relator's defect in standing.  *See* Part II.A n.1, *supra.*  But, more importantly, the False Claims Act affirmatively prohibits Landis' attempt to usurp the government.

Regardless of whatever residual statutory interests the relator may have, the False Claims Act is resolute that post-intervention, the government "shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1).  The relator cites to statutory provisions that describe when the government may seek to limit the relator's participation at trial.  But Landis is not embroiled in a spat with the government about who gets to cross-examine the next witness.  Landis is trying to overrule the litigation positions taken by the government.  The government pleaded and then abandoned any claim for FCA damages prior to June 10, 2000.  United States' Opp. at 10.  In direct opposition, Landis seeks to force the government to pursue alleged damages prior to June 10, 2000.  Relator's Opp. re U.S. Compl. at 12.  The government declined to invoke the Wartime Suspension of Limitations Act to toll any applicable statute of limitation.  Landis seeks to force the government to adopt this strained theory of liability to attempt to salvage claims the government recognizes are now barred.  The statute is perfectly clear that the government "shall not be bound by" Landis' desires to dictate government litigation strategy.  31 U.S.C. § 3730(c)(1).

But even if the relator had some statutory basis to usurp the government—which he does not—the Constitution prevents him from doing so.  A relator lacks Article III standing to force the government to prosecute claims or theories of liability the government chooses not to pursue. *Barajas*, 147 F.3d at 911.  In *Barajas*, the government intervened in a civil *qui tam* action, but pleaded only one of the two theories of FCA liability that the relator had pleaded in his complaint. *Id.* at 908.  The government did raise the missing theory of liability in an FCA indictment, but ultimately abandoned the theory before concurrently settling the civil and criminal FCA actions. *Id.*  The relator signed the settlement agreement, but included a provision

5

carving out his purported right to continue his action pressing the theory of liability the government had abandoned. *Id.*

The Court of Appeals affirmed the dismissal of the relator's action. *Id.* at 912. The court explained that the relator lacked Article III standing to pursue claims and theories the government had abandoned:

> [The relator] could not have a claim separate from the government's. A *qui tam* relator has Article III standing to sue only as a relator, on behalf of the government. His standing is in the nature of an assignee of the government's claim. Thus *there is one claim, the government's*, pursuable *either* by the *qui tam* relator on behalf of the government, *or* by the government on its own behalf. *Once the government* recovers the money it paid on a false invoice, plus penalties, or *releases its claim, there is no more to be recovered by anyone, because only the government can have a claim for a false claim made upon the government.*

*Id.* at 910 (emphasis added and citation omitted).

Just as in *Barajas*, Landis has no standing to undo the government's decision not to seek FCA damages prior to June 10, 2000. *Id.* The government and the relator do not have two parallel sets of FCA claims against Mr. Armstrong. There is only one set of claims, and now that the government has intervened, only the government has standing to assert them. *Id.* Lacking any cognizable interest in theories the government has decided are not worth pursuing, Landis cannot second-guess the DOJ. *Id.* He cannot raise them by maintaining a separate *qui tam* complaint. *Id.* at 911 (explaining that it is "wholly irrelevant" that the relator has no forum for pursuing the abandoned claim). Nor can he save them by invoking the Wartime Suspension of Limitations Act, a theory of liability the government has cast aside. *Id.* Any attempt to preserve those claims in simply "a nullity." *Id.*

Indeed, instead of resolving his lack of Constitutional standing, Landis seeks to foment a Constitutional confrontation. Landis asks this Court to overrule the Executive Branch's decision not to prosecute claims it has pleaded. But the government's "decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to [the government's] absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Therefore,

the government's "decisions not to prosecute . . . are unreviewable." *Swift*, 318 F.3d at 252.  In

*Swift v. United States*, the District of Columbia Circuit held that the separation of powers

doctrine precludes a court from reviewing a government's decision to dismiss FCA claims over

the relator's vigorous objection. *Id.* at 253.  Nothing in the False Claims Act "circumscribes the

government's power to discriminate among issues or cases it will pursue." *Id.* (internal quotation

marks omitted).  If the relator becomes concerned that claims are being unnecessarily

abandoned, the proper audience is the government—not a federal court. *Id.*  Therefore, even if

the relator had Article III standing, and even if he had some limited statutory participation rights,

he cannot force this Court to adjudicate the propriety of the government's decision to abandon its

stale claims against Mr. Armstrong.

