UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES *ex rel.* LANDIS,<br><br>Plaintiffs,<br><br>v.<br><br>TAILWIND SPORTS CORP., TAILWIND SPORTS LLC, LANCE ARMSTRONG, and JOHAN BRUYNEEL,<br><br>Defendants. | Civil Action No. 10-00976 (RLW)<br><br>**ECF** |

**THE UNITED STATES OF AMERICA'S OPPOSITION TO LANCE ARMSTRONG'S MOTION FOR A PROTECTIVE ORDER (DOC. 104)**

## INTRODUCTION

Lance Armstrong seeks a protective order coordinating depositions in the five cases against him.[1] The order Armstrong seeks would require two things: first, it would effectively require all the plaintiffs to conduct their depositions at the same time, Doc. No. 104-8 (Proposed Order) ¶¶ F, H; second, the proposed order would prohibit any party from asking any witness "the same or substantively the same question" once the question has been "fully answered." *Id.* at ¶ G. Armstrong argues that this protective order is necessary to protect him and other witnesses from abusive deposition discovery, Doc. No. 104 (Armstrong Br.) at pp. 7-8, and is justified based on the "extensive overlap of factual issues" in the various cases against him. *Id.* at p. 4.

Armstrong is not entitled to the order he seeks for three reasons. First, the Government's legitimate interest in developing evidence in support of its claims substantially outweighs Armstrong's speculative concerns about deposition "grandstanding." Armstrong Br. at p. 8. Second, the mass tort cases on which Armstrong attempts to rely for legal support – all of which involve hundreds or even thousands of cases that had *already* been consolidated in a single forum pursuant to the Multi-District Litigation (MDL) statute – are not analogous to this case, and do not subject parties to the sorts of restrictions Armstrong seeks here; there is no basis for the Court to assert jurisdiction or control over state courts or their discovery processes. Third, Armstrong's proposal is unworkable and would result in significant delay and discovery disputes.

---

[1] Mr. Armstrong previously submitted a similar motion in *Acceptance Ins. Co. v. Armstrong, et al.*, No. D-1-GN-10-003942 (Travis Cnty, TX), and the state court in that matter rejected his request. (Order attached as Exh. 1.)

# ARGUMENT

The clear design and effect of the order Armstrong seeks would be to allow him to continue to avoid giving a *full* account of his role in and knowledge of the U.S. Postal Service (USPS) Team's use of banned substances, thereby frustrating the Government's legitimate right to obtain relevant evidence through the deposition process. This Court should not endorse this unwarranted and impracticable effort to hamstring the Government's ability to conduct discovery in this case.

I. **Armstrong's Proposed Order Would Substantially Interfere with the Government's Ability to Develop Evidence in Support of its Claims.**

A party opposing discovery must establish good cause for a protective order "by demonstrating the specific evidence of the harm that would result" without the order. *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001). "Specific evidence" means something more than "conclusory or speculative statements." *Id.; see also Lurensky v. Willinghoff*, 258 F.R.D. 27, 30 (D.D.C. 2009); *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998). Further, "the showing required under Rule 26(c) must be sufficient to overcome plaintiffs' legitimate and important interests in trial preparation." *Alexander*, 186 F.R.D. at 75 (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985)).

In this case, Armstrong argues that a protective order limiting discovery is warranted because allowing each party the deposition discovery to which they are entitled under the rules of civil procedure "is likely to lead to harassment." Armstrong Br. at p. 7. Armstrong's speculative concerns over deposition misconduct manifestly do *not* outweigh the Government's legitimate interest in obtaining evidence in support of its claims. The Government has alleged that Armstrong lied for over a decade in order to get and keep millions of dollars that the USPS paid to his team. Armstrong speculates that "these salacious matters are not likely ever to be

3

contested or at issue in the proceedings." *Id.* at p. 8.[2]  On the contrary, even though Armstrong recently confessed to doping – albeit in a self-serving manner, and without being under oath – he failed to put his confession in context.  Specifically, Armstrong *still* has not given a full account of who helped him dope, where the drugs came from, and how he managed to cover up his activities for so long.

