IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* FLOYD LANDIS, | ) ) ) ) No. 1:10-cv-00976-RLW |
| Plaintiffs, | ) ) |
| v. | ) ) |
| TAILWIND SPORTS CORPORATION, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

**RELATOR'S REPLY IN SUPPORT OF CONDITIONAL MOTION TO AMEND RELATOR'S SECOND AMENDED COMPLAINT [ECF 140]
AND
OPPOSITION TO DEFENDANTS' MOTION TO STRIKE RELATOR'S CONDITIONAL MOTION TO AMEND RELATOR'S COMPLAINT [ECF 142]**

**INTRODUCTION**

Defendants Thomas Weisel and Ross Investments, Inc. (collectively referred to herein as "Defendants") have filed a motion to strike relator's motion to amend. In addition to being obviously without merit, the most notable feature of Defendants' motion is that it ironically provides Defendants with a vehicle for filing two separate responses to relator's motion to amend (*i.e.*, Defendants' already filed opposition/motion plus any reply they may file in support of their improper motion to strike). Defendant Weisel and his wholly owned corporation thus stand to benefit from essentially the same impropriety under the rules of which they have wrongly accused the relator.[1] But there is manifestly no basis in law for a motion to strike a motion to amend, so the motion to strike should be denied regardless.

---

[1] *See* Memorandum of Points and Authorities in Support of Defendants Thomas W. Weisel and Ross Investment, Inc's Motion to Strike and In Opposition to Relator's Conditional Motion

1

Defendants' opposition to relator's motion to amend is similarly lacking in any substance. As noted in relator's opening brief, "leave to amend is almost always allowed to cure deficiencies in pleading fraud." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotations omitted). While relator continues to believe that his second amended complaint fully satisfies the requirements of Federal Rule of Civil Procedure 9(b), if the Court were to hold that more detail were required, then relator's draft third amended complaint plainly offers numerous additional allegations relevant to defendant Weisel's knowledge of doping. *See e.g.*, Declaration of Paul D. Scott in Support of Conditional Motion to Amend, Exhibit A, Draft Third Amended Complaint ("DTAC") at ¶¶ 51, 148-50, 153, 157-73. Defendants' claim of futility is thus without merit.

Similarly, defendants' argument against the Court granting leave to amend based on the timing of relator's motion is also without merit, for relator's motion was filed in response to Weisel's motion to dismiss and prior to the Court's ruling on that motion.

## ARGUMENT

### I.      There is no Authority for Striking Relator's Motion.

Defendants' motion fails to cite any decision striking a motion to amend that was filed by a plaintiff in response to a defendant's motion to dismiss. The motion also fails to cite any rule that authorizes the Court to do so. Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Relator's motion to amend, however, is not a pleading that is subject to being stricken under this rule. "Rule 7(a) lists the filings that constitute pleadings, but 'motions, affidavits, briefs and other documents [are] outside of the pleadings' and are not subject to being stricken." *Henok v. Chase Home Finance, LLC*, 925 F. Supp. 2d 46, 52-53 (D.D.C. 2013) (quoting 5C Charles Alan Wright *et al.*, Federal Practice & Procedure § 1380 (3d ed. Supp. 2012)) (denying motion to strike opposition to motion for partial summary judgment).

---

to Amend Relator's Complaint, ECF No. 142 ("Defendants' Motion to Strike/Opposition") at 2-3 (arguing that relator's motion to amend is in effect an improper surreply to defendants' motion to dismiss).

The cases cited by defendants in support of their motion to strike involve courts exercising their discretion not to consider improper surreplies. *See Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002) (declining to consider surreply because plaintiff failed to submit required motion for leave to file a surreply and surreply merely reiterated arguments previously made); *Baptist Mem. Hosp. v. Sebelius*, 765 F. Supp. 2d 20, 31 (D.D.C. 2011) (same)), *cited in* Defendants' Motion to Strike/Opposition at 3.[2] Such authority, however, provides no basis for the motion to strike filed by Defendants here, for Relator's conditional motion to amend seeks specific relief (*i.e.,* leave to amend under specified circumstances) and is manifestly not a surreply. Moreover, the relator did not ask the Court to treat it as such.

