IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* FLOYD LANDIS , | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:10-cv-00976-RLW |
| v. | ) ) | |
| TAILWIND SPORTS CORPORATION, *et al.,* | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION TO COMPEL RESPONSES TO RELATOR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT TAILWIND SPORTS CORPORATION AND IN OPPOSITION TO MOTION OF BLAIR G. BROWN AND RACHEL F. COTTON TO WITHDRAW AS COUNSEL FOR TAILWIND SPORTS CORP. AND TAILWIND SPORTS, LLC**

## I.   <u>INTRODUCTION</u>

On December 22, 2013, relator served his First Set of Requests for Production of Documents to Defendant Tailwind Sports Corporation. *See* Declaration of Paul D. Scott ("Scott Decl."), Exh. A. In a "Preliminary Statement" to its responses, Tailwind Sports Corporation ("Tailwind") stated that it is "dissolved and defunct," "has no office, no employees and no resources," "has no documents in its possession, custody or control" and "[t]hus, it has no documents to produce in response to these Requests." *See* Tailwind Responses, Scott Decl., Exh. B, at p. 1. In its responses to all but five of the 90 requests, Tailwind represented that it "does not have in its possession, custody or control any documents responsive to this Request." *Id.* at pp. 13-61. Tailwind did not agree to produce any documents responsive to any Request. *Id.* In prior discussions with counsel for relator, however, counsel for Tailwind had indicated there were two storage facilities

1

containing documents relating to Tailwind and that Tailwind was working on a plan for production.  Scott Decl. at ¶ 3.

Upon receiving Tailwind's written response to relator's Requests, which indicated that Tailwind was not in possession, custody or control of responsive documents, relator's counsel asked Tailwind's counsel for an answer as to who held the previously-mentioned documents in storage.  After multiple exchanges of correspondence, counsel for Tailwind suggested that counsel for relator look in documents previously produced by defendant Capital Sports and Entertainment, Inc. ("CSE") for the answer to his question regarding the whereabouts of Tailwind's documents.  *See* Scott Decl. at ¶ 11 & Exh. C at 2 (March 3, 2014 email from B. Brown to P. Scott).

The documents produced by defendant CSE included a Liquidating Trust Agreement ("Agreement") that indicated Tailwind's assets were to be transferred to a liquidating trust called TSC Liquidation, LLC ("TSC") upon the dissolution of Tailwind.  Scott Decl. at ¶ 28 & Exh. G at 1.  Thus, as Mr. Brown later explained, "to the extent the dissolved entity Tailwind Sports Corp. ("Tailwind") had possession of documents at the time of its dissolution, Tailwind transferred those documents to the liquidating trust."  *Id.* at ¶ 19 & Exh. D at 4.

According to the terms of the Agreement, TSC was to preserve Tailwind's documents for six years after TSC's distribution of the corporation's assets.  Scott Decl., Exh. G at 7, par. 4.2.  Tailwind was dissolved as of December 31, 2007.  *See* Motion to Withdraw at ¶ 4.  Therefore, in accordance with the terms of the Agreement, TSC should have held Tailwind's documents until *at least* six years later, *i.e.,* December 31, 2013, and possibly a much later date, as the six-year retention period was supposed to run from the date when all of Tailwind's assets had been distributed.

TSC, however, was cancelled-voided on or about June 1, 2010, within weeks after Mr. Landis' allegations regarding Tailwind and the other defendants became public, and substantially prior to the six-year period set forth in the Agreement.  *See* Scott Decl. at

¶¶ 27, 33 & Exh. F, Declaration of Laura Hundley Ritts at ¶ 2, Exh. J, Delaware Secretary of State status report re TSC.

The Liquidating Trust Agreement identified Laura Hundley Ritts, the Chief Financial Officer of CSE, as the person to whom notices for TSC should be addressed. Scott Decl., Exh. G. at 15.  In discussions with relator's counsel, counsel for CSE Marc Harris indicated that Ms. Ritts is still an employee of CSE and continues to have access to documents transferred by Tailwind to the liquidating trust.  Scott Decl. at ¶ 16. Accordingly, counsel for CSE indicated that, in response to relator's document requests to CSE which include requests for documents related to Tailwind, CSE plans to produce responsive non-privileged documents currently located in a storage facility located in Austin, Texas.  Scott Decl. at ¶¶ 16-17 & 26; Exhs. D & E.

