# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

UNITED STATES *ex rel.* LANDIS,

                        Plaintiffs,

      v.

TAILWIND SPORTS CORP., TAILWIND
SPORTS LLC, LANCE ARMSTRONG, and
JOHAN BRUYNEEL,

                    Defendants.

Civil Action No. 10-00976 (RLW)

**ECF**

---

## DEFENDANT LANCE ARMSTRONG'S
## MOTION TO COMPEL PRODUCTION AND QUASH DEPOSITIONS

### EXPEDITED BRIEFING AND ORAL ARGUMENT REQUESTED

Pursuant to Federal Rules of Civil Procedure 26(c)-(d) and 37(a), Defendant Lance

Armstrong hereby moves this Court for an order (1) quashing the government's pending

deposition notices and (2) compelling the government to produce documents responsive to Lance

Armstrong's First Set of Requests for Production.  Pursuant to Local Civil Rule 7, Armstrong

respectfully requests expedited briefing so that this motion may be heard before June 23, 2014,

the date noticed for Armstrong's deposition.  The grounds for this motion are contained in the

accompanying memorandum of points and authorities.  Factual support for the motion is set forth

in a concurrently-filed declaration.  Proposed orders are attached.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated: June 4, 2014

By:  */s/ Sharif E. Jacob*

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

By:  */s/ Robert D. Luskin*
ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar #
478799)
SQUIRE PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

2

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

UNITED STATES *ex rel*. LANDIS,

                         Plaintiffs,

         v.

TAILWIND SPORTS CORP., TAILWIND
SPORTS LLC, LANCE ARMSTRONG, and
JOHAN BRUYNEEL,

                         Defendants.

Civil Action No. 10-00976 (RLW)


                         **ECF**


## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LANCE ARMSTRONG'S MOTION TO COMPEL PRODUCTION AND QUASH DEPOSITIONS

# TABLE OF CONTENTS

**PAGE NO.**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ...............................................................................................2

III.  ANALYSIS.........................................................................................................5

    A.    The government seeks to take depositions without producing any
        documents from its investigation. ...........................................................................5

    B.    Years after it began its investigation, the government has yet to produce
        documents from that investigation..........................................................................7

IV.   CONCLUSION..................................................................................................21

# TABLE OF AUTHORITIES

**PAGE NO.**

**Federal Cases**

*Anderson v. United Parcel Serv., Inc.*
No. 09-2526-KHV, 2010 WL 4822564 (D. Kan. Nov. 22, 2010) ...............................................8

*\*Athridge v. Aetna Cas. & Sur. Co.*
184 F.R.D. 181 (D.D.C. 1998).......................................................................................7, 8, 11

*Babyage.com, Inc. v. Toys "R" Us, Inc.*
458 F. Supp. 2d 263 (E.D. Pa. 2006) ......................................................................................2

*\*Boisjoly v. Morton Thiokol, Inc.*
706 F. Supp. 795 (D. Utah 1988)............................................................................................11

*Cent. Transp. Int'l, Inc. v. Global Advantage Distrib.*
No. 2:06-cv-401, 2007 U.S. Dist. LEXIS 81664 (M.D. Fla. Sept. 11, 2007)...........................9

*Chiperas v. Rubin*
No. 96-130, 1998 WL 765126 (D.D.C. Nov. 3, 1998) ............................................................13

*Costa v. AFGO Mech. Servs., Inc.*
237 F.R.D. 21 (E.D.N.Y. 2006)................................................................................................6

*Donovan v. United States Postal Serv.*
530 F. Supp. 894 (D.D.C. 1981)..............................................................................................14

*Doubleday v. Ruh*
149 F.R.D. 601 (E.D. Cal. 1993) ...........................................................................................16

*Gen. Elec. Co. v. Johnson*
No. 00-2855, 2007 U.S. Dist. LEXIS 8275 (D.D.C. Feb. 5, 2007).........................................10

*\*Goldberg v. United States*
425 U.S. 94 (1976).............................................................................................................14, 15

*Hobson v. Wilson*
737 F.2d 1 (D.C. Cir. 1984).....................................................................................................18

*\*In re Cal. Pub. Utilities Com.*
892 F.2d 778 (9th Cir. 1989) ..................................................................................................16

*Jones v. Prince George's County*
No. 00-2902, 2002 U.S. Dist. LEXIS 27319 (D.D.C. Oct. 3, 2002) .......................................12

*Kifle v. Parks & History Ass'n
  No. 98-00048, 1998 U.S. Dist. LEXIS 22250 (D.D.C. Oct. 15, 1998) .......................................9

*Lohrenz v. Donnelly
  187 F.R.D. 1 (D.D.C. 1999)...........................................................................................5

*Mason v. T. K. Stanley, Inc.
  229 F.R.D. 533 (S.D. Miss. 2005) ................................................................................6

Natural Res. Def. Council v. Curtis
  189 F.R.D. 4 (D.D.C. 1999)..........................................................................................10

