# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS, | |
| Plaintiffs, | Civil Action No. 10-00976 (RLW) |
| v. | **ECF** |
| TAILWIND SPORTS CORP.; TAILWIND SPORTS, LLC; LANCE ARMSTRONG; and JOHAN BRUYNEEL, | |
| Defendants. | |

## DEFENDANT LANCE ARMSTRONG'S MOTION TO COMPEL PRODUCTION

## ORAL ARGUMENT REQUESTED

Pursuant to Federal Rules of Civil Procedure 26(c)-(d) and 37(a), Defendant Lance Armstrong hereby moves this Court for an order compelling the government to produce documents responsive to Lance Armstrong's First Set of Requests for Production. The grounds for this motion are contained in the accompanying memorandum of points and authorities. Factual support for the motion is set forth in a concurrently-filed declaration. A proposed order is attached.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated:  July 3, 2014

By:   */s/ Sharif E. Jacob*
_____

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>TAILWIND SPORTS CORP.; TAILWIND SPORTS, LLC; LANCE ARMSTRONG; and JOHAN BRUYNEEL,<br><br>　　　　　　　　Defendants. | Civil Action No. 10-00976 (RLW)<br><br>**ECF** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LANCE ARMSTRONG'S MOTION TO COMPEL PRODUCTION**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...............................................................................................................1

II.  BACKGROUND ..............................................................................................................2

III. ANALYSIS.......................................................................................................................4

    A.   The Court is free to disregard the government's boilerplate objections..................4

    B.   The government's objections to specific document requests are meritless. ...........9

        1.   Request No. 9:  USPS Attendance at Professional Cycling Events.............9

        2.   Request No. 10:  Relator's Written Disclosure..........................................10

        3.   Request No. 12:  Government Investigation of Doping ............................11

        4.   Request No. 13:  Foreign Investigations of Doping .................................11

        5.   Request Nos. 14-17:  Written or Recorded Statements .............................14

        6.   Request Nos. 18-19:  Communications with USADA...............................15

        7.   Request Nos. 20-23:  Government Knowledge of Doping........................16

        8.   Request No. 24:  Communications with Defendants ................................17

        9.   Request No. 26-28:  Communications with the Press................................17

        10.  Request No. 31:  Documents Relating to Armstrong ...............................19

        11.  Request No. 32:  Government's Claim for Damages ...............................19

IV.  CONCLUSION................................................................................................................20

839567

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

*Anderson v. United Parcel Serv., Inc.*
No. 09-2526-KHV, 2010 WL 4822564 (D. Kan. Nov. 22, 2010)...............................................6

*\*Athridge v. Aetna Cas. & Sur. Co.*
184 F.R.D. 181 (D.D.C. 1998)......................................................................................5, 6, 9

*Babyage.com, Inc. v. Toys "R" Us, Inc.*
458 F. Supp. 2d 263 (E.D. Pa. 2006)...............................................................................2

*\*Boisjoly v. Morton Thiokol, Inc.*
706 F. Supp. 795 (D. Utah 1988)...................................................................................10

*Cent. Transp. Int'l, Inc. v. Global Advantage Distrib.*
No. 2:06-cv-401, 2007 U.S. Dist. LEXIS 81664 (M.D. Fla. Sept. 11, 2007)............................6

*Chiperas v. Rubin*
No. 96-130, 1998 WL 765126 (D.D.C. Nov. 3, 1998)...........................................................12

*Contratto v. Ethicon, Inc.*
225 F.R.D. 593 (N.D. Cal. 2004)....................................................................................13

*Donovan v. United States Postal Serv.*
530 F. Supp. 894 (D.D.C. 1981).....................................................................................12

*Doubleday v. Ruh*
149 F.R.D. 601 (E.D. Cal. 1993) ...................................................................................16

*Gen. Elec. Co. v. Johnson*
No. 00-2855, 2007 U.S. Dist. LEXIS 8275 (D.D.C. Feb. 5, 2007) ...........................................8

*\*Goldberg v. United States*
425 U.S. 94 (1976).....................................................................................................14, 15

*Grumman Aerospace Corp. v. Titanium Metals Corp.*
91 F.R.D. 84 (E.D.N.Y. 1981).........................................................................................7

*Hobson v. Wilson*
737 F.2d 1 (D.C. Cir. 1984)...........................................................................................18

*\*In re Cal. Pub. Utilities Com.*
892 F.2d 778 (9th Cir. 1989) .........................................................................................16

839567

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Infineon Techs. AG v. Green Power Techs. Ltd.*
  247 F.R.D. 1 (D.D.C. 2005)................................................................8

*Jones v. Prince George's County*
  No. 00-2902, 2002 U.S. Dist. LEXIS 27319 (D.D.C. Oct. 3, 2002) ........................................10

*\*Kifle v. Parks & History Ass'n*
  No. 98-00048, 1998 U.S. Dist. LEXIS 22250 (D.D.C. Oct. 15, 1998) ........................................6

*\*Laxalt v. McClatchy*
  809 F.2d 885 (D.C. Cir. 1987)................................................................7, 13

