**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* LANDIS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| TAILWIND SPORTS CORP., et al., | ) | |
| Defendants. | ) | Civil Action No. 10-976 (CRC) |
| | ) | |
| | ) | ECF |
| | ) | |
| | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT**
**<u>LANCE ARMSTRONG'S MOTION TO COMPEL PRODUCTION</u>**

## Table of Contents

BACKGROUND ................................................................................................................. 2

DISCUSSION .................................................................................................................... 4

I.  Armstrong's General Arguments Lack Merit ...................................................................4

  A.  Claim of Government Delay ....................................................................... 4

  B.  The United States' General Objections Are Proper ................................................. 5

  C.  Timing for the Production of Privilege Logs ......................................................... 6

II.  Specific Document Requests ............................................................................. 8

  A.  Request No. 9 – Documents Relating to USPS Attendance At Cycling
      Events............................................................................................... 8

  B.  Request No. 10 – Relator's Disclosure Statements and Related Documents ......... 9

  C.  Request No. 12 – Documents Related to US Doping Investigations..................... 9

  D.  Request No. 13 – Documents Related to Foreign Doping Investigations ............ 12

  E.  Request Nos. 14 through 17 – Written and Recorded Statements....................... 14

      1.  Statements in the public domain ................................................. 15

      2.  Law enforcement interview reports ........................................... 17

      3.  Grand jury transcripts ............................................................. 18

  F.  Request Nos. 18 and 19 – Communications with USADA ................................. 19

  G.  Request No. 20 – Documents Related to Knowledge of Doping By DOJ
      Responsible Official.............................................................................. 21

  H.  Request Nos. 21 Through 23 – Documents Related to DOJ or USPS
      Knowledge of Doping........................................................................... 22

  I.  Request No. 24 – Communications With Defendants ......................................... 24

  J.  Request Nos. 26 Through 28 – Communications with the Press......................... 26

  K.  Request No. 31 – Documents Relating to Armstrong.......................................... 29

  L.  Request No. 32 – Documents Relating to the Government's Damages ............... 29

CONCLUSION.................................................................................................................. 30

# Table of Authorities

<u>Cases</u>

*Alltmont v. United States*,
  177 F.2d 971 (3d Cir. 1949)..................................................................................... 17

*American Civil Liberties Union v. Holder*,
  673 F.3d 245 (4th Cir. 2011)................................................................................... 28

*Athridge v Aetna Cas. & Sur. Co.*,
  184 F.R.D. 181 (D.D.C 1998) .................................................................................. 6

*Baker v. General Motors Corp.*,
  209 F.3d 1051 (8th Cir. 2000).................................................................................. 17

*Canadian Comm. Corp. v. Dep't of the Air Force*,
  514 F.3d 37 (D.C. Cir. 2008) ................................................................................... 11

*Grider v. Keystone Health Plan Central, Inc.*,
  580 F.3d 119 (3rd Cir. 2009)................................................................................... 5

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ................................................................................................ 17

*In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*,
  902 F.2d 244 (4th Cir. 1990)................................................................................... 19

*Jana, Inc. v. United States*,
  34 Fed. Cl. 447 (1995) ............................................................................................ 21

*Nishnic v. U.S. Dep't of Justice*,
  671 F. Supp. 771 (D.D.C.), ..................................................................................... 17

*Office of Thrift & Supervision v. Vinson & Elkins LLP*,
  124 F.3d 1304 (D.C. Cir. 1997) ......................................................................... 16, 17

*Pacific Architects & Engineers, Inc. v. United States Dep't of State*,
  906 F.2d 1345 (9th Cir. 1990).................................................................................. 11

*U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*,
  668 F. Supp. 2d 780 (E.D. La. 2009) ...................................................................... 28

*U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*,
  818 F.Supp.2d 64 (D.D.C. 2011) ............................................................................ 28

*U.S. ex rel. Summers v. LHC Group, Inc.*,
  623 F.3d 287 (6th Cir. 2010)............................................................................... 27, 28

*United States ex rel. Kreindler & Kreindler v. United Technologies, Corp.*,
  777 F. Supp. 195 (N.D.N.Y. 1991) ......................................................................... 21

*United States v. Adlman*,
  68 F.3d 1495 (2d Cir. 1995).................................................................................... 16

*United States v. American Tel. & Tel. Co.*,
  642 F.2d 1285 (D.C.Cir.1980) ........................................................................... 19, 20

*United States v. Carell*,
   681 F. Supp. 2d 874 (M.D. Tenn. 2009) ................................................................ 21
*United States v. Doe,*,
   481 U.S. 101 (1987) ............................................................................................... 18
*United States v. Incorporated Vill. of Island Park*,
   791 F. Supp. 354 (E.D.N.Y. 1992)........................................................................ 21
*United States v. Macomb Contracting Corp.*,
   763 F. Supp. 272 (M.D. Tenn. 1990) .................................................................... 21
*United States v. Nobels*,
   422 U.S. 225 (1975)............................................................................................... 17
*United States v. Schwimmer*,
   892 F.2d 237 (2d Cir. 1989).................................................................................. 19
*United States v. Tech Refrigeration*,
   143 F. Supp. 2d 1006 (N.D. Ill. 2001) ................................................................. 21
*US ex rel Garbe v. Kmart Corp.*,
   2014 WL 2218758 (S.D. Ill.) ............................................................................... 26

## Statutes

18 U.S.C. § 1905........................................................................................................... 11
21 U.S.C. § 2001(b)(1)-(3) ........................................................................................... 19
21 U.S.C.A. § 2001(a)(2)............................................................................................... 20
28 U.S.C. § 2415(b) ................................................................................................ 22, 26
28 U.S.C. § 2416(c) ...................................................................................................... 22
31 U.S.C. § 3730(b)(2) ................................................................................................... 9
31 U.S.C. § 3731(b)(2) ................................................................................................. 22
31 U.S.C. § 3731(c) ...................................................................................................... 21
36 U.S.C. § 220501 et seq.,........................................................................................... 20
5 U.S.C. § 552(a) .......................................................................................................... 11

## Rules

Fed. R. Civ. P. 26(b)(3)(A) ........................................................................................... 26
Fed. R. Civ. P. 26(b)(4)................................................................................................. 30
Fed. R. Civ. P. 26(f)........................................................................................................ 3
Rule 26(a)(1)(A)(ii) ........................................................................................................ 5
Rule 26(a)(2) ................................................................................................................. 30
Rule 26(b)(4)................................................................................................................. 30

## Other Sources

Agreement on Mutual Legal Assistance, U.S.-E.U., T.I.A.S. 10-201.1 ....................... 13

Instrument Amending the Treaty of Nov. 9, 1982 on Mutual Legal Assistance in Criminal
    Matters, U.S.-It., art. 8, May 3, 2006, T.I.A.S. 10-201.36 ......................................................... 13
Instrument Amending the Treaty of Dec. 10, 1998 on Mutual Legal Assistance in
    Criminal Matters, U.S.-Fr., art. VI, Sep. 30, 2004, T.I.A.S. 10-201.32.................................... 13

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* LANDIS,<br>                    Plaintiffs,<br>          v.<br>TAILWIND SPORTS CORP., et al.,<br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 10-976 (CRC)<br><br>ECF |

**UNITED STATES' OPPOSITION TO DEFENDANT
LANCE ARMSTRONG'S MOTION TO COMPEL PRODUCTION**

Since discovery began in late May, the United States has produced 167,795 pages of responsive documents to Armstrong, including documents in the possession of the United States Postal Service pertaining to the sponsorship of Armstrong's cycling team and documents the Government received from the companies that owned and managed the team.  Further, as set forth below, the Government's production is ongoing.  As the Government explained to Armstrong's counsel when the parties met and conferred, the Government is prepared to produce hundreds of thousands of pages of additional documents after this Court enters a protective order.

