**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS, <br><br>        Plaintiffs, <br><br>   v. <br><br> TAILWIND SPORTS CORP., *et al.*, <br><br>        Defendants. | Civil Action No. 1:10-cv-00976-CRC <br><br> **ECF** |

**SUPPLEMENTAL BRIEF IN SUPPORT OF**
**DEFENDANT LANCE ARMSTRONG'S MOTION TO COMPEL PRODUCTION**

853300

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND .................................................................................................3

III.   ARGUMENT......................................................................................................6

      A.    None of the government's witness statements are protected by the attorney
           work product doctrine. ...........................................................................................6

           1.    The government's witness statements recite the substantially
                 verbatim statements of witnesses the plaintiffs intend to call at
                 trial. ..........................................................................................................7

           2.    The FDA and FBI witness statements were prepared for a now-
                 closed criminal investigation, not in anticipation of litigation. ..................8

      B.    The government's assertion of investigative files privilege has no basis. .............10

           1.    The government has failed to submit an affidavit asserting a formal
                 claim of privilege by the head of the FBI. ................................................10

           2.    The assertion of investigative files privilege is meritless because
                 the criminal investigation closed years ago. .............................................11

      C.    The government's own extensive use of the withheld materials to litigate
            this action demonstrates Armstrong's substantial need. ........................................13

IV.    CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. FBI*
    186 F.R.D. 154 (D.D.C. 1999) .................................................................................10

*Alexander v. FBI*
    192 F.R.D. 42 (D.D.C. 2000) ...................................................................................8

*Coastal States Gas Corp. v. Dep't of Energy*
    617 F.2d 854 (D.C. Cir. 1980) ...................................................................................9

*\*Dobbs v. Lamonts Apparel, Inc.*
    155 F.R.D. 650 (D. Alaska 1994) ...........................................................................7

*Duran v. Andrew*
    No. 09-0730, 2010 U.S. Dist. LEXIS 33178 (D.D.C. Apr. 5, 2010) ........................13

*EEOC v. Jamal & Kamal, Inc.*
    No. 05-2667, 2006 U.S. Dist. LEXIS 66294 (E.D. La. Sept. 18, 2006) ...................7

*Frankenhauser v. Rizzo*
    59 F.R.D. 339 (E.D. Pa. 1973) .........................................................................12, 14

*Goldberg v. United States*
    425 U.S. 94 (1976) ...................................................................................................7

*In re Sealed Case*
    124 F.3d 230 (D.C. Cir. 1997) .................................................................................13

*\*Maki v. United States*
    No. 07-0443, 2008 U.S. Dist. LEXIS 31496 (W.D. Va. Apr. 15, 2008) ..............9, 10

*Martin v. Albany Bus. Journal, Inc.*
    780 F. Supp. 927 (N.D.N.Y. 1992) .....................................................................10, 11

*Mercy v. County of Suffolk*
    93 F.R.D. 520 (E.D.N.Y. 1982) ................................................................................9

*\*Miller v. Holzmann*
    No. 95-1231, 2007 U.S. Dist. LEXIS 16117 (D.D.C. Mar. 8, 2007), *aff'd*, 2007 U.S.
    Dist. LEXIS 21681 (D.D.C. Mar. 9, 2007) ..........................................................9, 10

*Resolution Trust Corp. v. Dabney*
    73 F.3d 262 (10th Cir. 1995) .....................................................................................7

853300

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Saunders v. United States*
316 F.2d 346 (D.C. Cir. 1963).............................................................................1, 7

*SEC v. Nat'l Student Mktg. Corp.*
430 F. Supp. 639 (D.D.C. 1977)........................................................................15, 17

*SEC v. Shanahan*
No. 07-2070, 2009 U.S. Dist. LEXIS 57107 (E.D. Mo. July 6, 2009).....................2, 12, 13, 14

*Steptoe & Johnson LLP v. UBS AG*
250 F.R.D. 8 (D.D.C. 2008)...............................................................................8, 13, 15

*Tarpeh-Doe v. United States*
No. 88-0270,1990 U.S. Dist. LEXIS 15330 ...........................................................9

*Tuite v. Henry*
98 F.3d 1411 (D.C. Cir. 1996)...........................................................................2, 10, 12

*United States v. Nobles*
422 U.S. 225 (1975)..........................................................................................2, 14

*United States v. Sells Eng'g, Inc.*
463 U.S. 418 (1983)..........................................................................................3, 5

