UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES ex rel. LANDIS,**<br><br>Plaintiffs,<br><br>v.<br><br>**TAILWIND SPORTS CORP., et al.,**<br><br>Defendants. | Case No. 1:10-cv-00976 (CRC) |

**OPINION AND ORDER**

Before the Court is Defendant Lance Armstrong's Motion to Compel Production of Documents in response to his First Set of Requests for Production of Documents to Plaintiff United States [ECF No. 190]. Upon consideration of the motion, the oppositions and reply, and the supplemental briefs and responses, the Court will grant the motion in part and deny it in part. The Court's reasoning follows.

**I.    Background**

In June 2010, Relator Floyd Landis filed this *qui tam* action against Lance Armstrong, his former teammate on the United States Postal Service (USPS) professional cycling team, and associated defendants. After closing a criminal investigation of Armstrong in the Central District of California, the Government intervened in this case in February 2013. The case is now in discovery. Armstrong filed the present motion on July 3, 2014. The case was reassigned to this Court five days later.

As will be discussed further, one of the issues presented in Armstrong's motion is whether he is entitled to the production of witness interview memoranda prepared by law enforcement agents during the criminal investigation. The government inadvertently produced a substantial number of these memoranda. Armstrong attached one of them to his motion to

compel, which the government promptly moved to have sealed.  The Court granted the government's motion pending the resolution of Armstrong's motion to compel and the entry of an order governing the use of inadvertently produced discovery material.  On August 5, 2014, the Court held a teleconference with the parties to discuss the motion to compel and the inadvertent production order, as well as a proposed protective order and a proposed order regarding privilege logs.  During the teleconference, the Court requested supplemental briefing on Armstrong's requests for the witness interview memoranda and grand jury transcripts from the criminal investigation.  After receiving the supplemental briefing, the Court held a hearing on September 15, 2014 addressing the motion and proposed orders.  The Court entered the inadvertent disclosure order, protective order, and privilege log order that day.  It now turns to Armstrong's motion to compel.

**II.    Analysis**

Armstrong moves to compel production of 11 categories of documents over the Government's objections.  The Court will address each category in the order of Armstrong's requests in turn.

    A.  <u>Request No. 9: USPS Attendance at Professional Cycling Events</u>

In Request No. 9, Armstrong seeks documents reflecting attendance of USPS personnel at team cycling events.  The Government opposes the request as overly burdensome insofar as it would require the Government to search the files of all USPS employees for responsive documents.  The Government indicated at the hearing that it will search the calendar entries of the USPS personnel involved in the team sponsorship who may have attended events identified by Armstrong.  The Court concludes that the Government's proposed approach is adequate.

B.  Request No. 10: Relator's Written Disclosure

Request No. 10 seeks Landis' written *qui tam* disclosure to the Government. Landis has agreed to "produc[e] the vast majority of the exhibits to the disclosure," but he objects to the Government producing the disclosure itself because he contends it would reveal attorney-client privileged information that was shared with the Government under a joint prosecution privilege. Landis' Opp'n to Armstrong's Mot. to Compel at 1–2. In other *qui tam* cases, courts in this district have found that "[s]urrendering privileged documents to the Government" does not waive privilege if "at the time of the surrender the Government and the surrendering party have a common interest in the prosecution of a common defendant." Miller v. Holzmann, 240 F.R.D. 20, 21 (D.D.C. 2007) (citing United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America, No. 99-CV-3298, 2004 WL 2009413, at *5 (D.D.C. 2004); United States ex rel. Purcell v. MWI Corp., 209 F.R.D. 21, 26–27 (D.D.C. 2002)). The Court is not persuaded by the sole authority Armstrong cites for the proposition that a relator must reveal his disclosure statement, which is from outside the district. See U.S. ex rel. Stone v. Rockwell Intern. Corp., 144 F.R.D. 396, 401 (D. Colo. 1992). The Court therefore denies Armstrong's motion to compel production of Landis' disclosure.

C.  Request No. 12: U.S. Government Investigation of Doping

Request No. 12 seeks documents obtained by the Government from third parties in the course of its investigation of this case. The Government indicated at the hearing that it would produce these documents once the Court entered a protective order, which the Court has now done. The Government's representation should resolve any further dispute over this request.

