UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, *ex rel.*, <br> FLOYD LANDIS, <br><br> Plaintiff, <br><br> v. <br><br> TAILWIND SPORTS CORPORATION, <br> *et al.*, <br><br> Defendants. | No. 1:10-cv-00976-CRC <br><br> **Telephonic Conference** <br> **With the Court** <br> December 12, 2014 <br> 2pm |

**UNITED STATES' SUMMARY OF ISSUES
REGARDING ITS FIRST REQUESTS
FOR PRODUCTION OF DOCUMENTS**

The United States respectfully requests that the Court order Lance Armstrong to produce (1) emails to and from named individuals who were aware of and helped him conceal his use of PEDs, and (2) records relating to his PED use.  With respect to the former, Armstrong insisted that the Government provide search terms despite his failure even to attempt to explain why they are necessary, and when the Government proposed search terms, Armstrong refused to produce the resulting responsive documents.  With respect to the latter issue, Armstrong relies upon a relevance argument substantially the same as one this Court already has rejected, and a privacy argument that is untimely, ambiguous, and already addressed by this Court's protective order.[1]

1. **RFP No. 7 (Communications To/From Named Individuals):**  The Government's RFP 7 seeks communications – including, but not limited to, emails, text messages, instant messages, and social media posts – between Armstrong and fourteen specifically named individuals.   Ex. A (United States' First Requests for Production).  Armstrong improperly refused to produce the responsive communications unless the Government agreed to allow him to make his own relevance determinations among responsive documents.  Ex. C ((Transcript of Meet and Confer Call of October 31, 2014 ("Tr.") at 11:11-12:19).  Armstrong's insistence on maintaining unilateral authority to determine the relevance of responsive documents is improper.

Armstrong also argued he is not required to produce these documents unless and until the parties can agree on a set of search terms.  But Armstrong has made no showing that, without the use of search terms, it would be unduly burdensome to search his emails for the specific documents the government requests. Ex. C (Tr. at 26:18-27:4).  Indeed, he has refused to

---

[1] Armstrong's objections may be rejected for another, more fundamental reason – they have not been properly raised.  Specifically, some arguments – including Armstrong's "privacy" argument described in this summary – were raised for the first time at the parties' meet and confer conference on October 31, 2014.

disclose the volume of emails that he would need to review. In other words, without disclosing any facts necessary to determine the feasibility of collecting all responsive documents, Armstrong demands that the Government guess at a list of words that *might* identify *a portion* of the responsive documents. Armstrong's clear purpose is to turn his response to the Government's RFPs into a shell game, and the Court should reject it.

Notwithstanding Armstrong's failure to support his claimed need to limit his search for responsive documents, the Government endeavored to define acceptable search parameters. Specifically, when the parties met and conferred, the Government proposed that Armstrong execute searches for the email addresses of specific individuals that the Government identified.[2] Armstrong refused even to run the searches.[3]

    **2.**     **RFP Nos. 19-20, 22-25 (Records Relating to PEDs):** Armstrong has also refused to produce evidence of his PED use, including records of prescriptions for PEDs (RFP 20), receipts for the purchase of PEDs (RFP 22), and lab test results (RFP 23-25). Armstrong

---

[2] The Government divided its email requests into two groups – one as to which the Government sought all responsive emails, and another as to which the Government sought only emails sent on or after April 1, 2010. Individuals in this First Group include: Michele Ferrari, Thomas Weisel, defendant Johan Bruyneel, Emma O'Reilly, Leon Schattenberg, Steven Ungerleider, Mark Fabiani, Hein Verbruggen, USPS employees and USPS Team riders that the Government separately identified to Armstrong. Individuals in the Second Group include William Stapleton, Barton Knaggs, Stephanie McIlvaine, Chris Carmichael, Scott Maceachern, John Burke, and Michael Sterling.

[3] For example, after the Government proposed using Thom Weisel's email address as a search term, Armstrong refused to run the requested search to determine the volume of responsive documents: "MR. JACOB: There appears to be a misunderstanding. I keep getting accused of repetition. I guess what I should be being accused of consistency. Our position -- and I repeat it for the record -- is we need a set of search terms from the government. Why don't you send them over so we can consider them? That's what was supposed to be happening on this call. MR. FINKELSTEIN: That is repetitious, because I just said our search term is Mr. Weisel's email address. You said I'm not going to run that unless you limit it further. Have I mischaracterized your position? MR. JACOB: Our position is that search term standing alone is overbroad. MR. FINKELSTEIN: So we've reached an impasse, correct? MR. JACOB: If the government is refusing to provide any modifiers to that search term, then yes, we have reached an impasse." Ex. C (Tr. 16:1-18).

first claims that each request "implicates his privacy rights." He has made no showing, however, that the protective order already in place is inadequate to accommodate his privacy concerns.

Armstrong also argues that the documents sought by the Government are "not relevant" to the extent they relate to periods after 2004. Ex. C (Tr. 60:4-14). (Armstrong appears not to dispute the relevance of these documents during periods prior to 2005.) This argument amounts to no more than a repetition of his prior argument – which this Court rejected – that nothing that happened after 2004 can be relevant to this case. The Government's requests are plainly calculated to lead to the discovery of admissible evidence in at least two ways. First, Armstrong's concealment of his post-2004 doping necessarily operated to conceal his pre-2005 doping (i.e., if Armstrong had not concealed his post-2004 doping, his pre-2005 doping likely would have been discovered much sooner).[4] Second, information about Armstrong's doping after 2004 may help the United States identify sources, methods, and persons involved in Armstrong's pre-2005 doping.[5] Such information may lead to the discovery of admissible evidence not only as to Armstrong, but also as to the other defendants in this case. Moreover, given the passage of time and the consequent potential loss of pre-2005 documents, Armstrong's post-2004 documents may provide the only means of identifying such sources and methods. Indeed, the Government has not been able to locate any pre-2005 documents responsive to the above requests among the few documents Armstrong has produced to date.

---

[4] Armstrong's counsel tacitly acknowledged the relevance of Armstrong's post-2004 doping conduct to the extent it concealed pre-2005 doping by limiting his objection to Armstrong's use of PEDs "not tied to concealment." Ex. C (Tr. 64:17 – 65:5).

[5] Based on discovery to date, the United States has reason to believe that there are numerous facilitators of Armstrong's doping that have yet to be identified.

        Respectfully submitted,

        JOYCE R. BRANDA
        Acting Assistant Attorney General

        RONALD C. MACHEN JR., D.C. Bar # 447889
        United States Attorney

        DANIEL F. VAN HORN, D.C. Bar # 924092
        Assistant United States Attorney

        /s/ David M. Finkelstein
        MICHAEL D. GRANSTON
        TRACY L. HILMER
        ROBERT E. CHANDLER
        DAVID M. FINKELSTEIN
        Attorneys, Department of Justice
        Civil Division
        Post Office Box 261
        Ben Franklin Station
        Washington, D.C.  20044
        Tel:  (202) 616-2971

DATED: December 3, 2014