# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS,<br><br>   *Plaintiffs*,<br><br>   v.<br><br>TAILWIND SPORTS CORPORATION, TAILWIND SPORTS, LLC; MONTGOMERY SPORTS, INC.; CAPITAL SPORTS & ENTERTAINMENT HOLDINGS, INC.; THOMAS W. WEISEL; LANCE ARMSTRONG; JOHAN BRUYNEEL; WILLIAM J. STAPLESTON; BARTON B. KNAGGS; ROSS INVESTMENTS, INC., AND DOES 2-50,<br><br>   *Defendants*. | Civil No. 1:10-cv-00976-RLW |

**DEFENDANTS CAPITAL SPORTS & ENTERTAINMENT HOLDINGS, INC., WILLIAM J. STAPLETON AND BARTON B. KNAGGS' OPPOSITION TO UNITED STATES' AND RELATOR'S MOTION TO MODIFY THE SCHEDULING ORDER**

**I.     INTRODUCTION**

The conduct at issue in this case dates back more than 10 years. More than four and a half years ago, in June 2010, Relator Floyd Landis filed his initial complaint setting forth the alleged scheme to defraud the United States. The case remained under seal for an additional 32 months, during which time the Government had nearly unfettered ability to investigate Landis' claims. Since 2010, a federal grand jury has thoroughly investigated the allegations raised by Landis (and shared the information obtained with the Government attorneys handling this case), the United States Anti-Doping Agency ("USADA") issued a 164-page report describing its multi-year investigation into the same allegations, several books have been written chronicling the conduct at issue, and Lance Armstrong was interviewed on primetime television for two nights regarding the allegations. Since the case was unsealed in February 2013, the Government has had an additional 22 months to conduct discovery in this litigation. Now, after the Court-ordered deadline for amending its complaint, the Government and Landis (collectively, "Plaintiffs") claim that they need an additional four months (maybe more) to investigate potential claims arising out of conduct that ceased 10 years ago. The Court should deny Plaintiffs' request.[1]

---

[1] The Government has been purposefully vague regarding the nature of the amendment it seeks leave to consider by the instant motion, saying only that it seeks leave "to amend for any purpose." (Declaration of Margaret E. Dayton In Support of Opposition to Plaintiffs' Motion to Modify the Scheduling Order ("Dayton Decl.") ¶ 3, Ex. A). The Government has been unwilling to disclose whether its contemplated amendment relates to CSE, Bill Stapleton, or Bart Knaggs (the "CSE Parties"). (*Id*.) Having already declined to intervene with respect to the CSE Parties after a lengthy investigation, it is unlikely that the Government contemplates amending its complaint to add the CSE Parties as defendants. For his part, Landis has settled with the CSE Parties, and certainly does not contemplate adding claims against them. However, given the uncertainty on this issue, the CSE Parties submit the instant opposition.

In order to justify amending the Court's scheduling order, Plaintiffs must establish "good cause" for the requested extension and demonstrate that their proposed amendment to the Scheduling Order will not prejudice other parties. Plaintiffs fail in both respects. They have had more than ample time and opportunity to determine the nature of claims that might be brought, and against whom. Presumably, the Government represented to this Court repeatedly during the time that the case was under seal that it was diligently investigating the allegations in order to determine whether to intervene in the case, and against whom.[2] The Government fails to explain in its motion why these two and a half years of diligent efforts, *combined with another two years of discovery*, have not yielded the information necessary to determine even what claims may be brought.

With respect to prejudice, Plaintiffs completely ignore the substantial prejudice that would obtain for the CSE Parties if Plaintiffs were permitted to extend further the time to amend their pleadings.[3] Since the case was unsealed, the CSE Parties have engaged in extensive (and expensive) motion practice and discovery with Landis. (Dayton Decl. ¶ 4). Recently, the CSE Parties participated in a successful (and expensive) mediation with Landis, which resolved the case against the CSE Parties.[4] (*Id*. ¶ 5). Now, after the CSE Parties incurred the expense and

---

[2] The CSE Parties do not have access to the Government's under seal filings that predated the Notice of Intervention. However, the False Claims Act requires that the Government make its intervention decision within 60 days of the filing of the relator's complaint, absent a court-ordered extension. 31 U.S.C. § 3730(b)(2). It is almost certain that the Government filed numerous requests for extension of the sealing order between June 2010 and February 2013.

