# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS, | |
| Plaintiffs, | Civil Action No. 1:10-cv-00976-CRC |
| v. | **ECF** |
| TAILWIND SPORTS CORP., *et al.*, | |
| Defendants. | |

## DEFENDANT LANCE ARMSTRONG'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY THE SCHEDULING ORDER

890333

## I.     INTRODUCTION

Four-and-a-half years after this litigation began, Plaintiffs move for additional time to amend their complaints "for any purpose," including to assert "additional claims against the named defendants."[1]  Plaintiffs offer up a single excuse for their years-long delay:  they want more discovery from Armstrong.  This reason is inconsistent with what Plaintiffs told the Court a year ago when it first asked for more time to decide whether to amend its complaint.  At the January 6, 2014 scheduling conference, the government told the Court that it needed discovery from third-party witnesses who had previously invoked the Fifth Amendment or who reside outside the United States.   Notably, the government has not pursued any such discovery, nor does it now argue that it needs such discovery in order to determine whether to amend its complaint.

Even with respect to Armstrong, Plaintiffs cannot make the threshold showing that they have been diligent in pursuing discovery that would permit them additional time to amend their complaints.  Armstrong has responded promptly and completely to discovery served on him, has produced substantially all the documents sought of him and, until recently, Plaintiffs have shown little interest in the remainder.  Armstrong produced thousands of pages of documents before the government intervened in this case and has produced more since.  The government waited for years before serving any post-intervention discovery on Armstrong, then waited months more before engaging in any meet and confer regarding Armstrong's responses.  Relator served document requests, but then agreed to a standstill on document production.

---

[1] Armstrong takes no position on the government's motion for additional time to amend the complaint for the sole purpose of asserting existing "claims against additional defendants."

The fact is, prior to intervention, Plaintiffs spent years investigating the complaint using discovery tools available only to the government:  the Civil Investigative Demand, federal agency subpoenas, and interviews taken under threat of prosecution for perjury.  The government even obtained access to the secret proceedings of a grand jury, proceedings that are normally kept out of the hands of attorneys from the Civil Division of the Department of Justice.  Moreover, Armstrong publicly admitted that he used performance enhancing substances while riding for the Postal Service team—the basic factual allegation at the heart of the government's and relator's complaints.

For these reasons, Plaintiffs do not need more documents from him or anyone else to decide whether to amend their complaints and, regardless, have neglected their duty to seek them.  *See Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011) (holding that a party seeking to amend a scheduling order must "show that the deadlines cannot reasonably be met despite its diligence") (citation omitted).  Moreover, permitting amendment in May 2015 would jeopardize the current August 15, 2015 discovery cutoff because of the likelihood that new claims would trigger the need for additional fact discovery.

Having tarried for years, Plaintiffs have no basis to ask for more time.  Armstrong respectfully asks the Court to deny Plaintiffs' motion to amend the scheduling order to allow them additional time to assert new claims.

## II.      BACKGROUND

### A.      The government has been investigating the allegations in the complaint for years.

For four-and-a-half years, the government has investigated allegations related to the use of performance enhancing substances in professional cycling.  Relator Floyd Landis filed this *qui tam* action on June 10, 2010 under seal.  Thereafter, the Civil Division of the Department of

2

Justice, the United States' Attorneys' Office, and the Office of Inspector General for the U.S.

Postal Service ("USPS-OIG") conducted unchecked discovery. Despite Congress' admonition

that "in the vast majority of cases, 60 days is an adequate amount of time" for the government's

pre-intervention investigation, the government used the under-seal period to take thirty-two

months of one-sided discovery. S. Rep. No. 99-345, at 24-25 (1986), *reprinted in* 1986

U.S.C.C.A.N. 5266, 5289-90. The Department of Justice compelled sworn testimony and

gathered documents by Civil Investigative Demand, USPS-OIG agents took at least thirty-one

witness interview statements, and the USPS-OIG served numerous subpoenas.

While the civil investigators conducted their pre-intervention investigation, five federal

agencies—the Food and Drug Administration ("FDA"), the Federal Bureau of Investigation

("FBI"), the United States Attorney's Office for the Central District of California, the U.S. Postal

Inspectors, and the USPS-OIG—conducted a parallel criminal investigation. FDA and FBI

agents took at least forty-five witness statements. The United States Attorney for the Central

District of California convened a grand jury that issued dozens of subpoenas and compelled

sworn testimony from an undisclosed number of witnesses. The criminal investigators shared

the evidence they obtained with their civil counterparts.

The government was assisted in its investigation by the United States Anti-Doping

Agency ("USADA"). In a remarkable act of coordination between a governmental agency

tasked with enforcement of the criminal laws and a non-governmental non-profit agency with no

such interest, USADA participated in interviews the government now claims are secret and

offered to "share with [the DOJ] information it ha[d] gathered through its investigation." *Id.*

Decl. of Sharif E. Jacob ("Jacob Decl.") Ex. A, Jan. 8, 2015. USADA's investigation ultimately

resulted in the public release of a 200-page Reasoned Decision—a detailed report of USADA's

890333

investigation of Armstrong.  *See* Jacob Decl. Ex. B.  The report is based principally on twenty-six affidavits.  The reasoned decision and the supporting affidavits have been available to the government since at least October 10, 2012, when they were publicly released on the internet.

