**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES *ex rel.* FLOYD LANDIS, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 10-cv-00976 (CRC) |
| v. | ) ) ) | **ECF** |
| TAILWIND SPORTS CORPORATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' REPLY TO DEFENDANT ARMSTRONG'S, AND TO DEFENDANTS CAPITAL SPORTS & ENTERTAINMENT HOLDINGS, INC., WILLIAM J. STAPLETON AND BARTON B. KNAGGS', OPPOSITIONS TO PLAINTIFFS' MOTION TO MODIFY THE SCHEDULING ORDER

In their responses to the plaintiffs' motion for a modification of the Court's scheduling order, the defendants do not deny that the current schedule in this case was designed to allow the plaintiffs a reasonable opportunity to conduct discovery prior to amending their pleadings. The Government has been deprived of that opportunity and, thus, the plaintiffs have good cause for an extension of the current deadline.

Armstrong's opposition to the plaintiffs' motion rests on his representation that he has "consistently and promptly met his discovery obligations." In reality, he has sought to frustrate the Government's discovery at every turn. In response to document requests the Government served in May 2014, Armstrong produced just 1,461 pages of new documents before the January 1, 2015 deadline, and he produced 632 of those pages only after this Court ordered him

to do so.[1]  The Government has had to work mightily just to bring about Armstrong's very limited production, and has twice had to seek the intervention of this Court.  Time and again, Armstrong has refused to produce unquestionably relevant documents based on the weakest of rationales.[2]

      Armstrong's efforts to frustrate the Government's discovery appear to be calculated, at least in part, to protect his friend and business associate, Bart Knaggs, and his long-time manager and agent, Bill Stapleton, who Armstrong once explained "has had my back for so long[,] I don't

---

[1] The Government's reference to "new" documents is intended to distinguish Armstrong's production in this litigation from the 12,862 pages Armstrong produced in response to an investigative subpoena issued by the U.S. Postal Service Office of Inspector General in 2011. The earlier production was incomplete, and virtually useless – nearly all of the production was from a file related to litigation between Armstrong and his former personal assistant, which was responsive to just one of the Government's 21 document requests.  Apart from that litigation file, Armstrong's production contained just 50 documents totaling less than 300 pages, including only 38 emails.  Armstrong sent the same documents to the Government in response to its May 2014 document requests.  Armstrong's own representations to the Court demonstrate the deficiency in his subpoena compliance.  Although the subpoena explicitly required the production of all communications with Michele Ferrari, Exh. 6, at 7, Armstrong produced no direct communications with Ferrari and just 38 emails containing indirect communications through Ferrari's son.  Since that time, Armstrong has represented to this Court that he is in possession of 124 email communications with Ferrari. Dkt. No. 251-1, at 2.

[2] *See, e.g.*, Exh. 2 (October 15, 2014 email); Exh. 3 (transcript of October 24, 2014 conference with the Court, at 4-7) (refusing to produce transcripts of his testimony and Stapleton's testimony in another matter where Armstrong's PED use and Stapleton's knowledge of Armstrong's PED use were at issue based on his allegation that the Government had failed to satisfy an unrelated document production requirement); Exh. 4 (November 5, 2014 email from Chandler to Jacob) (refusing to produce the transcript of the Stapleton testimony even after the Court ordered him to do so unless the Government procured the consent of the plaintiff in the related litigation, which was not a condition of the Court's order and, in any event, had been provided to Armstrong weeks earlier); Dkt. No. 251, at 4 (refusing to produce Armstrong's prescriptions for performance enhancing drugs, even during the period of the sponsorship, claiming they were "irrelevant material"); Exh. 5 (Armstrong's Responses and Objections, at 2, *ibid*); Exh. 3 (transcript of October 24, 2014 conference with the Court, at 10-14) (refusing to produce any documents created after the December 31, 2004 termination date of the Postal Service sponsorship agreement); Dkt. No. 238, at 4 (refusing to produce documents prepared by Armstrong's agents because the word "agent" was vague).

remember when he didn't have it." LANCE ARMSTRONG, COMEBACK 2.0: UP CLOSE AND PERSONAL Introduction (2009). *See also* JULIET MACUR, CYCLE OF LIES Epilogue (2014) (quoting Armstrong responding "I ain't no [expletive] rat" when asked whether Stapleton and two of Armstrong's corporate affiliates had contemporaneous knowledge of Armstrong's doping). Armstrong refused to produce any of the more than 23,000 responsive emails he exchanged with Stapleton and Knaggs until this Court ordered him to do so on December 11, 2014. Dkt. No. 251-1, at 3. Then he waited until just after the January 1, 2015 deadline to begin producing them. Given that the documents were only recently produced and are still being processed, the Government has only been able to conduct a cursory inspection of a small number of documents, but it has already discovered numerous documents that unquestionably are relevant to this litigation and responsive to both its May 2014 document requests *and its June 2011 investigative subpoena*. Exh. 6 (USPS OIG Subpoena dated June 10, 2011). As just one example, Armstrong's January 6, 2015 production includes a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Exh. 7 (November 30, 2007 emails between Armstrong, Stapleton, Knaggs, Bruyneel, Higgins). The relevance of this document to potential claims against Stapleton and Knaggs is undeniable.[3]

