# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS,<br><br>        Plaintiffs,<br><br>    v.<br><br>TAILWIND SPORTS CORP., *et al.*,<br><br>        Defendants. | Civil Action No. 1:10-cv-00976-CRC<br><br>**ECF** |

**DEFENDANT LANCE ARMSTRONG'S SUMMARY OF DISCOVERY DISPUTE REGARDING ARMSTRONG'S FIRST SET OF REQUESTS FOR PRODUCTION TO RELATOR FLOYD LANDIS**

Although relator Floyd Landis initiated this *qui tam* action and hopes to recover $20 million or more, he refuses to produce to defendant Lance Armstrong fundamental categories of documents. These categories relate to Landis' own false denials of doping during his cycling career; a criminal case against Landis which resulted in him admitting to defrauding donors to his legal defense fund and entering into a deferred prosecution agreement with the government; and benefits Landis ultimately received from both the United States and the United States Anti-Doping Agency. Landis' delays forestall Armstrong's ability to take Landis' deposition. Armstrong thus requests that the Court order Landis to produce documents relating to Landis' own false denials of doping and communications with the press regarding this case, as set forth below, by June 1, and to complete the remainder of his document production by June 8.

I.     **LANDIS' FAILURE TO PRODUCE DOCUMENTS**

In December 2013, Armstrong and Landis each served requests for production of documents. The parties then agreed to put their discovery on hold while Armstrong produced documents responsive to the government's requests for production. Since then, Armstrong has produced 37,815 pages of documents, which are responsive to the majority of Landis' document requests. Landis and Armstrong then met and conferred on February 24, 2015, and Armstrong asked Landis to prioritize the production of ten critical categories of documents. On February 26, 2015, Armstrong's counsel sent a letter to Landis' counsel memorializing the conference and Landis' intent to promptly commence document production. Decl. of Sharif E. Jacob Ex. 1. In response, Landis' counsel promised that Landis would produce responsive documents within approximately 10 days. *Id.* Ex. 2. Then, in a March 5, 2015 letter, Landis changed position, refusing to produce all but a few of the categories he had agreed to produce. *Id.* Ex. 3. On March 11, 2015, Landis made his only production of documents, including just 278 documents,

most of which are not responsive to *any* of Armstrong's requests.  The parties continued to meet and confer, to no avail, *id.* Exs. 4-9, and are at an impasse on the following categories.

## II.     LANDIS SHOULD PRODUCE SPECIFIC CATEGORIES OF DOCUMENTS

**Landis' Cooperation and False Denials of Doping.**  Landis has refused to produce documents relating to his cooperation with government and anti-doping agencies and his own false denials of doping, including documents specifically related to:

- (1) *United States v. Landis*, No. 12-CR-3481 (S.D. Cal.)—the case that resulted in Landis entering into a deferred prosecution agreement with the government, in which he admitted defrauding donors to his legal defense fund of nearly $500,000 by falsely claiming that he had not doped during his professional cycling career;

- (2) the "Floyd Fairness Fund" the entity through which Landis defrauded the donors;

- (3) the United States Anti-Doping Agency's ("USADA") investigation of Landis;

- (4) the stripping of Landis' Tour de France title; and

- (5) communications with USADA and the United States relating to any proceeding against Landis.

Landis claims to have been the "original source of the information" alleged in his complaint, much of which is inaccurate or exaggerated.  31 U.S.C. § 3730(e)(4)(A); Landis Second Am. Compl. ¶ 3 (ECF No. 42).  Prior to filing this lawsuit, Landis alleges that he disclosed much of that information to the federal government and to USADA in return for benefits that only those entities could supply.  Landis Second Am. Compl. (ECF No. 42); Reasoned Decision of USADA, dated Oct. 10, 2012.  Landis was strongly incentivized to provide information that would inculpate other riders, and Armstrong is entitled to discovery of those incentives, and to present at trial evidence of how those incentives motivated Landis' testimony.  *See U.S. v. Leonard*, 494 F.2d 955, 959-60 (D.C. Cir. 1974).  Moreover, Landis' false denials of doping, whether while riding for the USPS team or any other, and his communications

with USADA and the United States, are directly relevant in evaluating Landis' credibility, bias, and prejudice against Armstrong. Armstrong is entitled to documents relating to Landis' Floyd Fairness Fund and criminal prosecution because this evidence shows that Landis defrauded victims by falsely denying his own doping and was forced to repay the donations he received.

**Communications with the Press.** Armstrong requested that Landis produce his communications with the press relating to this case, Armstrong, or performance enhancing substances in cycling. Unlike other relevant requests, Landis claims he will withhold responsive documents based on at least seven boilerplate objections. Armstrong requests that the Court overrule those objections and require Landis to produce all responsive non-privileged communications. *See Chubb Integrated Sys. v. Natl. Bank of Wash.*, 103 F.R.D. 52, 58 (D.D.C. 1984) ("General objections are not useful to the court ruling on a discovery motion. Nor does a general objection fulfill plaintiff's burden to explain its objections.").

Landis' communications with the press are likely to lead to the discovery of admissible evidence. Fed. R. Civ. Proc. 26(b)(1). Landis has had extensive communications with the press about his allegations in this case.[1] Moreover, the communications themselves are relevant as they may reveal the identity of the party who leaked the existence of the lawsuit in violation of the Court's sealing order. Because Armstrong is entitled to dismissal of this action if the leaking party was the relator, Landis' objection to this request is meritless.[2] *See United States ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287, 296 (6th Cir. 2010).

---

[1] *See, e.g.,* Juliet Macur and Michael S. Schmidt, *Landis Admits Doping, Accuses Top U.S. Cyclists*, N.Y. Times, May 20, 2010, *available at* http://www.nytimes.com/2010/05/21/sports/cycling/21landis.html.

[2] Landis may mistakenly rely on the Court's Order on Armstrong's Motion to Compel Production of Documents to the United States, which was limited to the discovery Armstrong is entitled to from the government related to the leak and not from the relator. *See* ECF No. 227.

3

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KEKER & VAN NEST LLP |
| Dated:  May 13, 2015 | By:  */s/ Elliot R. Peters* |

JOHN KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
PAUL HASTINGS LLP
875 15TH St., NW
Washington, DC  20037
Telephone: (202) 551-1966
Facsimile: (202) 551-0466

Attorneys for Defendant
LANCE ARMSTRONG

923078