```
 1                 IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2    ------------------------------
      FLOYD LANDIS,
 3                                      CA No: 1:10-cv-00976 (CRC)
                 Plaintiff,
 4                                      Washington, D.C.
                                        May 12, 2015
 5    vs.                               2:03 p.m.

 6    TAILWIND SPORTS CORPORATION,
      et al.,
 7
                 Defendants.
 8    ------------------------------

 9    _____

10                 TRANSCRIPT OF TELEPHONIC CONFERENCE
            HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                    UNITED STATES DISTRICT JUDGE
      _____
12    APPEARANCES:

13    For the Plaintiff:        PAUL D. SCOTT, ESQ.
                                LANI ANNE REMICK, ESQ.
14                              LAW OFFICES OF PAUL D. SCOTT, PC
                                The Embarcadero
15                              Pier Nine
                                Suite 100
16                              San Francisco, CA 94111
                                (415)981-1212
17

18    For Intervenor Plaintiff  ROBERT E. CHANDLER, ESQ.
      United States of America:  DAVID MICHAEL FINKELSTEIN, ESQ.
19                              TRACY HILMER, ESQ.
                                U.S. DEPARTMENT OF JUSTICE
20                              Civil Division, Fraud Section
                                601 D Street, NW
21                              Suite 900
                                Washington, DC 20530
22                              (202) 514-4678

23
          (APPEARANCES CONTINUED ON NEXT PAGE)
24
      Proceedings recorded by mechanical stenography; transcript
25    produced by computer-aided transcription
```

```
 1       APPEARANCES (CONTINUED):

 2       For the Defendant          ELLIOT R. PETERS, ESQ.
         Lance Armstrong:           TIA SHERRINGHAM, ESQ.
 3                                  ELIZABETH McCLOSKEY, ESQ.
                                    KEKER & VAN NEST, LLP
 4                                  633 Battery Street
                                    San Francisco, CA 94111
 5                                  (415)391-5400

 6

 7

 8

 9

10       Court Reporter:           Lisa A. Moreira  RDR, CRR
                                   Official Court Reporter
11                                 U.S. Courthouse, Room 6718
                                   333 Constitution Avenue, NW
12                                 Washington, DC  20001
                                   202-354-3187
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                      P R O C E E D I N G S

2              THE COURT:  All right.  Good afternoon, everyone.

3              IN UNISON:  Good afternoon, Your Honor.

4              THE COURT:  Who do we have?

5              MR. CHANDLER:  For the United States, Your Honor,

6      it's Robert Chandler, Tracy Hilmer, and David Finkelstein.

7              THE COURT:  Okay.

8              MR. PETERS:  Good afternoon, Your Honor; Elliot

9      Peters, along with Tia Sherringham and Elizabeth McCloskey

10     on behalf of Lance Armstrong.

11             MR. SCOTT:  Good afternoon, Your Honor.  For

12     Relator, Floyd Landis, it's Paul Scott; and I believe Lani

13     Remick is on the line as well.

14             THE COURT:  So as you guys know, I am more than

15     happy to make myself available to resolve discovery disputes

16     that you guys can't work out on your own.  Scheduling of

17     depositions wouldn't appear to be one of those that fall

18     into that category, but what have we got?

19             MR. PETERS:  Your Honor, this is Elliot Peters for

20     Mr. Armstrong.

21             THE COURT:  Yes.

22             MR. PETERS:  As you may recall, we previously

23     litigated whether or not we could take a 30(b)(6) deposition

24     of the Government.  We argued that back on March 11th before

25     Your Honor, and Your Honor issued an order outlining the

1    30(b)(6) deposition that we could take.

2              THE COURT:  Yes.

3              MR. PETERS:  We then, on March 13th, filed -- we

4    served a notice of that deposition on the Government and

5    actually just attached your order to the deposition notice

6    to make clear that the deposition would follow exactly along

7    the outlines ordered by the Court.

8              THE COURT:  Okay.

9              MR. PETERS:  And we set that for May 19th.

10             THE COURT:  Okay.

11             MR. PETERS:  We also subpoenaed a witness named

12   Linda Zelnick for May 20th, so while in D.C. we could take

13   that deposition also.

14             THE COURT:  Okay.

15             MR. PETERS:  A couple of weeks later I got an

16   email from Mr. Chandler saying the dates you set for those

17   depositions won't work, and we're going to be moving for a

18   protective order with regard to the 30(b)(6), and that was

19   an email from Mr. Chandler on March 26th.

