# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*
FLOYD LANDIS,

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS,<br><br>Plaintiffs,<br><br>v.<br><br>TAILWIND SPORTS CORP., *et al.*,<br><br>Defendants. | Civil Action No. 1:10-cv-00976-CRC<br><br>**ECF**<br><br>**REDACTED VERSION** |

## LANCE ARMSTRONG'S OPPOSITION TO THE
## UNITED STATES' MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................3

III.   ARGUMENT..........................................................................................................4

    A.   The Sponsorship Agreements ......................................................................5

        1.   Topic 8:  The provisions of the SPONSORSHIP AGREEMENTS. ...........5

        2.   Topic 10:  The IDENTITY of all PERSONS with knowledge of the drafting, negotiation, execution, and administration of the SPONSORSHIP AGREEMENTS. ...................................................................6

        3.   Topic 11:  Claims for payment and payments made under the SPONSORSHIP AGREEMENT, including the IDENTITY of all PERSONS to whom claims for payments were made and the IDENTITY of all PERSONS who administered and negotiated payments. .....................................................................................................7

        4.   Topic 12:  The materiality of the performance of any provisions of the SPONSORSHIP AGREEMENTS RELATING TO the use of performance enhancing substances to the USPS' decision to pay pursuant to those agreements. ...................................................................8

        5.   Topic 13:  All statements by any PERSON that induced the USPS to enter into the SPONSORSHIP AGREEMENTS, including the IDENTITY of the PERSON(S) who made the statement, the IDENTITY of the PERSON(S) to whom it was made, when it was made, and any RELATED or contemporaneous COMMUNICATIONS. ..............................................................................9

        6.   Topic 14:  ARMSTRONG'S knowledge, if any, of the provisions of the SPONSORSHIP AGREEMENTS, claims made under the SPONSORSHIP AGREEMENTS, and/or claims paid under the SPONSORSHIP AGREEMENTS. .......................................................10

    B.   Sponsorship Benefits .................................................................................11

        1.   Topic 15:  All benefits to the USPS of the USPS PRO-CYCLING TEAM SPONSORSHIP.   Topic 17:  The revenue generated directly or indirectly by the USPS PRO-CYCLING TEAM SPONSORSHIP, including but not limited to revenue generated through advertising, merchandising, hospitality events, and

i

contracts with new clients.    Topic 34:  Any harm to the USPS
caused by negative publicity associated with ARMSTRONG. ................11

2.    Topic 16:  All statements the USPS made regarding the value of
the USPS PRO-CYCLING TEAM SPONSORSHIP, including but
not limited to statements about any evaluations of, or benefits
received from, the USPS PRO-CYCLING TEAM
SPONSORSHIP...................................................................................12

3.    Topic 20:  Evaluations of the USPS PRO-CYCLING TEAM
SPONSORSHIP, including but not limited to financial, media, or
any other valuations of the USPS PRO-CYCLING TEAM.    Topic
23:  All consumer surveys or tracking studies performed or
commissioned by the USPS between 1995 and the present. ....................13

4.    Topic 22:  COMMUNICATIONS with the USPS Board of
Governors RELATING TO the USPS PRO CYCLING TEAM
SPONSORSHIP or ARMSTRONG. ........................................................14

C.    Government Knowledge of Doping....................................................................15

1.    Topic 24:  The USPS' or YOUR knowledge of or response to the
use of performance enhancing substances or allegations of the use
of performance enhancing substances in professional cycling prior
to 2004. ...............................................................................................15

2.    Topic 26:  The USPS' attendance at any professional cycling event
in which the USPS cycling team participated..........................................15

D.    Government Communications with Third Parties ................................................16

1.    Topic 27:  The IDENTITY of all PERSONS who produced
DOCUMENTS to YOU in response to any subpoena, civil
investigative demand, voluntary request for documents or any
other request that YOU issued in connection with this case or the
INVESTIGATION..................................................................................16

Topic 28: The IDENTITY of all PERSONS questioned or interviewed in
connection with this case or the INVESTIGATION. ...............................16

2.    Topic 29:  YOUR COMMUNICATIONS with USADA in
connection with this case or the INVESTIGATION. ...............................17

3.    Topic 30:  The IDENTITY of all PERSONS who discussed or
disclosed the existence of this action or the Complaint with a
reporter, member of the press, or third party, prior to February 22,
2013, and the contents of those discussions or disclosures. ....................18

948673

4.  Topic 31:  LANDIS' deferred prosecution agreement with YOU.
Topic 32:  The allegations made against LANDIS and the
underlying facts RELATED TO *United States of America v. Floyd
Landis, United States District Court*, Southern District of
California, Case No. 12-3481. ...................................................................20

E.  Persons Knowledgeable .........................................................................................20

1.  Topic 33:  The IDENTITY of YOUR current officers, directors,
managing agents, employees, or agents who are knowledgeable
about the foregoing topics, including the PERSON(S) most
knowledgeable. .........................................................................................20

F.  Time Limits................................................................................................................21

IV.  CONCLUSION.....................................................................................................................23

iii

948673

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. FBI*
   186 F.R.D. 137 (D.D.C. 1998)...............................................................9, 16, 21, 22

*Cent. Transp. Int'l, Inc. v. Global Advantage Distrib.*
   No. 2:06-cv-401, 2007 U.S. Dist. LEXIS 81664 (M.D. Fla. Sept. 11, 2007)............20

*Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nig.*
   2015 U.S. Dist. LEXIS 55199 (D.D.C. Apr. 28, 2015)...............................4, 5, 14, 22

*Dorocon, Inc. v. Burke*
   2005 U.S. Dist. LEXIS 38839 (D.D.C. Nov. 1, 2005) ..........................................10

*Founding Church of Scientology, Inc. v. Webster*
   802 F.2d 1448 (D.C. Cir. 1986)..............................................................................1

*Herbert v. Nat'l Acad. of Scis.*
   1992 U.S. Dist. LEXIS 14063 (D.D.C. Sept. 15, 1992) .......................................15

*In re Vitamins Antitrust Litig.*
   217 F.R.D. 229 (D.D.C. 2002)...............................................................................6

*Marker v. Union Fidelity Life Ins. Co.*
   125 F.R.D. 121 (M.D.N.C. 1989).......................................................................1, 6

*MP NexLevel, LLC v. Codale Elec. Supply, Inc.*
   No. 2:08-cv-0727, 2012 U.S. Dist. LEXIS 86640 (D. Utah June 20, 2012) ............2, 12

