IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES *ex rel.* FLOYD LANDIS, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 10-cv-00976 (CRC) |
| v. | ) ) | |
| TAILWIND SPORTS CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**RELATOR'S RESPONSE TO ARMSTRONG SUMMARY OF DISCOVERY DISPUTE RE REQUEST FOR PRODUCTION TO RELATOR**

**Evidence re *In pari delicto*/unclean hands defenses** – Without reference to any specific document requests, Armstrong argues that he is entitled to broad categories of documents related to the criminal case against Landis, the "Floyd Fairness Fund," the United States Anti-Doping Agency's ("USADA's") investigation of Landis, the stripping of Landis' Tour de France title, and Landis' communications with USADA or the United States relating to any proceeding against him. ECF 320 at 2. Armstrong first suggests the foregoing information is relevant to Landis' "cooperation with government and anti-doping agencies." *Id.* But all of the documents sought involve events arising from Landis' test for steroids in connection with the 2006 Tour de France and the resulting aftermath, none of which involved "cooperation" with the United States or USADA, with the conceivable exception of the Deferred Prosecution Agreement ("DPA"), which defendants already have. *See* ECF No. 225-15 (DPA attached as exhibit to Armstrong brief). To the extent that Armstrong seeks production of any cooperation agreement between relator and USADA, relator has already stated in his discovery responses that he would produce any such agreement, if it existed.

Armstrong alternatively argues that the documents he is seeking will provide evidence of relator's "false denials of doping." *Id.* But that point is not contested, is substantively irrelevant, and has already been spelled out in painstaking detail in the DPA signed by relator. The documents are substantively irrelevant, for the Court struck defendants' affirmative defenses based on alleged illegal activity of the relator, including their section 3730(d)(3) defense based on the DPA and activities related to the Floyd Fairness Fund. *See* ECF No. 289 at 5-6. The defendants also withdrew their "unclean hands" and *in pari delicto* defenses, following a review of the law outlined in plaintiffs' joint motion to strike those defenses. ECF 213 at 27-31; ECF 225 at n. 1. Accordingly, the documents Armstrong seeks are not "relevant to any party's claim or defense" in this case, Fed. R. Civ. Proc. 26(a), and extrinsic evidence regarding those events, relative to the relator's character for truthfulness, would be inadmissible. FRE 608(b) ("Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove

specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness").

In all events, the DPA itself tells the entire story of Mr. Landis' conduct in connection with USADA's case against him, including the misrepresentations he made in the course of his defense to doping charges.  *See* ECF No. 225-15 (copy of DPA). Compelling relator to dig up records relating to these past proceedings would thus serve little purpose other than to create a serious additional burden on the limited resources available to relator Landis to litigate this case.  *See Rivera v. Goord*, 9:05-CV-1379 (GLS) (GHL) (N.D.N.Y.  Mar. 21, 2007) (motion to compel denied where documents, investigative reports and hearing tapes related to defendant hearing officer's conduct in another case involving plaintiff, or in a case involving a different inmate, were of limited relevancy and could lead to a "trial within a trial").

**Communications with Press** - In the parties' telephone conference with the Court, Armstrong requested permission to brief only the one issue discussed above. However, he has unilaterally added an argument in his moving papers that he should be entitled to discovery of relator's communications with the press, as they "may reveal the identity of the party who leaked the existence of the lawsuit in violation of the Court's sealing order," and because "Armstrong is entitled to dismissal of this action if the leaking party was the relator." ECF 320 at 3.  Armstrong, however, made this exact same argument in his opposition to the Plaintiffs' Joint Motion to Strike.[1]  As the Government pointed out jointly with the relator in the motion to strike, "even if a relator's failure to satisfy the FCA's procedural requirements could in certain cases justify the dismissal of the relator's complaint, this fact can have little significance here, where the United States has already intervened." ECF 213 at 24.  The Court agreed, ruling as follows:

> The Court previously denied Armstrong's motion to compel regarding public disclosure "to the extent it [sought] disclosure beyond which the Government has already agreed," noting that "'[t]he rationale behind sealing FCA cases is to allow

---

[1]  *See* ECF 225 at 26 (arguing that "[i]f discovery reveals Landis to be the source of the leak, he is subject to mandatory dismissal.").

>the United States ample time to investigate the allegations,' not to provide protection to defendants." Op. and Order Sept. 30, 2014 at 14–15 (quoting *U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 67 (D.D.C. 2011)). As a result, striking this defense at this stage of the litigation is unlikely to generate significant additional efficiencies."

ECF 289 at 10.  Notwithstanding these clear repeated rulings by the Court on this topic, Armstrong is attempting yet again to pursue the same kind of wasteful discovery previously rejected by the Court.  The conclusion this time should be no different.[2]

**Timing of Production –** Armstrong's description of relator's position regarding the timing of document production is not remotely consistent with the facts.  Armstrong claims relator "promised" he would produce responsive documents within ten days of Armstrong's February 26, 2015 letter, then "changed position, refusing to produce all but a few of the categories he had agreed to produce."  In fact, counsel for Armstrong sent an email to counsel for Landis on February 27, 2015, asking that Landis begin producing some documents.  ECF 320-3 at 2.  Counsel for Landis promptly responded that "we will get a batch of documents out to you within about ten days . . .," *id.,* and that is precisely what occurred.  At no point did relator promise to produce some categories of documents then reverse course.  Relator has been meeting and conferring at length with Armstrong regarding the parties' respective document requests, and with the clarity arising from that process, along with this Court's rulings, relator will be in a position to produce additional documents shortly.  Meanwhile, Armstrong has still to provide a single document to relator, despite repeated requests that he do so.[3]  Relator would thus respectfully suggest that if the Court sees fit to issue an order on the subject of when documents should be produced, the order should be equally applicable to both parties.

/

---

[2]   Notably, as pointed out in the United States' and Relator's Joint Reply on the Motion to Strike, "the first public reports about the qui tam matter appeared only eleven days after the Government informed Armstrong and other defendants about the existence of the qui tam action."  *See* ECF 233, citing ECF No. 205.

[3]   Armstrong refers to documents he has produced to the United States, but he has declined to provide them also to relator.

Dated: May 19, 2015	Respectfully submitted,

_____/s/_____
Paul D. Scott
pdscott@lopds.com
California State Bar No. 145975
Admitted *Pro Hac Vice*

_____/s/_____
Lani Anne Remick
laremick@lopds.com
California State Bar No. 189889
U.S.D.C. No. PA0045
Jon L. Praed
U.S.D.C. No. 450764
D.C. Bar No. 51665
LAW OFFICES OF PAUL D. SCOTT, P.C.
Pier 9, Suite 100
San Francisco, California 94111
Tel: (415) 981-1212
Fax: (415) 981-1215

Attorneys for Relator Floyd Landis