> **C.      Landis' unnecessary multiplication of the proceedings in this action provides
> an independent basis for the Court to dismiss his complaint.**

Landis is correct to point out that even if he did have Article III standing, "the court may

[nonetheless] limit the participation by [Landis] in the litigation" if his "unrestricted participation

during the course of the litigation . . . would be for purposes of harassment or would cause the

defendant undue burden or unnecessary expense." 31 U.S.C. § 3730(c)(2)(D).  The District

Court for the District of Columbia has held that a relator imposes "unnecessary expense" on a

defendant when the relator seeks to force the defendant to answer a complaint alleging the same

FCA claims as the government. *See Raggio*, 2013 U.S. Dist. LEXIS 80091, *5-6.  Landis takes

the position that answering a duplicative complaint is not "burdensome" because "a legal

secretary can do that in a few moments." Relator's Opp. re U.S. Compl. at 8 (quoting *Miller v.

Holzmann*, No. 95-1231, 2006 WL 3196433, *2 (D.D.C. Oct. 31, 2006)).  Landis' argument is

both incorrect and misses the point.  Asking someone without legal training to prepare binding

legal admissions and denials would almost certainly constitute malpractice.  Moreover, Landis is

not content only to force defendants to answer unnecessary pleadings.  In the brief time this

litigation has been pending, Landis has already unnecessarily multiplied the proceedings by:

7

- Forcing Defendants Lance Armstrong, Johan Bruyneel, Tailwind Sports Corp., and Tailwind Sports, LLC to file motions to dismiss his duplicative complaint;

- Insisting that those same defendants answer his 65-page, 274-paragraph long complaint; and

- Filing no fewer than three oppositions to motions to dismiss claims he has no standing to pursue while forcing the defendants to respond to theories of liability the government has rejected;[3]

Regardless, even if answering relator's complaint was not "burdensome," it is certainly "unnecessary" given that post-intervention, the relator has no separate claims against Armstrong. Therefore, section 3730(c)(2)(D) of the False Claims Act provides an independent basis to dismiss Landis' complaint against Armstrong.

Landis attempts to distinguish *Raggio* by obscuring its holding. Landis argues that his complaint is not duplicative because his complaint is more verbose than the government's. Landis misconstrues the law. In deciding whether a relator's complaint has been superseded, the pertinent question is not whether the relator has copied-and-pasted the government's complaint. Instead, a relator's complaint must be dismissed if the government has intervened as to the parties and claims alleged in the relator's complaint. *See, e.g., United States ex rel. Magee v. Lockheed Martin Corp.*, No. 09-0324, 2010 U.S. Dist. LEXIS 23295, *8-9 (S.D. Miss. Mar. 12, 2010) ([T]he Government has formally intervened in Relator's suit against all Defendants, with the exception of Lockheed. Therefore, the Government's Amended Complaint is the operative pleading as to all claims asserted against all Defendants, with the exception of those raised against Lockheed."). No court has ever held that a relator may proceed on duplicative claims simply because his complaint is longer or contains additional factual allegations. Moreover, as

---

[3] *See* Relator's Opp. re U.S. Compl., ECF No. 109; Relator's Mem. P. & A. in Opp. to Bruyneel's Mot. to Dismiss the United States' Compl., ECF No. 110; Relator's Mem. P. & A. in Opp. to Tailwind's Mot. to Dismiss the United States' Compl., ECF No. 113.

782541.01

explained above, Landis lacks Article III standing to assert different theories of liability from the government regardless. *See* Part II.A, *supra*. Therefore, Landis' complaint is not saved by his lack of economy.