The scope of Armstrong's cheating is highly relevant given that defendants likely will argue that Armstrong's misconduct was either not prohibited by the sponsorship agreements or material to the USPS.  The Government is entitled to demonstrate the magnitude of Armstrong's misconduct to rebut these anticipated arguments.  Moreover, Armstrong's testimony in this case is required on topics beyond simply the extent to which he took performance enhancing drugs.  Additional topics that require Armstrong's testimony include:  the knowledge and involvement of others in his doping activity, Armstrong's ownership interest in Tailwind, his interactions with the USPS, and the amount of money he received.

Armstrong's purported concern about "abuse of the deposition process," Armstrong Br. at p. 8, does not outweigh the Government's right to discovery.  As Armstrong concedes, no

---

[2] As a threshold matter, Armstrong's limited "confession" has no effect on the permitted scope of the Government's discovery.  The Government is entitled to sponsor evidence in support of its claims, even where a defendant seeks to remove an issue from jury consideration by stipulation. *See Old Chief v. United States*, 519 U.S. 172, 186-87 (1997) ("[T]he prosecution is entitled to prove its case by evidence of its own choice, or, more exactly … a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it … the reason for the rule is to permit a party to present to the jury a picture of the events relied upon.  To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.") (internal citations and quotation marks omitted); *see also United States v. Williams,* 612 F.2d 735, 740 (3d Cir. 1979) (Government permitted to introduce evidence notwithstanding defendant's admission); *United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) (same).  Put simply, notwithstanding Armstrong's limited concession that he "does not intend to argue that he never took erythropoietin or had a transfusion," Armstrong Br. at p. 8, the Government is entitled to Armstrong's *full* account of his role in his team's fraud.

4

"depositions [have] taken place in any of the parallel actions." *Id.* at p. 4. Thus, Armstrong's concerns about "grandstanding" are precisely the sort of speculation that does *not* constitute specific evidence of harm. *See Jennings,* 201 F.R.D. at 275 (D.D.C. 2001); *Lurensky*, 258 F.R.D. at 30; *Alexander*, 186 F.R.D. at 75. Moreover, if the plaintiff in the *Acceptance* litigation, which has already noticed Armstrong's deposition in State Court in Texas, engages in deposition misconduct, Armstrong's remedy would lie with the Texas courts. The mere possibility that some other plaintiff *may* engage in misconduct does not justify limiting the Government's right to discovery in this case.

Finally, Armstrong's professed concern that multiple depositions may unduly burden third party witnesses such as Tyler Hamilton, Betsy Andreu, and Emma O'Reilly, is way wide of the mark. As a general matter, Armstrong lacks standing to seek a protective order on behalf of non-party witnesses. *See United States v. Nachamie*, 91 F. Supp. 2d 552, 559 (S.D.N.Y. 2000); *Chperas v. Rubin*, No. 96-130, 1998 WL 765126, at *2 (D.D.C. Nov. 3, 1998). More to the point, Armstrong's claimed concern about burdens on these witnesses is pure pretext. Each of these witnesses has cooperated with the Government's investigation. It is notable that, although Armstrong has filed identical motions for a protective order in the parallel actions, *see* Armstrong Br. at p. 4, none of the non-party witnesses supported his motions, as the record in these cases makes clear.[3]

---

[3] In fact, as widely noted in the media, Mr. Armstrong has shown no concern about these witnesses in the past, having filed law suits against some of them who were among the first to disclose his use of performance enhancing drugs, and publicly maligning others.