Defendants' motion to strike is particularly puzzling in light of the fact that, in their reply in support of their motion to dismiss, defendants argued that relator needed to file a motion to amend and state what additional facts he would plead. *See* Reply Memorandum in Further Support of Defendants' Motion to Dismiss Relator's Second Amended Complaint (ECF 130) at 25 & n.22. Relator has simply done exactly that. Because of Defendants' focus on knowledge, relator included additional allegations regarding defendant Weisel's knowledge in the draft third amended complaint. To facilitate the Court's review of the pertinent issues, the motion summarizes some of the key allegations relevant to knowledge currently in the second amended complaint, along with the new allegations that could potentially be added. Relator has thus followed the proper procedure under the law in this Circuit. *See Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1279-80 & n.4 (D.C. Cir. 1994) (proper procedure for moving to amend in conjunction with opposition to motion to dismiss would have been to file a motion to amend and to tender a proposed amended complaint, and this should have been done at some point during the thirteen months between filing of the motion to dismiss and court's rendering of its decision); *The City Of Dover v. United States Environmental Protection Agency,* Civil Action No. 12-1994

---

[2] Even if a motion to strike a motion were somehow procedurally permissible, which has not been established, "motions to strike, as a general rule, are disfavored." *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty, Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981); *see also Uzlyan v. Solis*, 706 F.Supp.2d 44, 51 (D.D.C. 2010).

(JDB) 2013 WL 6157926 at *4 (D.D.C. Nov. 15,2013) (proper to amend complaint after motion to dismiss filed but before court's ruling on the motion); *see also Stovell v. James*, 810 F. Supp. 2d 237, 251 (D.D.C. 2011) (plaintiff both opposed defendant's motion to dismiss for failure to state a claim and moved for leave to amend his complaint; upon granting motion to dismiss, court considered plaintiff's motion to amend, but motion to amend was denied because plaintiff's proposed amendment changed only one sentence of his complaint and thus still failed to state claim).[3]

## II.    Relator's Motion is Not Futile.

Defendants alternatively argue that relator's conditional motion for leave to amend should be denied because it is futile.  If the Court concluded the second amended complaint were somehow defective, however, amending would plainly not be futile, for defendants' arguments entirely fail to diminish the import of the allegations included in the draft third amended complaint.

Defendants concede that a False Claims Act complaint need only "plead *some* facts from which the court may reasonably infer knowledge or another mental state." Defendants' Motion to Strike/Opposition at 5 (quoting *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 132 (D.D.C. 2008) (internal citation omitted)); *see also U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 552 (D.C. Cir. 2002) (noting, in an FCA case, that "[Rule 9(b)] specifically allows

---

[3]    Defendants' baseless accusation that counsel for relator has somehow consciously disregarded the Federal Rules of Civil Procedure and Local Civil Rules, akin to how rules were violated in the 2006 Tour de France, deserves no substantive response.  *See* Defendants' Motion to Strike/Opposition at 4.  Relator's counsel would simply remind Defendants of the need for civility of argument, even when they are lacking a legal basis for their position.  *See* Rules of the United States District Court for the District of Columbia, Appendix B, D.C. Bar Voluntary Standards for Civility in Professional Conduct, Preamble ("Incivility to opposing counsel, adverse parties, . . . and other participants in the legal process demeans the legal profession, undermines the administration of justice, and diminishes respect for both the legal process and the results of our system of justice."); *id.,* Lawyers Duties to the Court, No. 28 ("We will not degrade the intelligence, ethics, morals, integrity or personal behavior of others, unless such matters are legitimately at issue in the proceeding.").

allegations of 'intent, knowledge, and other condition of mind' to be averred generally")
(citations omitted). Relator's allegations regarding defendants plainly meet this standard.[4]