Counsel for CSE has also indicated, however, that the documents in storage accessible to CSE/Ms. Ritts are not the complete records of Tailwind.  Scott Decl. at ¶ 16-17 & Exh. D at pdf page 4 (March 13, 2014 email from M. Harris to P. Scott).   He has stated that CSE only has access to documents relating to Tailwind from the period that it operated the company in 2003 and later.  *Id.*  He has declined to say who precisely has custody of the documents or whether the documents accessible to CSE were once Tailwind's records.  *Id.*  Moreover, he has indicated that, "[t]here is only one storage facility within my clients' control that contains documents related to this case," Scott Decl. at ¶ 26 & Exh. E, as opposed to the two storage facilities referenced by Mr. Brown.

Tailwind, through its counsel Mr. Brown, has advised relator that defendants Thomas Weisel and/or Ross Investments, Inc. have produced documents to the United States pertaining to Tailwind, and that the documents in Tailwind's possession at the time of its dissolution were transferred to the liquidating trust TSC, but Tailwind has not answered relator's inquiries as to:  a) whether Tailwind transferred any corporate records to Weisel or Ross before the dissolution of the company,  b) if so, what records were transferred by the corporation to Weisel and/or Ross, c) whether Tailwind transferred its corporate records to any other persons or entities other than TSC (the liquidating trust),

CSE, Weisel or Ross.  Tailwind has also not explained why it does not have a right to possession, custody or control of the records once in the possession of Tailwind, but now possibly in the possession of a CSE employee or Weisel, particularly in light of the fact that the liquidating trust charged with holding Tailwind's documents was prematurely cancelled (*i.e.,* before the expiration of the six-year period specified in the Agreement for it to hold Tailwind's documents).

Tailwind's reticence is made more puzzling by the fact that, while it is claiming in this action that it does not have possession, custody or control of any responsive documents, it was somehow able to access those documents when it needed them for its own purposes, *viz*, submitting authenticated copies of those records in a May 2013 filing in <u>Acceptance Insurance Company v. Lance Armstrong and Tailwind Sports Corp.</u>, No. D-1-GN-1-13-00761 (Travis County, Texas).  *See* Scott Decl. at ¶ 27 & Exh. F, Declaration of Laura Hundley Ritts and Exhibits thereto.

Now Tailwind's counsel has filed a motion to withdraw from this case, and he has indicated that he has no knowledge that any lawyer will succeed him as counsel for the company.  Scott Decl. at ¶ 29 & Exh. H.  Accordingly, if relator is not able to get a response from Tailwind now as to the foregoing basic questions, then relator will be unable to get Tailwind's position on these questions later.

Relator attempted on multiple occasions to have counsel for Tailwind join in a call to the Court to address this discovery matter prior to engaging in motion practice (even providing an exemplar of one of the Court's standard scheduling orders which instructs counsel to follow this approach to discovery disputes), but counsel declined to participate in a call to the Court.  Scott Decl. at ¶¶ 10-14, 24 & Exhs. C, D.  This motion followed.

## II.  <u>STATEMENT OF FACTS</u>

This case involves allegations that defendants submitted, caused to be submitted, and conspired to submit tens of millions of dollars of false claims to the federal government, while engaged in an illegal doping conspiracy in violation of

sponsorship contracts with the United States Postal Service.  *See* ECF No. 42 (Relator's Second Amended Complaint).

On December 22, 2013, relator served Relator's First Set of Requests for Production of Documents by Defendant Tailwind Sports Corporartion.  Scott Decl. at ¶ 2 & Exh. A.

On January 17, 2014, Tailwind's counsel Blair Brown requested an extension of time to respond to the First Set of Requests. Scott Decl. at ¶ 3.  In a conversation with Mr. Brown regarding the extension, counsel for relator inquired as to the status of Tailwind's efforts to produce documents.  *Id*.  Mr. Brown responded that he understood there were responsive documents in two different storage facilities.  *Id*. He further indicated that Tailwind was working on a plan for production of the documents and was trying to determine what was in the storage facilities.  *Id.* Counsel for relator subsequently agreed to a two-week extension of time for Tailwind to provide its responses, based in part on these representations.  *Id.*