Pleasants v. Allbaugh
  208 F.R.D. 7 (D.D.C. 2002) ......................................................................................9, 12

*Ricoh Co, Ltd.. v. Aeroflex Inc.
  219 F.R.D. 66 (S.D.N.Y. 2003) ...................................................................................16

*Roberts v. Americable Int'l., Inc.
  883 F. Supp. 499 (E.D. Cal. 1995) .........................................................................1, 5, 6

Rofail v. United States
  227 F.R.D. 53 (E.D.N.Y. 2005) .....................................................................................6

Salgado by Salgado v. Gen. Motor Corp.
  150 F.3d 735 (7th Cir. 1998) ........................................................................................19

*Saunders v. United States
  316 F.2d 346 (D.C. Cir. 1963) ................................................................................14, 15

*Sonnino v. Univ. of Kan. Hosp. Auth.
  220 F.R.D. 633 (D. Kan. 2004) ..................................................................................8, 9

United States ex rel. Costa v. Baker & Taylor, Inc.
  955 F. Supp. 1188 (N.D. Cal. 1997)...............................................................................1

United States ex rel. Fisher v. Network Software Assocs.
  217 F.R.D. 240 (D.D.C. 2003)......................................................................................13

*United States ex rel. Herbert v. Nat'l Acad. Of Sciences,
  No. 90-2568, 1992 U.S. Dist. LEXIS 14063, *20-21 (D.D.C. September 5, 1992)..................11

*United States ex rel. Stone v. Rockwell Int'l Corp.
  144 F.R.D. 396 (D. Colo. 1992) ...................................................................................12

United States ex rel. Summers v. LHC Group, Inc.
  623 F.3d 287 (6th Cir. 2010) ........................................................................................18

**Federal Statutes**

31 U.S.C. §3731(b)(2) ...................................................................................16

31 U.S.C. § 3733 .........................................................................................12

**Federal Rules**

Fed. R. Civ. P. 34(b) ......................................................................................7

Fed. R. Civ. Proc. 26(a)(1)(A)(iii) ................................................................19

Fed. R. Civ. Proc. 37(a)(3)(B)(iv)..................................................................7

Fed. R. Civ. Proc. 37(a)(4).............................................................................7

Fed. R. Civ. Proc. 37(c)(1)......................................................................19, 20

Federal Rule of Civil Procedure 26 ...........................................................3, 15

Federal Rule of Civil Procedure 26(b)(1) ..................................................8, 13

Federal Rule of Evidence 408......................................................................17

Federal Rule of Criminal Procedure 6(e).......................................................9

Civil Local Rule 7.........................................................................................5

# I.    INTRODUCTION

Since 2010, the government has conducted an unfettered investigation into the use of performance-enhancing substances in professional cycling. While the case was under seal, the government and its allies used almost every discovery device in its arsenal: convening a grand jury to take testimony, issuing subpoenas, taking voluntary statements, and collecting affidavits. In the course of its investigation, the government collected thousands of pages of documents. "This practice of conducting one-sided discovery for months or years while the case is under seal was not contemplated by Congress and is not authorized by the [False Claims Act]." *United States ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1191 (N.D. Cal. 1997).

Despite its exhaustive and unauthorized investigation, the government has not yet produced documents from that investigation. The government's initial disclosures and accompanying production were due on December 13, 2014. That date came and went without the production of a single sheet of paper. The government's production of documents in response to Lance Armstrong's requests was due on February 10, 2014. Again, the deadline passed and the government produced nothing. The government's strategy is plain—delay Defendants' access to the fruits of its investigation for as long as possible.

And now, in a transparent attempt to gain advantage by flouting its discovery obligations, the government has noticed the depositions of Lance Armstrong and third parties while simultaneously refusing to produce documents relevant to those depositions. The government has taken the position that it is free to use statements by those witnesses to prepare for their depositions while denying Defendants the same opportunity. During the meet and confer preceding this motion, Armstrong sent the government case law condemning its litigation tactic as "annoying or harassing at the very least." *Roberts v. Americable Int'l., Inc.*, 883 F. Supp. 499,

505 (E.D. Cal. 1995). The government couldn't be bothered. It insisted on proceeding with depositions regardless of its failure to produce documents.

Litigation is not "a game of blind man's buff." *Babyage.com, Inc. v. Toys "R" Us, Inc.*, 458 F. Supp. 2d 263, 265 (E.D. Pa. 2006) (citation and internal quotation marks omitted). The government's continuing obstruction violates the Federal Rules of Civil Procedure and its own prior agreements to produce documents. Therefore, Armstrong respectfully moves the Court to compel the government to make its long-overdue production and quash the government's deposition notices until it has done so.