*Natural Res. Def. Council v. Curtis*
  189 F.R.D. 4 (D.D.C. 1999)................................................................8

*Pleasants v. Allbaugh*
  208 F.R.D. 7 (D.D.C. 2002)................................................................7, 10

*\*Ricoh Co, Ltd. v. Aeroflex Inc.*
  219 F.R.D. 66 (S.D.N.Y. 2003) ................................................................16

*Salgado by Salgado v. Gen. Motor Corp.*
  150 F.3d 735 (7th Cir. 1998) ................................................................20

*\*Saunders v. United States*
  316 F.2d 346 (D.C. Cir. 1963)................................................................14, 15

*\*Sonnino v. Univ. of Kan. Hosp. Auth.*
  220 F.R.D. 633 (D. Kan. 2004) ................................................................6

*United States ex rel. Costa v. Baker & Taylor, Inc.*
  955 F. Supp. 1188 (N.D. Cal. 1997)................................................................1

*United States ex rel. Fisher v. Network Software Assocs.*
  217 F.R.D. 240 (D.D.C. 2003)................................................................11

*\*United States ex rel. Stone v. Rockwell Int'l Corp.*
  144 F.R.D. 396 (D. Colo. 1992) ................................................................10, 11

*United States ex rel. Summers v. LHC Group, Inc.*
  623 F.3d 287 (6th Cir. 2010) ................................................................18

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Gomez Castrillon*
  No. S2 05 Cr. 156, 2007 WL 2398810 (S.D.N.Y. Aug. 15, 2007)...........................................14

**Federal Statutes**

5 U.S.C. § 552a ..........................................................................................................................7

18 U.S.C. § 1905 ........................................................................................................................7

31 U.S.C. §3731(b)(2) .............................................................................................................16

31 U.S.C. § 3733 ......................................................................................................................11

**Federal Rules**

Fed. R. Civ. Proc. 26..........................................................................................................3, 14, 15

Fed. R. Civ. Proc. 26(a)(1)(A)(iii) ........................................................................................19

Fed. R. Civ. Proc. 26(b)(1) ............................................................................................5, 7, 12

Fed. R. Civ. Proc. 34(b) ............................................................................................................5

Fed. R. Civ. Proc. 37(a)(3)(B)(iv).............................................................................................4

Fed. R. Civ. Proc. 37(a)(4)........................................................................................................5

Fed. R. Civ. Proc. 37(c)(1).......................................................................................................20

Fed. R. Crim. Proc. 6(e)............................................................................................................8

Fed. R. of Evid. 408.................................................................................................................17

**Local Rules**

L. Civ. R. 7(m)...........................................................................................................................4

L. Civ. R. 26.2(a) .....................................................................................................................20

iv

839567

## I.      INTRODUCTION

Since 2010, the government has conducted an unfettered investigation into the use of performance-enhancing substances in professional cycling.  While the case was under seal, the government and its allies used almost every discovery device in its arsenal:  convening a grand jury to take testimony, issuing subpoenas, taking voluntary statements, and collecting affidavits.  In the course of its investigation, the government collected thousands of pages of documents.  "This practice of conducting one-sided discovery for months or years while the case is under seal was not contemplated by Congress and is not authorized by the [False Claims Act]."  *United States ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1191 (N.D. Cal. 1997).

Despite its exhaustive and unauthorized investigation, the government refuses to produce documents from that investigation.  On February 10, 2014, the government served responses to Armstrong's document requests that refuse to produce most of the fruits of its investigation.  The government refused—among other things—to produce:

- Documents it collected by subpoena and other investigative requests;

- Written witness statements and communications with defendants;

- Documents supplied by the U.S. Anti-Doping Agency, which conducted a parallel investigation of doping in professional cycling; and

- Documents identifying the party that leaked the existence of this lawsuit to the national media while the case remained under seal.

Armstrong has repeatedly met and conferred with the government about its deficient responses and meritless objections.  Each time, the government refuses to withdraw any of its objections or amend any of its responses.  Meanwhile, the government openly uses the documents it is withholding to prepare its case, and selectively produces certain of those

1

documents whenever it suits its litigation objectives. The government's strategy is plain—gain advantage in the litigation by delaying defendants' access to the fruits of its investigation for as long as possible.

Litigation is not "a game of blind man's buff." *Babyage.com, Inc. v. Toys "R" Us, Inc.*, 458 F. Supp. 2d 263, 265 (E.D. Pa. 2006) (citation and internal quotation marks omitted). The government's continuing obstruction violates the Federal Rules of Civil Procedure and its own prior agreements to produce documents. Therefore, Armstrong respectfully moves the Court to compel the government to make its long-overdue production.

## II.    BACKGROUND

One June 10, 2010, relator Floyd Landis filed this *qui tam* action. All filings in the action remained under seal for almost three years, until February 22, 2013, when the government intervened. Order, Feb. 22, 2013, ECF No. 43. The government used the under-seal period to conduct wide-ranging discovery. Among other things, the government convened a grand jury to gather testimony, issued subpoenas to and collected documents from numerous witnesses, and took voluntary statements in exchange for promises of leniency. *See* Decl. of Sharif E. Jacob ("Jacob Decl.") Ex. M, July 3, 2014.