Nevertheless, Armstrong claims the Government's production efforts are inadequate.  Among other things, he accuses the Government of "withholding" third-party documents that the Government has agreed to produce upon entry of a protective order; he demands a virtual roadmap to the Government's civil investigation and a related criminal investigation; and he demands the production of privileged Government work product.  These claims, as well as Armstrong's allegations of Government bad faith and misconduct, are meritless and should be rejected.  Instead of cooperating with the Government to promote an expeditious and orderly

discovery process focused on potentially relevant information, Armstrong appears intent upon attacking the Government's supposedly "unauthorized" investigation.[1]

The United States' interests lie in an orderly and efficient discovery process leading to a speedy resolution of its claims on their merits. The Government is prepared, as it has been since the inception of this case, to take all reasonable steps to ensure that Armstrong has the documents he needs to fully and fairly litigate this case. Indeed, to a very large extent, Armstrong's motion seeks to compel the Government to do what it is already doing and, thus, serves no purpose other than to delay the progress of discovery and to burden the Court with an unnecessary motion. For that reason, and for the reasons set forth herein, Armstrong's motion to compel should be denied.

## **BACKGROUND**

As alleged in the United States' complaint in intervention, the United States Postal Service (USPS) sponsored a professional cycling team owned by defendant Tailwind Sports Corp. (Tailwind) from 1996 through 2004, and during that time the USPS paid Tailwind between $1 million and $9 million per year to sponsor the team. ECF No. 44. Defendant Lance Armstrong was the lead rider for the team from 1999 through 2004. *Id.*. The sponsorship agreement between the USPS and Tailwind prohibited the team and its riders from employing

---

[1] Armstrong's motion also reflects a more immediate goal – to delay indefinitely his deposition in this matter. It is no coincidence that Armstrong raised the issues in this motion for the first time just two days after the Government served a notice to take his deposition, even though the Government had served its responses and objections nearly four months earlier. In the same letter, Armstrong claimed that the deposition could not proceed because he did not have documents sufficient to allow him to prepare, and insisted in several subsequent discussions that "all of" the documents he requested were necessary for his preparation. Armstrong's proposed scheduling order, which would delay all depositions in this case until October, further reflects an effort to avoid his testifying under oath.

substances or methods that were banned by cycling's governing bodies, and further required the

team to take "immediate action" in the event that a rider used such substances or methods in

violation of the agreement.  *Id.*

In 2010, one of Armstrong's teammates, Floyd Landis, revealed publicly that he,

Armstrong, and a number of their teammates had used banned substances and methods while

members of the USPS-sponsored team.  Declaration of Robert E. Chandler (Chandler Decl.) at

¶ 3.  The United States Attorney's Office for the Central District of California, along with the

Food and Drug Administration Office of Inspector General (FDA-OIG), the Federal Bureau of

Investigation, and the United States Postal Service Office of Inspector General (USPS-OIG)

conducted a criminal investigation related to Landis' allegations.  *Id.*  Shortly after his public

allegations, Landis filed the *qui tam* action that gave rise to this litigation, and the Civil Division

of the Department of Justice, the United States Attorney's Office for the District of Columbia,

and the USPS-OIG opened their own investigation into the allegations in the complaint.  *Id.*

On January 17, 2013, Armstrong admitted publicly that he had used banned drugs

throughout his cycling career, including during the seven years he was the marquee rider for the

USPS cycling team.  On February 22, 2013, the United States intervened in the *qui tam* matter

against Armstrong, Tailwind, and the team's manager, Johan Bruyneel.  ECF No. 41 (Notice of

Intervention).  The Government filed its complaint on April 23, 2013, and after briefing and

argument on the defendants' motions to dismiss, the parties held a scheduling conference as

required by Fed. R. Civ. P. 26(f) on November 22, 2013.  ECF No. 41 (Notice of Intervention);

Chandler Decl. ¶ 4.  Since that time, the Government delivered five production sets to Armstrong

with a total production volume of 167,795 pages.  *Id*. at ¶ 6.

## DISCUSSION

I.     **Armstrong's General Arguments Lack Merit**

A.     **Claim of Government Delay**

As explained above, the Government has produced 167,795 pages of responsive documents, including nearly all of the non-privileged documents on which it relied during its investigation.  Nevertheless, Armstrong, who until recently had produced nothing, complains that the Government should have begun its production when it served its responses and objections to his requests for production on February 10, 2014.  ECF No. 190 (Armstrong Br.), at *11; Chandler Decl. ¶ 8.  The suggestion is inexplicable since, as Armstrong acknowledges, the Government and he had previously agreed to suspend discovery between them until May 20, 2014.[2]  *Id.*, fn. 1; ECF No. 190-1 (Jacob Decl.) ¶ 11.

Armstrong's own conduct further belies any suggestion that the Government should have begun producing documents on February 10, 2014.  The Government, Armstrong, and relator agreed that they would each serve their "responses and objections" on February 10, 2014.  Chandler Decl. Exh. A.  All three parties were subject to the same agreement, so whatever understanding applied to the Government's response to Armstrong's document requests must

_____

[2]  As Armstrong explains, the parties agreed to stay discovery while they conducted settlement discussions.  ECF No. 190-1 (Jacob Decl. ¶ 11).  Those discussions began on November 22, 2013 (and not, as Armstrong claims, in January 2014), and the parties agreed from the outset that it would be desirable for the discussions to precede the beginning of their discovery.  Chandler Decl. ¶ 4.  That understanding was reflected in an email sent by Armstrong's counsel on November 29, 2013, four days *after service of the document requests at issue in this motion*, stating his understanding that the discussions would take place "pre-discovery," and describing a plan for a limited document exchange in order to facilitate the discussions.  *Id.*  In another email exchange on April 9, 2014, Government counsel and Armstrong's counsel reaffirmed their shared understanding that the parties would "continue holding off on discovery" until they met in-person on May 20, 2014.  *Id.*

also have applied to Armstrong's response to relator's requests.  On February 10, 2014, all three

parties served their responses and objections, but no party produced any documents at that time

(although the United States already had produced documents to Armstrong on

January 29, 2014).  Chandler Decl. ¶ 7.  Moreover, no party served a privilege log at that time or

within thirty days thereafter.  *Id.*  Indeed, Armstrong has not produced any documents or served

a privilege log in response to relator's document requests, to which Armstrong responded on

February 10, 2014.[3]  *Id.*

   After the agreement between the Government and Armstrong to suspend discovery

ended, the Government resumed its document production in less than three weeks.  Chandler

Decl. ¶ 4.  Armstrong's claims of Government delay therefore should be disregarded.