*Walker v. George Koch Sons, Inc.*
No. 07-0274, 2008 U.S. Dist. LEXIS 81919 (S.D. Miss. Sept. 18, 2008) ..................7

*Youngblood v. Gates*
112 F.R.D. 342 (C.D. Cal. 1985)........................................................................11

**Federal Rules**

Fed. R. Civ. Proc. 23(b)(3)(A)(ii)........................................................................2, 13

853300

Pursuant to the Proposed Order Regarding Inadvertent Disclosure ("Proposed Order")
and the Court's direction during the August 5, 2014 telephonic hearing, Defendant Lance
Armstrong submits this supplemental brief in further support of his motion to compel production
of the government's witness statements.  The witness statements have been filed under seal
pursuant to Paragraph 7 of the Proposed Order.

## I.       INTRODUCTION

Armstrong seeks access to documents the government and relator are openly using to
litigate this action.  The government has admitted that it has obtained statements from at least
twenty-nine critical witnesses.[1]  The witnesses' statements are memorialized in purely factual,
substantially verbatim memoranda prepared by non-attorney law enforcement agents.  The
government obtained most of those statements during a criminal investigation that closed two
years ago without the filing of any charges.  The government has asserted the work product
doctrine and investigative privilege to block production.  The government's assertions fail at the
threshold.  The witness statements—which recite in substantially verbatim format factual
information provided by critical witness—do not constitute attorney work product.  *Saunders v.
United States*, 316 F.2d 346, 350 (D.C. Cir. 1963) ("[I]f [attorney] notes are substantially a
verbatim recitation of the witness' testimony, there is no invasion of the attorney's work
product.").  Here, the memoranda were not prepared by attorneys.  Moreover, the government's
assertion of investigative privilege is both procedurally defective and substantively meritless.
This Court may not even consider the government's claim until it submits an affidavit by the
head of the Federal Bureau of Investigation ("FBI") (or his express delegate) formally asserting

---

[1] It appears clear that a substantially greater number of witness statements exist, but they have
not been logged or produced.  An unknown number of those witness statements are transcripts of
sworn testimony.

the claim.  *See Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996).  Even if the government had

submitted the affidavit, it has no legitimate interest in keeping its investigative files secret given

that the criminal investigation closed years ago.  *See SEC v. Shanahan*, No. 07-2070, 2009 U.S.

Dist. LEXIS 57107, 8 (E.D. Mo. July 6, 2009) (citation omitted) (holding that where a parallel

criminal investigation has closed, "the rationale for nondisclosure does not apply, and the files

should be made available.").

Even if the government had properly asserted privilege, and even if its assertions had

merit, Armstrong is still entitled to production given his "substantial need" for the factual

witness statements.  Fed. R. Civ. Proc. 23(b)(3)(A)(ii).  The best evidence of Armstrong's

substantial need is the plaintiffs' own conduct.  The plaintiffs are openly using the fruits of the

criminal investigation, including the witness statements, to litigate this action.[2]  The

government's complaint in intervention alleges numerous facts derived from the statements.

But—while the government has selected facts to populate its complaint—the witness statements

also contain evidence clarifying, contextualizing, and directly contradicting the positions the

government has taken in this action.  The plaintiffs have admitted in their initial disclosures that

they intend to call not just the witnesses who gave the interviews, but also Jeff Novitzky, the

criminal investigator from the Food and Drug Administration ("FDA") who interviewed many of

the witnesses and prepared many of the memoranda at issue.  *See United States v. Nobles*, 422

U.S. 225, 239 (1975) ("[B]y electing to present the investigator as a witness, [the asserting party]

waived the privilege with respect to matters covered in his testimony.").  Moreover, the

government interviewed the witnesses more than three years ago in the context of a criminal

---

[2] Armstrong has recently learned that the Department of Justice civil attorneys handling this matter have access to large quantities of grand jury materials as well.  Neither the mechanisms for receipt of this grand jury information, nor its substance have yet been revealed to Armstrong.

investigation about events dating back more than twenty years.  Decaying memories are not an

adequate substitute for memorialized factual statements.  "In civil litigation as in criminal, it is

rarely justifiable for the Government to have exclusive access to a storehouse of relevant fact."