D. <u>Request No. 13: Documents Related to Foreign Doping Investigations</u>

In Request No. 13, Armstrong seeks investigation records that the U.S. Attorney's Office for the Central District of California obtained from France and Italy in the United States' criminal investigation of Armstrong. United States' Opp'n to Armstrong's Mot. to Compel at 13. The Government refuses to produce the requested records, arguing that "the terms of the Mutual Legal Assistant Treaties (MLATs) pursuant to which these records were produced do not authorize their use in this litigation." <u>Id.</u> Article 9 of the United States' MLAT with the European Union provides that a "requesting State may use any evidence or information obtained from the requested State . . . in its non-criminal judicial or administrative proceedings directly related to [its criminal] investigations or proceedings." Mutual Legal Assistance Agreement, U.S.-Eur. Union, art. 9, June 25, 2003. Despite the fact that the Government obtained these materials as part of the Central District of California's criminal investigation, it takes the position that Article 9 implicitly prohibits these documents from being produced in civil discovery in this case because the criminal investigation is now closed and the civil attorneys themselves never requested these particular documents.

The Court sees nothing in Article 9 to bar the production of the requested records. Moreover, "[a]bsent an express congressional intent to the contrary, the standards set forth in the [Federal Rules of Civil Procedure] must be followed with respect to discovery requests in District Court." <u>Laxalt v. McClatchy</u>, 809 F.2d 885, 889 (D.C. Cir. 1987); <u>see also</u> <u>Friedman v. Bache Halsey Stuart Shields, Inc.</u>, 738 F.2d 1336, 1343 (D.C. Cir. 1984) ("Congress must clearly and strongly indicate its intent to contradict th[e] broad objective favoring disclosure in judicial proceedings.") (internal quotation marks omitted). Because the records acquired from France and Italy are in the "possession, custody, or control" of the U.S. Government and the MLAT

does not explicitly bar their production in civil actions, the Court will grant Armstrong's motion to compel on this issue. Fed. R. Civ. P. 26(a)(1)(A)(ii).

    E.   Requests 14–17: Written or Recorded Statements

Requests 14–17 seek "written or recorded statements related to the case or the investigation" and other similar documents. The Government has identified four categories of documents that are responsive to these requests: (1) statements in the public domain; (2) transcripts of depositions taken pursuant to Civil Investigative Demands; (3) law enforcement interview memoranda; and (4) grand jury transcripts. The Government has agreed to produce deposition transcripts but objects generally to producing materials in the remaining three categories. The Court addresses the Government's objections in turn.

        i.   Statements in the Public Domain

Rule 26 permits limits on discovery where the materials sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit considering . . . the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). The criteria for applying these limits are not met here. Forcing Armstrong to search for and obtain all of the voluminous statements in the public domain about him and the USPS cycling team that the Government might possess would be far more burdensome than the Government simply producing the records of statements in the public domain it already has on file. As a fellow court has observed, "[i]t is preferable, easier, and more efficient to the producing party to produce what it has, so the demanding party can determine, with all the records in front of it, whether it has all the information it needs and wants." McNamara v. Picken, No. 11-1051, 2013 WL 2423804, at *3 (D.D.C. June 4, 2013). Consequently, the Court will grant Armstrong's motion to compel records of statements in the

public domain already in the Government's possession. The Government need not produce commercially available published books, which Armstrong can readily obtain on his own.