[3] As noted, it is possible that neither the Government nor Landis contemplates amending to add claims against the CSE Parties, in which case the prejudice to the CSE Parties may not be relevant to the instant motion.

[4] The settlement is presently before the Court for confirmation. The Court has allowed the Government until January 30, 2015 to decide whether it intends to oppose the settlement. (Dkt. # 255 (12/19/2014 Order)).

expended the effort to dispose of the case, Plaintiffs have announced that they want another four months to evaluate the case and for the Government to potentially intervene against additional parties (including, possibly, the CSE Parties). Such an extension is unwarranted and should be denied.

## II.     ARGUMENT

Under Federal Rule of Civil Procedure 16(b)(4) a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. Proc. 16(b)(4). "Once the schedule is set at the scheduling conference, the presumption should be firmly against granting continuances." *Olgyay v. Society for Environ. Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D.D.C. 1996) (citation omitted). "To show good cause under this Rule, the moving party must show both diligence and lack of prejudice to the opposing parties." *In re Papst Licensing GmbH & Co. KG Litig.*, 762 F. Supp. 2d 56, 59 (D.D.C. 2011); *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142, 144 (D.D.C. 2013) ("The primary factor in determining whether good cause exists is the diligence of the [moving] party," yet "the movant should also show a lack of prejudice to the opposing parties."). However, if the moving party does not show it acted diligently, the request must be denied – regardless of prejudice to the nonmoving party. *A Love of Food I, LLC*, 292 F.R.D. at 145.

The Scheduling Order issued by this Court, after months of wrangling among the parties, states that "[t]he United States and Relator shall have until January 1, 2015 to amend their pleadings with leave of Court or the permission of the parties." (Dkt. # 228 (Scheduling Order) at 1).[5] This deadline has since passed. Plaintiffs now seek to revive their ability to amend their

---

[5] Initially, in the Parties' Joint Rule 26(f) Report, Plaintiffs had proposed "other parties shall be joined and the pleadings amended by June 1, 2014." (Dkt. # 141 (Joint Rule 26(f)

3

respective complaints, and extend the deadline for amendment to a date nearly a year from their first-requested deadline for amendment, four months from the deadline in the Court's Scheduling Order, and five years from the date of Landis' initial complaint. (Pls.' Mot. at 3). Plaintiffs should not be permitted to accomplish piecemeal that which they could not do outright – achieve a never-ending opportunity to amend their pleadings.

### A. Plaintiffs Have Not Shown "Good Cause" Warranting an Extension of the Deadline to Amend the Pleadings

Plaintiffs offer no compelling basis to modify this Court's Scheduling Order. The sole basis offered for the extension is that defendant Armstrong has failed to produce certain documents requested by the Government in May 2014. (Pls.' Mot. at 1.) This rationale is deficient in several respects. First, Plaintiffs have not demonstrated that the Government exercised diligence in seeking the discovery it claims is necessary to inform its pleading decisions.[6] As a preliminary matter, the subject discovery was not served until May 28, 2014 – more than a year after the Government filed its Complaint in Intervention. (Dkt. # 44 (United

---

Report) at 2 (filed 12/13/2013)). The Court did not immediately enter a scheduling order in response to the Rule 26(f) Report. (Dayton Decl. ¶ 6). In July 2014, Plaintiffs changed course, arguing for a never-ending deadline to amend their pleadings with leave of Court, and until January 1, 2015 to amend their pleadings without leave of Court. (Dkt. # 196 (Defs.' Stmt. Re Revised Scheduling Order) at 2 (filed 7/14/2014) & Dkt. # 197 (Pls.' Stmt. Re Revised Scheduling Order) at 2 (directing the Court to Dkt. # 196 for Plaintiffs' positions regarding the proposed scheduling order)). The Court rejected the United States' proposal, requiring that leave of Court or consent be obtained for all further amendments, and that in no case may the amendment take place after January 1, 2015. (Dkt. # 228 (Scheduling Order) at 1).