**B.      Armstrong has promptly responded to Plaintiffs' discovery requests.**

Armstrong has consistently and promptly met his discovery obligations.  As part of the government's pre-intervention investigation, the OIG-USPS sent a subpoena to Armstrong.  In response, Armstrong produced three sets of documents totaling 12,862 pages.  The government has been in possession of Armstrong's production since August 28, 2012.  *See* Decl. of Sharif E. Jacob Ex. A, July 31, 2014, ECF 203-2.

Until recently the government has shown little interest in collecting further documents from Armstrong.  The government did not serve any requests on Armstrong until May 28, 2014, fifteen months after it intervened in the action.  Armstrong timely served objections on June 30, 2014.  The government did not begin to meet and confer with Armstrong about his responses to its first set of requests for production until September 10, 2014.  Armstrong believed the government was satisfied with his production until October 15, 2014, when the government insisted upon collecting all communications from January 1, 1998 to the present with dozens of people and documents from every person "claiming to act on [Armstrong's] behalf."  *See* Jacob Decl. Ex. C.  Armstrong properly objected to each of these requests on overbreadth grounds. The Court upheld-in-part each of Armstrong's overbreadth objections, substantially narrowing the government's document requests both as to scope and time.  *See* Jacob Decl. Ex. D at 32 (limiting the definition of agents to "those who are legally authorized to act directly or indirectly on behalf of Mr. Armstrong"); *see also* Minute Order, Dec. 11, 2014 (limiting both the scope and date range of Armstrong's production of communications with enumerated custodians).

The relator displayed similar disinterest in Armstrong's document production.  The relator served two sets of requests for production of documents on December 3 and December 22, 2013.  Armstrong timely responded to both.  The relator has not begun to meet and confer with Armstrong regarding his document production.  *See* Jacob Decl. Ex. E.  Instead, Armstrong and relator have agreed to a temporary standstill of all document production from Armstrong.  *Id.*  Nonetheless (and contrary to Plaintiffs' misrepresentation), Armstrong has already produced email, including correspondence with a number of the government's enumerated custodians, litigation files, sworn discovery responses, his and his agent's deposition testimony, his contracts with Defendants Tailwind and Capital Sports & Entertainment Inc., and documents relating to the U.S. Postal Service Cycling Team.

> **C.  At the scheduling conferences, Plaintiffs never suggested that they needed additional documents from Armstrong to amend their complaints.**

On December 13, 2013, the parties filed their Joint Report Pursuant to Federal Rule of Civil Procedure 26(f).  In that report, Plaintiffs proposed that the Court order a July 1, 2014 deadline to amend their pleadings.  The Court held its first scheduling conference on January 6, 2014.  The Court heard extensive argument from the parties on the deadline to amend, during which Plaintiffs never even hinted that they would need documents from Armstrong to amend their pleadings.  *See* Jacob Decl. Ex. F at 7-13.  Instead, Plaintiffs argued that they needed to obtain discovery from third-party witnesses who had previously invoked the Fifth Amendment or who reside outside the United States.  *See id.* at 12-13.  Notably, the government has not pursued any such discovery, nor does it now argue that it needs such discovery in order to determine whether to amend its complaint.

On June 12, 2014, the Court ordered the parties to submit a jointly proposed revised scheduling order.  By then, the government's proposed deadline to amend had elapsed.  On July

14, 2014, all of the parties—including the government—proposed a January 1, 2015 deadline to amend pleadings.  The Court held a hearing on the parties' proposal for a revised schedule on September 15, 2014, after which the Court entered the Scheduling Order providing that "[t]he United States and Relator shall have until January 1, 2015 to amend their pleadings with leave of Court or the permission of the parties."  Scheduling Order, Oct. 3, 2014, ECF No. 228.

## III.   ARGUMENT

"Rule 16 of the Federal Rules of Civil Procedure makes plain that a scheduling order entered by a district judge 'shall not be modified except upon a showing of good cause and by leave of the district judge . . . .'"  *Olgyay v. Society for Envtl. Graphic Design*, 169 F.R.D. 219, 219 (D.D.C. 1996) (quoting Fed. R. Civ. Proc. 16(b)).  "To show good cause under this Rule, the moving party must show both [1] diligence and [2] a lack of prejudice to the opposing parties." *In re Papst Licensing GmbH & Co.*, 762 F. Supp. 2d 56, 59 (D.D.C. 2011).