Not only have such documents been produced too late for the Government to make use of them before the amendment deadline, but it is likely that more communications between Armstrong and the CSE Parties are forthcoming. Armstrong indicated during the parties' meet

---

[3] The CSE Parties urge the Court to place great weight on their claim that the Government has already taken their testimony in connection with its investigation, Dkt. 258, at 6, but Armstrong's incomplete subpoena production deprived the Government of the opportunity to confront witnesses with the documents he is just now beginning to produce.

and confer call on December 19, 2014 that he did not anticipate being able to complete his production in response to the Court's order for another "six to eight weeks," Dkt. 262-6, at 58, and on December 31, 2015 he refused the Government's request that he prioritize the production of Stapleton's emails.  Exh. 8 (December 31, 2014 email from Jacob to Chandler).

This Court should not indulge Armstrong's effort to "run the clock" on his friends' behalf.  Armstrong's delay may well have denied plaintiffs evidence that would warrant amendments to their pleadings, including an amendment to add Capital Sports & Entertainment Holdings, Inc., Stapleton, or Knaggs (collectively the "CSE Parties") as parties to the Government's lawsuit. The plaintiffs have demonstrated good cause for the extension, and neither Armstrong nor the CSE Parties will be unduly prejudiced. We therefore respectfully request that the Court extend the deadline for the plaintiffs to amend their pleadings to and including May 1, 2015.

## I. Plaintiffs Acted Diligently

The defendants argue that the plaintiffs failed to act diligently because, in the "22 months to conduct discovery in this litigation," the plaintiffs have accomplished little, and the Government "did not begin to meet and confer with Armstrong about his responses to its first set of requests for production until September 10, 2014." Dkt. No. 258, at 1; Dkt. No. 259, at 4. Both contentions are demonstrably untrue.

CSE's representation to the Court that discovery has been underway for 22 months assumes, incorrectly, that discovery starts upon the Government's intervention.  Discovery was not permitted to begin until the Rule 26(f) conference, which was held on November 22, 2013. Fed. R. Civ. P. 26(d)(1); Dkt. No. 201-1 (Chandler Decl.), at ¶ 4.

On the same day, the United States and Armstrong began discussing potential settlement of this case and agreed to stay discovery while those discussions were ongoing.  Dkt. No. 190-1 (Jacob Decl.), at ¶ 11;  Dkt. No. 201-1 (Chandler Decl.), at ¶ 4.  Those discussions ended on May 20, 2014, and the Government served its first set of document requests just eight days later. Dkt. No. 238-1.  Armstrong served his responses and objections on June 30, 2014 and, contrary to Armstrong's claim that the Government "did not begin to meet and confer with Armstrong about his responses to its first set of requests for production until September 10, 2014," the Government made its first attempt to meet and confer with Armstrong *the very next day*.  Exh. 9 (July 1, 2014 email from Chandler to Jacob).  The Government made many additional attempts to meet and confer, including detailed written communications on August 5 and August 27, and phone conferences on August 6 and 7, and September 10. *See* Exh. 10 (August 5, 2014 email from Chandler to Sherrington); Exh. 11 (August 27, 2014 letter from Chandler to Peters).  When those attempts were unsuccessful, the Government sought Court intervention on two occasions. Those requests resulted in telephonic conferences with the Court on October 24, 2014 and December 11, 2014, and on each occasion the Court ordered Armstrong to produce documents the Government had requested.

The circumstances underlying the cases that Armstrong and the CSE Parties cite to support their claim of a lack of diligence simply are not present in this case.  In *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142 (D.D.C. 2013), the motion to modify the deadline for amendment of pleadings was filed nearly *two years after* the deadline had passed, *id.*, 292 F.R.D. at 143, while here plaintiffs filed their motion before the deadline.  Moreover, the reason for the delay in *A Love of Food* was "'oversight,'" *id.*, at 144, whereas the Government's requested extension in this case is necessary as a result of Armstrong's failure to satisfy his

5

discovery obligations.  In addition, the amendment sought in *A Love of Food* had been available to the moving party before the original deadline and was not necessitated by the discovery of new evidence, *id.*, while here the plaintiffs' requested extension is necessary precisely because Armstrong has yet to produce evidence that may support amendments to the pleadings.[4]

*In re Pabst Licensing GmbH & Co. KG Litig.*, 762 F.Supp. 2d 56 (D.D.C. 2011) is similarly distinguishable.  In that case, plaintiff sought to amend pleadings and add parties more than two years and three months after the deadline, *id.*, at 58-59, and could have brought the claims "well before the deadline imposed by the Court." *Id.*, at 61.