20             I responded to Mr. Chandler that day, also on

21   March 26th, saying, "If those particular dates don't work,

22   please provide alternative dates for those depositions very

23   close to the dates we've noticed.  And if you intend to seek

24   a protective order regarding a 30(b)(6), please do so

25   promptly because Judge Cooper has already ordered that

1    deposition, and we don't think that motion would be well-

2    taken."

3              We then heard nothing back further on that from

4    the Government until yesterday, when I got an email from

5    Mr. Chandler saying we can't -- basically the 30(b)(6) won't

6    go forward next week, nor will the Zelnick deposition.

7              We were surprised by both of those, particularly

8    since the Government had previously told us they don't

9    represent Zelnick and we had subpoenaed her.  But I sent

10   Mr. Chandler an email expressing the view that the

11   depositions did need to go forward, and then I contacted

12   Your Honor's chambers, and I think that precipitated this

13   call.

14             So that's the background to this from our

15   perspective.  Having subpoenaed and noticed these

16   depositions two months ago, we very much would like to

17   proceed.  We have -- you know, we've taken three

18   depositions.  I think currently we've scheduled and noticed

19   and subpoenaed another seven.  Beyond that, we have a

20   significant amount of work to do to comply with the Court's

21   discovery deadline of mid-August, and we simply can't be in

22   a position where the Government, two months after we

23   subpoenaed people and noticed a deposition, they just,

24   without explaining themselves or proposing alternative

25   dates, say, "Sorry, we're not going forward."

1          THE COURT:  Okay.

2          MR. PETERS:  That's our view, Your Honor.

3          THE COURT:  So on the 30(b)(6), it's just for the

4     topics that were covered by our order; is that correct?

5          MR. PETERS:  Yes, Your Honor.  And the notice

6     simply attached -- the description of topics in that notice

7     is Your Honor's order.

8          THE COURT:  Okay.  And if I recall, we granted the

9     Government's request to defer that deposition until after it

10    had completed its production of documents by April 30th; is

11    that correct?

12         MR. PETERS:  That's correct.  And we got a very

13    large number of documents, and we're working very hard to

14    analyze them and get through them so that we'll be ready for

15    those depositions next week.  But we don't want to

16    reschedule them.

17         THE COURT:  Okay.  Mr. Chandler?

18         MR. CHANDLER:  Your Honor, the principal point is

19    Mr. Peters has had notice since March 23rd, when I sent him

20    an email, letting him know that we didn't think the 30(b)(6)

21    should go forward on May 19th as they had noticed,

22    principally because it simply would be impractical to do so

23    given that we were going to be filing a motion for

24    protective order, and the issues in our motion for

25    protective order are too intertwined with the issues in the

1    current 30(b)(6) notice really to allow the 30(b)(6) on

2    Topics 1 through 6 to go forward prior to resolution of

3    the --

4           THE COURT:  Haven't we decided that?  Wasn't there

5    a protective order with respect to those -- for the entire

6    30(b)(6), and we denied your motion for a protective order

7    to the extent it related to those first seven topics?

8           MR. CHANDLER:  And, Your Honor, we're not seeking

9    to reargue the issue of whether or not Armstrong is entitled

10   to depositions -- or to take the deposition on those topics.

11   The problem is, we have -- in responding to Topics 1 through

12   6, we have at least one designee who is going to be put

13   forward for not only topics within 1 through 6, but topics,

14   you know, outside that range, you know, that -- at least one

15   or more topics that are covered by the motion for protective

16   order, Topics 8 through 34.  So we don't want to have to put

17   forward that witness more than once.

18          That witness in particular is an out-of-town

19   witness.  We don't want to have to bring him to Washington

20   more than one time in order to do that.

21          THE COURT:  But I thought the whole point of the

22   prior briefing was the defendant's proposal to bifurcate the

23   30(b)(6) into two depositions:  one to cover the document

24   retention issues, and the other to cover more substantive

25   issues.  Am I misremembering that?

1          MR. CHANDLER:  No, that was just the way the

2    motion was filed.  It was the motion to bifurcate.  They

3    also sought --

4          THE COURT:  And was that motion granted?  The

5    motion was granted, wasn't it?

6          MR. CHANDLER:  It was granted in part and denied

7    it part, and what Armstrong had moved for at the time is the

8    ability to take an immediate deposition as to Topics 1

9    through 6.  So given that Topics 1 through 6 had been --

10   that the Court ordered those topics not -- you know, that

11   deposition not to proceed prior to April 30th, it's just not

12   practical at this time to bifurcate those issues.