*Rainey v. Am. Forest & Paper Ass'n*
   26 F. Supp. 2d 82 (D.D.C. 1998)...........................................................................4

*Sigmund v. Starwood Urban Retail VI, LLC*
   236 F.R.D. 43 (D.D.C. 2006)......................................................................5, 6, 9, 20

*United States ex rel. Ervin & Assocs. v. Hamilton Sec. Group*
   370 F. Supp. 2d 18 (D.D.C. 2005)..........................................................................8

*United States ex rel. Lujan v. Hughes Aircraft Co.*
   67 F.3d 242 (9th Cir. 1995) .................................................................................19

*United States ex rel. Pilon v. Martin Marietta Corp.*
   60 F.3d 995 (2d Cir. 1995) ..................................................................................19

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States ex rel. Purcell v. MWI Corp.*
   520 F. Supp. 2d 158 (D.D.C. 2007) .......................................................................15

*United States ex rel. Summers v. LHC Group, Inc.*
   623 F.3d 287 (6th Cir. 2010) .............................................................................19

*United States ex rel. West v. Lakeshore Spine and Pain, P.C.*
   No. 11-1051, 2012 U.S. Dist. LEXIS 125350 (W.D. Mich. Sept. 5, 2012) ...........19

*United States v. Hawley*
   619 F.3d 886 (8th Cir. 2010) ...............................................................................7

*United States v. Intrados/Int'l Mgmt. Group*
   265 F. Supp. 2d 1 (D.D.C. 2002) .......................................................................15

*United States v. Island Park*
   791 F. Supp. 354 (E.D.N.Y. 1992) .....................................................................15

*United States v. Leonard*
   494 F.2d 955 (D.C. Cir. 1974) ...........................................................................18

*United States v. Sci. Applications Int'l Corp.*
   626 F.3d 1257 (D.C. Cir. 2010) ......................................................................8, 10

*United States v. Toyobo Co.*
   811 F. Supp. 2d 37 (D.D.C. 2011) .......................................................................7

**Federal Statutes**

31 U.S.C. §3731(b)(2) ...........................................................................................3, 15

**Federal Rules**

Fed. R. Civ. Proc. 26.................................................................................................22

Fed. R. Civ. Proc. 26(b)(1) .................................................................................16, 20

Fed. R. Civ. Proc. 26(c) .............................................................................................4

Fed. R. Civ. Proc. 26(f) .............................................................................................3

Fed. R. Civ. Proc. 30.................................................................................3, 21, 22, 23

Fed. R. Civ. Proc. 30(d)(1) ................................................................................3, 21

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Fed. R. Civ. Proc. 30(b)(6) ................................................................................................... *passim*

**Other Authorities**

Charles Allen Wright *et al.*, *Federal Practice and Procedure* § 2013 (3d ed. 2010)....................23

vi

948673

# I.   INTRODUCTION

The government's motion for a protective order seeks to insulate it from answering any questions about the issues at the heart of this case: the tremendous financial benefits that accrued to the Postal Service from sponsoring a cycling team that won the Tour de France six times, the sponsorship agreements whose provisions are plastered across the complaints, the government's own knowledge of doping that was rampant throughout the peloton and notorious during the sponsorship years, the inducements the government gave to the witnesses it intends to present to a jury, and the documents and testimony those witnesses provided to the government in exchange. There is a reason the government does not want to expose the purported merits of its case to deposition. "Depositions . . . rank high in the hierarchy of pre-trial, truth-finding mechanisms." *Founding Church of Scientology, Inc. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986). "Face-to-face confrontations prior to trial, with such indicia of formality as administration of the oath, the presence of counsel and stenographic recording of the proceedings, are a critical component of the tools of justice in civil litigation." *Id.*

The government proposes that it should not be subject to the basic duties set forth in the Federal Rules of Civil Procedure. For instance, the government argues that it should not be subject to deposition on more than a dozen topics because the government has already produced documents responsive to or answered interrogatories relating to those topics. But there is "no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other discovery devices." *Tri-State Hosp. Supply Corp.*, 226 F.R.D. at125-26; *see also Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) ("Nothing in the Federal Rules of Civil Procedure gives a party the right to not respond or inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request and elect to supply the answers in a written response to an interrogatory."). Moreover, Armstrong is of course permitted to ask the government's witnesses questions under oath about the documents the government has produced. "By its very nature, the discovery process entails asking

1

948673

witnesses questions about matters that have been the subject of other discovery." *Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 125-26.

The government also seeks to avoid testifying about the enormous financial benefits the government reaped from its sponsorship of the cycling team. Despite presentations to the Postal Service Board of Governors about the benefits of the sponsorship, public statements that the sponsorship paid for itself many times over, and internal and external Postal Service studies showing the tens of millions of dollars the government received, the government claims to have no idea what benefits it reaped from the sponsorship. Rather, the government suggests that Armstrong should only be permitted to ask its as-of-yet undisclosed expert about the government's allegations of damages. "[E]xpert testimony is not a sufficient substitute for the testimony of a corporate representative." *MP NexLevel, LLC v. Codale Elec. Supply, Inc.*, No. 2:08-cv-0727, 2012 U.S. Dist. LEXIS 86640, *8 (D. Utah June 20, 2012). If the government's paid litigation consultant is the only person who will testify subject to penalty of perjury that the Postal Service was harmed, Armstrong is entitled to present that fact to the jury.

The government also seeks to avoid answering questions about the Postal Service's knowledge of doping—despite the fact that such knowledge gives rise to a complete defense. The government argues that Armstrong should forsake binding 30(b)(6) testimony from the government in exchange for the testimony of the former employees who administered the sponsorship, but whom the government has not chosen to designate as its witnesses. The government's document production has revealed that those employees were well aware of extensive doping throughout the peloton, and indeed eye-witnessed its consequences. Armstrong is entitled to binding 30(b)(6) testimony on the matter.

The government also seeks to avoid giving testimony about the information it received as a result of its six-year long civil and criminal investigations of Armstrong, the persons who supplied that information, and the inducements it gave to those persons. Armstrong is entitled to seek discovery which will show that the government purchased the testimony it intends to

2

present to the jury from criminals and fabulists in exchange for complete immunity, use immunity, and deferred prosecution.