**D.    Landis cannot use the Wartime Suspension of Limitations Act to disinter the government's long-dead claims.**

For the reasons stated above, there is no need for the Court to address Landis' attempt to raise the WSLA. *See* Part II.A, *supra*. Landis invokes the WSLA to revive claims for FCA damages that the government has abandoned. But Landis cannot do so. First, he has no Article III standing, and cannot force a court to undo the government's decision not to press its claims. *Barajas*, 147 F.3d at 910; *Swift*, 318 F.3d at 253. Second, Landis lacks standing to invoke the WSLA when the government has chosen not to. *Barajas*, 147 F.3d at 910. Third, now that the government has intervened, Landis has no standing to maintain a separate complaint alleging the abandoned damages. *Feldman*, 808 F. Supp. 2d at 649. Therefore, there is simply no need (and no jurisdiction) to reach Landis' arguments regarding tolling. But, even if the Court could reach those arguments, it would find that they lack merit. Landis was only able to cobble together his tolling argument by assiduously avoiding any reference to on-point Supreme Court and District of Columbia Circuit authority.

*1.    The WSLA does not apply to the False Claims Act.*

Statutes of limitations "are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947); *accord Carter v. Wash. Metro. Area Transit Auth.*, 764 F.2d 854, 858 (D.C. Cir. 1985) ("[C]ourts should apply the statute of limitations strictly . . . ."). "Statutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (internal quotation marks omitted). Limitations periods "protect defendants and the courts from having to deal with cases in which the search for truth may be

9

seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Id.* The Supreme Court has repeatedly cautioned that exceptions to statutes of limitations must be "narrowly construed" in favor of the "long-standing congressional policy of repose." *Bridges v. United States*, 346 U.S. 209, 215-216 (1953).

Applying these principles, the Supreme Court has interpreted the WSLA on numerous occasions and has consistently held that "the wartime suspension of limitations authorized by Congress is limited strictly to offenses in which defrauding or attempting to defraud the United States is ***an essential ingredient of the offense charged.***" *Id.* at 221. The Court explained that an offense does not fall within the scope of the WSLA merely because the government has alleged that fraud actually occurred as part of the offense. *Id.* at 222. Instead, the statute of limitations for an offense is not tolled unless fraud is a necessary statutory element of the offense. *Id.* Therefore, the WSLA does not toll the "offense of perjury [because] fraud is not an essential ingredient." *Id.* The Supreme Court has likewise held the WSLA does not toll the limitations period for "making a false material statement under oath" or "conspiracy" to do the same. *Id.* at 222-223.

Applying this line of precedent, the Court of Appeals for the District of Columbia Circuit has held that "the Suspension Act does not apply to offenses under the False Claims Act." *Marzani v. United States*, 168 F.2d 133, 136 (D.C. Cir. 1948). The District of Columbia Circuit explained that "defrauding of the United States is not an essential ingredient of offenses under the False Claims statute." *Id.* at 136. On petition for *certiorari*, the Supreme Court affirmed *Marzani* without opinion. *Marzani v. United States*, 335 U.S. 895 (1948). In later opinions, the Supreme Court also cited *Marzani* with approval and relied upon its reasoning. *See, e.g.,* *Bridges*, 346 U.S. at 220. *Marzani* remains binding precedent to this day.[4] *See Owens-Illinois,*

---

[4] Landis cites *United States ex rel. McCans v. Armour & Co.*, 146 F. Supp. 546 (D.D.C. 1956), for the proposition that the WSLA applies to the False Claims Act. However, that is not the holding of *McCans*. In *McCans*, the district court granted the defendant's motion for summary

10

782541.01

*Inc. v. Aetna Casualty & Surety Co.*, 597 F. Supp. 1515, 1520 (D.D.C. 1984) ("The doctrine of *stare decisis* compels district courts to adhere to a decision of the Court of Appeals of their Circuit until such time as the Court of Appeals or the Supreme Court of the United States sees fit to overrule the decision.").

The Supreme Court later clarified the scope of the ruling in *Marzani*. In *United States v. Grainger*, the Supreme Court held that the Wartime Suspension of Limitations Act tolled "wartime frauds involved in violations of the false claims clause of the False Claims Act." 346 U.S. 235, 243 (1953). The Court explained that, at the time of its decision, the false claims clause of the False Claims Act required fraud as an essential element. *Id.* at 241. The Court expressly distinguished the false claims clause from the false statements clause, and explained that *Marzani* remained good law for its holding that the WSLA does not toll a false statement clause claim. *Id.* at 243 n.14. After *Grainger*, courts have continued to rule that the WSLA does not toll the statutes of limitation for false statements and conspiracy offenses under the False Claims Act. *See United States v. Lurie*, 222 F.2d 11, 15 (7th Cir. 1955). Therefore, under binding Supreme Court and Circuit precedent, Landis cannot invoke the WSLA to toll the statute of limitations for the false statements, conspiracy, and reverse false claims act counts.