## II. This Case is Not Analogous to the Class Action, Mass Tort Cases on Which Armstrong Principally Relies.

Armstrong cites a series of class-action mass tort cases as authority for the unremarkable proposition that federal courts can coordinate discovery in cases over which they have jurisdiction. The cases that Armstrong cites involved the coordination of hundreds, indeed sometimes thousands of cases. *See In re Prempro Products Liability Litig.*, No. 4:03-cv-1507, Doc. No. 104-7 (Armstrong Appx.) (E.D. Ark. July 3, 2003) ("This multidistrict litigation consists of 9781 cases … to recover damages for personal injuries against the manufacturers of hormone replacement therapy"). In these MDL cases, the complexity of the litigation was such that there was no alternative to shared discovery. *See, e.g., In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 475 (E.D. Pa 2008) ("To say that this litigation was complex is seriously to understate the fact.").

In this case, by contrast, there are orders of magnitude fewer plaintiffs, and also fewer common issues. The Government alleges that Armstrong lied to the USPS in connection with the USPS sponsorship agreement. By contrast, SCA[4] and Acceptance allege that Armstrong lied to them in order to keep performance bonuses paid pursuant to completely different contracts; and the class action plaintiffs allege that Armstrong lied to consumers in order to sell books and sports drinks. Although Armstrong's doping will likely be a common element in those cases that survive,[5] these cases have nothing else in common: each of these cases is based on different transactions, during different time periods, and involving different defendants. Further, those plaintiffs seek to recover based on different theories, different contracts, and varying degrees of

---

[4] *SCA Promotions v. Armstrong, et al.*, No. DC13-01546 (Dallas Cnty, TX).

[5] As Armstrong notes, the class action by the consumers who purchased Armstrong's book has already been dismissed. Armstrong Br. at p. 2 n.1.

personal interaction with Armstrong himself. Under these circumstances, the only "benefit" of limited discovery would be to permit Armstrong to continue to evade answering for his role in his team's doping scandal.

Further, the cases on which Armstrong seeks to rely involved coordinated discovery among cases that had *already* been transferred and consolidated under the MDL statute, 28 U.S.C. § 1407. In this case, by contrast, Armstrong seeks to skip the first step – the statutory inquiry into whether consolidation is appropriate – and proceed straight to discuss "best practices" for cases that, unlike this one, have already been consolidated. As a result, Armstrong's suggestion that courts routinely grant the relief he seeks here is simply misleading.[6]

Even if this case were somehow analogous to the mass tort cases on which Armstrong seeks to rely, Armstrong gives a misleading characterization of best practices in the mass tort context. The mass tort cases Armstrong cites involve federal courts *encouraging* state court litigants to coordinate with parallel ongoing federal litigation, but not *requiring* them to do so. *See, e.g., In re St. Jude Medical, Inc.*, MDL No. 1396, 2002 U.S. Dist. LEXIS 28020, at *5 (D. Minn. May 24, 2002) ("steps should be taken to encourage counsel in related state court

---

[6] Armstrong's reliance on *Pfohl Bros. Landfill Site Steering Comm. v. Pfohl Enterprises*, 187 F.R.D. 462 (W.D.N.Y. 1999) is misplaced. *Pfohl Bros.* was a Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) action brought by a steering committee against, among other defendants, an undetermined number of companies that transported waste to a Buffalo, New York landfill. Seven plaintiffs brought parallel personal injury actions in New York State Supreme Court, and five defendants sought an order requiring the federal plaintiff to coordinate depositions with the depositions in the parallel State cases. *Id.* at 463-64. In *Pfohl Bros.*, there was a pressing need for haste because "the witnesses Plaintiff seeks to depose are elderly and in ill health." 187 F.R.D. at 464. Thus, Magistrate Judge Foschio directed the Plaintiff "to advise the parties in the state tort action of such depositions so those parties may, if they choose to do so, cross-notice such depositions in the state action." *Id.* However, the Court did not require the plaintiffs to forfeit a portion of their deposition time to the state court parties. Further, the Court acknowledged that it could not enjoin the parties to the action in State court. *Id.* ("[T]his court lacks authority to direct BFI [to] cross-notice in the state tort action the depositions of the witnesses Plaintiff anticipates deposing.").

proceedings to coordinate their depositions with MDL 1396 depositions …. [However, *n]othing is this provision shall be construed as an injunctive or equitable order* affecting state court proceedings.") (emphasis added).