**Armstrong's and Hamilton's Beliefs re Weisel's Knowledge (DTAC ¶¶157-163)**

Both Lance Armstrong and Tyler Hamilton have now said, just like relator, that they believe Thomas Weisel knew about the doping practices of the USPS Team. Defendant Weisel argues that "neither Armstrong's nor Hamilton's belief is supported by any actual facts demonstrating that Weisel actually knew of or recklessly disregarded the doping. Instead, Armstrong and Hamilton . . . base their beliefs on the mere fact that Mr. Weisel was President of Tailwind when it hired coaches or doctors that are now alleged to have known about or been involved in the doping." Defendants' Motion to Strike/Opposition at 5-6. Once again, Defendants misstate the facts. Relator's proposed amended pleading clearly demonstrates that Armstrong's and Hamilton's beliefs are not based only on the fact that Weisel was President of Tailwind when it hired coaches or doctors involved with doping. The DTAC alleges that Mr. Hamilton specifically referenced the fact that "Gorski worked very closely with Mr. Weisel in managing the team, and that Gorski had made statements to Mr. Hamilton reflecting his awareness of doping on the USPS Team as early as the late 1990s." DTAC ¶ 157.

Similarly, the DTAC alleges that Armstrong said in his interrogatory responses that his belief is "based on, *inter alia*, the following information: in early 1997, the year before Armstrong joined the USPS team, under Weisel's management, the team doctor was fired and Dr. Pedro Celaya and Jonny Weltz were hired to make sure the USPS team qualified for the Tour de France." DTAC ¶ 158. Armstrong also said that "Scott Mercier and Tyler Hamilton described Weisel's conscious decision to implement a program on the USPS team in order to successfully

---

[4] Given that defendants limit their arguments to certain of the additional allegations included in the draft third amended complaint, relator does the same here. To properly judge whether the proposed amendment would be futile, however, it is plainly necessary to evaluate all of the alleged facts, *i.e.,* the facts already alleged in the second amended pleading plus the additional facts alleged in the draft third amended complaint, to determine if the applicable legal standard would be met by the proposed amended pleading.

compete with other elite European teams, virtually all of which had similar doping programs." *Id.*[5]

Neither Mr. Armstrong nor Mr. Hamilton thus even made mention of the fact that Weisel was president of Tailwind as the basis for their beliefs. The facts they referenced are those listed above, and of note is the fact that Mr. Armstrong stated that his belief is "based on, *inter alia*, the following …." Accordingly, Mr. Armstrong presumably has yet additional bases for his belief that he has not yet shared.

As noted above, the simple issue at the pleading stage is whether Weisel's knowledge can be reasonably inferred from the alleged facts. Armstrong and Hamilton both served long tenures on the USPS Team and both have reasonably inferred from the alleged facts that Weisel knew about the doping. This Court can thus easily do the same.[6]

**Weisel's Cover-Up of Armstrong's Positive Doping Test in 1999 (DTAC ¶¶164-68)**

In his response, defendant Weisel attempts to focus the Court on relator's allegations relating to Hein Verbruggen's participation in the cover-up of Armstrong's positive doping test in 1999. These arguments, of course, do not address Emma O'Reilly's sworn statement that she saw Weisel participate in that cover-up. Weisel argues weakly in a footnote that Ms. O'Reilly's statement "regarding her impression of Mr. Weisel's knowledge does not come close to demonstrating that Mr. Weisel knew of or recklessly disregarded the doping." Defendants' Motion to Strike/Opposition at 7 n.4. In fact, even though Ms. O'Reilly's statement does not need to meet such a standard – relator only needs to provide a basis for the court to reasonably

---

[5] Relator's memorandum of points and authorities inadvertently omitted this quote and misnumbered certain of the subsequent paragraphs quoted from the draft third amended complaint ("DTAC"); however, the complete allegation is contained in the DTAC submitted along with relator's Conditional Motion to Amend. *See* Declaration of Paul D. Scott in Support of Conditional Motion to Amend, Exh. A ¶ 158. Defendants' Motion to Strike/Opposition cites to the (correct) paragraph numbers in the DTAC attached as an exhibit to the Declaration of Paul D. Scott in support of the motion. This reply does the same.