On February 3, 2014, Defendant Tailwind Sports Corp.'s Responses to Relator's First Set of Requests for Production of Documents to Defendant Tailwind Sports Corporation were served on relator and the other parties.  Scott Decl. at ¶ 4 & Exh. B.  In Tailwind's responses, it stated in almost every instance (with the exception of responses 70, 71, 73, 89 and 90) that "Tailwind does not have in its possession, custody, or control any documents responsive to this Request."  *See* Scott Decl., Exh. B, *passim.*  Tailwind did not agree to produce any documents responsive to any Request.  *Id.*

On February 18, 2014, counsel for relator sent an email to Mr. Brown in an effort to meet and confer regarding Tailwind's response, noting that Mr. Brown had said there were relevant documents in two storage facilities, and asking him, *inter alia*, to "please advise as to what became of those documents and who has possession, custody or control over those storage facilities."  Scott Decl. at ¶ 6 & Exh. C.

In his emailed response, Mr. Brown acknowledged that he "did indicate that there were documents regarding Tailwind Sports Corp. ("Tailwind") in storage" but he said he had "further analyzed Tailwind's relationship to those documents and concluded that Tailwind does not have possession, custody, or control of any documents." He also added that he was "unaware of any obligation of Tailwind to identify at this time any custodian of those documents. If you believe that there is authority imposing such an obligation, please bring it to my attention." Scott Decl. at ¶ 7 & Exh. C.

Counsel for relator subsequently exchanged multiple additional emails with Mr. Brown between February 20, 2014 and March 7, 2014 wherein he provided reasoning and relevant authority for why Tailwind should provide more complete responses to relator's request for production of documents. *See* Scott Decl. at ¶ 8 & Exh. C. Then, in a call on Monday March 10, 2014, counsel for relator and counsel for Tailwind discussed relator's document request to Tailwind. Scott Decl. at ¶ 14-15. Counsel subsequently exchanged emails with different characterizations of the call, *see* Scott Decl. at ¶¶ 17, 19 & Exh. D, but the following points now appear to be undisputed by Mr. Brown: He indicated the documents in Tailwind's possession at the time of its dissolution were transferred to a liquidating trust. Scott Decl. at ¶ 15. He also indicated that the documents in storage were going to be produced by CSE, and he suggested that counsel for relator should contact CSE's attorney Marc Harris to confirm this. *Id.* According to Mr. Brown, the principal sources for documents relating to Tailwind were going to be Weisel or Ross or CSE, who he said had produced documents related to Tailwind to the Government. *Id.*

Pursuant to Mr. Brown's suggestion, counsel for relator spoke to CSE's counsel Mr. Harris on Tuesday March 11, 2014. *See* Scott Decl. at ¶ 16. Counsel for CSE and counsel for relator also exchanged emails with their respective accounts of this conversation. Scott Decl. at ¶ 17-18 & Exh. D. Counsel for relator summarized the conversation in an email to Mr. Harris and Mr. Brown as follows:

I spoke to Marc on Tuesday, and he advised me that, while he did not want to comment on who actually owns the documents, CSE has access to some Tailwind documents through CSE's employee Laura Ritts, and his plan was to review those documents for responsiveness to our document request addressed to CSE, which was broader than the Government's request.  He said that CSE did not have all of Tailwind's documents, however, because CSE only started providing management services for Tailwind in 2003.  For the time they were managing the company, he said, CSE has Tailwind's documents.  He indicated he would check on the number of facilities in which the documents were stored.

Scott Decl., Exh. D.

Mr. Harris responded with the following email:

Paul:  I'm not sure your email accurately describes our conversation, or at least what I meant to convey.  I did not say that CSE has "Tailwind's documents" or that Tailwind transferred its documents (or any portion of them) to CSE when CSE took over management of the team.  Nor did I say that we have access to "Tailwind documents" through Ms. Ritts.  CSE has documents that relate to the time period during which it managed the Tailwind cycling team.  We intend to produce those documents to the extent they are non-privileged and responsive to the discovery request that was served on CSE.

Scott Decl. at ¶ 18 & Exh. D.

After additional exchanges of email correspondence regarding relator's inquiries concerning Tailwind's apparent transfers of documents prior to its dissolution, Mr. Brown stated in a March 14, 2014 email, "Please limit the time period about which you are inquiring."  Scott Decl. at ¶ 21 & Exh. D.  He also inquired as to whether I had "asked counsel for Weisel and Ross formally or informally whether they received any documents firm (sic) Tailwind?"  *Id.*

On March 14, 2014, I responded to Mr. Brown's questions with the following statements in an email:

We are making this inquiry of Tailwind because Tailwind is the defendant telling us it does not have documents relating to Tailwind that were once in its possession, and we want Tailwind's understanding of what happened to those documents.  As you are moving to withdraw from representing Tailwind, we are seeking to resolve these issues before that occurs.