## II.    BACKGROUND

One June 10, 2010, relator Floyd Landis filed this *qui tam* action. All filings in the action remained under seal for almost three years, until February 22, 2013, when the government intervened. Order, Feb. 22, 2013, ECF No. 43. The government used the under-seal period to conduct wide-ranging discovery. Among other things, the government convened a grand jury to gather testimony, issued subpoenas to and collected documents from numerous witnesses, and took voluntary statements in exchange for promises of leniency. *See* Decl. of Sharif E. Jacob ("Jacob Decl.") Ex. M, June 4, 2014.

The government also conducted a joint investigation of cycling with the United States Anti-Doping Agency ("USADA"). USADA's investigation began in 2010, and was conducted with Jeff Novitsky, an agent in the criminal division of the Food and Drug Administration. *See* Jacob Decl. Ex. N at 250-254. On January 14, 2013, while the action remained under seal, Travis Tygart, USADA's CEO, wrote a letter to the Department of Justice urging intervention. As an enticement, USADA offered to "share with [the DOJ] information it ha[d] gathered through its investigation." *Id.* Ex. L. USADA's investigation ultimately resulted in the public

release of the Reasoned Decision—a detailed report of USADA's investigation—and a media

tour to promote the report. *See* Jacob Decl. Ex. O.  The report is based principally on a number

of affidavits signed by witnesses who provided testimony in exchange for USADA's promises of

leniency.  Although the publicly-released copies of those affidavits are redacted, the relator has

already obtained and filed in this action an unredacted USADA-procured affidavit previously

unavailable to Defendants. *See* Affidavit of Emma O'Reilly, filed Sept. 23, 2013, ECF No. 107-

4; *see also* Relator's Mem. P&A in Opp. to Mot. to Dismiss, Sept. 23, 2013, ECF No. 107

(explaining that "Relator was able to obtain an unredacted copy" of Ms. O'Reilly's affidavit).

For three years, the federal government obtained unchecked discovery in an effort to

build its case against Defendants, and both the government and the relator have openly made use

of that discovery to prosecute this action.  Seven months ago, Armstrong asked the government

to produce the documents it obtained via the unilateral discovery it conducted during the under-

seal period. *See* Jacob Decl. Ex. C, June 4, 2014.  The government refused, claiming it was

"premature" to disclose the discovery it began collecting over four years ago. *Id.* Ex. D.

The initial disclosure deadline came and went, and again the government failed to

produce a single document in violation of Federal Rule of Civil Procedure 26.  Jacob Decl. Exs.

E-G.  To satisfy its initial disclosure obligations, the government cited to and relied upon

"approximately 5,000 [Postal Service] documents;" "100 documents received from the relator;"

and "documents . . . on which [its damages] computations are based." *Id.* Ex. E.  But the

government failed to produce any of those documents.  Armstrong immediately met and

conferred with the government about its deficient disclosures, even arranging to have copies

made at his own expense of the documents referenced therein. *Id.* Ex. F.  The government

declined to make the documents available for copying. *Id.* Ex. G.

3

But the government had run out of excuses to withhold discovery. So, on January 6, 2014, the government promised to produce documents in response to Armstrong's first set of requests for production of documents. *Id.* In particular, the government agreed to provide the documents it itself referenced in its initial disclosures as well as documents responsive to Armstrong's pending requests for production.

Instead of producing documents, however, the government served a set of meritless objections to Armstrong's document requests. Jacob Decl. Ex. B. As of the date of this motion, the government still has not produced documents responsive to those requests.

In January 2014, Armstrong and the government entered into discussions.[1] Jacob Decl. ¶ 11. The parties ultimately agreed to put all discovery on hold while jointly pursuing a process aimed at resolving the matter. *Id.* The parties participated in that process on the explicit understanding that they would "work things out jointly to the best of our abilities so that neither side is disadvantaged by the time which has lapsed" as a result of the discovery hold.

Spurning that understanding, the government is now plainly attempting to take unfair advantage of its agreement to informally stay discovery. Three days after that process ended, the government noticed the depositions of Chris Carmichael, Mark Higgins, John Korioth, and Stephanie McIlvain. Two business days later, the government noticed Armstrong's deposition for June 23, 2014. Jacob Decl. Ex. H. The government insists that it need not produce any documents—even statements by the deponents—prior to their depositions. Jacob Decl. ¶ 14.

---

[1] During those discussions, the government produced documents subject to certain restrictions on their use. After Armstrong informed the government that he was filing a motion to compel, the government agreed to permit the use of those documents in this litigation. Jacob Decl. Ex. J.

In accordance with Local Rule 7(m), Armstrong certifies that he met and conferred with the government by letter and telephone prior to filing this motion.   Jacob Decl. ¶¶ 14-15 & Exs. I-J.  During the telephonic meet and confer, the government refused to withdraw its objections or produce any documents beyond those it already agreed to produce in its responses to Armstrong's first set of requests for production. *Id.*

In light of the government's refusal to voluntarily reschedule Armstrong's deposition to a date after its document production, Armstrong respectfully requests that the Court, pursuant to Civil Local Rule 7, order the following expedited briefing schedule on this Motion:

- Opposing points and authorities – June 11, 2014
- Reply memorandum – June 16, 2014
- Oral argument, if ordered by the Court – prior to June 23, 2014[2]

The foregoing briefing schedule will allow the Court time to rule on the motions prior to Armstrong's deposition as currently scheduled.