The government also conducted a joint investigation of cycling with the United States Anti-Doping Agency ("USADA"). USADA's investigation began in 2010, and was conducted with Jeff Novitsky, an agent in the criminal division of the Food and Drug Administration. *See* Jacob Decl. Ex. N at 250-254; *see also* Ex. Q. On January 14, 2013, while the action remained under seal, Travis Tygart, USADA's CEO, wrote a letter to the Department of Justice urging intervention. As an enticement, USADA offered to "share with [the DOJ] information it ha[d] gathered through its investigation." *Id.* Ex. L. USADA's investigation ultimately resulted in the

2

public release of the Reasoned Decision—a detailed report of USADA's investigation—and a media tour to promote the report.  *See* Jacob Decl. Ex. O.  The report is based principally on a number of affidavits signed by witnesses who provided testimony in exchange for USADA's promises of leniency.  Although the publicly-released copies of those affidavits are redacted, the relator has already obtained and filed in this action an unredacted USADA-procured affidavit previously unavailable to defendants.  *See* Affidavit of Emma O'Reilly, filed Sept. 23, 2013, ECF No. 107-4; *see also* Relator's Mem. P&A in Opp. to Mot. to Dismiss, Sept. 23, 2013, ECF No. 107 (explaining that "Relator was able to obtain an unredacted copy" of Ms. O'Reilly's affidavit).

For three years, the federal government obtained unchecked discovery in an effort to build its case against defendants, and both the government and the relator have openly made use of that discovery to prosecute this action.  Seven months ago, Armstrong asked the government to produce the documents it obtained via the unilateral discovery it conducted during the under-seal period.  *See* Jacob Decl. Ex. C.  The government refused, claiming it was "premature" to disclose the discovery it began collecting over four years ago.  *Id.* Ex. D.

The initial disclosure deadline came and went, and again the government failed to produce a single document in violation of Federal Rule of Civil Procedure 26.  Jacob Decl. Exs. E-G.  To satisfy its initial disclosure obligations, the government cited to and relied upon "approximately 5,000 [Postal Service] documents;" "100 documents received from the relator;" and "documents . . . on which [its damages] computations are based."  *Id.* Ex. E.  But the government failed to produce any of those documents.  Armstrong immediately met and conferred with the government about its deficient disclosures, even arranging to have copies

made at his own expense of the documents referenced therein.  *Id.* Ex. F.  The government

declined to make the documents available for copying.  *Id.* Ex. G.

But the government had run out of excuses to withhold discovery.  So, on January 6,

2014, the government promised to produce documents in response to Armstrong's first set of

requests for production of documents.  *Id.*  In particular, the government agreed to provide the

documents it itself referenced in its initial disclosures as well as documents responsive to

Armstrong's pending requests for production.

Instead of producing documents, however, the government served a set of meritless

objections to Armstrong's document requests.  Jacob Decl. Ex. B.[1]  In accordance with Local

Rule 7(m), Armstrong certifies that he met and conferred with the government by letter and

telephone prior to filing this motion.  Jacob Decl. ¶¶ 14-15, 23 & Exs. I-J, P-Q.  During the most

recent telephonic meet and confer, the government refused to withdraw its objections or amend

any of its responses to Armstrong's first set of requests for production.  *Id.*

### III.    ANALYSIS

The government stands upon a litany of insupportable objections to document production.

Broadly speaking, the government's objections fall into two categories:  (A) vague boilerplate

and (B) equally meritless objections to specific requests.

### A.    The Court is free to disregard the government's boilerplate objections.

A motion to compel document production lies where "a party fails to respond that

inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  Fed.

---

[1] In January 2014, Armstrong and the government entered into discussions.  The parties
ultimately agreed to put all discovery on hold while jointly pursuing a process aimed at resolving
the matter.  *Id.*  The parties participated in that process on the explicit understanding that they
would "work things out jointly to the best of our abilities so that neither side is disadvantaged by
the time which has lapsed" as a result of the discovery hold.  *See* Jacob Decl. ¶ 11.

4

R. Civ. Proc. 37(a)(3)(B)(iv).  "[A]n evasive or incomplete disclosure . . . or response must be treated as a failure to disclose . . . or respond."  Fed. R. Civ. Proc. 37(a)(4).