   **B.**  **The United States' General Objections Are Proper**

   Armstrong's contention that the Government's "general objections" should be rejected in

their entirety is incorrect.  The Federal Rules of Civil Procedure do not prohibit general

objections.  *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 139 (3rd Cir. 2009).

Moreover, there is nothing inherently improper in stating general objections.  Rather, "the

legitimacy of a general objection turns on the objection and its context."  *Grider*, 580 F.3d at

139.  Armstrong's inclusion of three pages of his own general objections in response to the

Government's document requests undermines his argument.  Chandler Decl. Exh. D, at *2-4.

---

[3] Similarly, Armstrong complains that the Government failed to produce any documents at the initial disclosure deadline.  Armstrong Br., at *10.  Rule 26(a)(1)(A)(ii) does not require the production of documents upon the service of a party's initial disclosures.  The rule requires only that the disclosing party describe the documents it may use to support its claims or defenses "by category and location," which Armstrong has never disputed that the Government has done. Here again, Armstrong's claim is substantially undermined by his failure to produce any documents in connection with *his* initial disclosures.

Armstrong cites *Athridge v Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C 1998), in support of his argument.  Unlike the responding party in *Athridge*, however, the Government did not "leave[] [Armstrong] wondering what documents are being produced and what documents are being withheld."  *Id.* at 190.  Armstrong's motion identifies no example of the Government having played "hide the ball" and, indeed, the Government's response to almost every one of Armstrong's requests either identified specific documents it would produce or indicated that it objected to the request in its entirety.[4]  ECF No. 190-3.

### C.    Timing for the Production of Privilege Logs

The Government has legitimate claims of privilege with respect to many of the documents whose production Armstrong seeks to compel.  Further, as discussed below, Armstrong's demand that the Government serve its privilege log "immediately," Armstrong Br., at *16, is inconsistent with his stated position when the parties conferred on the issue.  In accordance with both parties' position on this issue, this Court should require all parties to serve

---

[4] Armstrong's challenges to the several of the Government's general objections are misplaced.  The Government's objection to producing documents more conveniently obtainable by the requesting party from a public source or some other source is proper and has particular applicability to this case given the large volume of public media attention paid to Armstrong and his doping.  This issue will be discussed in greater detail below.  We note that this objection, which Armstrong finds "particularly egregious," is included in Armstrong's responses to the Government's requests.  Chandler Decl. Exh. D (Objection 6).

The Government's objection to requests that require a legal conclusion are likewise appropriate, since the rules do not require a party to interpret or guess at another party's legal theory.  However, the Government has not withheld any documents responsive to Armstrong's requests based upon this objection.

Finally, Armstrong claims the Government objected to following agreed-upon production specifications.  This is another mischaracterization of the Government's position.  The Government objected to following the production specifications set forth *in Armstrong's document requests* to the extent they are inconsistent with specifications that will be entered by the Court (which, we assume, are likely to closely resemble the agreed-upon specifications).

their initial privilege logs within a reasonable time after this Court enters an Order regarding the content of privilege logs.

As Armstrong recognizes, "[t]he parties have substantial differences regarding the appropriate content of the [privilege] logs," ECF No. 171-12, at *4 (email from Keker & Van Nest). Further, although the parties were unable to reach an agreement concerning when privilege logs would be due, both sides sought to make privilege logs due *after* this Court enters an order clarifying the format that such logs must follow. *Compare id.* (stating that "it would be most efficient to have those differences adjudicated prior to service.") *with id.*, at *2 (email from the Department of Justice) (stating that "[a]t a minimum, it appears that we all agree that no privilege logs are due until after the Court enters an order.").[5] Not surprisingly, therefore, although both plaintiffs and defendants have served discovery requests in this case, no party has produced a privilege log as of this writing.[6] Chandler Decl. ¶ 7.

Because the Government's claims of privilege are not yet due, Armstrong's motion to compel production of potentially privileged documents is at best premature, and should therefore be denied.

---

[5] The difference between Armstrong's position and the Government's concerned what should happen *after* this Court enters an order clarifying the appropriate content of privilege logs. Armstrong sought to make privilege logs due 30 days after a "response" to a request for production. Thus, if the United States objected to a document request on the basis of privilege, but agreed to a rolling production of non-privileged documents, then Armstrong's proposal could in principle make a party's privilege log due before the underlying production of documents. The Government's proposal, by contrast, was to make privilege logs due after the responsive documents are actually produced. Thus, for instance, if the Government responds to a document request on January 1, and produces documents on February 1, the Government's proposal is that its privilege log with respect to that request would be due March 1.

[6] The fact that Armstrong still has not served a privilege log in response to relator's first document requests vitiates his suggestion that the Government's privilege log was due on March 12, 2014. *See* Armstrong Br., at *15. Relator served document requests on Armstrong the same day that Armstrong served his first document requests on the Government.

II.     **Specific Document Requests**

A.      **Request No. 9 – Documents Relating to USPS Attendance At Cycling Events**

Request No. 9 seeks the production of detailed documentation relating to the attendance

by USPS personnel at USPS cycling team events, "including but not limited to itineraries,

receipts, emails, reports, and summaries."  The USPS cycling team raced in numerous domestic

events each year.  In connection with many of those events, local USPS offices sponsored race-

related events at which they hosted the team or at least several riders, and employees from the

local post offices were encouraged to attend the race.  Reconstructing the team's schedule for

domestic events going back to 1995 and locating every document "relating to" the attendance of

USPS employees at such events, as Request No. 9 would require, would impose an undue burden

on the Government.  Moreover, Armstrong fails to explain how identifying attendees at such

events is likely to lead to the discovery of admissible evidence.

In a good faith effort to fulfill its discovery obligations, the United States has been

producing documents responsive to Request No. 9.  The Government's practice in locating

responsive documents in the possession of the USPS has been to contact any current employee

the Government identifies who was involved with the cycling sponsorship and to search any

common document repositories likely to house documents related to the sponsorship.[7]  The

Government has produced to Armstrong documents responsive to Request No. 9 that have been

located during the course of this review, and it will continue to do so.  To the extent Request

No. 9 requires a search for responsive documents more extensive than the one the Government is

---

[7] The Government has disclosed to Armstrong the names of the employees who have
been contacted in its search for responsive documents, and has attempted unsuccessfully to reach
an agreement with Armstrong regarding the identification of potential document custodians.
This issue is addressed in greater detail in response to Request Nos. 21 through 23.

conducting, it is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

### B.      Request No. 10 – Relator's Disclosure Statements and Related Documents

Request No. 10 seeks all documents relating to relator's written disclosure made pursuant to 31 U.S.C. § 3730(b)(2).  The United States informed Armstrong that it would produce relator's disclosure statement, but that it wanted the opportunity to consult with relator prior to production in order to ensure that the Government did not waive any claim of privilege relator might have.  The Government has discussed the matter with relator, and has been informed that relator intends to object on privilege and work product grounds to disclosure of a portion of his disclosure statement.  Relator has informed the United States that he intends to file a separate brief addressing his claim of privilege over the disclosure statement.