*United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 434 (1983) (internal quotations marks and

citation omitted).  But that is precisely what the government hopes to achieve.  Armstrong

respectfully requests that the Court prevent the government from using discovery obtained from

its years-long criminal investigation to litigate this case while denying defendants the same

access to facts.

## II.   BACKGROUND

In the summer of 2009, the federal government began a criminal investigation into the

use of performance enhancing substances in professional cycling.  Novitzky was the motivating

force behind the investigation, as he had been in connection with investigations into track and

field and baseball (the "BALCO" investigation).  "Novitzky became interested in doping in

cycling after a landlord found a cache of performance-enhancing drugs in an apartment vacated

by Kayle Leogrande, a little-known cyclist with a doping ban."  Jacob Decl. Exs. A-B.  Novitzky

interviewed Leogrande three times in mid-July 2009, and recorded Leogrande's statements in

three witness interview statements.  Jacob Decl. Ex. C at Attachment A.

In May 2010, the relator Floyd Landis held a press conference at which he publicly

accused his former teammates of using performance enhancing substances after years of denying

his own use.  Soon thereafter, Novitzky's criminal investigation expanded and began to consume

the resources of five federal agencies—his own employer, the FDA, as well the Federal Bureau

of Investigation ("FBI"), the United States Attorney's Office for the Central District of

California, the U.S. Postal Inspectors, and the U.S. Postal Service Office of the Inspector

3

General.  Decl. of Robert E. Chandler ("Chandler Decl."), July 21, 2014, ECF No. 201-1; *see also* Jacob Decl. Ex. D.  Novitzky and other criminal investigators from the FDA and FBI began interviewing dozens of witnesses and memorializing their statements in standard memoranda of interview format.  *See* Jacob Decl. Ex. C at Attachment A.  It has been widely reported that at least on certain occasions Novitzky induced the witnesses to supply information by offering them immunity from criminal prosecution.  *See* Jacob Decl. Ex. E & F at 253, 259, 264.  Certain witnesses who declined to speak with Novitzky were then compelled to testify before a grand jury.[3]  *See* Jacob Decl. Ex. F at 259.

The government doesn't appear to have treated these witness statements as "confidential" until after it "inadvertently" produced them to Armstrong.  Both the existence and the content of the witness statements have been shared both within the government and outside the government, including with the U.S. Anti-Doping Agency ("USADA"), a non-governmental agency that had no legal interest in any criminal or civil prosecution of Armstrong.  Travis Tygart, the Chief Executive Officer of the U.S. Anti-Doping Agency, and his colleagues attended many of the interviews the government now claims are secret.  *See* Jacob Decl. Ex. C at Attachment A; Ex. F at 13-17.  The interviews also became the subject of repeated leaks to the media—leading to contempt proceedings involving the government and an FBI investigation of the leaks—and have now been featured in at least two books.  *See* Jacob Decl. Exs. A-B, E, G-J & Ex. K at ch. 14; *see also* Ex. F at 258-261, 264, 271.

Notwithstanding the government's lengthy and thorough criminal investigation whose progress was regularly reported in the media, on February 3, 2012, the U.S. Attorney for the

---

[3] The government is also using these grand jury materials in this case, and has refused to produce them in discovery.

4

Central District of California closed the criminal investigation of Lance Armstrong without filing

any charges.  The criminal investigators and USADA shared their disappointment with the press.

Jacob Decl. Ex. L; *see also id.* Ex. K at 268 (reporting that Novitzky became so upset that he

considered quitting.).  Tygart wrote a letter to Attorney General Eric Holder, criticizing the

government for dropping the criminal investigation of Armstrong while prosecuting relator

Landis for defrauding numerous financial supporters who had contributed cash to support

Landis' fabricated defense of his own doping.  *See* Jacob Decl. Ex. M.

      At about this time, the criminal investigators apparently had been sharing evidence with

their civil counterparts.  Federal law affords criminal investigators immense powers to

investigate allegations of criminal wrongdoing, including grand jury process and the ability to

confer immunity.  Grand jury proceedings must take place in secrecy, and Justice Department

civil attorneys are not "free to rummage through the records of any grand jury in the country,

simply by right of office." *Sells Eng'g*, 463 U.S. at 426.  Despite the bedrock principal of

American law that "disclosure to Government attorneys for civil use poses a significant threat to

the integrity of the grand jury itself," the government has been using materials gained through

the criminal investigation for use in this civil action, including evidence obtained by the grand

jury. *Id.* at 432.  This *qui tam* action was investigated and is being litigated by attorneys from the