### ii. Law Enforcement Interview Memoranda

As noted at the outset, Armstrong seeks production of witness interview memoranda prepared by the government agents who conducted a prior criminal investigation in the Central District of California into the alleged use of performance enhancing drugs in professional cycling. Armstrong's Supplemental Br. at 3. That investigation lasted from 2009 until February 3, 2012, when the Government announced it would not be seeking an indictment against Armstrong. Id. at 4–5. The Government inadvertently produced 29 of these memoranda to Armstrong during discovery in this case, United States' Resp. to Armstrong's Supplemental Br. at 4, and represented at the hearing that it possesses some 26 others. The Government resists producing of all the memoranda based on the attorney work-product privilege and some of them—those of certain USPS employees—based on the attorney-client privilege. United States' Resp. to Armstrong's Supplemental Br. at 5–16. With respect to its work-product claim, the Government contends the memoranda (at least the ones created after the Relator filed his *qui tam* suit on June 10, 2010) are the work-product of the Department of Justice Civil Division lawyers litigating this case because the interviews reflected "were conducted *both* as part of the Government's criminal investigation *and also* with an eye toward developing the Government's possible civil claims." Id. at 11. Armstrong counters that the inadvertently produced memoranda are not work-product at all because they contain the "substantially verbatim" statements of the witness. Armstrong's Supplemental Br. in Supp. of Mot. to Compel 7–8. He argues in the alternative that, even if the memoranda are subject to the work-product doctrine, they must be produced because he has a substantial need for them and cannot obtain the

information in them without undue hardship through other means. Id. at 13–17; see Fed. R. Civ. P. 26(b)(3)(A)(ii).

Armstrong has filed the 29 inadvertently produced documents under seal, which the Court has reviewed. The Court has not been provided the remaining documents at issue. Nor has the Government submitted evidence to meet its burden to establish that any particular interview memorandum, based on its content and the circumstances surrounding its creation, should be afforded work-product protection. Without this evidence, the Court is not in a position to rule on this category of Armstrong's motion to compel on a document-by-document basis. The Court therefore directs the Government to justify its privilege assertions over each of the withheld memoranda in a filing with the Court within 14 days of this Order, to which Armstrong will have seven days to respond. To assist the parties in assessing whether to maintain or contest a privilege claim over particular memoranda, the Court offers the following guidance based on its review of the parties' briefing and the applicable case law.

As an initial matter, all of the interview memoranda at issue appear to have been prepared by law enforcement agents rather than attorneys.[1] While the Government correctly notes that the work-product doctrine also "protect[s] material prepared by agents for the attorney," United States v. Nobles, 422 U.S. 225, 238–39 (1975), it is not necessarily the case that when a law enforcement agent conducts a witness interview as part of a criminal investigation, he does so as an agent of a Government attorney. Law enforcement agencies have an independent mission to investigate potential criminal offenses, which they routinely pursue without supervision or even involvement by Government attorneys. Accordingly, to the extent the memoranda here were not

---

[1] The Court does not reach the Government's claims of attorney-client privilege, as these issues largely have not been addressed in the parties' briefs. That being said, the Court notes that Armstrong has withdrawn his request for two memoranda reflecting interviews of USPS attorneys. See Armstrong's Supplemental Br. at 8 n.6.

prepared by individuals acting as "agents" of the criminal prosecutors or civil lawyers involved in the case, they are not entitled to attorney work-product protection.

If the drafters of the memoranda were acting as agents of a Government attorney, the question becomes whether the memoranda can be considered attorney work-product. As Armstrong points out, the D.C. Circuit held over 50 years ago that a "if [attorney's] notes are substantially a verbatim recitation of the witness' testimony, there is no invasion of the attorney's work-product[.]" Saunders v. United States, 316 F.2d 346, 350 (D.C. Cir. 1963). The Supreme Court reiterated that principle thirteen years later in Goldberg v. United States, 425 U.S. 94 (1976), when it held that a prosecutor's notes that fell within the Jencks Act's definition of "witness statements" could not be withheld from a criminal defendant on the ground that they reflected the prosecutor's work-product. Id. at 101–108. Relying principally on Saunders and Goldberg, Armstrong argues that "substantially verbatim" summaries of witness testimony by attorneys or their agents are not protected work-product at all.

Armstrong's reliance on Saunders and Goldberg is somewhat misplaced. Both cases predated Upjohn Co. v. United States, 449 U.S. 383 (1981), which held that an attorney's witness interview memorandum prepared in anticipation of litigation can constitute work-product to the extent it reveals the attorney's mental processes in evaluating communications with the witness. Id. at 401. Since Upjohn, courts generally have drawn a distinction between pure "opinion" work-product, which reflects the attorney's mental processes and is virtually never discoverable, and "fact" work-product, which reflects only relevant, non-privileged facts and is discoverable upon a showing of substantial need and unavailability by other means. See, e.g., In re Sealed Case, 124 F.3d 230, 236 (D.C. Cir. 1997). While delineating the two categories is "inherently and necessarily fact specific," United States v. Clemens, 793 F. Supp. 2d 236, 252

(D.D.C. 2011), the D.C. Circuit has instructed that notes and memoranda reflecting the "opinions, judgments and thought processes of counsel" fall into the former, whereas those whose content has not been "sharply focused or weeded" by counsel fall into the latter, In re Sealed Case, 124 F.3d 230 at 236.