[6] The CSE Parties are not defendants in the Government's case, and are not privy to the details of the discovery disputes between the Government and Armstrong. Accordingly, the CSE Parties are unable to comment on the merits of the Government's claim of delayed production by Armstrong. However, regardless of the merits of the Government's position regarding the discovery dispute, the docket reveals that the Government was not diligent in pursuing the information it now claims is critical.

States' Compl.) (filed 4/23/2013).)[7] Then, the Government waited until the eve of the January 1, 2015 deadline to raise concerns about Armstrong's production.[8] If the discovery the Government waited to propound until May 2014 was critical to determining the identity of parties and claims that could be pursued based on conduct from the 1990's and early 2000's, the Government should have pressed for that information well before the deadline to amend pleadings. Because Plaintiffs have not shown diligence, the request for modification should be denied. *See A Love of Food I, LLC*, 292 F.R.D. at 145 (denying request for modification when moving party did not demonstrate diligence).

In addition to not demonstrating their diligence, Plaintiffs' justification does not factually show an extension is necessary. Plaintiffs essentially argue that they should be permitted to amend their pleadings until all discovery is complete and all documents have been reviewed. This is not consistent with the Court's Scheduling Order. (Dkt. # 228 (Scheduling Order) at 1 (setting the deadline to amend the pleadings on January 1, 2015 and the close of fact discovery on August 14, 2015)). Moreover, regardless of the merits of the Government's position in its discovery disputes with Mr. Armstrong, the Government has had more than four years to investigate this case. Beginning in at least 2010, a federal grand jury gathered testimony, issued

---

[7] By contrast, Armstrong served his First Set of Requests for Production on the United States six months earlier, on November 25, 2013, (Dayton Decl. ¶ 7), and his First Set of Requests for Production on Relator on December 2, 2013, (*Id.*); Relator served his First Set of Requests for Production on Armstrong on December 3, 2013, (*Id.*), and his Second Set of Requests for Production on Armstrong on December 22, 2013, (*Id.*).

[8] It appears from the docket that the Government first raised concerns regarding Armstrong's response to the May discovery in a report to the Court on October 22, 2014. (Dkt. # 238 (Government's Summ. of Discovery Issues)). In a later pleading, the Government claimed that it first advised Armstrong of its intention to move to compel further responses to the May 2014 discovery on November 13, 2014 (*See* Dkt. # 252 (Government Resp. to Armstrong's Summ. of Discovery Issues) at 2). The docket reflects that the Government first discussed these issues with the Court on December 12, 2014. (*See* Dkt. # 250 (Government's Summ. of Discovery Issues)).

subpoenas, and collected documents from numerous witnesses.  (Dayton Decl. ¶ 8).  The Government also had the benefit of the extensive investigation of cycling conducted by USADA, which began in 2010 and resulted in the public release of the "Reasoned Decision" – a detailed report of USADA's investigation based on a number of affidavits signed by witnesses who provided testimony in exchange for USADA's promises of leniency.  (*Id.* ¶ 9).  The Government issued CIDs and administrative subpoenas to obtain testimony and documents during the seal period, including from the CSE Parties, Armstrong, and former defendant Thomas Weisel.  (*Id.* ¶ 10).  The CSE Parties produced approximately 6,000 pages of documents to the Government and provided sworn testimony between 2010 and 2012.  (*Id.*).  Similarly, Armstrong produced approximately 12,800 pages of documents to the Government in 2012, and Weisel produced more than 135,000 pages of documents in 2010.  (*Id.*).  The delayed production of some documents potentially responsive to requests the Government served on May 28, 2014 does not constitute good cause to extend the deadline for amendment of the pleadings.