*First*, "the 'party seeking relief [must] show that the deadlines cannot reasonably be met despite its diligence."  *Capitol Sprinkler Inspection, Inc.*, 630 F.3d at 226 (citation omitted).  In particular, the District Court for the District of Columbia has required the movant to prove that its "noncompliance with a Rule 16 deadline occurred . . . notwithstanding the movant's diligent efforts to comply, because of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference."  *DAG Enters Inc.,. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 106 (D.D.C. 2005).  "Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause."  *Olgyay*, 169 F.R.D. at 220 (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia* 41 (Aug. 1993)).

*Second*, the moving party must show that its sought-after amendment will not prejudice the non-moving party.  *See In re Papst Licensing*, 762 F. Supp. 2d at 59.  "The existence or degree of prejudice to the party opposing modification may supply an additional reason to deny a motion to modify a scheduling order, but it is irrelevant to the moving party's exercise of diligence and does not show good cause."  *DAG Enters.*, 226 F.R.D. at 110 (quoting 3 *Moore's Federal Practice* § 16.14[b] (2003)).

Here, Plaintiffs cannot meet their burden to establish diligence or lack of prejudice.  Plaintiffs claim that they need yet another extension of the deadline to amend their pleadings because they continue to seek documents from Armstrong.  That argument is facially implausible given that the government for almost *five years* employed the entire spectrum of civil and criminal discovery and investigatory tools to investigate who to sue and on what theories.  Prior to its motion, Plaintiffs never suggested to Armstrong during meet and confer (or otherwise) that it was awaiting Armstrong's production in order to decide whether to amend the complaint.  To do so would have been inconsistent with what Plaintiffs told the Court at the January 6 scheduling conference.  The government's suggestion now that its decision to amend depends upon Armstrong's production is nothing more than a pretext.

The pretextual nature of Plaintiffs' claim is betrayed by their lack of diligence in seeking document production from Armstrong in this action.  The dispositive question when evaluating diligence is whether at the time of the Rule 16 scheduling conference, Plaintiffs had been diligently pursuing all matters foreseeable at that time.  *See DAG Enters.*, 226 F.R.D. at 106.  Plaintiffs were not diligently pursuing document production from Armstrong at the time of either of the Rule 16 conferences.  The relator has never sought at any time to meet and confer with Armstrong about his document production.  Instead, he has agreed to an indefinite standstill.

Similarly, the government has until recently shown little interest in obtaining further documents from Armstrong.  At the time of the first scheduling conference, the government had not served document requests on Armstrong.  By the second conference, the government had been in possession of Armstrong's objections for three months, and was therefore well aware that it needed to meet and confer with Armstrong if it sought additional production.

Plaintiffs bear the burden to show that their proposed amendment will not "prejudice [] the opposing parties."  *In re Papst Licensing*, 762 F. Supp. 2d at 59.  But Plaintiffs did not even mention prejudice in their Motion, much less attempt to show that their still-hypothetical amendments would not prejudice Armstrong.  Instead of proposing a specific amendment or identifying the causes of action they wish to assert, Plaintiffs seek the unfettered ability to "amend for any purpose," including to add "additional claims against the named defendants." Joint Motion at 3; *see also* Jacob Decl. Ex. G.  If the government is given free rein to assert new claims against Armstrong, he will suffer significant prejudice.  In addition to the litigation expense Armstrong will have to incur if the government is allowed to essentially reboot its case five years after it was filed, given the government's track record of obstruction and delay, it will be impossible to complete fact discovery by the Court's August 14, 2015 deadline.  Over a year after Armstrong served his requests for production, the government is still delaying production. Three months after this Court ordered the government to produce documents in response to Armstrong's motion to compel, the government continues to withhold their production.[2]  As recently as December 19, during the last meet and confer, the government continued to refuse to

---

[2] The government continues to withhold, *inter alia*, documents relating to foreign investigations of doping; calendar entries reflecting attendance of Postal Service personnel at team cycling events; communications with the U.S. Anti-Doping Agency; communications between the U.S. Postal Service and Defendants; and the U.S. Postal Service's revenue-tracking databases.

provide a date certain by which Armstrong can expect to receive the documents the Court

ordered produced in September 2014.  If the government is permitted to file an entirely new set

of claims in May, Armstrong will need to serve a new set of requests for production and battle

with the government for another year.  "Compelling a party with 'clean hands' to incur

significant additional expense and spend a large amount of additional time in discovery when the

opposing side has not acted with diligence and has not shown 'good cause' is simply

unwarranted."  *DAG Enters.*, 226 F.R.D. at 110.

## IV.    CONCLUSION

For the foregoing reasons, Armstrong respectfully requests that the Court deny Plaintiffs'

motion for additional time to assert new claims against Armstrong.


Respectfully submitted,

KEKER & VAN NEST LLP


Dated:  January 8, 2015

By:   */s/ Sharif E. Jacob*

---

JOHN W. KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA A. SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
BENJAMIN D. WOOD (D.C. Bar # 478799)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Defendant
LANCE ARMSTRONG

10