In *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217 (D.C. Cir. 2011), plaintiff sought to supplement its expert report after the deadline had passed and discovery had closed.  *Id.*, at 226.  Plaintiff contended that good cause existed because defendant did not promptly make available for deposition certain witnesses who would have provided facts essential for plaintiff's expert.  *Id*.  However, the court held that plaintiff had not acted diligently because it noticed the depositions for the same day upon which the expert report was due, and thus could not have incorporated any testimony from the depositions.  *Id*.  Further, even after the depositions were cancelled and the court extended the expert disclosure deadline, plaintiff did not re-notice the depositions or attempt to supplement its expert report until after discovery closed.  *Id*.

---

[4] Courts routinely find good cause to extend the deadline for amending pleadings based on newly discovered evidence.  *See e.g., Burns ex rel. Office of Public Guardian v. Hale and Dorr LLP*, 242 F.R.D. 170, 174 (D. Mass. 2007); *Stewart v. Coyne Textile Services*, 212 F.R.D. 494, 496-97 (S.D. W.Va. 2003); *Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668-69 (D. Col. 2001).

## II.     The CSE Parties Will Not Be Unduly Prejudiced

The addition of any of the CSE Parties as intervened defendants in this case would not unduly prejudice them or result in any delay in the completion of discovery.[5]  As the CSE Parties point out, they have already been litigating this case against relator for the last two years.  Dkt. No. 258, at 6.  Any claims the Government might assert are likely to arise from the same facts as those on which the relator's claims are based.  The CSE Parties claim to have been preparing their defense to those claims for two years, so no additional time should be necessary if the Government elects to intervene against one or more of them.  Moreover, fact discovery closes August 14, 2015, more than three months after the proposed May 1, 2015 deadline, which would afford the CSE Parties time to conduct additional discovery, if necessary.  Under these circumstances, the CSE Parties will not be unduly prejudiced by a four-month extension of the deadline for amending pleadings.

The case upon which the CSE Parties and Armstrong rely in arguing prejudice provides no support.  Dkt. No. 258, at 6-7, citing *Dag. Enter., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95 (D.D.C. 2005).  In that case, five months after the close of discovery, plaintiff sought additional discovery to supplement and defend their expert reports.  *Dag. Enter., Inc.*, 226 F.R.D. at 96.  The court found that modifying the scheduling order to grant plaintiffs additional discovery would prejudice defendants by triggering additional discovery and motions that "will create significant expense" for them.  *Id.*, 226 F.R.D. at 110.  Here, discovery does not close until August 2015, and additional expenses such as those in *Dag. Enter., Inc*. are not present.

---

[5] The CSE Parties incorrectly assert that the "Government declined to intervene in the case against" them.  Dkt. No. 258, at 6.  Rather than decline, the United States notified the Court that it was "not intervening at this time" and reserved its right to intervene against the CSE Parties at a later date for good cause, as expressly authorized by the False Claims Act.  Dkt. No. 41, at 1 (Government intervention notice); 31 U.S.C. § 3730(c)(3).

In any event, it is premature to conclude, as the CSE Parties do, that the four-month extension requested will "necessarily disrupt the entire Scheduling Order in this action."  Dkt. No. 258, at 7.

### III.     Armstrong Will Not Be Unduly Prejudiced

If the documents Armstrong produces in response to the Court's order support additional claims, then Armstrong can hardly claim to be unfairly prejudiced by the delay occasioned by his own efforts to avoid his discovery obligations, or by the need to prepare for the defense of claims rooted in documents that have been in his exclusive possession for years.  In any event, more than three months will remain for further fact discovery after the proposed May 1, 2015 deadline, and the Court can consider Armstrong's claim of prejudice in the context of the proposed amendment and with knowledge of the circumstances then pertaining to the case.

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Assistant United States Attorney

| | |
|---|---|
| /s/ Darrell C. Valdez | /s/ |
| Darrell C. Valdez (D.C. Bar No. 420232) | Paul D. Scott |
| U.S. ATTORNEY'S OFFICE | pdscott@lopds.com |
| Judiciary Center Building | California State Bar No. 145975 |
| 555 Fourth Street, NW | Admitted *Pro Hac Vice* |
| Washington, DC 20530 | |
| (202) 252-2507 | /s/ |
| darrell.valdez@usdoj.gov | Lani Anne Remick |
| | laremick@lopds.com |
| /s/ Robert E. Chandler | California State Bar No. 189889 |
| Michael D. Granston | U.S.D.C. No. PA0045 |
| Tracy L. Hilmer | Jon L. Praed |
| Robert E. Chandler | U.S.D.C. No. 450764 |
| David M. Finkelstein | D.C. Bar No. 51665 |
| UNITED STATES DEPARTMENT OF JUSTICE | LAW OFFICES OF PAUL D. |
| Civil Division | SCOTT, P.C. |
| P.O. Box 261 | Pier 9, Suite 100 |
| Ben Franklin Station | San Francisco, California 94111 |
| Washington, DC 20004 | Tel: (415) 981-1212 |
| (202) 514-4678 – Telephone | Fax: (415) 981-1215 |
| (202) 514-0280 – Facsimile | |
| Robert.chandler@usdoj.gov | Attorneys for Relator Floyd Landis |
| | |
| Attorneys for the United States of America | |