13         THE COURT:  Well, I was prepared to grant the

14   motion, but as an accommodation to the Government I deferred

15   the 30(b)(6), or at least the first part of it, until after

16   you had made your document production because of the burden

17   that you suggested you all faced.  To now use that deferral

18   to, you know, get out from under the obligation of producing

19   your 30(b)(6) witness strikes me as being a little, you

20   know, unsporting.

21         MR. CHANDLER:  Well, Your Honor, we're certainly

22   not trying to get out from under the --

23         THE COURT:  Maybe I misunderstood that, but you're

24   now seeking to avoid the first part of the bifurcated

25   deposition, which I believe the Court granted.

1          MR. CHANDLER:  We're just trying to go about this

2     in the most practical and efficient way that we can given

3     the circumstances as they are right now.

4          THE COURT:  Okay.

5          MR. CHANDLER:  And, you know, one other thing I

6     should note, Your Honor, we proposed to Armstrong's counsel,

7     prior to filing our motion for protective order, that we

8     discuss an expedited briefing schedule, and they declined to

9     do so.

10          THE COURT:  Okay.  When can you make your witness

11     available?  If May 19th is impracticable, when is the next

12     earliest time you can make the witness available?

13          MR. CHANDLER:  We can make witnesses available for

14     Topics 1 through 6.  We would propose to do it in two

15     segments; the first on May 27th, and the second on --

16     starting on June 3rd.

17          THE COURT:  So I'm a little bit confused.  So

18     Topics 1 through 7 on the 27th of March, and then the other

19     topics in the notice on June 3rd; or are you still --

20          MR. CHANDLER:  No, no, no, this is all with

21     reference to Topics 1 through 6, Your Honor.  So a portion

22     of Topics 1 through 6 would be on -- starting on May 27th,

23     and another portion of Topics 1 through 6 would be on June

24     3rd.  And we would communicate with Armstrong's counsel

25     about this.

1          I mean, it doesn't break down so easily as to

2     topics because to some degree it varies, but, you know,

3     we'll put up one witness for one agency related to, you

4     know, numerous topics, and then a witness for a different

5     agency with respect to the same topics.  So, I mean, we'll

6     make that clear to Armstrong's counsel before those dates,

7     but those are the dates that we would propose.

8          THE COURT:  Why do you need witnesses from

9     multiple agencies?  I mean, this is -- I don't entirely

10    remember, but I thought that my order was that you weren't

11    required to -- that each agency from which documents were

12    collected were not required to testify as to that agency's

13    document retention policies, but rather you would put up

14    someone who was familiar with USPS's document collection

15    efforts to testify as to what communications and what

16    instructions they gave to the other relevant agencies.

17         MR. CHANDLER:  I believe Your Honor's order was

18    limited to the Postal Service with reference to document

19    retention policies, but with respect to document retention

20    and collection and production generally, it went beyond both

21    of those.

22         THE COURT:  Okay.  I don't have that in front of

23    me.

24         So Mr. Peters, they want to bifurcate the

25    bifurcation.

1           MR. PETERS:  Well, Your Honor, I can't do either

2      May 27th or June 3rd.  We noticed this 30(b)(6) deposition

3      after litigating it and getting an order from Your Honor,

4      with which we intend to scrupulously comply, needless to

5      say.  We noticed this deposition on March 13th.  Today is

6      May 12th, so that was two months ago.  And we explained to

7      Your Honor and to Mr. Chandler in a phone call, and we've

8      explained it several times, our client is an individual, and

9      for us to take depositions we want to try to do it

10     efficiently by going to D.C. for a couple of days and taking

11     a few depositions.  That's why we scheduled three that week,

12     but -- the 30(b)(6) followed by Zelnick.

13           To now, a week before the deposition and two

14     months after we noticed it, get on a phone call with Your

15     Honor and say, "Oh, no" -- we haven't heard any explanation

16     for why they can't do it next week, for one thing.  I

17     haven't heard any explanation.

18           They said, "Oh, there's more than one person, and

19     one of them we'd have to produce twice," but they haven't

20     said that the six or seven government lawyers on this case

21     aren't available on May 19th.  They haven't said the witness

22     isn't available on May 19th.  I haven't heard any reason why

23     this long-noticed and very fundamental deposition about

24     document production can't go forward as noticed.