Finally, without so much as even offering a reason, the government proposes that the time for its deposition should be radically curtailed, brushing off the presumptive time limits set forth in the Federal Rules of Civil Procedure. Under the black-letter law set forth in the Commentary to the Rules, Armstrong is entitled to seven hours per designee. *See* Fed. R. Civ. Proc. 30(d)(1) ("[A] deposition is limited to 1 day of 7 hours."); Fed. R. Civ. Proc. 30 advisory committee's note ("For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."). The government's proposed time limits have no basis in law, or any unusual circumstances in this case justifying shorter time limits and are simply a part of their strategy of preventing Armstrong from taking the discovery to which he is entitled under the Federal Rules of Civil Procedure. The government's attempts to short-circuit Armstrong's access to the truth-seeking process in the form of 30(b)(6) depositions should be denied.

## II.   BACKGROUND

On December 13, 2013, the parties filed a joint Rule 26(f) report laying out the issues for discovery in this case. In it, Armstrong informed the Court that he would "seek discovery showing that the government cannot meet its burden of establishing each element of its claims, including, without limitation, (1) that the government suffered any damage; (2) that Armstrong knowingly submitted or caused to be submitted a false claim to USPS; (3) that Tailwind breached a material term of the sponsorship agreements; (3) that Armstrong made false statements with the requisite scienter; or (4) that Armstrong participated in a conspiracy to defraud the government." Joint Status Report, ECF No. 141, Dec. 13, 2014. Armstrong also proposed to seek "seek discovery of the knowledge of the 'Official of the United States charged with the responsibility to act in the circumstances,' within the meaning of 31 U.S.C. §3731(b)(2)." Finally, Armstrong informed the Court that he had already started seeking "the

3

substantial discovery [the government] took during its years-long investigation while this case remained under seal," as well as "discoverable evidence derived from [the U.S. Anti-Doping Agency's] investigation into professional cycling, which [was] undertaken in concert with the United States." As a result of the complexity of the discoverable issues, the number of witnesses involved, and the eight-year time period at issue, the parties agreed to a total of 150 depositions, with 40 of those depositions apportioned to Armstrong.

Armstrong served a Rule 30(b)(6) deposition notice on precisely the topics he informed the Court and the government he would. The government now moves for a protective order with respect to the vast majority of the Rule 30(b)(6) topics. Because Armstrong's Rule 30(b)(6) notice seeks proper, discoverable information, the Court should deny the government's motion.

## III.    ARGUMENT

Federal Rule of Civil Procedure 30(b)(6) permits a party to notice the deposition of the government. In response to the notice, "[t]he named organization must . . . designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R. Civ. Proc. 30(b)(6). "[T]he Rule aims to prevent [the named organization] from thwarting inquiries during discovery, then staging an ambush during a later phase of the case." *Rainey v. Am. Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998).

A party moving for a protective order against a 30(b)(6) deposition "has a heavy burden of showing extraordinary circumstances based on specific facts that would justify an order." *United States v. Kellogg Brown & Root Servs.*, Inc., 285 F.R.D. 133, 134-35 (D.D.C. 2012) (quoting *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1998)). A party seeking to avoid a deposition based on a burdensomeness objection must submit "concrete information demonstrating the cost of responding to [the] deposition notice." *Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nig.*, 2015 U.S. Dist. LEXIS 55199,*27–*29 (D.D.C. Apr. 28, 2015). "The showing required under Rule 26(c) must be sufficient to overcome the other party's legitimate and important interests in trial preparation." *Kellogg* , 285 F.R.D.at 134-

4

35. Even where responding to the deposition notice is "time-consuming and expensive," it will not be quashed where it is not disproportionate to the value to the deposing party in litigating its action. *Cont'l Transfert Technique, Ltd.*, 2015 U.S. Dist. LEXIS 55199, at \*27-\*29.

### A.   The Sponsorship Agreements

#### 1.   Topic 8: The provisions of the SPONSORSHIP AGREEMENTS.

The government pins its entire case on its allegation that the defendants "materially failed to comply with the USPS sponsorship agreements." Compl. In Intervention ¶ 5. The complaints devote no fewer than fifty-five paragraphs to allegations about the sponsorship agreements. *Id.* ¶¶ 3-5, 13-27, 30, 63, 69-70, 75, 92; Relator's Second Am. Compl. ¶¶ 23-36, 51-56, 79, 130, 198-210. Plaintiffs' breach theories are myriad and creative. For instance, the government alleges that Armstrong breached the sponsorship agreements—to which he is not a party—on account of the absence of a morals clause in Armstrong's rider agreement—to which the government is not a party. United States Compl. ¶ 69. But the agreements serve not only as the sole basis for the government's breach allegations, they also form the basis for the government's jurisdictional, false claims, venue, causation, materiality, and damages allegations. The sponsorship agreements are literally everything to the government. The government now seeks a protective order preventing Armstrong from questioning the government about its provisions.

The government cites out-of-circuit authorities for the proposition that a deposition about the sponsorship agreement is inadmissible because "legal interpretations [about the contracts] are a matter of law for the Court to decide." Mot. at 11. That is not the law in this district, or outside of it. "Even if the meaning of a document or the intent of the parties as to a contractual provision is the issue ultimately to be decided, such questions do not raise a valid objection to a request to admit a party's understanding of a document's meaning or the intent of the parties as otherwise a party that does not intend to dispute such matters could refuse to answer thus requiring needless proof." *Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 46 (D.D.C. 2006). Therefore, a party must supply an informed witness to testify about the

5

provisions of contracts at issue in the litigation. *Id.* at 45 (authorizing a 30(b)(6) deposition on the topic: "contentions concerning the obligations of the parties pursuant to both the Parking Services Agreement and the Property Management Agreement").

> 2.  **Topic 10:  The IDENTITY of all PERSONS with knowledge of the drafting, negotiation, execution, and administration of the SPONSORSHIP AGREEMENTS.**

The government does not dispute the relevance of the identity of those persons who drafted, negotiated, executed, or administered the sponsorship agreements. Instead, the government argues that Armstrong must seek that information through requests for production or interrogatories. The government "rel[ies] on what might be called the substitution theory of discovery—that [the government] can respond as it sees fit rather than as requested by" Armstrong. *In re Vitamins Antitrust Litig.*, 217 F.R.D. 229, 233 (D.D.C. 2002) (rejecting a party's request to force the deposing party to fish the answers out of its document production, instead of forthrightly providing answers during a 30(b)(6) deposition). "The argument has no merit." *Id.* There is "no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other discovery devices." *Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 125-26; *see also Marker* 125 F.R.D. at 126 ("Nothing in the Federal Rules of Civil Procedure gives a party the right to not respond or inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request and elect to supply the answers in a written response to an interrogatory."). Armstrong, "under Rule 30(b)(6), [is] entitled to an educated witness who can testify as to facts that are known or reasonably available" to the government. *In re Vitamins* 217 F.R.D. at 233. The government does not get to pick and choose which discovery method Armstrong uses to develop his defenses. *Id.*