Furthermore, even *Grainger*'s limited holding that the false claims clause is subject to tolling has been superseded by amendments to the False Claims Act. Post-*Grainger*, Congress

---

judgment because the relator's action was barred by the statute of limitations regardless of whether tolling was available. The discussion in *McCans* regarding the WSLA is dicta. Obviously, the district court in *McCans* was not at liberty to overrule a prior decision of the Court of Appeals. *See Owens-Illinois, Inc.*, 597 F. Supp. at 1520. Although *McCans* was affirmed in a *per curiam* opinion, the Court of Appeals took care not to endorse the reasoning in *McCans*, stating only that "the District Court decided the critical issues correctly." *United States ex rel. McCans v. Armour & Co.*, 254 F.2d 90, 1 (D.C. Cir. 1958). Nothing in the Court of Appeals' brief order explicitly overruled the holding in *Marzani*, nor is a district court free to find that the order overruled *Marzani* by implication. *See Brewster v. Commissioner*, 607 F.2d 1369, 1374 (D.C. Cir. 1979) (holding that *stare decisis* binds a later panel of the Court of Appeals to the ruling issued by an earlier panel); *United States v. Weathers*, 186 F.3d 948, 957 n.12 (D.C. Cir. 1999) (holding that a lower court may not find that an opinion of a higher court has been overruled by implication); *Newdow v. Eagen*, 309 F. Supp. 2d 29, 41 (D.D.C. 2004) (same).

11

amended the False Claims Act to provide that fraud is no longer "an essential ingredient." 346 U.S. at 242. Prior to 1986, a number of Circuits held that the False Claims Act required specific intent to defraud. *See, e.g., United States v. Mead*, 426 F.2d 118, 121 (9th Cir. 1970). The rationale was simple: A false claims act claim required fraud, and "[i]ntent to defraud has always been an essential element of common law fraud." *Id.* at 123. Similarly, the District of Columbia Circuit held that prior to 1986, specific intend to defraud was a required element to prove that a defendant submitted a "fraudulent" claim to the government within the meaning of the FCA. *United States v. TDC Mgmt. Corp. Inc.*, 24 F.3d 292, 297 (D.C. Cir. 1994).[5] In 1986, Congress amended the FCA to "expressly provide[] that 'no proof of specific intent to defraud is required.'" *Id.* at 298 (quoting 31 U.S.C. § 3729(b)). In other words, fraud is no longer a required element of any claim under the False Claims Act. Therefore, under binding Supreme Court and District of Columbia precedent, the Wartime Suspension of Limitations does not toll any of the FCA claims asserted in this action.

> 2.       *The WSLA does not toll the False Claim Act's statute of repose.*

Landis does not dispute that the False Claims Act's ten-year bar to bringing suit is a "statute of repose." *Pogue*, 474 F. Supp. 2d at 84. Unlike a statute of limitations, "statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) (internal quotation marks omitted). "[A] statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *Id.* at 102-103. Absent Congressional intent to the contrary, a federal statute that tolls a "statute of limitations" does not toll a "statute of repose." *Burlington N. & Santa Fe Ry. Co. v. Polle Chem. Co. Inc.*, 419 F.3d 355, 364 (5th Cir. 2005).

---

[5] Like *Grainger*, the District of Columbia Circuit did not agree, however, that every type of claim asserted under the FCA required fraud, and the accompanying *scienter*, as an element. *Id.*

The WSLA does not toll the FCA's ten-year statute of repose. The plain language of the WSLA is unambiguous. It only tolls "the running of any statute of limitations," not statutes of repose. 18 U.S.C. § 3287. Moreover, in 1942, when Congress first passed the WSLA, the False Claims Act did not yet contain a statute of repose.[6] The False Claims Act itself unequivocally provides that "in no event [may any party file a False Claims Act lawsuit] more than 10 years after the date on which the violation is committed." 31 U.S.C. § 3731(b)(2). No court has ever held that the WSLA tolls the FCA's statute of repose.