Armstrong's inability to point to any federal case *ordering* litigants in parallel state actions to engage in coordinated discovery should come as no surprise. The Anti-Injunction Act establishes statutory limits to the power of the federal courts to control state court litigation. *See* 28 U.S.C. § 2283. The Anti-Injunction Act provides that, outside of a few limited exceptions that do not apply here, no legal basis exists for a federal court to exercise control over state litigation. *See* 32-20P James Wm. Moore, *Moore's Federal Practice,* § 20.32 (3d ed. 2013); *see also, e.g., Air Terminal Services, Inc. v. Marriott Corp.*, No. 86-3109, 1987 WL 56666, at *5 (D.D.C. Feb. 10, 1987) (in a case involving parallel federal and state litigation, and where discovery permitted under New York civil rules would be duplicative, the Court nevertheless holds "[a]s a matter of comity and federalism, we should defer, in the first instance, to the New York courts to allow them to rule on the scope of discovery."). In this case, paragraphs E through H of Armstrong's proposed order would bind SCA and Acceptance Insurance, both of whom have brought their cases in Texas State Court, requiring the state court plaintiffs to cross-notice their depositions, to confer with the federal plaintiffs, and to limit their examination of witnesses that have already been deposed. This proposed order is plainly barred by the Anti-Injunction Act.

### III.    Armstrong's Proposed Order Is Unworkable.

Finally, Armstrong's proposal is likely to lead to a significant waste of resources. Most notably, since Armstrong seeks to bar parties from asking "the same or substantively the same question" that some other party has asked, Proposed Order at ¶ G, any such order would

inevitably lead to disputes over whether a question is "substantially similar," or whether the question has been "fully answered."

Armstrong's proposal would lead to numerous other inefficiencies. First, for each deposition, there is bound to be a dispute as to which plaintiff goes first, particularly if the others are precluded from asking "substantially similar" questions. This would lead to a race among the plaintiffs to issue premature and ill-considered deposition notices. Second, Armstrong's proposed order does not address the amount of time allotted to each plaintiff, which undoubtedly would also be the subject of dispute. Third, there are no judicial efficiencies to be gained by forcing all plaintiffs to conduct their depositions *seriatim*: so long as each court retains power to rule on whatever issues arise, the involvement of each court in the deposition process remains necessary. Unlike the cases on which Armstrong relies, the cases against Armstrong remain pending in five different courts, and each court has jurisdiction over its own case. Indeed, so long as each party is bound by the answers given to the first plaintiff to ask a question, each dispute would likely have to be submitted to multiple courts, requiring multiple decisions, and raising the possibility of inconsistent rulings.

## CONCLUSION

For all of these reasons, Mr. Armstrong's motion should be denied.

        Respectfully submitted,

        STUART F. DELERY
        Assistant Attorney General

        RONALD C. MACHEN JR., D.C. Bar # 447889
        United States Attorney

        DANIEL F. VAN HORN, D.C. Bar # 924092
        Assistant United States Attorney

        *s/ Darrell C. Valdez*
        DARRELL C. VALDEZ, D.C. Bar # 420232
        MERCEDEH MOMENI
        Assistant United States Attorneys
        Judiciary Center Building
        555 4th St., N.W., Civil Division
        Washington, D.C.  20530
        Tel: (202) 252-2507/ (202) 252-2515

        *s/ David M. Finkelstein*
        MICHAEL D. GRANSTON
        ROBERT E. CHANDLER
        DAVID M. FINKELSTEIN
        Attorneys, Department of Justice
        Civil Division
        Post Office Box 261
        Ben Franklin Station
        Washington, D.C.  20044
        Tel:  (202) 514-4678

DATED: October 28, 2013