[6] Notably, the DTAC also alleges specific details regarding the knowledge of the various coaches, doctors and staff involved in doping under Weisel's watch at Tailwind. DTAC ¶¶ 161-63. Defendant Weisel does not even attempt to address these facts in his discussion of this part of the proposed amended complaint.

infer knowledge – her statement does precisely that.  The other allegations regarding the participation of Mr. Verbruggen and Mr. Ochowicz simply help complete the picture of how Mr. Weisel's knowing scheme to defraud operated, particularly in light of the prior allegations regarding the head of USA cycling Mr. Ochowicz working for Mr. Weisel, and regarding the head of UCI Hein Verbruggen having funds on account with Mr. Weisel's investment bank.

### Comments by Weisel About Doping (DTAC ¶¶ 169-71)

Defendant Weisel argues that his threatening comment to Greg LeMond not to speak up about Armstrong's doping could be construed as consistent with Weisel's claim that he did not know about the doping.  Whether or not that argument is correct, Weisel's threatening comment could also plainly be interpreted as an effort to keep the doping scheme under wraps and deter anyone from confronting Armstrong on the topic.

Defendant Weisel's arguments regarding his alleged comments - that "riders should be able to take what they want" and that doping should be handled "below the surface" - fail for the same reason.   It is irrelevant at this juncture whether these comments could conceivably be interpreted innocently, for they can also plainly be interpreted as showing Mr. Weisel's mindset favored doping and concealing that practice.  *See, e.g., De Csepel v. Republic of Hungary*, 714 F.3d 591, 597 (D.C. Cir. 2013) (in deciding motion to dismiss, court must accept as true all allegations of fact, "drawing all reasonable inferences from those allegations in plaintiffs' favor").

### Letter from the Head of the United States Anti-Doping Agency ("USADA") to the Attorney General of the United States (DTAC ¶ 173)

In his motion to dismiss, defendant Weisel argued that he must be innocent because USADA had only mentioned him in passing in its report.  *See, e.g.,* Defendants' Motion to Dismiss, ECF No. 88, at 9, 36.  That argument failed in light of Ms. O'Reilly's unredacted declaration specifically mentioning Mr. Weisel, *see* DTAC at ¶ 164, and Mr. Tygart's letter to Attorney General Eric Holder calling for the Department of Justice to "join in the reported pending civil action to bring to light and impose financial consequences on the non-sports individuals who owned and controlled the U.S. Postal Service team." DTAC at ¶173.  Defendant

Weisel now speculates that USADA's letter indicates it would have shared any information it found with the United States and thus infers that such evidence does not exist. Defendants' Motion to Strike/Opposition at 8. This argument fails for the same reason as the others, for it clearly is reasonable to infer from USADA's letter that it had grounds for believing Weisel to be knowledgeable, notwithstanding Weisel's arguments to the contrary.

### Weisel's Cycling Career (DTAC ¶ 172)

Weisel argues in a footnote that his decision to hire Eddie "Eddie B" Borysewicz to be his personal coach and the USPS Team coach "hardly suggests that Mr. Weisel was aware of doping by the riders on the USPS cycling team decades later." Defendants' Motion to Strike/Opposition at 7 n.5. But the fact that Mr. Weisel repeatedly hired a man known for his involvement with blood boosting in the 1984 Olympics is indeed relevant, for it is consistent with Weisel's practice of surrounding himself with coaches and management personnel involved with doping. Weisel can continue to claim it was all a coincidence if he wishes. But once again, the Court can easily infer from these facts, along with others set forth in the complaint, that Weisel had actual knowledge of, recklessly disregarded, or willfully ignored the USPS Team doping program.