Scott Decl. at ¶ 22 & Exh. D.

7

My March 14, 2014 email also posed the following questions:

One matter you appear to have knowledge about is a transfer of documents from Tailwind to Mr. Weisel and/or Ross Investments at some point prior to the dissolution of Tailwind.  As we do not know when that transfer took place, we are unable to provide you with a time-frame with regard to our inquiries relating to that transfer or transfers.  If you are aware of documents relating to Tailwind being transferred from its possession to Mr. Weisel, Ross Investments, CSE, TSC Liquidation LLC or anyone else during the entire period, we would like to know about such transfers, as that will help us understand where the documents are that you have indicated are no longer in in Tailwind's possession.  You have now told us about the transfer of documents to the liquidating trust upon the dissolution of Tailwind.  What we would like you to tell us about are any other transfers.

Scott Decl. at ¶ 23 & Exh. D.

Mr. Brown did not respond to the March 14, 2014 email and has still not done so despite a follow-up email on March 18, 2014.  Scott Decl. at ¶ 24 & Exh. D.  Counsel for relator subsequently advised Mr. Brown in an email dated March 19, 2014 that, in light of his failure to respond and his refusal to join in a call to the Court, relator would be moving to compel.  *Id.*

In a March 18, 2014 email, Mr. Harris advised counsel for relator that "[t]here is only one storage facility within my clients' control that contains documents related to this case.  It is in Austin."  Scott Decl. at ¶ 26 & Exh. E.  As noted above, Mr. Brown had initially indicated that he was aware of two storage facilities relating to Tailwind.  Scott Decl. at ¶ 3, 7 & Exh. C.

In a March 23, 2014 email, pursuant to counsel for Tailwind's suggestion, counsel for relator made the following inquiry of counsel for Mr. Weisel and Ross Investments:  "Could you please advise whether Tailwind Sports Corp. transferred any documents or records to the possession, custody or control of Mr. Weisel or Ross Investments?  If so, are you able to tell me what documents or records were transferred, to whom, and when, and who currently has possession, custody or control of those documents?"  Scott Decl. at ¶ 31 & Exh. I.  Counsel for Mr. Weisel responded on March 27, 2014 but failed to answer these questions.  *Id.* at ¶ 32.

III.     **ARGUMENT**

    A.     **Applicable Legal Standards**

        1.     **Responding to Requests for Production**

Federal Rule of Civil Procedure 34 provides that, in responding to each item or category of a document request, the responding party "must either state that inspection and related activities will be permitted as requested or state an objection to the request, *including the reasons*." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). "[T]he party objecting to discovery requests must justify its objections by explaining them in detail as opposed to relying on general assertions." *Meijer, Inc. v. Warner Chilcott Holdings Co.,* 245 F.R.D. 26, 30 (D.D.C. 2007) (citations omitted). In responding to a request for production of documents under Rule 34, and in meeting and conferring about the same, a responding party must provide sufficient information in support of its objection to allow the requesting party to determine whether or not to move to compel. *See* Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

        2.     **"Possession, custody or control"**

Pursuant to Rule 34, a responding party must produce all discoverable documents, information or things in response to a request that are in that party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A party has "control" over documents when the party has the "legal right, authority or ability to obtain documents upon demand." *United States ITC v. ASAT, Inc.*, 411 F.3d 245 (D.C. Cir. 2005) (citation omitted); *see also Tequila Centinela, S.A. de C.V. v. Bacardi & Co.,* 242 F.R.D. 1, 7 (D.D.C. 2007) ("With regards to the term 'control,' it has been well established that the test for control is not defined as mere possession, but as the legal right to obtain such documents on demand.") (internal quotes omitted) (citing, *inter alia*, 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2210 (2d ed. 1994) ("Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy.")).