### III.   ANALYSIS

**A.    The government seeks to take depositions without producing any documents**

   **from its investigation.**

The Court has the authority to "control the sequence of discovery to promote fair and just litigation practices." *Roberts v. Americable Int'l.*, Inc., 883 F. Supp. 499, 505 (E.D. Cal. 1995). Rule 26(d) "explicitly rejects the proposition that . . . a party is free to produce responsive information when it unilaterally chooses." *Lohrenz v. Donnelly*, 187 F.R.D. 1, 7 (D.D.C. 1999). "The rules of discovery in the federal system are premised on the principle that parties be

---

[2] During a meet and confer call, the government declined consent to the proposed briefing schedule.  Jacob Decl. ¶ 15.

forthcoming with relevant information in their possession." *Rofail v. United States*, 227 F.R.D.

53, 58 (E.D.N.Y. 2005). "[R]arely do courts authorize the taking of party depositions prior to the

production of documents." *Costa v. AFGO Mech. Servs., Inc.*, 237 F.R.D. 21, 24 (E.D.N.Y.

2006). Instead, when faced with a party withholding documents relevant to a forthcoming

deposition, courts routinely order the production of documents prior to the deposition and quash

the pending deposition notice. *See, e.g., Roberts*, 883 F. Supp. at 505; *Mason v. T. K. Stanley,*

*Inc.*, 229 F.R.D. 533, 537 (S.D. Miss. 2005).

Despite Armstrong's repeated requests—and the government's broken promises—the

government has not yet produced documents from its investigation. The government continues

to refuse to produce the statements by Armstrong in its possession, custody, and control. *See*

Jacob Decl. Ex. B Resp. to Request No. 21. The government also refuses to produce the

statements of and documents to and from Mark Higgins, John Korioth, Stephanie McIlvaine, and

Chris Carmichael prior to their depositions. *See id.* Ex. J. The government is intent on using the

documents it collected through its years-long investigation to prepare for deposition while

simultaneously denying Defendants the same opportunity.

The normal and customary practice in civil litigation is to complete substantially all

document production prior to noticing depositions. Doing so allows the parties to prepare in an

orderly fashion, and avoids the need to seek a second deposition of the same witness because one

party unilaterally withheld information relevant to that witness. But the government has ignored

both convention and code. While withholding documents that were due no later than four

months ago, the government proposes to take depositions regarding precisely the same subject

matter on which it is withholding discovery. In light of its obstruction, Armstrong respectfully

requests that the Court quash the government's pending deposition notices and order it not to

serve any further notices until it has produced documents responsive to Armstrong's first set of requests for production.

**B.     Years after it began its investigation, the government has yet to produce documents from that investigation.**

The government stands upon a litany of insupportable objections to document production.[3]  Broadly speaking, the government's objections fall into two categories:  (1) vague boilerplate and (2) equally meritless objections to specific requests.

*1.     The Court is free to ignore the government's boilerplate objections.*

A motion to compel document production lies where "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  Fed. R. Civ. Proc. 37(a)(3)(B)(iv).  "[A]n evasive or incomplete disclosure . . . or response must be treated as a failure to disclose . . . or respond.  Fed. R. Civ. Proc. 37(a)(4).

The government prefaces its responses to Armstrong's request for production with four pages of "General Objections."  "[G]eneral objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them."  *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998).  Where the responding party's general objections do not specify how they apply to each request, a "Court will overrule [the] objections in their entirety."  *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008).    Here, the government makes no effort to explain how its general objections preclude production on a request-by-request basis.  Instead, the government simply recites that all responses are "[s]ubject to [all] the General Objections."  Therefore, the

---

[3] On June 2, 2014, the government finally agreed to produce by no later than Friday, June 6, the documents it already agreed to produce in its initial disclosures and responses to Armstrong's first set of requests for production.  Armstrong reserves the right to seek those documents if the government fails to uphold (yet again) its promises.

Court can and should order that the government may "not rely on any general objection as a basis for withholding further discovery." *Id.*

Nonetheless, when evaluated individually, it is quite apparent that each of the government's general objections lacks merit.  For example, the government first objects to unspecified definitions and instructions and that the requests seek irrelevant documents or discovery outside the scope of Federal Rule of Civil Procedure 26(b)(1).  Jacob Decl. Ex. B Objection No. 1.  The government makes similarly generic relevance objections to Request Nos. 9, 12, 13, 18, 22-28, and 31.  In overruling such objections, the District Court for the District of Columbia has explained that:

> This type of answer hides the ball.  It leaves the [requesting party] wondering what documents are being produced and what documents are being withheld.  Furthermore, it permits the [responding party] to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld.