The government prefaces its responses to Armstrong's request for production with four pages of "General Objections."  "[G]eneral objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them."  *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998).  Where the responding party's general objections do not specify how they apply to each request, a "Court will overrule [the] objections in their entirety."  *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008).  Here, the government makes no effort to explain how its general objections preclude production on a request-by-request basis.  Instead, the government simply recites that all responses are "[s]ubject to [all] the General Objections."  Therefore, the Court can and should order that the government may "not rely on any general objection as a basis for withholding further discovery."  *Id.*

Nonetheless, when evaluated individually, it is apparent that each of the government's general objections lacks merit.  For example, the government first objects to unspecified definitions and instructions and that the requests seek irrelevant documents or discovery outside the scope of Federal Rule of Civil Procedure 26(b)(1).  Jacob Decl. Ex. B Objection No. 1.  The government makes similarly generic relevance objections to Request Nos. 9, 12, 13, 18, 22-28, and 31.  In overruling such objections, the District Court for the District of Columbia has explained that:

> This type of answer hides the ball.  It leaves the [requesting party] wondering what documents are being produced and what documents are being withheld. Furthermore, it permits the [responding party] to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld.

5

*Athridge*, 184 F.R.D. at 190.  Moreover, the government's objections to definitions and instructions entirely fail its burden to explain why any single definition or instruction precludes discovery.  *Anderson v. United Parcel Serv., Inc.*, No. 09-2526-KHV, 2010 WL 4822564, *5 (D. Kan. Nov. 22, 2010).

The government next objects that the requests require legal conclusions.  Jacob Decl. Ex. B Objection No. 2.  Simply stated, "[t]hat a discovery request 'calls for a legal conclusion' is not [a] valid objection."  *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 648 (D. Kan. 2004).

The government recycles its objection—first made in its initial disclosures—that documents can be obtained from public sources or "some other source."  Jacob Decl. Ex. B Objection No. 6.  This objection is particularly egregious in light of the government's unfulfilled promise to withdraw this objection and produce documents it obtained from third parties and other defendants.  *See* Jacob Decl. Ex. G.  "[M]erely because an item may be available from another source is not a proper objection."  *Cent. Transp. Int'l, Inc. v. Global Advantage Distrib.*, No. 2:06-cv-401, 2007 U.S. Dist. LEXIS 81664, *7 (M.D. Fla. Sept. 11, 2007).  A plaintiff may not evade its disclosure obligations by arguing that documents in its possession can be obtained from another.  *See, e.g.*, *Kifle v. Parks & History Ass'n*, No. 98-00048, 1998 U.S. Dist. LEXIS 22250, *5-6 (D.D.C. Oct. 15, 1998).

The government makes a broad objection to the production of confidential or private documents.  "It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that they are confidential."  *Sonnino*, 220 F.R.D. at 642.  Pending the entry of the protective order, Armstrong agreed to treat documents produced by the government as though the

6

protective order had been entered, thereby resolving any concerns the government may have about confidentiality.  *See* Jacob Decl. ¶ 23, Ex. I at 3, Ex. Q at 2; *see also Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002) (explaining that an agreed-upon protective order resolved objections regarding confidentiality).

The government has asserted two federal statutes as a basis to withhold documents:  the Trade Secrets Act, 18 U.S.C. § 1905, and the Privacy Act, 5 U.S.C. § 552a.  *See* Jacob Decl. Ex. S.  Neither statute gives rise to a valid basis to withhold discovery.  "[G]eneral statutory bans on publication do not bar limited disclosure in judicial proceedings, including court-supervised discovery."  *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987).  Therefore, "a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1) of the FRCP."  *Id.*  "Nor does the Trade Secrets Act . . . provide any basis for preventing disclosure.  Disclosure pursuant to the discovery rules is disclosure 'authorized by law,' which the terms of the Act permit."  *Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981).  The government asserts that the documents it is withholding "may contain trade secrets or other confidential business information."  Jacob Decl. Ex. P.  But trade secrets, confidential business information, and personal privacy concerns are all explicitly protected by defendants' proposed protective order, which is already pending before the Court.  *See* [Proposed] Protective Order ¶¶ 1(a)-(g), Jan. 14, 2014, ECF No. 147-2.  Thus, Armstrong respectfully requests that the Court enter defendants' proposed order and overrule the government's statutory objections as a basis for withholding discovery.[2]

------------------------------------------------

[2] The government initially contended that it wished to propose an amended protective order and would circulate one for Armstrong's consideration.  *See* Jacob Decl. Ex. P at 2.  Armstrong

The government makes numerous objections based on attorney-client privilege, work product doctrine, common interest privilege, deliberative process privilege, law enforcement privilege, Rule 6(e) of the Federal Rules of Criminal Procedure, and the statute providing for civil investigative demands.  Jacob Decl. Ex. B Objection No. 7.  However, the government has not yet served a privilege log.  The government's "passing reference to possible invasions of attorney-client or work product privileges is insufficient without a detailed privilege log." *Natural Res. Def. Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999).  "Given the possibility that tardy privilege claims will further ensnare parties in discovery battles, courts in this district have treated seriously a party's noncompliance with Rule 26(b)(5) and have been willing to impose the severe sanction of waiver."  *Gen. Elec. Co. v. Johnson*, No. 00-2855, 2007 U.S. Dist. LEXIS 8275, 11-13 (D.D.C. Feb. 5, 2007).  The government has already agreed to log the "the subject matter, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided" for each document withheld under a claim of privilege. [Proposed] Order Regarding Privilege Logs, Jan. 14, 2014, ECF No. 147-3.  Pursuant to the proposed order now pending before the Court, the government's logs were due on March 12, 2014.[3]  *Id.* at 2. ("A privilege log for a document must be served on all parties within thirty (30) days after the deadline for the response to the requests for production to which the document is

---

immediately agreed to the government's suggested amendment, and further agreed to treat documents in accordance with that amendment pending entry of the proposed protective order. Jacob Decl. Ex. Q.  Shortly after Armstrong agreed to the government's proposed amendment, the government reversed course and claimed it would no longer seek an amended protective order.  Jacob Decl. Ex. S.  To date, the government has not moved for an amended protective order or even explained why it needs one.  *See Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005) ("The party seeking modification of a protective order bears the burden of showing that good cause exists.").