To the extent Armstrong seeks documents "relating to" the disclosure statement, the Government objected on overbreadth grounds, explaining that Request No. 10 amounts to a boundless demand for documents related to this case.   Nevertheless, if limited appropriately, Request No. 10's overbreadth can be cured.  Specifically, the request is reasonable in scope if limited to the 312 documents relator attached to his disclosure statements.  Some of the attachments are subject to valid claims of privilege, however, and relator has informed the Government that his separate brief will address privilege claims over the attachments to the disclosure statement.

### C.      Request No. 12 – Documents Related to US Doping Investigations

Request No. 12 seeks production of all documents the Government received in connection with both the civil and criminal investigations, including all documents received by subpoena or civil investigative demand.  The Government has agreed to produce these

documents as a matter of expediency, notwithstanding its valid objection to the production of these documents.  This request, along with others of Armstrong's requests, seek license to inspect the files of the Government attorneys litigating this case and the investigators who have been assisting them.  Armstrong seeks all documents collected by attorneys and investigators during the course of their investigations, as well as attorney communications with witnesses, defendants' counsel, and other law enforcement agencies.  In other words, rather than describing the contents of the documents he is requesting with "reasonable particularity" as required by Rule 34, Armstrong seeks documents based on nothing more than their presence in DOJ's case file.  This is no different from the Government requesting that Armstrong's attorneys produce documents *they* collected in the course of their representation of Armstrong.  Armstrong seeks the extraordinary ability to open the Government's files and help himself to the Government's work product, and his request is improper.

Notwithstanding the Government's valid objections to Armstrong's improper request, the Government has agreed to produce documents responsive to Request No. 12.  Indeed, the Government has already has produced substantially all of the non-privileged material on which it relied during its Civil Investigation.  Further, the Government has agreed to produce any non-privileged documents collected in connection with Government investigations of Armstrong, to the extent permitted by law and consistent with the protective order entered by the Court.

Armstrong's statement that the Government "admits that it is … withholding … responsive documents," Armstrong Br., at *18, is based on a deliberate mischaracterization of the Government's position.  As the Government informed Armstrong when the parties met and conferred, although the Government has stated valid objections to the production of this material, the undersigned, in a good faith effort to respond to Armstrong's document request, identified

and obtained additional categories of documents that originally were produced to the USAO-

CDCA in connection with the criminal investigation.  Chandler Decl. ¶ 10.  These documents

primarily consist of commercial information produced by Armstrong's former corporate

sponsors pursuant to grand jury subpoenas.  *Id.*  Certain of Armstrong's former sponsors have

requested confidential treatment of the information contained in these documents.[8]  *Id.*

When the parties met and conferred, the Government informed Armstrong that it would

produce the documents Armstrong seeks consistent with a protective order after one has been

entered by this Court.  *See* ECF No. 190-20, at *2.  The Government explained that this approach

is necessary because the Trade Secrets Act, 18 U.S.C. § 1905, and the Privacy Act, 5 U.S.C. §

552(a), generally prohibit the Government from sharing private information in its possession

concerning individuals and non-governmental entities except as specifically authorized by law.

In particular, the Trade Secrets Act makes it a criminal offense for Government employees to

disclose private information where disclosure would "cause potential harm to the competitive

position of the person from whom the information was obtained."  *See Pacific Architects &*

*Engineers, Inc. v. United States Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990); *see also*

*Canadian Comm. Corp. v. Dep't of the Air Force*, 514 F.3d 37, 43 (D.C. Cir. 2008).  Since the

information Armstrong seeks potentially implicates the Privacy Act and the Trade Secrets Act,

---

[8] After the Civil Division received copies of the documents that were originally obtained by the USAO-CDCA, the undersigned contacted the companies that had produced these documents originally, notified them of Armstrong's document request, and informed them that they would have an opportunity to be heard concerning how their commercial information would be treated in this litigation.  Upon entry of the protective order, the Government will contact each of the affected parties, provide them with a copy of the protective order, and inform them that the Government intends to produce their documents unless they initiate Court action to prevent or limit the production within 10 days of the written notice.

Armstrong's efforts to compel the production of this information in the absence of an appropriate protective order should be denied.

Armstrong's motion should also be denied to the extent that it seeks the production of documents concerning the use of performance enhancing substances by professional cyclists who have no connection to this litigation.  Armstrong requests, "ALL DOCUMENTS produced in response to any … request that YOU issued in connection with this case or the INVESTIGATION."  ECF No. 190-2, at *9.  The "investigation," in turn, is defined as including, without limitation, any "civil and criminal investigations undertaken by the U.S. Department of Justice … RELATING TO the use of performance enhancing substances in cycling."  *Id.*, at *3-4.  Armstrong's request, therefore, calls for production of documents relating to the investigation of persons with no connection to Armstrong.  Armstrong has failed to demonstrate how the conduct of entities and individuals that had nothing to do with him or the USPS bears any relevance to a claim or defense in this case.  Armstrong is not entitled to obtain the details of Government investigations that are unrelated to the matters at issue in this action, and the Court should reject his efforts to do so.[9]

### D.    Request 13 – Documents Related to Foreign Doping Investigations

Request No. 13 seeks production of documents relating to investigations of cycling outside the United States.  As the undersigned explained to Armstrong's attorneys when the parties met and conferred, the Civil Division has not received any documents generated by foreign countries in the course of non-domestic criminal investigations of Armstrong or other

---

[9] If the Court requests, the Government is prepared to describe *in camera* the documents in its possession that were gathered in the criminal investigation, but that are not reasonably calculated to lead to admissible evidence in this litigation.

cyclists.  ECF No. 190-20, at *3.  Further, although the undersigned have been informed that

attorneys in the USAO-CDCA have obtained records from Italy and France in the course of their

(now closed) criminal investigation of Armstrong, the terms of the Mutual Legal Assistance

Treaties (MLATs) pursuant to which these records were produced do not authorize their use in

this litigation.  *Id.*

There is a unified MLAT between the European Union (EU) and the United States.  *See*

Agreement on Mutual Legal Assistance, U.S.-E.U., T.I.A.S. 10-201.1.  The EU MLAT limits the

use of evidence or information obtained from a requested State.[10]  Specifically, Article 9 states

that a requesting State may use "any evidence or information obtained from the requested State

… for the purpose of its criminal investigations and proceedings."  Art. 9, ¶1(a).  However, the

same Article allows use of evidence in non-criminal proceedings only if the non-criminal

proceeding is "directly related" to an actual or contemplated criminal investigation.  *Id.* at

¶1(c).[11]  Since there *is* no actual or contemplated criminal investigation to which the Civil

Division's use in this litigation would directly relate, the Civil Division has not obtained or

reviewed evidence from Italy or France.  *A fortiori*, we are not able to produce this evidence to

Armstrong.[12]

---

[10] Article 9 of the EU MLAT is incorporated with slight variation in the France and Italy Instruments.  *See* Instrument Amending the Treaty of Dec. 10, 1998 on Mutual Legal Assistance in Criminal Matters, U.S.-Fr., art. VI, Sep. 30, 2004, T.I.A.S. 10-201.32; Instrument Amending the Treaty of Nov. 9, 1982 on Mutual Legal Assistance in Criminal Matters, U.S.-It., art. 8, May 3, 2006, T.I.A.S. 10-201.36.