Civil Division of the Department of Justice and the United States Attorneys' Office for the

District of Columbia, an entirely different set of attorneys than those assigned to the criminal

investigation. *See* Chandler Decl. ¶ 3.  Those civil agencies used their own, unique statutory

discovery tools to investigate this action for three years during the sealed period, collecting their

own witness statements and taking depositions by Civil Investigative Demand.  But in addition

they have obtained the fruits of the criminal investigation.  The government attorneys

prosecuting this action—who neither participated in the criminal investigation nor sat in on many of the FDA's and FBI's interviews—received copies of the witness interview statements and grand jury materials.  Jacob Decl. Ex. C at Attachment A.

On June 7, 2014, the government produced twenty-nine[4] witness statements to Armstrong.  One month later, the government sent a letter claiming that the witness statements were inadvertently produced and subject to a "claim of privilege."  Jacob Decl. Ex. N.  Pursuant to Paragraph 5 of the Proposed Order, Armstrong notified the government on July 9, 2014, that he was disputing the government's claim of privilege and disclosed the basis for his challenge. Jacob Decl. Ex. O.  The government sent Armstrong a letter on July 16, 2014 standing on its privilege assertions, and supplying, for the first time, a privilege log listing only those witness statements the government has already produced.  Jacob Decl. Ex. C.  Counsel for Armstrong certifies that he has extensively met and conferred with the government in an effort to obtain the production of substantially verbatim witness statements without the involvement of the Court. *See* Motion to Compel 4, 14, July 3, 2014, ECF No. 190.

## III.    ARGUMENT

### A.    None of the government's witness statements are protected by the attorney work product doctrine.

The government has asserted attorney work product over each of the twenty-nine witness statements it produced to Armstrong.  However, none of those statements constitute attorney work product.  First, the witness statements contain substantially verbatim accounts of witness testimony and therefore may not be withheld from discovery.  Second, the statements prepared

---

[4] Armstrong does not know how many additional statements the government possesses because—as of the date of this brief—the government has failed to list them on a privilege log.

by the FBI and FDA were not prepared in anticipation of litigation, and therefore do not qualify

for protection.

> 1.    *The government's witness statements recite the substantially verbatim*
> *statements of witnesses the plaintiffs intend to call at trial.*

"[T]he primary policy underlying the work-product doctrine [is] protection of the privacy

of an attorney's mental processes." *Goldberg v. United States*, 425 U.S. 94, 106 (1976).

"Because the work product doctrine is intended only to guard against divulging the attorney's

strategies and legal impressions, it does not protect facts concerning the creation of work product

or facts contained within work product." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266

(10th Cir. 1995).  "[I]f the attorney has made only a substantially verbatim record of his

interview, then . . . his notes . . . include no protected material flowing from the attorney's mental

processes." *Saunders*, 316 F.2d at 350.  "[A] verbatim witness statement, even one solicited by

counsel, is *per se* necessary to the full and efficient development of a case." *Dobbs v. Lamonts*

*Apparel, Inc.*, 155 F.R.D. 650, 653 (D. Alaska 1994).   Thus, courts across the nation, including

the District of Columbia Circuit, have held that "if [attorney] notes are substantially a verbatim

recitation of the witness' testimony, there is no invasion of the attorney's work product."

*Saunders*, 316 F.2d at 350 (holding that government attorneys' notes of their pre-trial interviews

with witnesses were not protected by the attorney work product doctrine if substantially

verbatim); *see also, e.g., Dobbs*, 155 F.R.D. at 654 (written answers to plaintiff's counsel's

questionnaire); *Walker v. George Koch Sons, Inc.*, No. 07-0274, 2008 U.S. Dist. LEXIS 81919,

*17-19 (S.D. Miss. Sept. 18, 2008) (signed affidavit); *EEOC v. Jamal & Kamal, Inc.*, No. 05-

2667, 2006 U.S. Dist. LEXIS 66294, *9 (E.D. La. Sept. 18, 2006) (unsigned, draft affidavit).

None of the witness statements that the government has claimed inadvertently to have produced to Armstrong constitute work product.  Each and every one of the statements contains a substantially verbatim record[5] of the statements of each of the witnesses.  In order to facilitate the Court's determination that the statements are, in fact, substantially verbatim, Armstrong has submitted them for *in camera* review under seal in accordance with the parties' agreed-upon procedure for seeking production.  *See* Proposed Order ¶ 7, Jan. 14, 2014, ECF No. 147-1.  Because none of the documents are protected by attorney work product (or any other of the contested privileges),[6] Armstrong respectfully requests that the Court order their production.