Consistent with that guidance, other courts in this district have held substantially verbatim witness statements contained in interview memoranda that have not been "sharply focused or weeded" by an attorney to be "fact" rather than "opinion" work-product. See Clemens, 793 F. Supp. 2d at 252 (finding lawyers' notes of an FBI witness interview to be fact work-product where the lawyers did not shape the interview and the memoranda "accurately depict[ed] the witnesses' own words"); In re HealthSouth Corp Sec. Litig., 250 F.R.D. 8 (D.D.C. 2008) (attorney memoranda that were "nearly verbatim transcripts" of an FBI interview held to be fact work-product).  The Court will hew to this approach in assessing the type of work-product contained in any memoranda over which the Government continues to assert privilege.

If the Court determines that a particular memorandum constitutes fact rather than opinion work-product, it would then have to assess whether Armstrong has demonstrated that he has a substantial need for the memorandum and cannot obtain the information reflected in it without undue hardship through other means.  See Fed. R. Civ. P. 26(b)(3)(A)(ii).  The Government contends that Armstrong has not made this showing because he can obtain the witnesses' deposition testimony.  Counsel for Armstrong argued at the hearing that the memoranda are nonetheless needed because the witnesses' memories of events that occurred some 15 years ago may have faded in the three to four years since the interviews took place.

The Court agrees that Armstrong has demonstrated a substantial need for any law enforcement memoranda containing only relevant "fact" work-product, but for a somewhat

different reason. The civil lawyers litigating this *qui tam* action have received a substantial advantage from having access to the fruits of the prior criminal investigation. Regardless of whether a parallel civil investigation was underway at the time of the interviews, statements given to FBI agents and other criminal investigators—much like the witnesses' sworn grand jury testimony discussed below—are critical sources of evidence for *both* sides. They can be expected to identify the principal witnesses in the case, both inculpatory and exculpatory; to provide the witnesses' initial, unadorned testimony on the key issues; and to reveal how the witnesses' testimony and recollections may have changed over time. For those reasons, they are unique sources of both affirmative evidence and impeachment material for which there is no substitute. Particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal investigations. See Miller v. Holzmann, Case No. [X], 2007 U.S. Dist. LEXIS 16117, *4–5 (D.D.C. Mar. 8, 2007) (finding that *qui tam* defendant had substantial need for summaries of FBI witness interviews that were created during a since-closed criminal investigation and shared with civil Government lawyers). In producing any memoranda that contain "fact" work-product, the Government may redact and log any portions that include indicia of opinion work-product, such as attorney notes or highlighting.

### iii.     Grand Jury Materials

In addition to having the benefit of the law enforcement interview memoranda created during the now-closed criminal investigation, the Government also appears to have obtained subpoenaed grand jury material and transcripts of grand jury testimony of certain witnesses in that investigation.[2] United States' Resp. to Armstrong's Supplemental Br. at 19 n.13. The

---

[2] The existence of a prior grand jury investigation of Armstrong has been widely reported in the media. See, e.g., Armstrong's Mot. to Compel Ex. M (Juliet Macur, Pressure Raised as

Government presumably acquired the transcripts through an *ex parte* petition to the United States District Court for the Central District of California, which supervised the grand jury. See Fed. R. Civ. P. 6(e)(3)(F) (permitting the Government to petition *ex parte* for the release of grand jury matters). Armstrong moves to compel production of the transcripts.[3] While not refusing to disclose them, the Government submits that it cannot lawfully do so without a further order from the court that supervised the grand jury. See Fed. R. Civ. P. 6(e)(2)(B)(vi); United States' Resp. to Armstrong's Supplemental Br. at 19.