> **B.     Plaintiffs Have Not Shown An Absence of Prejudice to Other Parties**

Nor have Plaintiffs' shown a lack of prejudice to the nonmoving parties.  In particular, the CSE Parties would be greatly prejudiced by an extension of the deadline to amend the pleadings.  After the Government declined to intervene in the case against the CSE Parties, the CSE Parties were forced to litigate against Landis for nearly two years.  The CSE Parties engaged in expensive motion practice and discovery with Landis before settling the case following a full-day mediation.  (*Id.* ¶¶ 4-5).  Extending the deadline to amend the pleadings – and any attempted amendment by the Government to include the CSE Parties as defendants – could render these efforts meaningless and subject the CSE Parties to the high cost of beginning the case anew against a different plaintiff.  *See Dag Enter., Inc. v. Exxon Mobil Corp.*, 226

F.R.D. 95, 110 (D.D.C. 2005) (recognizing increased expense and additional discovery costs support denial of request to modify scheduling order).

Through their Motion, Plaintiffs seek what this Court has already rejected – a never-ending deadline to amend their pleadings.[9] The scheduling order "is intended to serve as the unalterable road map (absent good cause) for the remainder of the case." *Olgyay*, 169 F.R.D. at 220 (citing *Final Report of the Civil Justice Reform Act Advisory Grp. of the United States District Court for the District of Columbia* 37-39 (Aug. 1993)). Accordingly, the Court should deny the request to extend the deadline for Plaintiffs to amend their pleadings.

### C. Any Amendment to Add Parties Would Disrupt the Entire Scheduling Order

Despite Plaintiffs' assertion that "Plaintiffs do not anticipate that the requested extension will affect other deadlines in the Scheduling Order," any amendment to add parties would necessarily disrupt the entire Scheduling Order in this action. Plaintiffs request an extension to potentially add "additional claims against the named defendants, or claims against additional defendants" until May 1, 2015 or even later. (Pls.' Mot. at 3 & n.2). Fact discovery closes on August 14, 2015. (Dkt. # 228 (Scheduling Order) at 1). Should Plaintiffs add additional defendants on May 1, 2015, those defendants would have only three and a half months to conduct discovery against Plaintiffs under the current Scheduling Order.[10] Yet, at the same time,

---

[9] Plaintiffs acknowledge that the instant request for an extension of the time to respond may not be their last. (Pls.' Mot. at 3, n.2 ("Further extension requests may be necessary if additional litigation is required in order to obtain documents subject to the Court's December 11, 2014 order. . . . Litigation over the validity of any such privilege assertions may be necessary and, if so, may create the need for further extension of the deadline to amend the pleadings.")).

[10] The United States has indicated that the non-intervened defendants cannot conduct party discovery against it in this partially-intervened case. (Dkt. # 216 (Joint Notice) at 1 ("The United States reserves its right to argue that it is not a party to Relator's claims against the non-intervened defendants, and therefore that the non-intervened defendants may not serve interrogatories on the Government.").)

Plaintiffs argue that five years of investigation and three years of discovery is not sufficient to determine who are the appropriate parties to this case and what claims might exist against them. Based on Plaintiffs' own positions, the fact discovery deadline would need to be modified to accommodate newly added parties or investigate newly added claims.  And, once the discovery cut-off deadline has been modified, the other dates in the Scheduling Order would need to be adjusted as well.

### III. CONCLUSION

For the foregoing reasons, the CSE Parties respectfully request the Court deny Plaintiffs' request to modify the Scheduling Order.

Dated this 5th day of January 2015

/s/  Marc S. Harris
Marc S. Harris *(admitted pro hac vice)*
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
(213) 613-4655 – Telephone
(213) 613-4546 – Facsimile
mharris@scheperkim.com

Attorneys for Defendants Capital Sports & Entertainment Holdings, Inc., William J. Stapleton and Barton B. Knaggs

s/  John P. Pierce
John P. Pierce (D.C. Bar No. 475101)
THEMIS PLLC
2305 Calvert Street, NW
Washington, DC 20008
(202) 567-2050 – Telephone
(202) 567-2051 – Facsimile
jpierce@themis.us.com

Attorneys for Defendants Capital Sports & Entertainment Holdings, Inc., William J. Stapleton and Barton B. Knaggs