25           We haven't heard them explain why it took until

1    yesterday for them to try and pull the plug on these

2    depositions.  The prior back-and-forth was simply them

3    saying, "We can't do it on that day," and me saying, "Then

4    give me some other dates in that time period where we can do

5    it," because I wanted to be courteous.

6            And they didn't ever respond to that.  And now

7    Mr. Chandler says, "Oh, let's make you make two steps, spend

8    some more money, and propose May 27th and June 3rd," which

9    are both dates on which I am not available.

10           So I don't -- I respectfully request that the

11   Government be ordered to produce the witness on the date

12   that we noticed it for two months ago.  They really

13   shouldn't be allowed to wait two months, and then a week

14   before the deposition start saying, "Oh, no, we'd rather do

15   it on a couple of dates when Armstrong's lawyer isn't

16   available."

17           THE COURT:  Mr. Chandler --

18           MR. CHANDLER:  Your Honor, if I may?

19           THE COURT:  Sure.  First of all, who is your USPS

20   30(b)(6) witness?

21           MR. CHANDLER:  There will be more than one, but

22   our principal one would be the OIG or an OIG agent.

23           THE COURT:  Okay.  And why is that person not

24   available on the 19th?

25           MR. CHANDLER:  I believe he may be available on

1    the 19th.  I know that at least two of our designees are not

2    available on the 19th.

3              THE COURT:  Okay.

4              MR. CHANDLER:  And, you know, more broadly, Your

5    Honor, we just completed our document production eight days

6    ago, and it was a massive document review and production.  I

7    know the Court indicated in its order that the deposition

8    couldn't go forward any sooner than April 30th, but there

9    was no indication that it had to go forward as soon as

10   possible after April 30th; and quite frankly, Your Honor,

11   given the scale of the document production that we

12   undertook, you know, we ought to have at least eight days to

13   complete that process and prepare our witnesses to testify

14   about the document production generally.

15             THE COURT:  Okay.  What about Zelnick on the 19th?

16   Is she not available?

17             MR. CHANDLER:  Zelnick requested Government

18   representation on April 15th, and the approval process for

19   that is still underway.  But she does anticipate -- she has

20   requested Government representation.  We anticipate that

21   process will be completed shortly, and then once she -- once

22   it is complete, we'll need the opportunity to meet with her

23   and to prepare her for her deposition.

24             THE COURT:  So I'm sorry, it's noticed on the

25   20th, and your position is that's an insufficient amount of

1    time for you to prepare her?

2         MR. CHANDLER:  Well, at this point we don't yet

3    represent her.  We haven't had an opportunity to meet with

4    her and to prepare her.

5         THE COURT:  Okay.  What does it entail to get

6    authorization to have her represented by the Government?

7         MR. CHANDLER:  First, the witness has to request

8    representation from the agency that used to employ them, and

9    then they need to make a recommendation to the Department of

10   Justice, and then it requires management review within DOJ

11   to make a determination as to whether the person is eligible

12   for representation.

13        THE COURT:  Okay.  And she's made the request.

14        MR. CHANDLER:  She has, Your Honor.  The agency

15   has made its recommendation, and it's under consideration

16   here at DOJ.

17        THE COURT:  Okay.  And when do you expect to

18   receive it?

19        MR. CHANDLER:  Very shortly, Your Honor.

20        THE COURT:  So if you receive it this week, that

21   gives you a week to prepare her.  Is that enough time?

22        MR. CHANDLER:  I don't know what Ms. Zelnick's

23   schedule is over the next week.

24        THE COURT:  Where is she?

25        MR. CHANDLER:  She's in the D.C. area.

```
 1              THE COURT:  Okay.  What about -- is it
 2     Mr. Carrier?
 3              MR. CHANDLER:  Ms. Carrier.
 4              THE COURT:  Ms. Carrier.
 5              MR. CHANDLER:  She's a current employee, but she
 6     actually will be outside the Washington area on the 21st,
 7     which is the date her deposition has been noticed for.  The
 8     notice for her deposition was just served last week, and my
 9     understanding is that she had a trip planned to California,
10     and she'll be flying back that day.
11              THE COURT:  Okay.
12              Okay.  The Government should make the OIG agent or
13     whoever its 30(b)(6) representative is available on the 19th
14     to be deposed here in Washington, and if additional 30(b)(6)
15     representatives are necessary to testify as to Topics 1
16     through 7, then those can be done at a later date.