3.   **Topic 11:  Claims for payment and payments made under the SPONSORSHIP AGREEMENT, including the IDENTITY of all PERSONS to whom claims for payments were made and the IDENTITY of all PERSONS who administered and negotiated payments.**

Again, the government does not contest the relevance of Armstrong's eleventh deposition topic, which seeks testimony regarding the "[c]laims for payment and payments made under the" sponsorship agreements.  The government does not contest relevance because it cannot.  The government alleges in its complaint that Armstrong "knowingly caused the submission and payment of" invoices for payment; and "the USPS justifiably relied upon Defendants' false statements . . . in deciding to pay invoices submitted pursuant to the 1995 and 2000 Agreements."  Compl. In Intervention ¶¶ 69-72.  The government makes those allegations not because they have any factual support—but because it must.  The government "has the burden to prove that [Armstrong] presented, or caused to be presented, a false claim to the United States government."  *United States v. Hawley*, 619 F.3d 886, 893 (8th Cir. 2010).  "For a plaintiff to allege a cause of action under § 3729(a)(1)'s 'causes to be presented' prong, it must allege that the defendant's conduct was 'at least a substantial factor in causing, if not the but-for cause of, submission of false claims.'"  *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 48 (D.D.C. 2011).

The government argues that Armstrong is not entitled to a deposition on this topic because "[t]he government has already produced voluminous information responsive to [this] topic."  But the government cannot dictate which discovery avenues he explores.  There is "no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other discovery devices."  *Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 125-26.  Moreover, Armstrong has searched the government's production, and can find no support for the government's allegations that he submitted false claims.  Armstrong had nothing to do with the submission of the invoices the government contends are "false claims."  Armstrong didn't send the invoices, communicate with the Postal Service about the invoices, or

7

receive payment on the invoices.  The government's insupportable allegations should be subject to questioning under oath at deposition.

      4.    **Topic 12:  The materiality of the performance of any provisions of the SPONSORSHIP AGREEMENTS RELATING TO the use of performance enhancing substances to the USPS' decision to pay pursuant to those agreements.**

     The government does not contest the relevance of this topic, and indeed cites statute and case law both of which provide that the government bears the burden of proof to show that the provisions of the sponsorship agreements at issue were material to the USPS' decision to pay pursuant to those agreements.  In order to establish materiality, the government must establish that "compliance with the presented claim [was] so important to the contract that the government would not have honored the submission for payment on the claim if it were aware of the violation." *United States ex rel. Ervin & Assocs. v. Hamilton Sec. Group*, 370 F. Supp. 2d 18, 45 (D.D.C. 2005).  Indeed, to prevent plaintiffs from abusing "the FCA's generous remedial scheme" via the implied certification theory upon which the government relies, the D.C. Circuit has called for "strict enforcement of the Act's materiality . . . requirement[]." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1270-71 (D.C. Cir. 2010).  "To establish FCA liability under an implied certification theory, the plaintiff must prove by a preponderance of the evidence that compliance with the legal requirement in question is material to the government's decision to pay." *Id.* at 1271.  "The plaintiff may establish materiality . . . through testimony demonstrating that both parties to the contract understood that payment was conditional on compliance with the requirement at issue." *Id.* at 1269.  If the government has no testimony demonstrating that it understood that payment was conditional on compliance with the provisions of the sponsorship agreements it contends were breached, Armstrong is entitled to a binding record to that effect.

     The government complains that the topic is impermissible because it seeks "facts in support of [the Government's] contention[s]."  There is no general prohibition on such a request. "[Q]uestions requiring the application of law to fact would be appropriate questions at a Rule

30(b)(6) deposition." *Sigmund*, 236 F.R.D. at 46-47.  Regardless, during the meet and confer,

Armstrong reformulated this request to remove reference to "all facts in support of [the

government's] contention."  As reformulated, the government withdrew its objections.  Tr. of

Telephone Conference at 14-17, Febr. 26, 2015, ECF No. 313-3 ("Yes, we're okay with that"

topic as reformulated.).  The government should be ordered to present a witness on this topic.

> **5.    Topic 13:  All statements by any PERSON that induced the USPS to
> enter into the SPONSORSHIP AGREEMENTS, including the
> IDENTITY of the PERSON(S) who made the statement, the
> IDENTITY of the PERSON(S) to whom it was made, when it was
> made, and any RELATED or contemporaneous
> COMMUNICATIONS.**

In its complaint, the government repeatedly alleged that certain statements were made

to—and did in fact—"induce the USPS to enter into the 2000 [sponsorship] agreement."  Compl.

In Intervention ¶ 63; *see also id.* ¶ 70.  The only support for that allegation the government could

muster is a nebulous paragraph in the complaint that attempts to impute to Armstrong various

statements he did not make, and the government has so far declined to clarify, despite the fact

that Armstrong allegedly made those statements to the "USPS Vice President for Sales."  *See*

Compl. In Intervention ¶ 63(E) ("Armstrong misled the USPS Vice President for Sales by

suggesting, through his words and his conduct, that the USPS team was among the clean teams

that might lead by example.").

The government complains that Topic 13—which seeks specific information about the

government's own vague inducement allegations—is not reasonably particular.  The purpose of

the reasonable particularity requirement is to ensure that the deponent is "on sufficient notice of

what discoverable matters the [deposing party] would inquire into [at the] deposition."

*Alexander v. FBI*, 186 F.R.D. 137, 140 (D.D.C. 1998).  The reasonable particularity requirement

does not bar a deposition where "[b]oth parties are well aware of the discoverable issues in this

case . . . ."  *Id.*  The government is well aware that Armstrong seeks testimony about the

government's own inducement allegations not the least because Armstrong's counsel told the

government so during the meet and confer. *See* Tr. of Teleconference 7-8, Febr. 26, 2015, ECF

No. 313-3. If the government refuses to prepare a witness on its own fraudulent inducement

allegations—about which it bears the burden of proof—it should be barred from presenting any

purported evidence in support of that theory at trial. *See Dorocon, Inc. v. Burke*, 2005 U.S. Dist.

LEXIS 38839, *61-*62 (D.D.C. Nov. 1, 2005) ("Rule 30(b)(6) precludes a party at trial from

introducing a theory of the facts that differs from that articulated by the designated

representatives.").