Landis argues that—despite the complete absence of any reference to a "statute of repose" in the WSLA—the language of the statute is ambiguous. But, if that were the case, the Court would simply resort to the legislative history to determine whether Congress intended the WSLA to toll a statute of repose. *See McDonald v. Sun Oil Co.*, 548 F.3d 774, 782 (9th Cir. 2008). The legislative history of the WSLA makes clear that its purpose was to toll the then-existing three-year statute of limitations on fraud offenses because that period may not have been sufficient to allow discovery of fraud while the government was distracted by the exigencies of war. *Bridges*, 346 U.S. at 218 n.18 (quoting legislative history). But the legislative history of the ten-year statute of repose, which passed after the WSLA, explicitly rejected the need for additional government discovery as a basis to extend the repose period. Indeed, the legislative history makes clear that the 10-year period was intended as an absolute bar:

> "It was brought to the attention of the Committee that fraud is often difficult to detect and that the statute of limitations should not preclude the Government from bringing a cause of action under this Act if they were not aware of the fraud. The Committee agreed that this was unfair and so expanded the statute of limitations. **However, the Committee did not intend to allow the Government to bring fraud actions *ad infinitum*, and therefore imposed the strict 10 year limit on False Claims Act cases.**"

H.R. Rep. No. 99-660, pt. V (1986) (emphasis added). Even if the plain language was ambiguous, Congress made it perfectly clear in the legislative history that the

---

[6] A statute of repose was not added until the 1986 Amendments.

13

government's inability to discover a fraud is no basis to lift the "the strict 10 year limit." Landis cannot use the WSLA to toll the ten-year statute of repose. Therefore, all False Claims Act claims arising out of payments made prior to June 10, 2000 must be dismissed with prejudice.

> 3. *Landis' wars are too recent to save any of damages the government has abandoned.*

Even if the WSLA did toll a statute of repose, Landis has not pleaded any war that tolled the limitations period for claims prior to September 18, 2001. The Wartime Suspension of Limitations Act "only applie[s] to crimes committed *after the triggering of the suspension of limitation* . . . ." *United States v. Pfluger*, 685 F.3d 481, 484 (5th Cir. 2012) (citing *United States v. Smith*, 342 U.S. 225, 228 (1952)) (emphasis added); *accord United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 177 (4th Cir. 2013) ("The Supreme Court has held that the WSLA applies only to offenses committed after the triggering clause."); *United States v. BNP Paribas SA*, 884 F. Supp. 2d 589, 601 (S.D. Tex. 2012) ("[T]he Supreme Court held that the WSLA applied only to offenses committed after the triggering of the suspension of limitations."). The WSLA is not triggered until "the United States is at war." *Pfluger*, 685 F.3d at 484; *accord Carter*, 710 F.3d at 177; *BNP Paribas SA*, 884 F. Supp. 2d at 601. Therefore, the WSLA does not toll the statute of limitations for false claims that were paid prior to the allegedly triggering war.

Landis has not identified any war that could possibly revive the damages the government has abandoned. Landis asserts two and only two conflicts as the basis for his tolling argument: (1) the authorization to use military force against the September 11 terrorists and (2) the authorization to attack Iraq based on the faulty intelligence that Iraq possessed weapons of mass destruction. No party has identified any other conflict. Landis himself admits that at the very earliest the United States was not at war until September 18, 2001. Therefore, WSLA tolling could not have been triggered prior to September 18, 2001. All of the government's abandoned

14

782541.01

claims predate June 10, 2000.  Therefore, the relator's invocation of the WSLA does not save the damages the government has abandoned.

### III.    CONCLUSION

For the foregoing reasons, Lance Armstrong respectfully requests that the Court grant his motion to dismiss the relator's Second Amended Complaint and strike Landis' opposition to Armstrong's motion to dismiss the government's complaint.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated:  October 22, 2013                    By:    /s/ Sharif E. Jacob

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

782541.01