## III.   Defendants' Additional Procedural Arguments Are Without Merit.

Defendants object to the fact that relator characterized his motion as a "conditional" motion to amend. In referring to his motion as conditional, however, relator was merely accounting for the obvious fact that amending the complaint in the proposed manner would be unnecessary if the Court were to rule against defendants' motion to dismiss.

Defendants similarly object to relator's request for an opportunity to amend if the Court concludes the draft Third Amended Complaint fails to allege Mr. Weisel's knowledge sufficiently or it "is found deficient in some other manner." Defendants' Motion to Strike/Opposition at 8 n. 6. Defendants argue in support that "[r]elator fails to identify any facts that he could plead that would cure such defects." *Id.* (citation omitted). But the obvious flaw in this argument is that the relator cannot reasonably be expected to propose revised pleadings to address the myriad issues raised by defendants Weisel and Ross Investments in their motion to

dismiss. As defendants focused on scienter in their motion to dismiss and at oral argument, relator has attempted to provide a draft amended complaint that adds yet additional details on that issue. If the Court were to identify some other issue, however, relator would reasonably seek the opportunity to amend to address any other such deficiencies as well.

   Defendants also argue that relator's motion should be rejected as untimely. In support, however, they cite no authority whatsoever. To the contrary, the available authority indicates that a motion to amend is timely if it is filed prior to a court's decision on a motion to dismiss. *See Kowal v. MCI Communications Corp.,* 16 F.3d at 1279-80 & n.4; *City of Dover, supra,* 2013 WL 6157926 at *4. Moreover, even if there had been some sort of delay, that would not provide a basis for denying leave to amend. *See Caribbean BC Sys. v. Cable & Wireless PLC*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) (holding that district court erred in denying amendment as "untimely" and noting that "Rule 15(a) does not prescribe any time limit within which a party may apply to the court for leave to amend . . . . In most cases delay alone is not a sufficient reason for denying leave . . . . If no prejudice [to the non-moving party] is found, the amendment will be allowed.") (quoting Wright & Miller, Federal Practice & Procedure: Civil 2d § 1488, at 652, 659, 662-69 (1990 & Supp. 1997)). Defendants' claims as to timeliness are thus without merit.

## CONCLUSION

   Based on the foregoing, relator respectfully requests that if the Court were to grant defendant Weisel and Ross Investment's motion to dismiss relator's SAC based on a failure to satisfy Rule 9(b), any such dismissal be without prejudice and would seek leave of Court to amend his complaint. If the draft Third Amended Complaint filed with relator's conditional motion to amend did not adequately address any deficiencies identified by the Court with regard to knowledge, or the SAC is found deficient in some other manner, relator respectfully requests that he be given leave to amend to attempt to address any such deficiencies. In the event the Court concludes that relator's SAC already satisfies Rule 9(b) as to Mr. Weisel and Ross Investments, or amendment would not otherwise be necessary, then relator respectfully withdraws the motion. The requested amendment, if necessary, would be relator's first

opportunity to address any deficiencies identified by the Court and to incorporate additional information to cure the same.  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotations omitted) ("[L]eave to amend is almost always allowed to cure deficiencies in pleading fraud.").

Dated:  December 30, 2013

                                                Respectfully submitted,

                                                _____/s/_____
                                                Paul D. Scott
                                                pdscott@lopds.com
                                                California State Bar No. 145975
                                                Admitted *Pro Hac Vice*

                                                _____/s/_____
                                                Lani Anne Remick
                                                laremick@lopds.com
                                                California State Bar No. 189889
                                                USDC D.C. Bar No. PA0045
                                                Jon L. Praed
                                                USDC #450764
                                                DC Bar #51665
                                                LAW OFFICES OF PAUL D. SCOTT, P.C.
                                                Pier 9, Suite 100
                                                San Francisco, California 94111
                                                Tel: (415) 981-1212
                                                Fax: (415) 981-1215

                                                Attorneys for Relator Floyd Landis