### 3.      Motion to Withdraw

When an attorney 'agrees to undertake the representation of his client,' he is generally obligated to 'see the work through to completion.'" *Hajjar-Nejad v. George Washington University*, 802 F. Supp.2d 166, 179 (D.D.C. 2011) (quoting *Poblete v. Rittenhouse Mortg. Brokers*, 675 F. Supp. 2d 130, 136 (D.D.C. 2009)).  The decision whether to allow counsel to withdraw is committed to the sound discretion of the trial court.  *Poblete*, 675 F. Supp.2d at 136 (citation omitted).  "When ruling on a motion to withdraw, courts may consider the disruptive impact that the withdrawal will have on the prosecution of the case." *Laster v. District of Columbia*, 460 F. Supp.2d 111, 113 (D.D.C. 2006).  In addition, "Local Civil Rule 83.6(d) guides the court's ruling on an attorney's motion to withdraw.  The rule provides that '[t]he court may deny an attorney's motion for leave to withdraw if the withdrawal would unduly delay trial of the case, or be unfairly prejudicial to any party, or otherwise not be in the interests of justice.'" *Poblete,* 675 F. Supp. at 147 (citing L.Cv.R. 83.6(d)).

### B.      Tailwind should be ordered to provide complete information regarding the disposition of its documents responsive to relator's requests for production.

In *Ascom Hasler Mailing Systems v. United States Postal Service*, 267 F.R.D. 1 (D.D.C. 2010), Magistrate Judge Facciola addressed concerns similar to those of relator here, where the responding party had once been in possession of requested documents but it was unclear what had become of those documents.   In this context, the court ordered the responding party to meet with the requesting party and provide certain information to the best of the responding party's knowledge, including *inter alia*, whether the requested documents ever existed and, if so, "who was last known to have possession, custody or control of" the documents.  *Id.* at 14.

In the instant case, defendant Tailwind has represented that the documents within its possession, custody or control upon its dissolution were transferred to a liquidating trust.  But the liquidating trust TSC Liquidation, LLC was cancelled in June 2010

(notwithstanding a provision in the liquidating trust agreement that called for TSC to retain Tailwind's documents for six years after the distribution of Tailwind's assets). Tailwind has indicated that CSE may be a source of those documents, but Tailwind has not identified the specific entity or individual who, to its knowledge, currently has lawful possession, custody or control of the records transferred to TSC upon the dissolution of Tailwind.  As described above, counsel for CSE acknowledges that it plans to produce documents responsive to some of the same requests as were submitted to Tailwind, but he has specifically refused to acknowledge that any such documents to be produced by CSE are "Tailwind's documents," and has stated that CSE only has documents from 2003 and later.

Counsel for Tailwind has also indicated that defendants Thomas Weisel and/or Ross Investments, Inc. have documents relating to Tailwind, which Tailwind contends have previously been produced to the United States, but Tailwind has not responded to relator's inquiries as to whether documents relating to and possessed by Tailwind were, in fact, transferred to Mr. Weisel or Ross Investments and if so, which documents and when.  Tailwind has also not responded to relator's question as to whether some of the documents relating to and possessed by Tailwind were transferred to anyone else (other than Mr. Weisel, Ross Investments, CSE, or TSC Liquidation, LLC) to Tailwind's knowledge.  Tailwind either knows the answers to these questions or it does not.

When last asked the foregoing questions, Tailwind's counsel asked relator about the timeframe of his request.  Scott Decl. at ¶ 21 & Exh. D.   Relator responded as follows:

> One matter you appear to have knowledge about is a transfer of documents from Tailwind to Mr. Weisel and/or Ross Investments at some point prior to the dissolution of Tailwind.  As we do not know when that transfer took place, we are unable to provide you with a time-frame with regard to our inquiries relating to that transfer or transfers.  If you are aware of documents relating to Tailwind being transferred from its possession to Mr. Weisel, Ross Investments, CSE, TSC Liquidation LLC or anyone else during the entire period [of Tailwind's existence], we would like to know about such transfers, as that will help us

11

> understand where the documents are that you have indicated are no longer in . . .
> Tailwind's possession.

Scott Decl. at ¶ 22 & Exh. D.  Tailwind has failed to respond further since this email from relator's counsel.  Scott Decl. at ¶ 23.  As counsel for Tailwind had suggested, counsel for relator also asked counsel for Weisel and Ross Investments about Tailwind's documents, but received no response.  *Id.* at ¶ 30.