*Athridge*, 184 F.R.D. at 190.  Moreover, the government's objections to definitions and instructions entirely fail its burden to explain why any single definition or instruction precludes discovery. *Anderson v. United Parcel Serv., Inc.*, No. 09-2526-KHV, 2010 WL 4822564, *5 (D. Kan. Nov. 22, 2010).

The government next objects that the requests require legal conclusions.  Jacob Decl. Ex. B Objection No. 2.  Simply stated, "[t]hat a discovery request 'calls for a legal conclusion' is not valid objection." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 648 (D. Kan. 2004).

The government recycles its objection—first made in its initial disclosures—that documents can be obtained from public sources or "some other source." Jacob Decl. Ex. B Objection No. 6. This objection is particularly egregious in light of the government's unfulfilled promise to withdraw this objection and produce documents it obtained from third parties and

other defendants. *See* Jacob Decl. Ex. G. "[M]erely because an item may be available from another source is not a proper objection." *Cent. Transp. Int'l, Inc. v. Global Advantage Distrib.*, No. 2:06-cv-401, 2007 U.S. Dist. LEXIS 81664, *7 (M.D. Fla. Sept. 11, 2007). A plaintiff may not evade its disclosure obligations by arguing that documents in its possession can be obtained from another. *See, e.g.*, *Kifle v. Parks & History Ass'n*, No. 98-00048, 1998 U.S. Dist. LEXIS 22250, *5-6 (D.D.C. Oct. 15, 1998).

The government makes a broad objection to the production of confidential or private documents. "It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that they are confidential." *Sonnino*, 220 F.R.D. at 642. Pending the entry of the protective order, Armstrong had agreed to treat documents produced by the government as though the protective order had been entered, thereby resolving any concerns the government may have about confidentiality. *See* Jacob Decl. Ex. I at 3; *see also Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002) (explaining that an agreed-upon protective order resolved objections regarding confidentiality). Regardless, because it failed to identify with specificity the statute it relies upon to advance it privacy objections, the government has abandoned any objection based on "federal privacy laws." *See Sonnino*, 220 F.R.D. at 642.

The government makes numerous objections based on attorney-client privilege, work product doctrine, common interest privilege, deliberative process privilege, law enforcement privilege, Rule 6(e) of the Federal Rules of Criminal Procedure, and the statute providing for civil investigative demands. Jacob Decl. Ex. B Objection No. 7. However, the government has not yet served a privilege log. The government's "passing reference to possible invasions of attorney-client or work product privileges is insufficient without a detailed privilege log."

*Natural Res. Def. Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999). "Given the possibility that tardy privilege claims will further ensnare parties in discovery battles, courts in this district have treated seriously a party's noncompliance with Rule 26(b)(5) and have been willing to impose the severe sanction of waiver." *Gen. Elec. Co. v. Johnson*, No. 00-2855, 2007 U.S. Dist. LEXIS 8275, 11-13 (D.D.C. Feb. 5, 2007). The government has already agreed to log the "the subject matter, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided" for each document withheld under a claim of privilege. [Proposed] Order Regarding Privilege Logs, Jan. 14, 2014, ECF No. 147-3. Pursuant to the proposed order now pending before the Court, the government's logs were due on March 12, 2014.[4] *Id.* at 2. ("A privilege log for a document must be served on all parties within thirty (30) days after the deadline for the response to the requests for production to which the document is responsive."). Now that privilege disputes between the parties are ripe, Armstrong respectfully requests that the Court enter the proposed order regarding privilege logs and order the government to immediately serve a log in conformity with that order.

Many of the boilerplate objections defy common sense. For instance, the government objected to the requested format of production. Jacob Decl. Ex. B. Objection No. 14. However, the government has already agreed to precisely that format in the Document Production Stipulation filed with the Court. *See* Supp'l Joint Report, Jan. 5, 2014, ECF No. 146.

During a telephonic meet and confer, the government declined to withdraw any of the foregoing objections and refused to provide a date by which it would serve a privilege log.

---

[4] Although the parties attempted to reach an agreement regarding the deadline for service of privilege logs pending entry of the proposed order, they were unable to do so. *See* Jacob Decl. Ex. K.

Therefore, Armstrong respectfully moves to have the objections stricken and requests that the Court order the government to serve a privilege log.

> 2.   *The government's objections to specific document requests are meritless.*

In addition to its boilerplate objections, the government interposes a series of meritless objections to certain individual requests. None of them justify the government's continuing refusal to produce responsive documents.