[3] Although the parties attempted to reach an agreement regarding the deadline for service of privilege logs pending entry of the proposed order, they were unable to do so.  *See* Jacob Decl. Ex. K.

responsive.").  Now that privilege disputes between the parties are ripe, Armstrong respectfully

requests that the Court enter the proposed order regarding privilege logs and order the

government to immediately serve a log in conformity with that order.

Many of the boilerplate objections defy common sense.  For instance, the government

objected to the requested format of production.  Jacob Decl. Ex. B. Objection No. 14.  However,

the government has already agreed to precisely that format in the Document Production

Stipulation filed with the Court.  *See* Supp'l Joint Report, Jan. 5, 2014, ECF No. 146.

During a telephonic meet and confer, the government declined to withdraw any of the

foregoing objections and refused to provide a date by which it would serve a privilege log.  Jacob

Decl. ¶ 23.  Therefore, Armstrong respectfully moves to have the objections stricken and

requests that the Court order the government to serve a privilege log.

**B.      The government's objections to specific document requests are meritless.**

In addition to its boilerplate objections, the government interposes a series of meritless

objections to certain individual requests.  None of them justify the government's continuing

refusal to produce responsive documents.

*1.      Request No. 9:  USPS Attendance at Professional Cycling Events*

The government objects to Request No. 9—which seeks documents showing the

attendance of Postal Service personnel at team cycling events—as burdensome and irrelevant.

Jacob Decl. Ex. B.  "[T]he discovery standard is very broad; material is discoverable if it

'appears reasonably calculated to lead to the discovery of admissible evidence.'"  *Athridge v.*

*Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 195 (D.D.C. 1998) (citation omitted).  Documents

showing the attendance of Postal Service personnel at professional cycling events are not merely

likely to lead to relevant information, they are certain to do so.  It is well-documented that Postal

9

Service employees learned of doping allegations as early as 1998 by attending the Tour de France.  *See, e.g.*, Jacob Decl., Ex. N at 102 (explaining that "Margot Myers, a media relations executive for the US Postal Service" witnessed an "all-out-war between cyclists and French officials over doping" during her trip to the 1998 Tour).  The Postal Service's knowledge of doping is relevant to Armstrong's statute of limitations defense as well as his government knowledge defense.  *See, e.g.*, *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 809 (D. Utah 1988); *accord U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*, No. 90-2568,1992 U.S. Dist. LEXIS 14063, 20-21 (D.D.C. Sept. 15, 1992).

An objection that a request is burdensome, harassing, and propounded for an improper purpose is "insufficient on its face."  *Jones v. Prince George's County*, No. 00-2902, 2002 U.S. Dist. LEXIS 27319, 6 (D.D.C. Oct. 3, 2002).  "[T]he party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome."  *Pleasants*, 208 F.R.D. at 12.  The government has not even attempted to make such a showing.  *See* Jacob Decl. Ex. B Resp. to Request No. 9.  The government's unsupported objections should be stricken.

    2.    *Request No. 10:  Relator's Written Disclosure*

The government objects to Request No. 10, which seeks the relator's written disclosure (and related documents), claiming to require relator's consent.  The government's objection has no basis in the False Claims Act or the Federal Rule of Civil Procedure.  "Once the government makes an election and the case goes forward, fundamental fairness dictates that the plaintiff must disclose to the defendant the factual basis for the suit."  *United States ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 399 (D. Colo. 1992).  Therefore, courts have repeatedly held that relators' written disclosures are not protected by attorney-client privilege or work product, and

ordered their production.  *See*, *e.g., id.*  The government has given no reason why its objection should not suffer a similar fate here.

### 3.   Request No. 12:  Government Investigation of Doping

The government also objects to Request No. 12, which seeks documents the government obtained through its investigation of this case.  The government candidly admits that it is currently withholding at least eighteen categories of responsive documents produced to it by third parties.  Jacob Decl. ¶ 23.  Remarkably, the government objects that the request is "not reasonably calculated to lead to the discovery of admissible evidence."  Obviously, if the government issued subpoenas, civil investigative demands, and other discovery requests, it certified its compliance with Rule 11, 31 U.S.C. § 3733, and other governing provisions that those requests did in fact seek documents reasonably calculated to lead to the discovery of admissible evidence.  Regardless, the request is limited to investigative requests issued in connection with "this case or the investigation," which is itself defined as limited to "matters RELATING TO the allegations of the relator or the United States in this litigation."  Therefore, the government's boilerplate relevance objection is unfounded and should be stricken.