[11] Article 9 lists four other circumstances where use of information obtained from a requested State may be permitted, none of which are applicable here.

[12] In his brief, Armstrong appears to further limit his request to documents "relating to" foreign criminal investigations that are "in the possession of the U.S. personnel who were involved in the cycling sponsorship or otherwise in the possession of 'the official of the United States charged with responsibility to act,'" as opposed to the foreign criminal records

Armstrong's argument that the Government "attempts to assert the privileges of foreign governments as an obstacle to discovery," Armstrong Br., at *19, rests on a mischaracterization of the Government's position.  The Civil Division is not claiming privilege with respect to the documents Armstrong seeks; instead, it simply does not *have* them, and is precluded from obtaining them without the "consent of the requested State."  Art. 9, ¶ 1(e).  Armstrong's suggestion that the rules of civil procedure require the Government to violate its treaty obligations is wholly without merit.

Equally without merit is Armstrong's argument that the Government should be estopped from complying with its treaty obligations.  *See* Armstrong Br., at *19.  The position the Government takes here is consistent with its initial response to Armstrong's request.  In its initial response, the Government stated that it "will produce documents provided to Government authorities from any non-US law enforcement authorities to the extent that those authorities waive any applicable privileges."  ECF No. 190-3, at *10.  Since neither Italy nor France has informed the Government that it has waived its privilege, the Government's objection stands.  In addition, the Government initially objected generally to producing documents that are subject to "any … applicable law or rule preventing the disclosure of documents[.]"  ECF 190-3, *3-4.

### E.      Request Nos. 14 through 17 – Written and Recorded Statements

When the parties met and conferred, Armstrong repeatedly refused to clarify the types of documents he believes may be responsive to his request for "witness statements."  In a good faith effort to comply with its discovery obligations, the Government has identified four categories of witness statements that are responsive to Armstrong's requests Nos. 14-17: (1) statements in the

---

themselves.  Armstrong Br., at *18.  If Armstrong merely seeks documents *discussing* foreign investigations that are in the USPS's possession, these document have already been produced and will continue to be produced on a rolling basis.

public domain; (2) transcripts of depositions pursuant to civil investigative demands (CIDs); (3)

law enforcement interview reports; and (4) grand jury transcripts.[13]

Although Armstrong never specifically requested copies of CID deposition transcripts,

the Government is producing such transcripts to him in a good faith effort to comply with his

request.  Armstrong's effort to compel production of other categories of witness statements is

discussed below.

### 1.  Statements in the public domain

Because of the high level of public interest in this case, "statements relating to this case"

include witness statements contained in at least ten books, as well as countless newspaper and

magazine articles, television and radio segments, and internet articles, reports, blogs, and social

media communications. When the parties met and conferred in connection with Armstrong's

document requests, Armstrong agreed that the parties should be spared the need to copy, Bates-

stamp, and produce to one-another identical copies of one book:  *Wheelmen:  Lance Armstrong,*

*the Tour de France, and the Greatest Sports Conspiracy Ever*.  Chandler Decl. ¶ 9.  Armstrong

refused to agree to treat other publications containing witness statements in this case the same

way.  *Id*.  Instead, Armstrong insisted that the Government specifically identify all of the

publicly available statements on which the Government intends to rely.  *Id*.  He further insisted

that this obligation run only one way, refusing to undertake the same commitment even if the

Government so agreed.  *Id*.

---

[13] To the extent that Armstrong seeks to compel production of *other* types of written or
recorded statements, he has not properly discharged his duty to confer with the Government prior
to filing a discovery motion, and the present motion should therefore be denied.

Armstrong's contention defies logic for at least three reasons.  First, statements in the public domain are equally accessible to all parties, and therefore there is no legitimate reason to force the parties to produce such materials to one another.[14]  Second, some of the books and other material that would otherwise be subject to Armstrong's request may exist in formats where they cannot conveniently be copied;[15] the Rules do not require the parties to purchase additional copies of materials already in their possession for the sole purpose of producing them to one another.  Third, and most significantly, Armstrong's insistence that the Government provide him with a list of all the public sources of the witness statements on which it intends to rely appears calculated to invade the Government's work-product privilege.  "[A] lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case."  *Office of Thrift & Supervision v. Vinson & Elkins LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997); *see also United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) ("The purpose of the [work-product] doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation.").  In this case, Armstrong seeks advance notice of the public statements that the Government intends to use in this litigation.

Once again, Armstrong seeks license to peruse the Government's files – he seeks to have the Government turn over the fruits of its research, when the underlying documents are equally

---

[14] Statements in the public domain include witness affidavits in connection with USADA's investigation.  USADA published redacted witness affidavits on its website.  However, the Government does not possess unredacted copies of the USADA affidavits.  If and when the Government obtains unredacted copies of the USADA affidavits, it will share them with the defendants.

[15] For instance, media cannot conveniently be copied when it exists in a format in which it is subject to proprietary digital rights management software.

accessible to him.  Armstrong's request is designed to elicit the production of the Government's work product, is unduly burdensome, and should be denied.

### 2.  Law enforcement interview reports

Law enforcement interview reports are also protected by the work-product doctrine. Again, the work product doctrine is intended to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,*, 422 U.S. 225, 238 (1975); *see also* Fed. R. Civ. P. 26(b)(3)(A).  Attorneys' notes and memoranda of witness interviews are protected by the work product doctrine. *Hickman v. Taylor*, 329 U.S. 495, 512-13 (1947); *Vinson & Elkins, LLP*, 124 F.3d at 1307. Further, because "attorneys often must rely on the assistance of investigators or other agents in the compilation of materials in preparation for trial," *Nobles*, 422 U.S. at 238-39, the work product doctrine protects materials prepared by federal investigators at the direction of Government attorneys as well.  *See Nishnic v. U.S. Dep't of Justice*, 671 F. Supp. 771, 771-73, 775 (D.D.C.), *aff'd* 828 F.2d 844 (D.C. Cir. 1987); *Alltmont v. United States*, 177 F.2d 971, 976 (3d Cir. 1949).[16]

In this case, notwithstanding the Government's inadvertent production of 29 reports of witness interviews undertaken in connection with the Government's investigation (which are the subject of a clawback notice served by the Government), Armstrong's motion to compel *all* interview reports in the Government's possession is at best premature.  As set forth above, the

---

[16] Courts typically distinguish between "opinion work product," which is "virtually undiscoverable," and "fact work product," which is discoverable only on a showing of "substantial need."  *See Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).  Even with respect to "fact work product," however, "[d]iscovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party."  *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).

Government has not yet had an opportunity to formally assert its claims of privilege.  With respect to the inadvertently produced documents in particular, the parties have agreed to an orderly process for making and challenging claims of privilege when documents are inadvertently produced.  *See* ECF No. 147-1.  Pursuant to this agreement, a party wishing to dispute a claim of privilege must serve written notice of the basis for its challenge, to which the party asserting privilege has an opportunity to respond.  ECF No. 147-1*,* at * 2-3 (¶¶ 5-6).  In this case, Armstrong has not stated why he believes that witness statements to Government lawyers are *not* privileged where, as here, the witnesses in question are available for deposition. Chandler Decl. Exh. C.  Neither has Armstrong addressed the Government's attorney-client and investigative files privilege assertions, or the fact that many of the documents at issue contain attorney notes or highlighting.   Therefore, Armstrong's request to compel production of all interview reports should be denied as premature.