> 2. *The FDA and FBI witness statements were prepared for a now-closed criminal investigation, not in anticipation of litigation.*

Even if the statements were not substantially verbatim—which they are—most still fail to merit protection under the attorney work product doctrine for an independently sufficient reason.  Twenty-three of the twenty-nine witness statements were recorded not by attorneys, but by criminal investigators from the FDA and the FBI.  The government has not and cannot show that those statements were prepared in anticipation of litigation.  *See Alexander v. FBI*, 192 F.R.D. 42, 46 (D.D.C. 2000) (citation omitted) ("The burden of showing that the materials were prepared in anticipation of litigation is on the party asserting privilege.").

---

[5] The government claims that a handful of the witness statements contain handwritten notes or highlighting by some unidentified "counsel."  Jacob Decl. Ex. C at Attachment A.  If in fact the handwriting or highlighting reveals attorneys thought processes or opinions, Armstrong has no objection to their redaction.  *See Steptoe & Johnson LLP v. UBS AG*, 250 F.R.D. 8, 11-12 (D.D.C. 2008) ("If an interview memorandum also contains elements of opinion work product, those sections should be redacted before the materials are produced.").  Armstrong does object, however, to any redactions that obscure the statements of the witnesses.

[6] Armstrong does not now seek and has never sought the government's attorney-client privileged communications.  The government has asserted attorney-client privilege over witness statements taken from two U.S. Postal Service employees, Deborah Davis and Trent Ensley.  Armstrong does not seek production of those statements in this brief.

8

The attorney work product doctrine "has uniformly been held to be limited to documents prepared in contemplation of litigation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). "The 'mere possibility' of litigation is insufficient to prevent disclosure." *Mercy v. County of Suffolk*, 93 F.R.D. 520, 522 (E.D.N.Y. 1982) (police reports).

"Documents prepared for an investigation as part of normal procedures or pursuant to regulation are not work product." *Tarpeh-Doe v. United States*, No. 88-0270, 1990 U.S. Dist. LEXIS 15330, at *7. Therefore, the government must show that litigation—and not a law enforcement investigation—was the "primary motivating purpose" behind each of the documents over which it claims privilege. *Id.* at *7-8 (D.D.C. Nov. 13, 1990); *see also Mercy v. County of Suffolk*, 93 F.R.D. 520 (E.D.N.Y. 1982) (holding that police reports containing witness statements are not work product). Applying that principal, federal district courts, including the District Court for the District of Columbia, have held that witness statements prepared by the FBI as part of a criminal investigation are not attorney work product. *Miller v. Holzmann*, No. 95-1231, 2007 U.S. Dist. LEXIS 16117, *5 (D.D.C. Mar. 8, 2007) (holding that FBI witness statements taken during a criminal investigation must be produced in a parallel *qui tam* action), *aff'd*, 2007 U.S. Dist. LEXIS 21681, *5 & n.1 (D.D.C. Mar. 9, 2007); *see also Maki v. United States*, No. 07-0443, 2008 U.S. Dist. LEXIS 31496, 21-22 (W.D. Va. Apr. 15, 2008) (holding that the investigative report of the Office of the Inspector General for the Veteran's Administration is not work product).

Here, the government cannot show that the witness statements taken by the FBI and FDA were prepared in anticipation of litigation. The government's witness statements are indistinguishable from those ordered produced in *Miller* and *Maki*. "[T]he interviews were conducted by the FBI [and FDA] to ascertain whether a prosecutable crime had been

9

committed." *Miller*, 2007 U.S. Dist. LEXIS 16117, at *4. "The United States does not claim

that this information was created in anticipation of this civil litigation, but rather that it was

created in anticipation of a possible criminal prosecution which never occurred." *Maki*, 2008

U.S. Dist. LEXIS 31496, at *21. "Nor do they disclose in any way the mental processes or

opinions of any lawyer involved in any aspect of this civil case." *Miller*, 2007 U.S. Dist. LEXIS

16117 at *4-5. Because the witness statements prepared by the FBI and FDA were not prepared

in anticipation of litigation, they are not attorney work product and must be produced.