As could be said of purely factual witness statements obtained by law enforcement, "because the transcripts have already been disclosed to a party to this action . . . it would be exceedingly inequitable, discriminatory and contrary to the principles of federal discovery to allow one party access to the grand jury transcripts but not the remaining parties." Sec. & Exch. Comm'n v. Nat'l Student Mktg. Corp., 430 F. Supp. 639, 641 (D.D.C. 1977). That being said, the Government is correct that it may not unilaterally disclose the transcripts under Rule 6(e), even pursuant to an order from this Court. See In re Sealed Case, 250 F.3d 764, 768–70 (D.C. Cir. 2001). Rather, a party seeking disclosure of Rule 6(e) materials for use "in connection with a judicial proceeding" must petition the court where the grand jury was convened. Fed. R. Crim. P. 6(e)(3)(F). Faced with such a petition, the grand jury court must transfer the petition to the court handling the other proceeding, unless it can determine on its own whether disclosure is proper. Fed. R. Crim. P. 6(e)(3)(G). While Armstrong contends that it should be the Government's responsibility to petition the Central District of California for release of the

---

Armstrong Allies Are Called to Testify, N.Y. Times, Sept. 29, 2010); Armstrong's Supplemental Br. Ex. H (Lance Pugmire, Grand Jury Summons Armstrong Associate, L.A. Times, Sept. 22, 2010).

[3] The Government represents that it intends to produce materials in its possession that were obtained through grand jury subpoenas. United States' Resp. to Armstrong's Supplemental Br. at 18–19.

transcripts, the Court is confident that he is fully capable of doing so himself.  Armstrong also suggests that the Government did not make the required showing before the Central District of California to obtain release of the grand material in the first instance.  The Court declines to enter that fray.  Any challenge to the sufficiency of the Government's petition should be pursued in that district or the Ninth Circuit.

       F. <u>Request Nos. 18–19: Communications with USADA</u>

  In Requests No. 18 and 19, Armstrong seeks production of the Government's communications with the U.S. Anti-Doping Agency (USADA), a private, non-governmental organization that conducted its own administrative investigation into Armstrong's alleged use of performance enhancing drugs.  The Government objects to producing the requested materials on the grounds that they are protected by the attorney-client or work product privilege in the first instance and were shared by or with USADA pursuant to what Government counsel described at the hearing as an "implicit" common interest agreement between the Government and USADA.

  Because the Government has not listed the withheld material on a privilege log, the Court is not in a position to rule on Armstrong's motion on a document-by-document basis.  That being said, the Court finds that the Government has not met its burden to support its assertion of a common interest privilege over this category of documents.  A common interest privilege can exist "so long as [the] transferor and transferee anticipate litigation against a common adversary on the same issue or issues."  <u>United States v. Am. Tel. & Tel. Co.</u>, 642 F.2d 1285, 1299–300 (D.C. Cir. 1980).  For the privilege to apply, however, the parties' shared interest must be both legal and ongoing.  <u>See, e.g.</u>, <u>Minebea Co. v. Papst</u>, 228 F.R.D. 13, 16 (D.D.C. 2005) ("[S]hared or jointly created material must pass an additional test: [i]t must be disclosed pursuant to a common *legal* interest and pursuant to an agreement to pursue a joint defense.") (emphasis

added); United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) ("[o]nly those communications made in the course of an *ongoing* common enterprise and intended to further the enterprise are protected") (emphasis added) (internal quotation marks omitted). The Government's purported common interest with USADA is neither. USADA's role is to administer anti-doping programs for the U.S. Olympic Committee and other sports sanctioning bodies. It has no legal interest, let alone an ongoing one, in this lawsuit. As USADA's own CEO acknowledged in a letter urging the Justice Department to intervene in this matter, Armstrong's alleged fraud against the Government is "outside USADA's jurisdiction." Armstrong Mot. to Compel Ex. L at 1. The common interest privilege therefore does not apply. Unless the Government can assert an independent basis for withholding the requested material, the Court will grant Armstrong's motion to compel as to these requests.