17              The Government will make Ms. Zelnick available for
18     deposition on the 20th unless, by some reason, authorization
19     is not obtained for her representation well enough in
20     advance to prepare her, and so you need to come back to me
21     if that turns out to be the case.  Otherwise, she should be
22     made available for the 20th.
23              Ms. Carrier is not available on the 21st, so you
24     all need to get together and figure out another time to
25     depose Ms. Carrier.  Okay?
```

1          MR. FINKELSTEIN:  Your Honor -- this is David

2    Finkelstein -- can I just ask for clarification with respect

3    to Ms. Zelnick?

4          THE COURT:  Sure.

5          MR. FINKELSTEIN:  Because we don't currently

6    represent her, we haven't been able to ascertain her

7    schedule.  If it turns out, once we do, that she's not

8    available on the 20th, would it be okay in a summary fashion

9    to come back to the Court and notify the Court of that?

10          THE COURT:  That's fine.

11          MR. PETERS:  We did subpoena Ms. Zelnick on March

12    13th.  She's had a subpoena, and the Government interviewed

13    her before.  This isn't a lady that they've never met

14    before.  They've interviewed her before as part of their

15    investigation, and so, you know, Ms. Zelnick has -- if she

16    wants a lawyer, she has certain responsibilities.

17          The Government -- apparently a month ago she asked

18    for representation.  It really shouldn't be a problem, and

19    it seems like it's their responsibility.

20          But Your Honor -- this is Elliot Peters again --

21    if I could just say one more thing about the 30(b)(6), the

22    OIG agent.  Can we just know what topic or topics he'll be

23    designated on so we can prepare, and then if we could also

24    know who the other designees are going to be and on which

25    topics they are so moving forward we can figure out how to

1   schedule those, if we need to?

2          THE COURT:  Yes.  You guys should exchange that

3   information off line, but they're entitled to know which

4   topics -- the defendant is entitled to know which topics the

5   OIG agent and the subsequent 30(b)(6) witnesses, if

6   necessary, will be prepared to address at deposition.  Okay?

7          MR. PETERS:  Thank you, Your Honor.

8          MR. CHANDLER:  Thank you, Your Honor.

9          THE COURT:  So Mr. Peters, on your last point with

10  respect to Ms. Zelnick, I mean, I understand that, but if

11  they have not confirmed her availability, I think, you know,

12  they're entitled to do that, and I'm not going to make her

13  be here, you know, if she's got someone's graduation to go

14  to or a doctor's appointment or something like that.  Okay?

15         MR. PETERS:  I understand, but, you know, because

16  -- when we asked the Government "Do you represent Zelnick?"

17  a long time ago, they said no, so we served her with a

18  subpoena with a cover letter that said, you know, "If

19  there's an issue, contact us," and we've never heard

20  anything.  To hear, "Oh, I have my granddaughter's

21  graduation on this date," to hear that a couple of days

22  before the deposition, would be frustrating.

23         But I understand.  And we intend to treat all of

24  these witnesses with as much courtesy as possible.  We just

25  don't want to be jerked around in trying to schedule these

1    when we have to travel across the country to do it.

2          THE COURT:  Understood.

3          MR. FINKELSTEIN:  Your Honor, this is David

4    Finkelstein.  This is a person we intend to represent but

5    who is being discussed and who is not currently represented

6    in this matter, so it's not dealing with her with courtesy

7    to talk about her positions and her interests without

8    allowing her to be heard.  We can't speak on her behalf

9    right here.

10          THE COURT:  Well, if you end up representing her,

11   and she has a conflict, let us know, and we'll move the

12   deposition.  It's as simple as that.

13          MR. FINKELSTEIN:  Understood.

14          THE COURT:  Or better yet, work out an alternative

15   date amongst yourselves.  Okay?

16          MR. PETERS:  Because if we're going to -- we

17   really do want to try to schedule these depositions in

18   blocks so that we can do a chunk when we're in D.C.  That's

19   one of the things that's frustrating about chopping it all

20   up, because it just gets so expensive for our client for us

21   to travel back and forth.  So that's one of the things we

22   mentioned a while ago that we're trying to accomplish by

23   doing things this way.

24          THE COURT:  Fair enough.

25          MR. CHANDLER:  Your Honor, there is one other

1        issue I'd like to raise before we go, please.