6.   **Topic 14:  ARMSTRONG'S knowledge, if any, of the provisions of the SPONSORSHIP AGREEMENTS, claims made under the SPONSORSHIP AGREEMENTS, and/or claims paid under the SPONSORSHIP AGREEMENTS.**

The D.C. Circuit requires "[s]trict enforcement of the FCA's *scienter* requirement." *Sci.*

*Applications Int'l Corp.*, 626 F.3d at 1271. "Establishing knowledge . . . on the basis of implied

certification requires the plaintiff to prove that the defendant knows (1) that it violated a

contractual obligation, and (2) that its compliance with that obligation was material to the

government's decision to pay." *Id.* Knowledge cannot be proven by pooling together the

knowledge of all of the defendants. *Id.* at 1275. In its complaint, the government alleges,

without support, that "Armstrong[] knowingly caused material violations of the sponsorship

agreements." Compl. In Intervention ¶ 4. Armstrong did not negotiate the sponsorship

agreements, sign them, indeed, he had never even seen them. The government objects that this

request requires "the United States to speculate about Armstrong's state of mind." If the

government has only speculation, and no evidence, that Armstrong saw, read, or understood the

agreements because no one at the Postal Service ever showed it to him or discussed it with him,

Armstrong is entitled to that testimony.

10

B.     **Sponsorship Benefits**

1.     **Topic 15:  All benefits to the USPS of the USPS PRO-CYCLING TEAM SPONSORSHIP.**

**Topic 17:  The revenue generated directly or indirectly by the USPS PRO-CYCLING TEAM SPONSORSHIP, including but not limited to revenue generated through advertising, merchandising, hospitality events, and contracts with new clients.**

**Topic 34:  Any harm to the USPS caused by negative publicity associated with ARMSTRONG.**

The government seeks to recover over $40 million the U.S. Postal Service paid to its cycling team pursuant to the sponsorship agreements—despite the fact that Armstrong was a single rider on the team in a peloton rife with doping.  But contemporaneous internal and external USPS documents that show that the sponsorship paid for itself many times over.

The Postal Service had three primary goals in sponsoring the cycling team: (1) generating positive public relations value and brand awareness; (2) generating revenue; and (3) leveraging retails sales.  Jacob Decl. Ex. A at MYERS00000271.  The Postal Service succeeded by each of those measures.  As to the first measure, USPS-commissioned studies conservatively valued the global exposure the USPS received from 2001 to 2004 at $138-147 million—more than four times the amount the government paid to sponsor the USPS team.

The government also came out ahead on the second measure.  The USPS "quantified [its] business-to-business sales increase due to cycling team activities and they more than cover[ed] the cost of [the] sponsorship."  Jacob Decl. Ex. B.  As a result of the sponsorship, The Postal Service landed new business with the Ford Motor Company, Staples, and Mountain Gear, among others.  "These relationships, and the revenue generated as a result, . . . returned much more than the cost of the cycling investment."  Jacob Decl. Ex. C.

The government's internal documents also suggest its retail sales of products associated with the cycling team yielded millions of dollars.  The government sold cycling team regalia at cycling events, on its internet site, and through its former retail store in the Mall of America in Bloomington, Minnesota.  In 2003 alone, the Postal Service collected $500,000 from retail sales.

11

948673

Jacob Decl. Ex. D.  Armstrong is entitled to confront the government with the overwhelming evidence that—contrary to the allegations in its complaint—it was not damaged, but in fact was enriched by its sponsorship of the U.S. Postal Service Cycling Team.

The government claims that it is improper to ask it to prepare a witness to testify about "the extent to which it has been damaged," arguing that Armstrong is only permitted to ask *its* *expert* about the government's purported damages.  Mot. at 16-17.  The government is incorrect. A party is entitled to a 30(b)(6) witness who is prepared to testify about the facts relating to and the basis for the opposing party's alleged damages.  *MP NexLevel,* 2012 U.S. Dist. LEXIS 86640, at *6.  "[E]xpert testimony is not a sufficient substitute for the testimony of a corporate representative." *Id.* at *8.  "Corporate witnesses under Rule 30(b)(6) are representatives of the organization and are charged with testifying on behalf of the organization about facts known or reasonably known." *Id.*  "Conversely, expert witnesses are not are not called upon to testify as to facts known to an organization, but are instead called upon to offer opinion based on facts provided." *Id.*  "Therefore, an expert witness is not suited to testify as to facts known to an organization and is not a substitute for the testimony of a Rule 30(b)(6) corporate representative." *Id.*

> 2. **Topic 16: All statements the USPS made regarding the value of the USPS PRO-CYCLING TEAM SPONSORSHIP, including but not limited to statements about any evaluations of, or benefits received from, the USPS PRO-CYCLING TEAM SPONSORSHIP.**

It is no surprise that the government does not wish to give testimony about the statements the Postal Service made regarding the value of the sponsorship.  Here are just a handful:

- "The U.S. Postal Service's sponsorship of the USPS Pro Cycling Team may be one of the most effective public relations ventures the Postal Service—and for that matter, any other global service organization—has ever undertaken." Jacob Decl. Ex. E.

- "No one in the business would deny that we have received exceptional bang-for-the-buck by sponsoring one of the world's most recognized athletes." *Id.* Ex. F.

- "[T]he value of the brand advertising we receive from the USPS Pro Cycling Team more than offsets the cost of the sponsorship." *Id.* Ex. G.

12

The government does not dispute that the inquiry is relevant, but rather again argues that Armstrong is not entitled to ask at deposition about the statements because they are contained in documents the government has produced. Not so. Armstrong is not required to rely solely on the government's document production. He is entitled to question a Rule 30(b)(6) witness. *See* Section A.2, *supra*, for the law debunking the government's argument.

> **3.    Topic 20:  Evaluations of the USPS PRO-CYCLING TEAM SPONSORSHIP, including but not limited to financial, media, or any other valuations of the USPS PRO-CYCLING TEAM.**
>
> > **Topic 23:  All consumer surveys or tracking studies performed or commissioned by the USPS between 1995 and the present.**

As explained in Section B.1, *supra*, the U.S. Postal Service performed a series of internal studies and commissioned a series of external valuations of the cycling sponsorship. Topic 20 seeks testimony about those studies. And to this day, the Postal Service continues to prepare internal studies that measure the value of its brand, which is the subject of Topic 23. The government objects to these topics as "overbroad," seeking irrelevant information, and "burdonsome [*sic*]." The government's objections are unsupported and meritless.