As noted above, "the party objecting to discovery requests must justify its objections by explaining them in detail as opposed to relying on general assertions." *Meijer, Inc.*, *supra*.  Accordingly, Tailwind may not simply assert that it does not have possession, custody or control of the requested documents while simultaneously refusing to provide complete information as to who does.  Rather, consistent with this court's ruling in *Ascom Hasler Mailing Systems*, *supra*, Tailwind should be required to provide the complete factual basis for its assertions, including answering the above questions posed by relator.  *See also Lehman Brothers Holdings v. Universal American Mortgage Co.*, No. 13-cv-00088 CMA MEH, 2013 WL 6470285 at **2-3 (D. Colo. December 9, 2013) (where producing party's affidavit in support of its contention that it did not have "possession, custody or control" of requested document was unclear and possibly inconsistent, court ordered producing party to produce an affidavit "answering the questions and concerns" of the requesting party as stated in requesting party's reply brief).

**C.      Tailwind's counsels' motion to withdraw should be denied until Tailwind provides the requested information regarding the disposition of its documents.**

Tailwind's counsels' motion to withdraw should be denied until such time as Tailwind supplies a complete factual response to relator's questions regarding the "possession, custody, or control" of the requested documents (or produces the requested documents).  Local Civil Rule 83.6(d) provides that a motion to withdraw may be denied if counsel's withdrawal would be "unfairly prejudicial to any party" or would "otherwise

not be in the interest of justice." *See also Laster v. District of Columbia*, *supra* (court may consider disruptive impact withdrawal would have on prosecution of the case).

As described above, it appears that Tailwind has further knowledge regarding the disposition of its documents, but Tailwind has declined to provide that information to relator. Counsel has also stated that, to his knowledge, if he is permitted to withdraw, no other attorney will be representing Tailwind. Thus, if counsel is permitted to withdraw without providing the requested information, as a practical matter there will be no way for relator to learn Tailwind's position regarding the "possession, custody or control" of Tailwind's documents, including possibly the identity of any other parties or third parties from which Tailwind (or relator) may be able to obtain the requested documents, or some of them. Accordingly, in order to avoid unfair prejudice to plaintiffs and a disruptive impact on their prosecution of the case, Tailwind's motion should be held in abeyance until Tailwind provides the requested information. *See Service Employees Int'l v. Aliquippa Comm. Hosp.*, 628 F. Supp.2d 168, 170 (D.D.C. 2008) (where plaintiff objected to withdrawal of defense counsel who represented that corporate defendant had "sold its assets and ceased operations," was "no longer a viable entity," and was "defunct," court had ordered motion to withdraw "held in abeyance" until defense counsel attempted to gather payroll records requested by plaintiff).

## IV.    **CONCLUSION**

The liquidating trust which should be holding Tailwind's records was prematurely cancelled in June 2010, shortly after Mr. Landis' allegations became public. *See* Scott Decl., Exh. F, Declaration of Laura Hundley Ritts at ¶ 2, and Exh. J, Delaware Secretary of State status report re TSC. Nevertheless, Tailwind was subsequently able to obtain and file copies of the Tailwind records it needed to support its position in a separate Texas state court case. Tailwind was also able to file a motion to dismiss in the present action. Now, however, when faced with discovery, Tailwind claims that it cannot produce its former records and it has no obligation to explain with clarity what became of them before its counsel withdraws and the entity becomes immune to further inquiry.

Based on the foregoing, relator respectfully requests an order from this Court compelling defendant Tailwind, prior to the withdrawal of its counsel, to supplement its responses to Relator's First Request for Production of Documents to Tailwind Sports Corporation with the following information:  1) who presently has possession, custody or control of the documents or records formerly in the possession of Tailwind that are responsive to relator's requests, with reasonable specificity as to which categories of documents or records are held by which custodians; 2) the dates on which Tailwind or others transferred the various categories of documents and records to the current custodians referenced by Tailwind; and 3) the basis for Tailwind's position that Tailwind no longer has a right to possession, custody or control of the documents or records of Tailwind Sports Corporation.  Alternatively, Tailwind could produce the requested documents.

A proposed order is submitted herewith.

Dated:  March 27, 2014                        Respectfully submitted,


_____/s/_____
Paul D. Scott
pdscott@lopds.com
California State Bar No. 145975
Admitted *Pro Hac Vice*


_____/s/_____
Lani Anne Remick
laremick@lopds.com
California State Bar No. 189889
U.S.D.C. No. PA0045
Jon L. Praed
U.S.D.C. No. 450764
D.C. Bar No. 51665
LAW OFFICES OF PAUL D. SCOTT, P.C.
Pier 9, Suite 100
San Francisco, California 94111
Tel: (415) 981-1212
Fax: (415) 981-1215

Attorneys for Relator Floyd Landis

14