### i)   Request No. 9:  USPS Attendance at Professional Cycling Events

The government objects to Request No. 9—which seeks documents showing the attendance of Postal Service personnel at team cycling events—as burdensome and irrelevant. Jacob Decl. Ex. B.  "[T]he discovery standard is very broad; material is discoverable if it 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 195 (D.D.C, 1998) (citation omitted).  Documents showing the attendance of Postal Service personnel at professional cycling events are not merely likely to lead to relevant information, they are certain to do so.  It is well-documented that Postal Service employees learned of doping allegations as early as 1998 by attending the Tour de France. *See, e.g.*, Jacob Decl., Ex. N at 102 (explaining that "Margot Myers, a media relations executive for the US Postal Service" witnessed an "all-out-war between cyclists and French officials over doping" during her trip to the 1998 Tour).  The Postal Service's knowledge of doping is relevant to Armstrong's statute of limitations defense, described in his pending motion to dismiss, as well as his government knowledge defense. *See, e.g., Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 809 (D. Utah 1988); *accord U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*, No. 90-2568,1992 U.S. Dist. LEXIS 14063, 20-21 (D.D.C. Sept. 15, 1992).

An objection that a request is burdensome, harassing, and propounded for an improper purpose is "insufficient on its face." *Jones v. Prince George's County*, No. 00-2902, 2002 U.S. Dist. LEXIS 27319, 6 (D.D.C. Oct. 3, 2002). "[T]he party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome." *Pleasants*, 208 F.R.D. at 12. The government has not even attempted to make such a showing. *See* Jacob Decl. Ex. B Resp. to Request No. 9. The government's unsupported objections should be stricken.

### ii)      Request No. 10: Relator's Written Disclosure

The government objects to Request No. 10, which seeks the relator's written disclosure (and related documents), claiming to require relator's consent. The government's objection has no basis in the False Claims Act. "Once the government makes an election and the case goes forward, fundamental fairness dictates that the plaintiff must disclose to the defendant the factual basis for the suit." *United States ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 399 (D. Colo. 1992). Therefore, courts have repeatedly held that relators' written disclosures are not protected by attorney-client privilege or work product, and ordered their production. *See, e.g., id.* The government has given no reason why its objection should not suffer a similar fate here.

### iii)      Request No. 12: Government Investigation of Doping

The government also objects to Request No. 12, which seeks documents the government obtained through its investigation of this case. Remarkably, the government objects that the request is "not reasonably calculated to lead to the discovery of admissible evidence." Obviously, if the government issued subpoenas, civil investigative demands, and other discovery requests, it certified in compliance with Rule 11, 31 U.S.C. § 3733, and other governing provisions that those requests did in fact seek documents reasonably calculated to lead to the

discovery of admissible evidence.  Regardless, the request is limited to investigative requests

issued in connection with "this case or the investigation," which is itself defined as limited to

"matters RELATING TO the allegations of the relator or the United States in this litigation."

Therefore, the government's boilerplate relevance objection is unfounded.

### iv)   Request No. 13:  Foreign Investigations of Doping

Request No. 13 seeks documents relating to foreign investigations of the use of

performance enhancing drugs in cycling.  The government objects to Request No. 13 as vague,

ambiguous, and overbroad.  Courts regularly disregard such boilerplate.  *United States ex rel.*

*Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 249 (D.D.C. 2003).  Moreover, any

documents relating to foreign investigations of doping in cycling in the possession of the U.S.

Postal Service personnel who were involved in the cycling sponsorship or otherwise in the

possession of "the official of the United States charged with responsibility to act" are directly

relevant to, *inter alia*, Armstrong's statute of limitations and government knowledge defenses.

Therefore, the government's attempt to limit this request to "documents provided . . . from any

non-US law enforcement" does not withstand scrutiny under Rule 26(b)(1).

The government also attempts to assert the privileges of foreign governments as an

obstacle to discovery.  The government's position is the polar opposite of its prior representation

to the Court that a party "lacks standing" to assert privileges on behalf of non-parties.  United

States' Opp. to Armstrong's Mot. for a Protective Order, Oct. 28, 2013, ECF No. 133 at 5 (citing

*United States v. Nachamie*, 91 F. Supp. 2d 552, 559 (S.D.N.Y. 2000); *Chiperas v. Rubin*, No. 96-

130, 1998 WL 765126, at *2 (D.D.C. Nov. 3, 1998); *accord* Relator's Mem. of P&A in Opp. to

Armstrong's Mot. for an Order Coordinating Depositions, Oct. 28, 2013, ECF No. 134 at 10 ("A

party may not ask for an order to protect the rights of another party or a witness if that party or

witness does not claim protection for himself." (quoting *Auto-Owners Ins. Co. v. S.E. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005))); *see also Donovan v. United States Postal Serv.*, 530 F. Supp. 894, 902 (D.D.C. 1981) ("Judicial estoppel precludes a party from taking a position inconsistent with one previously taken with respect to the same facts in an earlier litigation." (internal quotation marks and citation omitted)). As the government itself has admitted, it lacks standing to assert the privileges of third parties to the litigation—including foreign governments.[5] Therefore, the government's objections should be overruled.