### 4.   Request No. 13:  Foreign Investigations of Doping

Request No. 13 seeks documents relating to foreign investigations of the use of performance enhancing drugs in cycling.  The government objects to Request No. 13 as vague, ambiguous, and overbroad.  Courts regularly disregard such boilerplate.  *United States ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 249 (D.D.C. 2003).  Moreover, any documents relating to foreign investigations of doping in cycling in the possession of the U.S. Postal Service personnel who were involved in the cycling sponsorship or otherwise in the possession of "the official of the United States charged with responsibility to act" are directly

11

relevant to, *inter alia*, Armstrong's statute of limitations and government knowledge defenses. Therefore, the government's attempt to limit this request to "documents provided . . . from any non-US law enforcement" does not withstand scrutiny under Rule 26(b)(1).

The government also attempts to assert the privileges of foreign governments as an obstacle to discovery. The government's position is the polar opposite of its prior representation to the Court that a party "lacks standing" to assert privileges on behalf of non-parties. United States' Opp. to Armstrong's Mot. for a Protective Order, Oct. 28, 2013, ECF No. 133 at 5 (citing *United States v. Nachamie*, 91 F. Supp. 2d 552, 559 (S.D.N.Y. 2000); *Chiperas v. Rubin*, No. 96-130, 1998 WL 765126, at *2 (D.D.C. Nov. 3, 1998); *accord* Relator's Mem. of P&A in Opp. to Armstrong's Mot. for an Order Coordinating Depositions, Oct. 28, 2013, ECF No. 134 at 10 ("A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself." (quoting *Auto-Owners Ins. Co. v. S.E. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005))); *see also Donovan v. United States Postal Serv.*, 530 F. Supp. 894, 902 (D.D.C. 1981)  ("Judicial estoppel precludes a party from taking a position inconsistent with one previously taken with respect to the same facts in an earlier litigation." (internal quotation marks and citation omitted)).  As the government itself has admitted, it lacks standing to assert the privileges of third parties to the litigation—including foreign governments.[4]

Eight months after its responses were due, and on the evening before this motion was filed, the government for the first time asserted the Mutual Legal Assistance Treaty ("MLAT") as a basis to withhold documents produced by Italy and France relating to investigations of

---

[4] Regardless, the proposed protective order pending before this Court adequately protects the confidentiality interests of third parties.

doping in cycling.   *See* Jacob Decl. Ex. S (citing MLAT, U.S.-E.U., June 25, 2003, T.I.A.S. 10.201.1).  The government's transparent attempt at further delay is meritless.  The MLAT provides no shield against discovery from a plaintiff who already possesses relevant documents in the United States.

　　　"[A]bsent an express congressional intent to the contrary, the standards set forth in the FRCP must be followed with respect to discovery requests in District Court."  *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987).  The Supreme Court has advised courts "'to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result.'"  *Contratto v. Ethicon, Inc.*, 225 F.R.D. 593, 596 (N.D. Cal. 2004) (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, at 218 (1961)).  Following that guidance, the lower courts have declined to create an absolute privilege from discovery even where a statute provides that the allegedly-privileged document shall not "be admissible into evidence or otherwise used in any civil action involving private parties . . . ."  *Id.*  Accordingly, the Court of Appeals for the District of Columbia Circuit "refuse[s] to infer the creation of a qualified privilege from congressional silence."  *Laxalt*, 809 F.2d at 889.

　　　The MLAT provides the criteria under which the United States may obtain materials from foreign nations.  It does not even mention discovery in purely domestic litigation, much less purport to create restrictions on discovery used in that litigation.  To the contrary, the treaty expressly provides that it does not "limit rights otherwise available under domestic law."  MLAT, U.S.-E.U., art. 3, ¶ 5.  In fact, the Mutual Legal Assistance Treaty with Italy explicitly provides that "disclosure may be made where necessary as evidence in a public proceeding."

MLAT, U.S.-It., art. 8, ¶ 1, May 3, 2006, T.I.A.S. 10-201.36.[5]  Moreover, even if the treaty

governed discovery—which it does not—the government is free to produce the documents upon

the "consent of the requested State[s]."  MLAT, U.S.-E.U., art. 9, ¶ 1(e).  Therefore, the MLAT

does not shield documents from the scope of discovery under Federal Rule of Civil Procedure

26.  The government's objections should be overruled.

5.    *Request Nos. 14-17:  Written or Recorded Statements*

The government objects to request Nos. 14-17[6]—which seek "written or recorded

statements relating to this case or the investigation" (and similar documents)—asserting

attorney-client privilege and the work product doctrine.  But substantially verbatim or adopted

statements of third parties are not privileged or work product.  *See Goldberg v. United States*,

425 U.S. 94, 105 (1976); *Saunders v. United States*, 316 F.2d 346, 350 (D.C. Cir. 1963).  The

public record is replete with evidence that the government took numerous written and recorded

statements during its years-long investigation.  *See* Jacob Decl. Ex M.  The government's

possession of such statements is amply demonstrated by the fact that it unilaterally produces

them whenever it so desires.  *See, e.g.*, Jacob Decl. Ex. R (Mem. of Interview of Tom Danielson

(June 20, 2010)).  The government must amend its responses to agree to produce all such

statements immediately (and supply a privilege log listing the remainder).