### 3.  Grand jury transcripts

It has been widely reported that witnesses in this case have given testimony before the grand jury.  *See, e.g.,* ECF No. 190-1 (Declaration of Sharif Jacob), at *3 (¶ 18) (attaching media reports).  It appears that Armstrong seeks transcripts of that testimony.  If so, the Government is not authorized to provide him with the transcripts unless he first obtains permission from the District Court for the Central District of California.   "The General Rule of Secrecy set forth in Federal Rule of Criminal Procedure 6(e) provides that certain persons, including attorneys for the Government, shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." *United States v. Doe*, 481 U.S. 101, 107 (1987) (quotation marks omitted).

### F.        Request Nos. 18 and 19 – Communications with USADA

Armstrong's demand for production of the Government's communications with the

United States Anti-Doping Agency (USADA) and documents provided by USADA is barred by

the common interest doctrine, which Armstrong fails to address.

The common interest doctrine protects documents that are otherwise subject to privilege

and that have been exchanged by persons sharing a common legal interest.  This doctrine applies

both to communications subject to attorney-client privilege and documents subject to work

product protection.  *See United States v. American Tel. & Tel. Co*., 642 F.2d 1285, 1299

(D.C.Cir.1980); *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244,

249 (4th Cir. 1990).  As the Fourth Circuit has explained,

> Whether an action is ongoing or contemplated, whether the jointly
> interested persons are defendants or plaintiffs, and whether the litigation
> or potential litigation is civil or criminal, the rationale for the joint defense
> rule remains unchanged: persons who share a common interest in litigation
> should be able to communicate with their respective attorneys and with
> each other to more effectively prosecute or defend their claims.

*In re Grand Jury Subpoenas*, 902 F.2d at 249.  Put succinctly, all that is required under the

common interest doctrine is that the parties exchanging information "share a common interest

about a legal matter."  *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989).

The Government's communications with USADA were made pursuant to just such a

common interest.  USADA is a non-profit agency that receives the majority of its funding from

Congressional appropriations.  USADA is under a congressional mandate to "implement anti-

doping … testing and adjudication programs" for American athletes.  21 U.S.C. § 2001(b)(1)-

(3).[17]  In this capacity, USADA administers the anti-doping program applicable to National

Governing Bodies which, under 36 U.S.C. § 220501 *et seq*., govern sports in the United States

recognized by the Olympic Movement.

Pursuant to its lawful enforcement authority, USADA developed evidence concerning

Armstrong's doping activities.  This information is also relevant to the Government's civil

claims against Armstrong under the False Claims Act.  Any exchange of information between

the Government and USADA was pursuant to their mutual interest in discerning the nature and

extent of Armstrong's and his team's doping activities and in carrying out their respective

enforcement authorities.  Thus, the common interest doctrine applies.  *See American Tel. and

Tel. Co.*, 642 F.2d at 1301 ("The Government has the same entitlement as any other party to

assistance from those sharing common interests, whatever their motives. This is clearly true …

where Congress has established a policy of private enforcement to supplement Governmental

action against offenders. This policy should not be thwarted by allowing an alleged … offender

to acquire the trial preparations of his private adversaries when they cooperate with Government

lawyers in a related suit by the Justice Department.").

Armstrong's effort to compel production of the Government's communications with

USADA is also premature because these communications belong to a category of documents that

Armstrong sought to have accounted for in the Government's privilege log.  *See* ECF No. 147-3

([Proposed] Order Regarding Privilege Logs, at *3-4 ("Limitation on Logging – Armstrong's

Proposal").  Once again, no party has produced a privilege log in this case because the parties

sought to make privilege logs due only *after* this Court enters an order adjudicating their

---

[17] USADA's authority extends to all United States athletes who participate in sports regulated by national governing bodies and recognized by the United States Olympic Committee for the sport in which the athlete competes.  21 U.S.C.A. § 2001(a)(2).

disagreements regarding the privilege logs' contents.  *See* Section I(C), above.  Because the

Government has not had an opportunity to fully set forth its privilege claims with respect to its

communications with USADA, Armstrong's motion should be denied.

> ### G.     Request No. 20 – Documents Related to Knowledge of Doping By DOJ Responsible Official

Request No. 20 seeks the production of documents relating to the knowledge of "the

official of the United States charged with responsibility to act in the circumstances" within the

meaning of 31 U.S.C. § 3731(b)(2) about doping or allegations of doping by the Postal Service

cycling team.  Armstrong evidently seeks this information in support of his statute of limitations

defense.

Section§ 3731(b)(2) permits the United States to file an action under the FCA any time

within three years after the "responsible official" has acquired active or constructive knowledge

of the basis for the Government's claims.  For purposes of this provision, the relevant official is

an official within the Department of Justice.[18]  The Government's action is deemed to have been

filed upon the filing of the relator's complaint, 31 U.S.C. § 3731(c), which in this case was June

10, 2010.  Thus, the question in this case is whether the responsible Department of Justice

official had active or constructive knowledge of Armstrong's doping before June 10, 2007 (three

years before relator's complaint was filed).  Any information about the responsible official's

knowledge of these matters after that date is entirely irrelevant to the litigation.

---

[18] The overwhelming majority of courts to have considered the issue have held that the relevant official under § 3731(b) is an official within the Department of Justice.  *See, e.g., United States v. Carell*, 681 F. Supp. 2d 874, 881 (M.D. Tenn. 2009); *Jana, Inc. v. United States*, 34 Fed. Cl. 447, 451 n.6 (1995); *United States v. Tech Refrigeration*, 143 F. Supp. 2d 1006, 1009 (N.D. Ill. 2001); *United States v. Incorporated Vill. of Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y. 1992); *United States v. Macomb Contracting Corp.*, 763 F. Supp. 272, 274 (M.D. Tenn. 1990).  *But see United States ex rel. Kreindler & Kreindler v. United Technologies, Corp.*, 777 F. Supp. 195, 204-05 (N.D.N.Y. 1991).

The Government informed Armstrong in its response that it had uncovered no records

indicating such knowledge by a responsible official prior to June 10, 2007.  The only documents

relating to a responsible official's knowledge *after* that date about which the Government is

aware relate to its investigation in this civil matter and the related criminal investigation.  Thus,

even if they are relevant, any such documents are subject to the deliberative process privilege,

attorney-client privilege, the work product doctrine, and common interest doctrine.  Armstrong

fails to address any of these arguments in his motion and, as stated previously, his attempt to

compel the production of privileged documents is premature.

**H.      Request Nos. 21 Through 23 – Documents Related to DOJ or USPS
          Knowledge of Doping**

Request Nos. 21 through 23 seek production of documents relating to PED use in cycling

(Request No. 23), USPS's and DOJ's knowledge of and response to allegations of PED use in

cycling (Request No. 21), and USPS's and DOJ's knowledge of the use of PEDs in cycling

(Request No. 22).