**B.     The government's assertion of investigative files privilege has no basis.**

The government has asserted "investigative files privilege" over five of the documents on

its privilege log resulting from the FDA's criminal investigation. However, the government's

assertion of investigative privilege is both (1) procedurally defective and (2) substantively

meritless.

> *1.     The government has failed to submit an affidavit asserting a formal claim*
> *of privilege by the head of the FBI.*

"The proponent of the law enforcement privilege bears the burden of proving its claim."

*Alexander v. FBI*, 186 F.R.D. 154, 167 (D.D.C. 1999). In order to assert a claim of investigatory

privilege, the District of Columbia Circuit requires:

> "(1) a formal claim of privilege by the head of the department having control over
> the requested information; (2) assertion of the privilege based on actual personal
> consideration by that official; and (3) a detailed specification of the information
> for which the privilege is claimed with an explanation why it properly falls within
> the scope of the privilege."

*Tuite*, 98 F.3d at 1417. "These are not merely technical requirements." *Martin v. Albany Bus.*

*Journal, Inc.*, 780 F. Supp. 927, 932 (N.D.N.Y. 1992) (citation omitted). "Only by mandating

that an accountable executive official invoke a governmental privilege can the courts be

confident that the privilege is responsibly asserted based on agency goals and policies, and is not

abused for litigation purposes." *Id.* at 933. Therefore, the failure to submit an affidavit asserting

the formal claim as required is fatal. *Youngblood v. Gates*, 112 F.R.D. 342, 345 (C.D. Cal.

1985).

Here, the government has not submitted any declaration asserting the investigative files

privilege (or any other privilege). The head of the department having control over the files of the

FBI is Director James B. Comey. However, neither Director Comey not any other FBI official

with his express delegation has asserted the investigative files privilege. Thus, the Court may

summarily reject the government's assertion of the privilege.

> 2.    *The assertion of investigative files privilege is meritless because the criminal investigation closed years ago.*

Even if the government had properly asserted the privilege, its assertion would fail on the

merits. In order to evaluate a claim of investigative privilege, the court must consider ten

factors:

(1) [T]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
(2) [T]he impact upon persons who have given information of having their identities disclosed;
(3) [T]he degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
(4) [W]hether the information sought is factual data or evaluative summary;
(5) [W]hether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
(6) [W]hether the police investigation has been completed;
(7) [W]hether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;
(8) [W]hether the plaintiff's suit is non-frivolous and brought in good faith;

(9) [W]hether the information sought is available through other discovery or from
    other sources;
(10) [T]he importance of the information sought to the plaintiff's case.

*Tuite*, 98 F.3d at 1417 (citing *In re Sealed Case* 856 F 2d 268, 272 (D.C. Cir 1988); *see also*

*Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

"The fifth factor, *i.e.*, whether the party seeking the discovery is an actual or potential

defendant in any criminal proceeding either pending or reasonably likely to follow from the

incident in question, is often considered by courts to be the most important." *Shanahan*, 2009

U.S. Dist. LEXIS 57107, *8.   "[T]he primary concern over disclosure of law enforcement

reports is to prevent a party who is himself the subject of a criminal investigation from obtaining

premature discovery of law enforcement actions that may be taken against him." *Id.* (citation

omitted).  Therefore, where the criminal investigation has closed, "the rationale for

nondisclosure does not apply, and the files should be made available." *Id.* (citation omitted).

Here, the criminal investigation against Armstrong publicly closed two years ago.  And the

government has recently reaffirmed that the investigation remains closed to this day.  Decl. of

Sharif E. Jacob Ex. S at 2, July 3, 2014, ECF No. 190-20.  Therefore, the assertion of

investigatory privilege fails at the threshold.

Nor do any of the remaining applicable factors support assertion of the privilege.  The

first factor favors disclosure:  "[I]nstances of disclosure pursuant to a court order made after

application of [the] balancing test [will not] deter citizens from revealing information to"

investigative agencies.  *Frankenhauser*, 59 F.R.D. at 343-344.  The second factor also favors

disclosure because the government "already has revealed this information in the privilege log

provided to" Armstrong.  *Shanahan*, 2009 U.S. Dist. LEXIS 57107, at *8.  The third factor is

inapplicable because the data sought does not arise from the government's "self-evaluative"