G. Requests Nos. 20–23 Department Of Justice or USPS Knowledge of Doping

Requests 20–23 seek documents related to the Government's knowledge of doping in professional cycling. The requests are relevant, in part, to Armstrong's statute of limitations defense. The Government appears to have agreed to provide responsive documents in the possession of USPS personnel involved with the cycling team. The parties continue to dispute, however, the extent to which the Government must search for documents indicating knowledge by the "official of the United States charged with the responsibility to act," 31 U.S.C. § 3731(b)(2), who is a Department of Justice official in this case. United States' Opp'n to Armstrong's Mot. to Compel at 21. The Government asserts that any information about the official's knowledge after June 10, 2007—three years prior to the date Landis filed his complaint—"is entirely irrelevant to the litigation." Id. at 21. The Court disagrees. Any records that indicate or suggest knowledge by the responsible official before the cut-off date—even if the

record itself was created after June 10, 2007—are relevant and subject to the Government's discovery obligations. Thus, the Court will order the Government to search for and provide any such records, subject to privilege.

H.   Request No. 24: Communications with Defendants

In Request No. 24, Armstrong seeks communications with the defendants in the case. The Government has agreed "to produce all responsive documents it locates in the possession [of] current USPS employees who were involved with the cycling sponsorship and in common USPS document repositories likely to house documents related to the sponsorship." United States' Opp'n. to Armstrong's Mot. to Compel at 24–25. The Government further states that it "will produce transcripts of the testimony of defendants William Stapleton, Barton Knaggs, and Johan Bruyneel taken pursuant to civil investigative demands." Id. at 25. The Court is satisfied that these representations will resolve the dispute concerning this request.

I.   Request Nos. 26–28: Communication with the Press

Requests 26–28 seek Government communications with the press regarding Armstrong and the investigation. The Government has agreed to "produce any direct communications between members of the press and certain employees of the USPS," with the relevant employees to be determined jointly by the parties. United States' Opp'n to Armstrong's Mot. to Compel at 27. Armstrong nonetheless moves to compel communications between Government attorneys and agents and the media because, he contends, he "is entitled to dismissal of this action with prejudice" if Government employees or agents "leaked the existence of the lawsuit to the national press in violation of the Court's sealing Order." Armstrong's Mot. to Compel at 18. Armstrong's motion rests on a faulty premise. "The rationale behind sealing FCA cases is to allow the United States ample time to investigate the allegations," not to provide protection to

defendants.  United States ex rel. Durham v. Prospect Waterproofing, Inc., 818 F. Supp. 2d 64, 67 (D.D.C. 2011).  Even the case Armstrong cites to support his assertion finds "no support in the legislative history of the 1986 amendments to the FCA for the proposition that [protecting the defendant's reputation from unfounded public accusations] was one of the purposes of the under-seal requirement."  United States ex rel. Summers v. LHC Grp., Inc., 623 F.3d 287, 293 (6th Cir. 2010).  And, "there is nothing in the language of the False Claims Act which requires that a *qui tam* complaint be dismissed with prejudice if the confidentiality provisions are violated."  United States ex rel. Kusner v. Osteopathic Ctr., No. 88–9753, 1996 WL 287259, *5, (E.D. Pa. May 28, 1996).  The Court will therefore deny Armstrong's motion to the extent it seeks disclosure beyond which the Government has already agreed.

        J.    Request No. 31: Documents Relating to Armstrong

Request No. 31 seeks all documents related to Armstrong.  Counsel for Armstrong indicated at the hearing that Armstrong had narrowed this request, and the Government advised that it is searching for and producing documents responsive to the narrowed request.  The Court therefore considers this dispute resolved.

        K.    Request No. 32: Government's Claim for Damages

In Request No. 32, Armstrong seeks all documents related to USPS' claim for damages.  The Government has already produced documents on which its damages calculation is based and has indicated that it will continue to produce any other documents it finds that support its damages claim.  Consequently, this dispute does not require further involvement by the Court at this time.

### III. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Defendant Armstrong's Motion to Compel [ECF. No. 190] is GRANTED in part and DENIED in part. It is further

**ORDERED** that the Government shall provide documents or otherwise respond to Armstrong's First Request for the Production of Documents consistent with this Opinion.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date:   September 30, 2014