2                    THE COURT:  Sure.

3                    MR. CHANDLER:  And that is the Government intends

4        to file a motion to compel Armstrong to produce some

5        documents that we learned about only relatively recently.

6        Specifically, we learned in March that Armstrong has 30

7        boxes of responsive documents that are in the possession of

8        a law firm in London that apparently represented him at one

9        point, and Mr. Armstrong has taken the position that he's

10       not obligated to produce those in accordance with the

11       party's agreed-upon production stipulation because they were

12       not -- because he's making them available for inspection and

13       copying, and therefore they're not, quote-unquote, being

14       produced pursuant to the stipulation.

15                   We have attempted, over the last two months, to

16       try to work out some arrangement with Armstrong that would

17       allow us to get what we need from those documents, but,

18       unfortunately, that process has broken down principally

19       because we simply can't get an explanation of what is

20       actually in those 30 boxes.  And so yesterday we requested

21       from Armstrong that we contact the Court to work out a

22       briefing schedule on that issue.

23                   THE COURT:  Okay.

24                   MR. CHANDLER:  The Government is prepared to file

25       its motion or briefing summary on Friday, if that would be

1    acceptable to the Court.

2              THE COURT:  That's fine with me.

3              MR. PETERS:  And we'll respond the following

4    Wednesday.

5              THE COURT:  Okay.  And then we'll set up a call

6    for later next week.

7              MR. PETERS:  I could respond now, but I won't.  We

8    can do it in writing.

9              THE COURT:  That would be better.

10             Okay.

11             MR. CHANDLER:  I'm sorry, one more housekeeping

12   issue, Your Honor.  Armstrong has filed a reply in

13   connection with -- or pardon me, Ms. Hanson, I suppose, has

14   filed a reply in connection with the motion to quash the

15   Government's subpoena for her deposition, and the Government

16   would like leave to file a sur-reply.  Mr. Armstrong's reply

17   raises a number of new arguments and well exceeds the three-

18   page limit that has been the Court's practice up until now,

19   and so we'd like an opportunity to be heard in responding on

20   those.

21             THE COURT:  All right.  Let me look at the reply.

22   We did this one through a motion to compel briefing as

23   opposed to our normal summary procedure so I'm not sure he

24   wasn't entitled to file a reply, but if there are matters

25   raised in the reply that were not in the opposition, then

1    we'll let you do that, okay?  But let me take a look at it,

2    and we'll issue a minute order.

3              MR. CHANDLER:  Your Honor, just to be clear, to

4    add one bit of information to your consideration.

5              THE COURT:  Uh-huh.

6              MR. CHANDLER:  The parties did agree to the three-

7    page summary briefing.

8              THE COURT:  Oh, I see.

9              MR. PETERS:  And we asked you -- this is Elliot

10   Peters.  We asked Your Honor for leave to file a reply when

11   we spoke last Friday, and Your Honor said it was fine for us

12   to file a reply, and we did that.

13             THE COURT:  Okay.  Any objection to a sur-reply,

14   Mr. Peters?

15             MR. PETERS:  I don't have any objection to the

16   Government filing whatever they want to file.

17             THE COURT:  Okay.  File a three-page sur-reply as

18   soon as you can.

19             MR. CHANDLER:  Your Honor, Armstrong's brief --

20   pardon me, Hanson's brief was closer to eight pages or so,

21   and I don't know that we can adequately respond in three

22   pages.

23             THE COURT:  Okay.  Take as much space as you

24   need --

25             MR. CHANDLER:  All right.  Thank you, Your Honor.

1          THE COURT:  -- while you're doing all this other

2     stuff.  All right?  Thank you.  Have a good day.

3          MR. PETERS:  Thank you.  You, too.

4          MR. CHANDLER:  Thanks, Your Honor.

5               (Whereupon the hearing was

6                concluded at 2:28 p.m.)

7

8          **CERTIFICATE OF OFFICIAL COURT REPORTER**

9

10         I, LISA A. MOREIRA, RDR, CRR, do hereby

11    certify that the above and foregoing constitutes a true and

12    accurate transcript of my stenographic notes and is a full,

13    true and complete transcript of the proceedings to the best

14    of my ability.

15       Dated this 18th day of May, 2015.

16

17                         /s/Lisa A. Moreira, RDR, CRR
                          Official Court Reporter
18                        United States Courthouse
                          Room 6718
19                        333 Constitution Avenue, NW
                          Washington, DC 20001
20

21

22

23

24

25