There can be no doubt the information sought is relevant. In 2002, the USPS commissioned FCB Sports Marketing to produce a "Sponsorship Evaluation" that quantified the value of the exposure the USPS received in 2001. The FCB report concluded that the value of the domestic exposure alone was $18,539,777—three times more than what the sponsorship cost. The firm also valued worldwide exposure "at a conservative $35-40MM"—at least six times more than the USPS paid. The USPS commissioned a subsequent report to determine the value of exposure from the 2002 Tour de France. This time, FCB reported that value of the domestic exposure was $19,296,677, and the global exposure was worth a conservative $39 to $42 million. The USPS's returns only improved in 2003 and 2004. A 2004 evaluation reported that the exposure in 2003 was worth $31.2 million, and in 2004, the exposure from the Tour de France alone was worth $34.6 million. The government's overbreadth and burden objections fail

because a party seeking to avoid a deposition based on a burdensomeness objection must submit "concrete information demonstrating the cost of responding to [the] deposition notice," *Cont'l Transfert*, 2015 U.S. Dist. LEXIS 55199, at \*27-\*29, which the government has wholly failed to do. Even where responding to the deposition notice is "time-consuming and expensive," it will not be quashed where it is not disproportionate to the value to the deposing party in litigating its action. *Id.*

### 4. Topic 22: COMMUNICATIONS with the USPS Board of Governors RELATING TO the USPS PRO CYCLING TEAM SPONSORSHIP or ARMSTRONG.

Topic 22 is specifically limited to communications with the Board of Governors of the U.S. Postal Service relating to the cycling team sponsorship or Lance Armstrong. The government objects to Topic 22, claiming that it has no idea what communications Armstrong is seeking. But—in the very next breath—the government claims that these same communications can be found in its own document production. The government does not want to produce a witness on this topic because the highest levels of management at the U.S. Postal Service were aware of and recognized the immense financial rewards of sponsoring the cycling team. Gail Sonnenberg, the U.S. Postal Service Vice President of Sales explained to the U.S. Board of Governors that the Postal Service received "tremendous public relations value . . . following Lance Armstrong's" victories. Jacob Decl. Ex. A at MYERS00000277. Before Armstrong had even won his second Tour de France victory, she told the Postal Service Board of Governors that "the Postal Service hit the jackpot, raking in more positive press in the past few weeks than it could ever buy directly." *Id.* The Board understood that "the Postal Service . . . received incalculable positive publicity from its sponsorship of the team." *Id.*

14

### C.      Government Knowledge of Doping

1.      **Topic 24:  The USPS' or YOUR knowledge of or response to the use of performance enhancing substances or allegations of the use of performance enhancing substances in professional cycling prior to 2004.**

While the government was making extravagant returns off of the cycling team, doping was raging in the peloton.  The government's knowledge of doping is relevant to, *inter alia*, Armstrong's statute of limitations and government knowledge defenses.  *See United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 170 (D.D.C. 2007) (statute of limitations); *Herbert v. Nat'l Acad. of Scis.*, 1992 U.S. Dist. LEXIS 14063, *20-*21 (D.D.C. Sept. 15, 1992) (government knowledge).  The government's knowledge of doping, while deciding to renew the sponsorship agreement for another four years, is also probative of materiality.  If the government knew about doping and did nothing, that is relevant to whether in fact the government considered the use of performance enhancing substances to be a material term of the contract.  *See Herbert*, 1992 U.S. Dist. LEXIS 14063, at *20-*21.  The government does not dispute that Postal Service knowledge of doping is relevant to the government knowledge defense, but argues that it is irrelevant to Armstrong's statute of limitations defense.  The government is wrong.  The statute of limitations began to run when "the official of the United States charged with responsibility to act in the circumstances" learned of the doping.  31 U.S.C. § 3731(b)(2).  Where a federal agency like the U.S. Postal Service has knowledge of the fraud, the agency's knowledge is imputed to the official of the United States charged with responsibility to act.  *See United States v. Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y. 1992); *accord United States v. Intrados/Int'l Mgmt. Group*, 265 F. Supp. 2d 1, 12 (D.D.C. 2002).

2.      **Topic 26:  The USPS' attendance at any professional cycling event in which the USPS cycling team participated.**

The government seeks to quash Topic 26 because U.S. Postal Service employees who attended professional cycling events were exposed to allegations of flagrant doping in the peloton.  In just one example, Margot Myers, the former Director of Communications at the U.S.

Postal Service, was present when the Festina affair broke.  The affair began when French police found several hundred capsules of anabolic steroids, bottles of erythropoietin, syringes, and other doping products in the car of Willy Voet, the soigneur for the Festina Team.  Myers was present at the Tour when the scandal broke, watched the entire peloton refuse to ride in protest of the police raids, and spoke with Thomas Weisel about his view that riders should be permitted to use performance enhancing substances.

The government argues that it does not have to furnish a witness because it produced documents relating to the attendance of U.S. Postal Service personnel at cycling events.  In addition to being legally baseless, the argument is also misleading.  While the Court did in fact order the government to produce calendar entries showing the attendance of U.S. Postal Service personnel at races, the government claimed to be unable to find any such entries.

**D.     Government Communications with Third Parties**

       **1.     Topic 27:  The IDENTITY of all PERSONS who produced DOCUMENTS to YOU in response to any subpoena, civil investigative demand, voluntary request for documents or any other request that YOU issued in connection with this case or the INVESTIGATION.**

       **Topic 28: The IDENTITY of all PERSONS questioned or interviewed in connection with this case or the INVESTIGATION.**

The government objects to Topics 27-28, claiming that it "has given all the information in its possession concerning the persons who provided documents or who were interviewed in connection with this case."  Mot. 19.  Even if that were true, it would not foreclose Armstrong's deposition on that topic.  *See* Section A.2, *supra* (citing authorities).  But it is not true.[1]

_____

[1] The government quotes *EEOC v. Caterpillar, Inc.* for the proposition that "a law enforcement agency's pre-suit investigation 'is not a proper subject of discovery.'"  Mot. 19 (quoting 409 F.3d 831, 833 (7th Cir. 2005)).  That case neither contains the quote the government claims it does, nor supports the proposition the government attributes to it.  "[T]he implied limit of discoverability in any discovery device is FED. R. CIV. P. 26(b)(1)."  *Alexander*, 186 F.R.D. at 140.  The government does not—and cannot—actually dispute the relevance of the information Armstrong seeks.  During its years' long civil and criminal investigations, the government obtained, *inter alia*, witness statements, depositions transcripts, and grand jury testimony directly relating to the allegations in this case.  And the Court has already ruled that information the

16

Armstrong issued interrogatories to the government asking it to identify the third parties whom it interviewed or from whom it received documents.  The government gave evasive answers to those interrogatories, refusing to identify the third parties who voluntarily produced documents to the government and to identify individuals who provided information to the government over the telephone or internet.  *See* Jacob Decl. Ex. H at 10 (limiting the response to Interrogatory No. 4 to documents produced "in response to subpoenas."); *see also id.* at 8 (limiting response to Interrogatory No. 3 to "formal, in-person interviews").  Armstrong has met and conferred with the government to no avail.  Over eight months ago, the government promised to supplement the interrogatory response with a letter listing all the third-parties who voluntarily produced documents to the government.  Jacob Decl. Ex. I at 21.  But—despite numerous subsequent follow up requests by telephone and email—the government has never done so, and instead rests upon its boilerplate objections.  The identity of third parties who voluntarily cooperated with the government without the need for any formal process is obviously crucial to Armstrong given the rapidly approaching close of discovery.  Since the government will not provide this information via interrogatory, Armstrong seeks it via 30(b)(6) deposition.