### v)    Request Nos. 14-17:  Written or Recorded Statements

The government objects to request Nos. 14-17[6]—which seek "written or recorded statements relating to this case or the investigation" (and similar documents)—asserting attorney-client privilege and the work product doctrine. But substantially verbatim or adopted statements of third parties are not privileged or work product. *See Goldberg v. United States*, 425 U.S. 94, 105 (1976); *Saunders v. United States*, 316 F.2d 346, 350 (D.C. Cir. 1963). The public record is replete with evidence that the government took numerous written and recorded statements during its years-long investigation. *See* Jacob Decl. Ex M. The government certainly did not object that it has no such documents within its possession, custody, or control. The government must produce those statements immediately (and supply a privilege log listing the remainder).

---

[5] Regardless, the proposed protective order pending before this Court adequately protects the confidentiality interests of third parties.

[6] The government objects to request No. 17 to the extent documents "do not relate to allegations against Armstrong or issues that are otherwise the subject of this litigation." The objection doesn't make sense because request No. 17 doesn't reach beyond such issues.

### vi) Request Nos. 18-19: Communications with USADA

Request Nos. 18-19 seek documents provided by and communications with USADA relating to this case or the government's investigation of the use of performance enhancing substances in cycling. The government's objection that these requests seek irrelevant information is belied by the fact that the government's complaint and USADA's Reasoned Decision contain a number of identical allegations. Both documents contain detailed descriptions of the use of performance enhancing substances by the U.S. Postal Service team. *See* Jacob Decl. Ex. O. Both documents allege a cover-up of that use. *Id.* Factual contentions that the government makes to support its case-in-chief are obviously relevant and discoverable. *See* Fed. R. Civ. Proc. 26 ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim.").

The government also objects that its communications with USADA are privileged or attorney work product. The government has no attorney-client relationship with USADA, and therefore cannot assert attorney-client privilege over communications with USADA. Moreover, the government's contention that all of its communications with USADA are attorney work product is demonstrably false. It is a matter of public record that on January 14, 2013, Travis Tygart sent a non-privileged letter to the Department of Justice urging intervention and offering to "share with your office information it ha[d] gathered through its investigation." Jacob Decl. Ex. L. And USADA's unredacted affidavits—one of which has already been filed in this litigation—are not attorney work product either. *See Goldberg*, 425 U.S. at 105; *Saunders*, 316 F.2d at 350.

The government's attempt to withhold all documents from USADA pursuant to the attorney-work product doctrine is not just factually baseless—it is also legally baseless.

Documents and communications obtained from USADA—a non-party to this litigation—are not

entitled to work product protection. "Courts have routinely held that documents prepared by one

who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is

itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in

the instant suit." *Ricoh Co, Ltd.. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003); *accord In

re Cal. Pub. Utilities Com.*, 892 F.2d 778, 781 (9th Cir. 1989); *Doubleday v. Ruh*, 149 F.R.D.

601, 606 (E.D. Cal. 1993). Therefore, the Court need not await a privilege log to rule that the

documents USADA provided to the federal government must be produced.[7]

### vii)   Request Nos. 20-23:  Government Knowledge of Doping

Request Nos. 20-23 seek documents and communications relating to the knowledge of

Postal Service, including the "official of the United States charged with the responsibility to act

in the circumstances" within the meaning of 31 U.S.C. §3731(b)(2), about doping or allegations

of doping by the U.S. Postal Service Cycling Team. The government's argument that these

requests seek irrelevant information is belied by the pending motions to dismiss. In response to

the government's overbreadth objection, Armstrong agreed to narrow the request for the time

being to responsive documents in the possession of Postal Service employees, managers,

directors, or agents who were involved with the cycling team sponsorship or otherwise in the

possession of "the official of the United States charged with responsibility to act."[8] Despite the

---

[7] To the extent that the United States logs any of its communications with USADA, Lance Armstrong reserves the right to show that the asserted privilege never existed, has been waived by public disclosure, or overcome by substantial need.

[8] To the extent that the government contends that the "official" is not a Postal Service employee, Armstrong also sought documents from that official, each person who reports to him and to whom he reports, and each of his agents.

narrowed request, the government still refused to agree to produce responsive documents.

Therefore, Armstrong respectfully requests that the Court order their production.

### viii)    Request No. 24:  Communications with Defendants

Request No. 24 seeks communications with Defendants relating to this case or the

investigation in the possession, custody, or control of the government.  The government offers to

produce only its communications with Armstrong, but to date has not even made good on that

offer.  The government's position that communications with the other defendants are irrelevant is

ridiculous and—if accepted at face value—would preclude the government's even broader

request to Armstrong seeking all communications with defendants (regardless of subject matter).