---

[5] Indeed, criminal defendants are entitled to production of evidence that the government obtained through a MLAT, even though it does not explicitly authorize their access.  *See, e.g.*, *United States v. Gomez Castrillon*, No. S2 05 Cr. 156, 2007 WL 2398810 at *1, *5 (S.D.N.Y. Aug. 15, 2007).

[6] The government objects to request No. 17 to the extent documents "do not relate to allegations against Armstrong or issues that are otherwise the subject of this litigation."  The objection doesn't make sense because request No. 17 doesn't reach beyond such issues.

14

6.      *Request Nos. 18-19:  Communications with USADA*

Request Nos. 18-19 seek documents provided by and communications with USADA relating to this case or the government's investigation of the use of performance enhancing substances in cycling.  The government's objection that these requests seek irrelevant information is belied by the fact that the government's complaint and USADA's Reasoned Decision contain a number of identical allegations.  Both documents contain detailed descriptions of the use of performance enhancing substances by the U.S. Postal Service team. *See* Jacob Decl. Ex. O.  Both documents allege a cover-up of that use.  *Id.*  Factual contentions that the government makes to support its case-in-chief are obviously relevant and discoverable. *See* Fed. R. Civ. Proc. 26 ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim.").

The government also objects that its communications with USADA are privileged or attorney work product.  The government has no attorney-client relationship with USADA, and therefore cannot assert attorney-client privilege over communications with USADA.  Moreover, the government's contention that all of its communications with USADA are attorney work product is demonstrably false.  It is a matter of public record that on January 14, 2013, Travis Tygart sent a non-privileged letter to the Department of Justice urging intervention and offering to "share with your office information it ha[d] gathered through its investigation."  Jacob Decl. Ex. L.  And USADA's unredacted affidavits—one of which has already been filed in this litigation—are not attorney work product either.  *See Goldberg*, 425 U.S. at 105; *Saunders*, 316 F.2d at 350.

The government's attempt to withhold all documents from USADA pursuant to the attorney-work product doctrine is not just factually baseless—it is also legally baseless.

15

839567

Documents and communications obtained from USADA—a non-party to this litigation—are not entitled to work product protection.  "Courts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the instant suit." *Ricoh Co, Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003); *accord In re Cal. Pub. Utilities Com.*, 892 F.2d 778, 781 (9th Cir. 1989); *Doubleday v. Ruh*, 149 F.R.D. 601, 606 (E.D. Cal. 1993).  Therefore, the Court need not await a privilege log to rule that the documents USADA provided to the federal government must be produced.[7]

### 7.   Request Nos. 20-23:  Government Knowledge of Doping

Request Nos. 20-23 seek documents and communications relating to the knowledge of Postal Service, including the "official of the United States charged with the responsibility to act in the circumstances" within the meaning of 31 U.S.C. §3731(b)(2), about doping or allegations of doping by the U.S. Postal Service Cycling Team.  The government's argument that these requests seek irrelevant information is belied by Court's order on Armstrong's motion to dismiss.  In response to the government's overbreadth objection, Armstrong agreed to narrow the request for the time being to responsive documents in the possession of Postal Service employees, managers, directors, or agents who were involved with the cycling team sponsorship or otherwise in the possession of "the official of the United States charged with responsibility to act."  To the extent that the government contends that the "official" is not a Postal Service employee, Armstrong also sought documents from that official, each person who reports to him and to whom he reports, and each of his agents.  Despite the narrowed request, the government

---

[7] To the extent that the United States logs any of its communications with USADA, Lance Armstrong reserves the right to show that the asserted privilege never existed, has been waived by public disclosure, or overcome by substantial need.

still refuses to amend its requests agree to produce responsive documents from those persons.

Therefore, Armstrong respectfully requests that the Court order the government to do so.

        8.      *Request No. 24:  Communications with Defendants*

Request No. 24 seeks communications with Defendants.  In response to the government's

overbreadth objection, Armstrong agreement to limit the request to documents relating to this

case or the government's investigation.  *See* Jacob Decl. Ex. I at 6.  Armstrong also agreed that

the government need not produce communications between the government and Armstrong's

counsel.  Ex. J at 4.  Nonetheless, the government refuses to produce communications with

Armstrong unless he issues additional document requests.  Moreover, the government flatly

refuses to produce documents communications with the other defendants in its possession,

custody, or control.  The government's position that communications with the other defendants

relating to this case or its investigation are irrelevant is ridiculous and—if accepted at face

value—would preclude the government's even broader request to Armstrong seeking all

communications with defendants (regardless of subject matter).  *See* Jacob Decl. Ex. A Request

No. 7 (seeking "all communications, as well as documents relating to communications or

meetings, as to which [Armstrong] and" Weisel, Bruyneel, Stapleton, and Knaggs were parties).

The government also invokes Federal Rule of Evidence 408 as an objection.  But Rule 408 does

not shield documents from discovery or categorically preclude their admissibility.  In particular,

Rule 408 communications in which the government obtains promises of cooperation are

admissible to prove, *inter alia*, bias.

        9.      *Request No. 26-28:  Communications with the Press*

Request Nos. 26-28 seek the government's communications with the press about

Armstrong, the use of performance enhancing substances in professional cycling, and its

investigation of the same.  The government objected that the requests are not limited by time.

So, during the meet and confer process, Armstrong agreed to limit the requests to January 1,

1994 or whenever the Postal Service started negotiating the sponsorship agreement, whichever is

earlier.  Nonetheless, the government continues to refuse production of responsive documents.

The government also objects that the requests seek articles reporting the use of

performance enhancing substances in professional cycling that were read by Postal Service

employees.  Of course it does—any such article may establish knowledge sufficient to defeat the

government's attempt to circumvent the statute of limitations.  *See Hobson v. Wilson*, 737 F.2d 1,

40 (D.C. Cir. 1984) (holding that the plaintiff's review of a Washington Post article describing

the alleged conspiracy was sufficient to defeat the plaintiff's attempt to toll the statute of

limitations).

The government also attempts to limit its response to Postal Service employees.[8]  But—in

addition to Armstrong's government knowledge and statute of limitations defenses—the request

also seeks documents reasonably calculated to reveal the identity of the party who leaked the

existence of the lawsuit to the national press in violation of the Court's sealing order.  *See, e.g.,*

Jacob Decl., Ex. M.  Logic suggests that the leaking party could only be Floyd Landis, Postal

Service employees, or the government employees or agents involved in its investigation of

doping in professional cycling.  If so, Armstrong is entitled to dismissal of this action with

prejudice.  *See United States ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287, 296 (6th Cir.

2010).  Therefore, the government's attempt to limit the its search for responsive documents

from Postal Service employees is insupportable.

_____

[8] As with other requests, Armstrong agreed to limit the Postal Service custodians to those
personnel who were involved the cycling sponsorship or otherwise in the possession of "the
official of the United States charged with responsibility to act" for the time being.

18

839567

10.     *Request No. 31:  Documents Relating to Armstrong*

Request No. 31 seeks documents and communications relating to Armstrong.  Other than privilege and boilerplate (addressed in Part III.B.1, *supra*), the government's only objection to production was overbreadth in so far as Armstrong had yet not narrowed the circle of relevant custodians.  In response to that objection, Armstrong agreed to limit the request for the time being to documents from Postal Service employees, managers, directors, or agents who were involved with the cycling sponsorship, "the official of the United States charged with responsibility to act," and the government employees involved in the investigation of the use of performance enhancing substances in cycling.  Jacob Decl. Ex. I.  Despite Armstrong's good faith effort to address the government's objection, the government continues to refuse to amend its responses to produce documents from those persons.

11.     *Request No. 32:  Government's Claim for Damages*

Request No. 32 seeks all documents relating to the government's claim for damages.  The government objects that the request calls for a legal conclusion.  The objection shows how blithely the government treats its discovery obligations given that it had a duty to produce those documents without any request as part of its initial disclosures.  *See* Fed. R. Civ. Proc. 26(a)(1)(A)(iii).  The government only offers to produce the "claims for payment submitted by Tailwind and records of payment by the USPS."  Jacob Decl. Ex. B Resp. to Request No. 32. However, during meet and confer, the government admitted that it has factual information in its possession that it intends to use in support of its damages claim that it has not yet produced.

The government's refusal to produce the additional damages-related documents not only violates the government's Rule 26(a) obligations, it is also sanctionable.  "If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that

19

information . . . to supply evidence on a motion, at a hearing, or at a trial."  Fed. R. Civ. Proc.

37(c)(1); *accord* Local Civ. R. 26.2(a).  "[T]he sanction of exclusion is automatic and

mandatory."  *Salgado by Salgado v. Gen. Motor Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).  In

light of the government's intransigence, an order precluding the government from relying on

documents other than "claims for payment" in support of its damages claim is mandatory.  *See*

Fed. R. Civ. Proc. 37(c)(1).

The government is engaged in a transparent attempt to delay its own document

production while it proceeds to use that same discovery to litigate this case.  The Federal Rules

do not tolerate that sort of gamesmanship, and neither should the Court.  Armstrong respectfully

requests that the Court overrule the government's objections to document production, and order

it to produce documents responsive to the foregoing requests.

## IV.    CONCLUSION

The government's tactics flout its discovery obligations.  Therefore, Armstrong moves

the Court to order the government to make its long-overdue production.


Respectfully submitted,

KEKER & VAN NEST LLP


Dated:  July 3, 2014                          By:   */s/ Sharif E. Jacob* _____


20

839567

_____

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

21

839567