Contrary to Armstrong's assertion, the Government has never contended that the

knowledge of USPS officials prior to 2007 is not relevant in this case.[19]  The Government has

produced all documents responsive to these requests of which it is aware.  It is also searching for

additional responsive documents in the possession of any current USPS employee it identifies

---

[19] As with Request No. 20, the Government objected to Requests Nos. 21 through 23 to
the extent they seek documents related to the knowledge of Government officials acquired after
June 10, 2007.  ECF No. 190-3, at *14-17.  Again, Armstrong's motion fails to address this
objection.  Similar to § 3731(b)(2), 28 U.S.C. § 2416(c) tolls the statute of limitations applicable
to the Government's common law claims so long as the "facts material to the right of action are
not known and reasonably could not be known by an official of the United States charged with
the responsibility to act in the circumstances."  Here, the relevant official is an official of the
USPS.  The shortest limitations period applicable to the Government's common law claims is the
three-year limitation period applicable to its common law fraud count.  28 U.S.C. § 2415(b).
Thus, the knowledge of USPS officials after June 10, 2007 is not relevant here.

who was involved with the cycling sponsorship and in any USPS common document repositories likely to house documents related to the sponsorship.

It is impossible to discern from Armstrong's motion or any of the correspondence that preceded it precisely why Armstrong finds the Government's approach objectionable. Armstrong's suggestion that the Government refuses to produce documents in the possession of key USPS employees is not true.  Because of the extraordinary overbreadth of Request Nos. 21 through 23, the Government's response to Armstrong's document requests offered to "negotiate with Armstrong in good faith to establish a list of USPS employees with respect to whom a search for responsive documents will be conducted."  ECF No. 190-3, at *14-17.  In his May 29, 2014 letter, Armstrong implicitly acknowledged the overbreadth of these requests by agreeing to limit them "for the time being" to documents in the possession of USPS employees, managers, directors, and agents who "touched the cycling team sponsorship[.]"  ECF No. 190-10, at 5.  The Government informed Armstrong's counsel that it had no objection to searching for responsive documents in the possession the USPS employees who were involved with the sponsorship, but it again proposed that the parties try to come to a meeting of the minds regarding which USPS employees would be deemed to have "touched" the sponsorship as a way to avoid future disputes.  When Armstrong's counsel protested that it would be impossible for Armstrong to identify potential custodians, the Government offered to supply a list of the potential custodians it had identified and to give Armstrong the opportunity to propose supplements to it as discovery progressed.  Armstrong's counsel declined.

Since that time, the Government has been collecting and producing documents in the possession of the USPS employees it has identified who worked in connection with the sponsorship.   In a further effort to come to an agreement on this issue, the Government sent

23

Armstrong a list of 28 potential document custodians it had identified, and invited Armstrong to propose additional names.  ECF No. 190-17, at 2.  Armstrong responded only by stating that the list was "plainly inadequate" due to its exclusion of an additional 29 names, nearly all of whom are *former* USPS employees.[20]  In a subsequent phone call, the Government explained that any documents in the USPS's possession that once had been in the possession of a former employee would be located in a common document repository, and that the Government had been searching, and would continue to search, any such repositories it identifies as being likely to house documents related to the sponsorship.

Against that backdrop, it is difficult to understand the basis for Armstrong's motion to compel a response to these requests.  As best it can tell, the Government is already doing precisely what Armstrong suggests it should be doing.  The Government will continue its efforts to maintain transparency on this issue by supplementing its potential custodian list from time to time as it identifies additional employees connected to the sponsorship and sharing those supplemental lists with Armstrong.  Armstrong will be free to propose additions if he chooses.

## I.  Request No. 24 – Communications With Defendants

Request No. 24 seeks all communications between any of the defendants and any federal Government employees.  The request is overbroad and unduly burdensome on its face, given its reach to every federal Government employee.  In a good faith effort to respond to this request to the extent reasonable under the circumstances, the Government has been and will continue to

---

[20] Among the 29 employees Armstrong identified, the Government has confirmed that two of them are still employed by the USPS, and those employees have been contacted to determine whether they have responsive documents.  The Government has confirmed that 26 of the employees Armstrong identified are no longer employed by the USPS.  The remaining employee has a common name, and the USPS is working to determine if one of the several current USPS employees with that name was involved with the sponsorship.

produce all responsive documents it locates in the possession current USPS employees who were

involved with the cycling sponsorship and in common USPS document repositories likely to

house documents related to the sponsorship.[21]   This search is reasonable in scope, and focused

upon the sources reasonably likely to yield potentially relevant communications.   In addition, the

Government will produce transcripts of the testimony of defendants William Stapleton, Barton

Knaggs, and Johan Bruyneel taken pursuant to civil investigative demands.   To the extent

Request No. 24 purports to require a more extensive search for documents, the Court should

conclude that it is overbroad and unduly burdensome.

Insofar as Request No. 24 seeks the production of communications between DOJ lawyers

and the defendants or their counsel, the request represents another attempt by Armstrong to open

the Government's files, and it should be rejected by the Court.   The overbreadth here is plain –

Request No. 24 would require the production of every email exchanged between DOJ attorneys

and counsel for any of the defendants, the overwhelming majority of which having nothing to do

with the merits of this action.   The Government attempted to address this overbreadth with

Armstrong by suggesting that communications between attorneys be excluded, but Armstrong

declined.   ECF No. 190-11, at *4-5.   Here, the request is especially pernicious because it is

---

[21] The common document repositories to be searched include the USPS's email servers, which will need to be conducted through the use of search terms.   During the parties' meet and confer call on June 2, 2014, the Government suggested that the parties try to agree on a list of search terms, and further suggested that Armstrong propose a list of terms to serve as a starting point for those discussions.   Armstrong declined, without requesting additional information or proposing an alternative process.   In a letter dated June 20, 2014, the Government again asked Armstrong to propose a list of search terms.   ECF No. 190-17, at *2.   In his response, Armstrong agreed to cooperate in the formulation of a list of searched terms, but only if the Government agreed to refrain from noticing depositions until the government has produced all documents obtained using the search terms.   ECF No. 190-18, at *3.   Though the parties were unable to reach agreement on this issue, the Government has been developing an initial list of appropriate search parameters for the search of USPS emails and anticipates sending it to Armstrong shortly.

clearly calculated to elicit information about any confidential settlement communications that may have taken place between the Government and any of the defendants. If Armstrong's request is deemed not to be overbroad, the United States may seek in camera review of any settlement communications so that the Court can determine whether Armstrong's need for the documents outweighs the competing confidentiality interests of the parties to any settlement discussion. *U.S. ex rel. Garbe v. Kmart Corp.*, 2014 WL 2218758 (S.D. Ill.)

### J.   Request Nos. 26 Through 28 – Communications with the Press

Requests Nos. 26 through 28 seek production of any communications between a federal Government employee and "the press." The Government objected to Request Nos. 26 and 28 on overbreadth and relevance grounds because of their reach to all federal employees and all USPS employees, respectively. The Government's overbreadth objection also raised the concern that "communications" with "the press" could be construed to include widely published articles, and indeed Armstrong has confirmed this was precisely his intent. Armstrong Br., at *18. Armstrong argues that articles about doping are relevant to establish whether Postal Service employees had knowledge of Armstrong's doping. *Id.* But the statute of limitations analysis in connection with the Government's common law claims turns on the actual or constructive knowledge of an "official of the [USPS] charged with the responsibility to act" in connection with the sponsorship.[22] 28 U.S.C. § 2416(c); ECF No. 190-3, at *18-20. Quite obviously, articles relating to doping that are in the possession of letter carriers in Michigan or Internal

---

[22] Armstrong's motion addresses the relevance of published articles only with reference to USPS employees and, thus, does not implicate the FCA statute of limitations, the application of which turns on the knowledge of a DOJ official. In any event, as explained previously, evidence of the DOJ responsible official's knowledge after 2007 is not relevant. The Government is not in possession of any records reflecting communications between the responsible DOJ official and the press on any topic relating to the cycling team's doping prior to 2007.

Revenue Service employees in New Mexico are not reasonably likely to lead to evidence of the knowledge of a USPS official with responsibility to act in connection with the sponsorship agreement.

Armstrong claims that "the government continues to refuse production of responsive documents."  Armsrong Br., at *18.  This is another clear misstatement of the Government's position.  The Government stated in its response to Request Nos. 26 and 28 that it would "produce any direct communications between members of the press and certain employees of the USPS" and that it would negotiate with Armstrong to agree upon a list of such employees.  Because Armstrong has not cooperated in reaching such an agreement, the Government has been proceeding in the manner described in connection with Request Nos. 21 through 23.  The Government has produced, and will continue to produce, any direct communications between Postal Service employees and the media, as well as any press clippings it discovers during the course of its search.  To the extent Armstrong seeks to compel the Government to do more, his request is overbroad, unduly burdensome, and not reasonably likely to lead to the discovery of admissible evidence, and it should therefore be denied.

Finally, Armstrong argues his request is relevant insofar as it seeks communications between the press and Government agents involved in the investigations.[23]  He attempts to rely on *U.S. ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287 (6th Cir. 2010), as authority for the proposition that if *anyone* discloses the existence of a *qui tam* action to a non-party while the case remains under seal, then the defendant is entitled to the dismissal of the action with prejudice.  This argument rests on a complete mischaracterization of the seal provisions of the

---

[23] The individual identified in Request No. 27, Jeff Novitzky, is a Special Agent with the FDA-OIG.

False Claims Act.  The rationale behind the seal is to allow the United States to investigate the relator's allegations.  *U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F.Supp.2d 64, 67 (D.D.C. 2011).  The seal, in other words, is intended for the benefit of the Government.  *See American Civil Liberties Union v. Holder*, 673 F.3d 245, 249 -250 (4th Cir. 2011).  Not surprisingly, therefore, "numerous courts have held that [the sealing provisions] are not jurisdictional and their violation does not require dismissal of the complaint."  *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co*., 668 F. Supp. 2d 780, 803 (E.D. La. 2009) (citing cases).

The seal certainly is not intended as a "get out of jail free" card for defendants, like Armstrong, who make unsubstantiated allegations of leaks to the media.  *U.S. ex rel. Summers v. LHC Group* lends no real support to Armstrong's position.  In *Summers*, the relator filed her complaint publicly, and then – after her motion to retroactively seal the complaint was denied – she publicly filed a second proposed complaint.  623 F.3d at 289-90.  In affirming the district court's dismissal of the relator's action, the Sixth Circuit held that relators must comply with the FCA's procedural requirements in order to assert *qui tam* status.  *Id.* at 296.  However, this dismissal was without prejudice to the United States.  *Id.* at 299.  Further, in reaching its result, the panel rejected the defendant's argument that the FCA's sealing provisions were intended even in part for the defendants' benefit.  *See* 623 F.3d at 301 (Keith, J., concurring).  Thus, even if a relator's failure to satisfy the FCA's procedural requirements could in certain cases justify the dismissal of the relator's complaint, this fact can have little significance here, where the United States has already intervened.

28

### K.  Request No. 31 – Documents Relating to Armstrong

Request No. 31 seeks the production of all documents "relating to Armstrong."  The

request is overbroad: it requires the production of any newspaper article, book, internet printout,

or other document that "relates to Armstrong" in the possession of any federal Government

employee.  As with Request Nos. 21 through 23, the Government is seeking documents

responsive to Request No. 31 in the possession of any current USPS employee it identifies who

was involved with the cycling sponsorship, and is conducting a reasonable search of any

common document repositories likely to house documents related to the sponsorship.   The

Government will continue its efforts to try to work with Armstrong to come to an agreement

regarding the identities of the relevant USPS personnel.

### L.  Request No. 32 – Documents Relating to the Government's Damages

Armstrong's request for documents supporting the Government's theory of damages

appears to be a premature attempt to conduct expert discovery.  The Government's preliminary

calculation of damages was based on the money that was paid to Armstrong's cycling team

between 1998 and 2004, when the USPS was Armstrong's principal sponsor.  Further, the

Government has already produced the documents on which this calculation is based, as well as

substantially all other documents made and kept by the USPS in the course of its administration

of its sponsorship of Armstrong's cycling team.  If the Government identifies other USPS

documents that support the Government's damages claim, such documents will be produced to

Armstrong on a rolling basis.

However, Armstrong improperly seeks an order precluding the Government "from using

any … evidentiary material other than [the documents it has already produced] in support of its

damages claim in any expert reports."  ECF No. 190-21 (proposed order), at *2 (¶4).  The only

29

materials relating to "damages" that Government attorneys have obtained but not produced to Armstrong have been generated in the course of the Government's consultation with potential expert witnesses and are protected from disclosure by Fed. R. Civ. P. 26(b)(4).[24]  Armstrong will be entitled to discover the information on which the Government's testifying experts will rely at trial in due course and consistent with Rules 26(a)(2) and (b)(4).  There is no basis whatsoever to exclude all evidence of the USPS's damages when the time for expert disclosures has not even been set.

## **CONCLUSION**

Armstrong served a set of excessively broad document requests designed primarily to allow him to inspect the Government's litigation file.  The bases he has put forward to compel production of documents responsive to those requests are meritless.  More importantly, the Government already is producing non-privileged responsive documents it discovers in the course of its document collection efforts and, thus, Armstrong's motion serves no purpose but to delay this litigation, including, in particular, Armstrong's deposition.  For the foregoing reasons, Armstrong's motion to compel should be denied.

---

[24] Armstrong is aware of certain data upon which Government expert witnesses may rely only because this information was presented to Armstrong during the course of the parties' confidential settlement discussions, which were conducted pursuant to Rule 408 of the Federal Rules of Evidence.

Respectfully Submitted,


STUART DELERY
Assistant Attorney General

RONALD C. MACHEN JR., DC Bar#447889
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division


/s/ Darrell C. Valdez
DARRELL C. VALDEZ, DC Bar #420232
MERCEDEH MOMENI
Assistant United States Attorneys
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
Tel: (202) 252-2507



/s/ Robert E. Chandler
MICHAEL GRANSTON
TRACY L. HILMER
ROBERT E. CHANDLER
DAVID M. FINKELSTEIN
Attorneys, Department of Justice
Civil Division
Post Office Box 261
Ben Franklin Station
Washington, D.C.  20044
Tel:  (202) 514-4678
Fax: (202) 514-0280
*Attorneys for Plaintiff*

UNITED STATES OF AMERICA