12

853300

investigation of itself, but from an investigation of performance enhancing substances in cycling. The fourth factor favors disclosure because the statements simply recite the testimony of witnesses and therefore "contain only factual information." *Id.*; *see also* Part III.A.1, supra.  The sixth and seventh factors also support disclosure because the "investigation has been completed" and the government has not introduced any evidence of "interdepartmental disciplinary proceedings" resulting from the investigation.  The eighth factor is not relevant given that a defendant seeks discovery.  *Shanahan*, 2009 U.S. Dist. LEXIS 57107, at *6.  Finally, the last two factors, which mirror the substantial need analysis, also sanction disclosure for the reasons described immediately below.  *See* Part III.C, *infra*.  Therefore, even if the government has properly asserted investigative privilege, it would fail on the merits.

### C.    The government's own extensive use of the withheld materials to litigate this action demonstrates Armstrong's substantial need.

A party is entitled to relevant fact work product if "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. Proc. 23(b)(3)(A)(ii).  As explained above, the witness statements do not constitute attorney work product—factual or otherwise—because they are substantially verbatim.  But even if they were not substantially verbatim, the statements would constitute fact work product and thus be available to Armstrong upon a showing of substantial need.  *See In re Sealed Case*, 124 F.3d 230 (D.C. Cir. 1997); *Steptoe & Johnson LLP*, 250 F.R.D. at 12-13; *Duran v. Andrew*, No. 09-0730, 2010 U.S. Dist. LEXIS 33178, *11-12 (D.D.C. Apr. 5, 2010).

Substantial need is satisfied by the need to obtain testimony taken years ago by an adversary.  *Shanahan*, 2009 U.S. Dist. LEXIS 57107, at *10.  "[S]tatements taken at a time more contemporaneous with the events at issue have unique value."  *Id.*  "The mere lapse of time is in

itself enough to justify production of material otherwise protected as work product."

*Frankenhauser*, 59 F.R.D. at 345. "[N]either the documents [available through production], nor

the taking of depositions of the witnesses identified in the [government's] privilege log, provides

an acceptable substitute for the information contained in the summaries of interviews taken

several years ago." *Shanahan*, 2009 U.S. Dist. LEXIS 57107, at *10.

Here, the Department of Justice's own conduct is the best measure of the importance of

these documents to Armstrong's defense. The Department of Justice believed it needed the

documents enough to obtain them from the criminal investigators. The attorneys litigating this

action have admitted that they have at least twenty-nine witness statements in hand, and some

further untold number they have yet to disclose. The plaintiffs have been and intend to continue

making extensive use of those statements to litigate this action. The United States or the relator

intend to call Jeff Novitzky and the vast majority of the witnesses he interviewed[7] to testify at

trial in this action, which will result in a complete waiver of all of the privileges the government

has asserted. *See United States v. Nobles*, 422 U.S. 225 (1975); *see also* Jacob Decl. Exs. P, Q.

Moreover, both the government and the relator have included facts derived from the witness

statements in their complaints. For example, Armstrong believes that the statements attributed to

him in Paragraph 63(E) of the government's complaint were drawn from the witness interview of

Gail Sonnenberg, who was the U.S. Postal Service Vice President for Sales at the time

Armstrong allegedly made the statements. *In camera* review will reveal that numerous other

---

[7] It is not surprising that the plaintiffs wish to avoid having the jury hear about two of the interviewed witnesses—Michael Ball and Rahsaan Bahati. Ball was the sponsor for Rock Racing. Landis reportedly worked as an undercover informant for Novitzky, gathering evidence that Ball was selling performance enhancing drugs to members of his team. Jacob Decl. Ex. F at 253-258. Bahati is a former rider on the Rock Racing team, who later hired the relator to ride for a separate team after the relator tested positive for performance enhancing substances at the 2010 Tour de France. *See* Jacob Decl. Ex. I. The government chose not to charge Ball or Bahati.

14

facts publicly alleged in the complaint are contained in the nominally "confidential" witness

statements.   "[I]t would be exceedingly inequitable, discriminatory and contrary to the principles

of federal discovery to allow one party access to the [witness statements] but not the remaining

parties."  *SEC v. Nat'l Student Mktg. Corp.*, 430 F. Supp. 639, 641 (D.D.C. 1977).

  The witness statements also bear on critical factual issues, and significantly, the

credibility of key witnesses.  *See Steptoe & Johnson LLP*, 250 F.R.D. at 14 (holding that

substantial need is satisfied by a showing that the withheld materials may contradict positions

advanced by the government).  For example, the relator falsely alleges that Armstrong "tested

positive for EPO while winning the Tour de Suisse, . . . at which point he and Mr. Bruyneel flew

to the UCI headquarters and made a financial agreement with Mr. Hein Verbruggen, head of UCI

at the time, to keep the positive test hidden."  Relator's Second Am. Compl. ¶ 87, Febr. 22, 2013,

ECF No. 2013.  One of the apparent sources for this misinformation is Martial Saugy, the former

director of the Swiss lab that allegedly performed the "positive test."  Saugy has made

contradictory statements about the "positive test" to the government in his witness statement and

the media.  *See* Jacob Decl. Ex. G.  In addition, Armstrong believes that the witness statement of

Gail Sonnenberg will contradict the government's assertion that it had no knowledge of actual

doping on the team by showing, among other things, that the U.S. Postal Service had actual

knowledge that a rider from its team tested positive for the use of performance enhancing

substances and was subsequently removed.  *See* Jacob Decl. Ex. R.  These are just a selection of

two of the many contradictions between the plaintiffs' positions in this action and the facts

contained in the witness statements.

  Nor are the contents of the witness statements available through any discovery method

Armstrong could invoke.  The government reportedly induced some of the statements by offering

15

the witnesses consideration with respect to potential criminal prosecution, a coercive tool unavailable to Armstrong. Moreover, because the interviews were conducted from 2009-2011, the statements offer a snapshot—not otherwise available—of each witness's memory of pertinent events three to six years ago. In a case in which the government's allegations concern events that occurred as long as twenty years ago, the contents of interviews—conducted considerably closer in time to the events at issue—are of critical importance to Armstrong's defense. It would be fundamentally unfair to condone the government's use of the many witness statements in its possession, while confining Armstrong to stale memories.

Nor can the government credibly claim that it has an interest in the secrecy of these documents. It has voluntarily disclosed the identity of the interviewees and the dates of the interviews to Armstrong in its privilege log. The government invited representatives of USADA—a private, non-governmental entity with which it shares no common interest privilege[8]—to many of the interviews. *See* Jacob Dec. Ex. C, Attachment A (Priv Log). The subject and, in some cases, even the content of the interviews is a matter of public record as a result of a relentless campaign of leaks by persons with unique access to the information the government is withholding. Jacob Decl. Exs. A-B, E, G-J; and Ex. K at ch. 14; *see also* Ex. F at

---

[8] With respect to interview memoranda prepared at sessions attended by USADA, the government asserts a common interest (joint defense) privilege with USADA. However, as explained in Armstrong's motion to compel briefing, the government's assertion of common interest privilege fails because, *inter alia*, it has not furnished any evidence of a common interest agreement with USADA, whether written or oral, and shares no common legal interest with USADA. *See* Reply in Support of Motion to Compel 19-20, July 31, 2014, ECF No. 203. Moreover, USADA used the knowledge Tygart gained from his unique access to the government's factual investigation to prepare a publicly-available 202-page report that USADA aggressively publicized as its "Reasoned Decision," made available on its web site, and about which Mr. Tygart has spoken frequently in public appearances around the globe. This report relies on much of the factual evidence found in the government's witness statements. Mr. Armstrong is therefore entitled to the production both of USADA's communications with the DOJ about the cycling investigation, and also to the memoranda of interviews attended and utilized by Tygart.

16

258-261, 264, 271.  In fact, the only person the government appears intent on withholding the

statements from is Armstrong.  Because Armstrong has a substantial need to access the witness

statements the government is already using, Armstrong is entitled to their production regardless

of whether the government's asserted privileges apply.[9]

## IV.   CONCLUSION

Armstrong respectfully requests that the Court order the government to produce the

witness statements it is using to litigate this action.


Respectfully submitted,

KEKER & VAN NEST LLP


Dated:  August 12, 2014                         By:   */s/ Sharif E. Jacob*_____

---

[9] It is well-established that Armstrong could also demonstrate substantial need by deposing the witnesses to confirm that the passage of time has eroded their memories of facts contained in their statements to the government.  *See SEC v. Nat'l Student Mktg. Corp.*, 430 F. Supp. 639, 641 (D.D.C. 1977).  Armstrong respectfully reserves the right to seek any witness statements the government is not ordered to produce after he has deposed the witnesses who gave the statements.

17

_____

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

18