### 2. Topic 29:  YOUR COMMUNICATIONS with USADA in connection with this case or the INVESTIGATION.

The government's document production reveals that it worked hand in glove with the U.S. Anti-Doping Agency ("USADA"), conducting joint interviews, seeking USADA's assistance to serve process on defendants in this case, and sharing information that forms the basis of the plaintiffs' complaints.  *See, e.g.*, Jacob Decl. Ex. J.  Those communications also reveal that the government and USADA coordinated not just the testimony they would obtain from riders, ███████████████████████████████████████████████████

███████████████  For instance, both the government and the U.S. Anti-Doping Agency

government obtained during its investigations is discoverable.  *See, e.g.*, Opinion and Order 3-13, Sept. 30, 2014, ECF. No 227.

948673

obtained a joint statement from David Zabriskie, a witness listed in the government's initial

disclosures.



Jacob Decl. Ex. K.  Despite the obvious bias resulting from the

government's promise of

, or with any other cyclist.  Armstrong is entitled to

discover what testimony USADA and the government colluded to obtain from the witnesses, and

what inducements they gave to obtain that testimony.  *See United States v. Leonard*, 494 F.2d

955, 961 (D.C. Cir. 1974) ("Like the paid informer who has a pecuniary interest in testifying, or

an accomplice who has a penal interest in shifting guilt to his cohort, a witness who has been

granted immunity has an interest in incriminating another to save himself.").

The government's only objection to this topic is its contention that it has "produced both

the documents that were supplied by third parties and [its] communications with USADA."  Mot.

19.  As explained above, the government's production is missing crucial information, some of

which may have been communicated orally.  Regardless, even if the government's production

were complete, Armstrong would still be entitled to a deposition to authenticate and ask about

the documents in the government's production.  *See* Section A.2, *supra* (citing authorities).

> **3.** **Topic 30:  The IDENTITY of all PERSONS who discussed or
> disclosed the existence of this action or the Complaint with a reporter,
> member of the press, or third party, prior to February 22, 2013, and
> the contents of those discussions or disclosures.**

Less than three months after Floyd Landis filed this action, and while it remained under

seal, at least two persons leaked the complaint's existence, its subject matter, the identity of the

parties, and the underlying cause of action to The Wall Street Journal, New York Times, The

Washington Post, and the N.Y. Daily News.  *See, e.g.*, Jacob Decl. Ex. L.  On January 17, 2013,

the relator's complaint was leaked in its entirely to the New York Daily News.  *See* Jacob Decl.

18

948673

Ex. M.  The Daily News reported that the suit remained under seal and then proceeded to quote liberally from the complaint.  *Id.*  None of the articles identify the source of the leaks.

The government objects to discovery relating to leak of this action to various national media outlets while it remained under seal as "irrelevant."  Mot. 19.  Not only is the identity of the leaker relevant, it may be case dispositive.  A majority of Courts have held that dismissal of the relator's complaint is a remedy for violation of the sealing requirements of section 3730(b).  *See, e.g.*, *United States ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287, 296 (6th Cir. 2010); *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 996 (2d Cir. 1995); *cf. United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 243 (9th Cir. 1995).  If the relator leaked information about this lawsuit or the complaint itself while the case was under seal, he is subject to mandatory dismissal.  *See Summers*, 623 F.3d at 296 ("a violation of the sealing provisions applicable to *qui tam* relators under the False Claims Act precludes recovery by the relator."); *Pilon*, 60 F.3d at 996; *see also United States ex rel. West v. Lakeshore Spine and Pain, P.C.*, No. 11-1051, 2012 U.S. Dist. LEXIS 125350, at *2-3 (W.D. Mich. Sept. 5, 2012) (issuing an order to show cause why the relator should not be dismissed).  If a government attorney leaked during the under seal period—as the government has now confirmed—determining the remedy would be an issue of first impression.

The government has been less than forthcoming with Armstrong, and indeed the Court, about the source of the leaks.  During the October 24, 2014 teleconference with the Court, the government represented that it had no knowledge that "the relator or any government employee leaked the existence of this action to the press."  Jacob Decl. Ex. N 39.  But after the Court ordered the government to respond to Armstrong's interrogatory seeking the source of the leak, the government disclosed a leak by "Assistant United States Attorney Mercedeh Momeni . . . in response to a statement by a third party."  Jacob Decl. Ex. H Resp. No 2.  Armstrong served a follow-up set of interrogatories seeking further information about Momeni's leak, but the government refused to answer them.  Jacob Decl. Ex. O.  Given the relevance of the leaks, and

19

the remedies they implicate, Armstrong seeks to ask an informed government witness about them.

    **4.**     **Topic 31:  LANDIS' deferred prosecution agreement with YOU.**

         **Topic 32:  The allegations made against LANDIS and the underlying facts RELATED TO *United States of America v. Floyd Landis, United States District Court*, Southern District of California, Case No. 12-3481.**

The government does not dispute the relevance of Topics 31-32, which seek testimony regarding the deferred prosecution agreement with the relator and his underlying fraud.  But the government insists that Armstrong should obtain such discovery from the relator, instead of the government.  "[M]erely because [discovery] may be available from another source is not a proper objection."  *Cent. Transp. Int'l, Inc. v. Global Advantage Distrib.*, No. 2:06-cv-401, 2007 U.S. Dist. LEXIS 81664, *7 (M.D. Fla. Sept. 11, 2007).  The District Court for the District of Columbia has not precluded a party "from asking the 30(b)(6) witnesses about certain topics because those topics were the subject of previous discovery requests" to another.  *Tri-State Hosp.*, 226 F.R.D. at 126.  The government also objects that Armstrong is seeking the deposition of an attorney.  Not true.  Armstrong is seeking the deposition of the United States, which is free to designate "one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."  Fed. R. Civ. Proc. 30(b)(6).  If the government chooses to designate an attorney as its 30(b)(6) witness, there is nothing impermissible about proceeding to depose that witness.  *See Sigmund*, 236 F.R.D. at 47 (permitting 30(b)(6) deposition of an attorney).

    **E.**     **Persons Knowledgeable**

       **1.**     **Topic 33:  The IDENTITY of YOUR current officers, directors, managing agents, employees, or agents who are knowledgeable about the foregoing topics, including the PERSON(S) most knowledgeable.**

"[T]he identity and location of persons who know of any discoverable matter" is unquestionably relevant.  Fed. R. Civ. Proc. 26(b)(1).  The government claims that identifying

the persons knowledgeable about Armstrong's topics is burdensome.  The government presents

no facts in support of its baseless objection.  Indeed, in response to Armstrong's 30(b)(6) notice,

the government has a duty to identify persons "knowledgeable on the subject matter identified as

the area of inquiry." *Alexander*, 186 F.R.D. at 141.  Moreover, it is particularly crucial that

Armstrong be able to inquire about those persons who are knowledgeable where the deponent

claims not to have knowledge or has not performed a sufficient investigation. *See id.* ("[T]he

ultimate underlying purposes of Rule 30(b)(6) [is to] prevent[] serial depositions of various

witnesses without knowledge within an organization and eliminating 'bandying,' which is the

name given to the practice in which people are deposed in turn but each disclaims knowledge of

facts that are clearly known to persons in the organization and thereby to the organization

itself.").

## F.      Time Limits

Prior to filing its motion for a protective order, the government never raised the topic of

deposition time with Armstrong. *See* Civ. Local Rule 7(m) ("Before filing any nondispositive

motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a

good-faith effort to determine whether there is any opposition to the relief sought and, if there is,

to narrow the areas of disagreement.").  Now, in its motion, the government proposes an

unworkable limit of eleven hours for Armstrong's 30(b)(6) deposition of the government.  The

government has provided no basis to depart from the Federal Rules of Civil Procedure, which

provide that Armstrong is entitled to a seven-hour deposition of each person the government

designates to respond to his 30(b)(6) notice. *See* Fed. R. Civ. Proc. 30(d)(1) ("Unless otherwise

stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."); Fed. R. Civ.

Proc. 30 advisory committee's note on 2000 amendment ("For purposes of this durational limit,

the deposition of each person designated under Rule 30(b)(6) should be considered a separate

deposition.").

21

The government provides a single reason for curtailing Armstrong's deposition time: its desire to avoid "the burden of deposition preparation" and "the burden of the deposition itself." These so-called burdens are not cognizable under Federal Rule of Civil Procedure 26. The government has an affirmative "duty to prepare the witness to testify on matters not only known by the deponent, but those that should be reasonably known by the designating party." *Alexander v. FBI*, 186 F.R.D. at 141. The government also has a "duty to designate more than one deponent if it would be necessary to do so in order to respond to the relevant areas of inquiry that are specified with reasonable particularity by the plaintiffs." *Id.* The government has not provided a shred of evidence that preparing 30(b)(6) witnesses on Armstrong's topics would any more burdensome than any other 30(b)(6) deposition. *See Cont'l Transfert*, 2015 U.S. Dist. LEXIS 55199, at *27-*29 ("[T]he party seeking a protective order 'bears the burden of proving its necessity,' must 'articulate specific facts showing clearly defined and serious injury resulting from the discovery sought . . . and cannot rely on merely conclusory statements'"). The burdens of which the government complains are actually its core duties to prepare competent and knowledgeable witnesses under Rule 30.

Moreover, the impracticality of the government's proposed limitation becomes immediately apparent when one considers its possible consequences in this action. The government has not yet informed Armstrong who it intends to designate to testify in response to Armstrong's 30(b)(6) notice, on what topics each witness will be designated, and when each is available, except to disclose that:

- Special Agent Michael Pugliese of the U.S. Postal Service Office of the Inspector General will testify about a portion of Topic 1;

- Brett Elliott of the U.S. Department of Justice will testify about other portions of Topic 1;

- Matthew Connolly of the Postal Service will testify about a portion of Topic 2; and

- Bill Weston, a Postal Service contractor, will testify about portions of Topics 1-3.

If Armstrong spends a mere 2.75 hours each questioning only those witnesses the government has already designated, he will have consumed the entirety of the government's proposed 30(b)(6) deposition time.   If the government continues to designate at a rate of one witness per topic, Armstrong will be entitled to thirty-three minutes per witness.   The government does not appear to have considered the consequences of its proposed limitation before submitting it to the Court, perhaps because it never sought to meet and confer with Armstrong.   If the government's proposal is indeed premeditated, it is nothing more than an attempt to foreclose Armstrong from seeking relevant and highly material testimony by manipulating time limits.   *See* 8A Charles Allen Wright *et al.*, *Federal Practice and Procedure* § 2013 (3d ed. 2010) (explaining that the purpose of counting each corporate deposition separately is to prevent the "corporation [from], by designating many representatives, frustrat[ing] efforts to question them thoroughly.").

In its motion, the government also proposes that Armstrong's deposition be *expanded* to eleven hours.   Again, the government's motion was the very first time Armstrong had ever heard this proposal.   The government provides a single reason to enlarge the time to depose Armstrong: "fairness."   There is nothing "fair" about expanding the time to depose Armstrong, an individual defendant, while radically curtailing the time to depose the federal government, which chose to use the resources of eight separate federal agencies to investigate Armstrong.   Federal Rule of Civil Procedure 30 sets forth the circumstances that justify enlarging the time to take a deposition.   *See* Fed. R. Civ. Proc. 30 advisory committee's note on 2000 amendment.   The government has not even attempted to show that those factors are present here.   The government has given no cognizable reason to enlarge the time to take Armstrong's deposition because there is none.

## IV.   CONCLUSION

For the foregoing reasons, Armstrong respectfully requests that the Court deny the government's motion for a protective order.

23

948673

Respectfully submitted,

KEKER & VAN NEST LLP

Dated:  May 18, 2015

By:  */s/ Sharif E. Jacob*
_____

JOHN W. KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
TIA A. SHERRINGHAM (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
PAUL HASTINGS LLP
875 15TH St., NW
Washington, DC  20037
Telephone: (202) 551-1966
Facsimile: (202) 551-0466

Attorneys for Defendant
LANCE ARMSTRONG

24

948673