*See* Jacob Decl. Ex. A Request No. 7 (seeking "all communications, as well as documents

relating to communications or meetings, as to which [Armstrong] and" Weisel, Bruyneel,

Stapleton, and Knaggs were parties).  The government also invokes Federal Rule of Evidence

408 as an objection.  But Rule 408 does not shield documents from discovery or categorically

preclude their admissibility.  In particular, Rule 408 communications in which the government

obtains promises of cooperation are admissible to prove, *inter alia*, bias.

### ix)    Request No. 26-28:  Communications with the Press

Request Nos. 26-28 seek the government's communications with the press about

Armstrong, the use of performance enhancing substances in professional cycling, and its

investigation of the same.  The government objected that the requests are not limited by time.

So, during the meet and confer process, Armstrong agreed to limit the requests to January 1,

1994 or whenever the Postal Service started negotiating the sponsorship agreement, whichever is

earlier.  Nonetheless, the government continues to refuse production of responsive documents.

The government also objects that the requests seek articles reporting the use of performance enhancing substances in professional cycling that were read by Postal Service employees. Of course it does—any such article may establish knowledge sufficient to defeat the government's attempt to circumvent the statute of limitations. *See Hobson v. Wilson*, 737 F.2d 1, 40 (D.C. Cir. 1984) (holding that the plaintiff's review of a Washington Post article describing the alleged conspiracy was sufficient to defeat the plaintiff's attempt to toll the statute of limitations).

The government also attempts to limit its response to Postal Service employees.[9] But—in addition to Armstrong's government knowledge and statute of limitations defenses—the request also seeks documents reasonably calculated to reveal the identity of the party who leaked the existence of the lawsuit to the national press in violation of the Court's sealing order. *See, e.g.,* Jacob Decl., Ex. M. Logic suggests that the leaking party could only be Floyd Landis, Postal Service employees, or the government employees or agents involved in its investigation of doping in professional cycling. If so, Armstrong is entitled to dismissal of this action with prejudice. *See United States ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287, 296 (6th Cir. 2010). Therefore, the government's attempt to limit the its search for responsive documents from Postal Service employees is insupportable.

### x)   Request No. 31:  Documents Relating to Armstrong

Request No. 31 seeks documents and communications relating to Armstrong. Other than privilege and boilerplate (addressed in Part III.B.1, *supra*), the government's only objection to

---

[9] As with other requests, Armstrong agreed to limit the Postal Service custodians to those personnel who were involved the cycling sponsorship or otherwise in the possession of "the official of the United States charged with responsibility to act" for the time being.

18

production was overbreadth in so far as Armstrong had yet not narrowed the circle of relevant

custodians.  In response to that objection, Armstrong agreed to limit the request for the time

being to documents from Postal Service employees, managers, directors, or agents who were

involved with the cycling sponsorship, "the official of the United States charged with

responsibility to act," and the government employees involved in the investigation of the use of

performance enhancing substances in cycling.  Jacob Decl. Ex. I.  Despite Armstrong's good

faith effort to address the government's objection, the government continued to refuse to produce

documents.

### xi)    Request No. 32:  Government's Claim for Damages

Request No. 32 seeks all documents relating to the government's claim for damages.  The

government objects that the request calls for a legal conclusion.  The objection shows how

blithely the government treats its discovery obligations given that it had a duty to produce those

documents without any request as part of its initial disclosures.  *See* Fed. R. Civ. Proc.

26(a)(1)(A)(iii).  The government only offers to produce the "claims for payment submitted by

Tailwind and records of payment by the USPS."   Jacob Decl. Ex. B Resp. to Request No. 32.

However, during meet and confer, the government admitted that it has factual information in its

possession that it intends to use in support of its damages claim that it has not yet produced.

The government's refusal to produce the additional damages-related documents not only

violates the government's Rule 26(a) obligations, it is also sanctionable.  "If a party fails to

provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that

information . . . to supply evidence on a motion, at a hearing, or at a trial."  Fed. R. Civ. Proc.

37(c)(1); *accord* Local Civ. R. 26.2(a).  "[T]he sanction of exclusion is automatic and

mandatory."  *Salgado by Salgado v. Gen. Motor Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).  In

light of the government's intransigence, an order precluding the government from relying on documents other than "claims for payment" in support of its damages claim is mandatory. *See* Fed. R. Civ. Proc. 37(c)(1).

The government is engaged in a transparent attempt to delay its own document production while it proceeds to seek other discovery. The Federal Rules do not tolerate that sort of gamesmanship, and neither should the Court. Armstrong respectfully requests that the Court overrule the government's objections to document production, and order it to produce documents responsive to the foregoing requests.

## IV.    CONCLUSION

The government's tactics flout its discovery obligations.  Therefore, Armstrong moves

the Court to order the government to make its long-overdue production and to refrain from

taking or noticing depositions until it has done so.


Respectfully submitted,

KEKER & VAN NEST LLP


Dated:  June 4, 2014                    By:    */s/ Sharif E. Jacob*  _____

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

By:    */s/ Robert D. Luskin*  _____
ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
SQUIRE PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG