**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES ex rel. LANDIS**, |
| Plaintiffs, |
| v. |
| **TAILWIND SPORTS CORP., et al.**, |
| Defendants. |

Case No. 1:10-cv-00976 (CRC)

**ORDER**

### I.    Background

Relator Floyd Landis filed this *qui tam* action against Lance Armstrong, his former

teammate on the United States Postal Service ("USPS") professional cycling team, and associated

defendants in June 2010.  The Government intervened in February 2013.  The case is currently in

discovery.  Armstrong seeks deposition testimony from one or more Government representatives

under Federal Rule of Civil Procedure 30(b)(6) on 34 separate topics, largely concerning the

sponsorship agreements between USPS and the cycling team and USPS's knowledge of doping by

cycling team members.  The Government has moved for a protective order, arguing that many of

the topics are overbroad, inappropriate, or irrelevant.  For the reasons explained below, the Court

will grant in part and deny in part the Government's motion.

### II.    Analysis

The Court will address each topic addressed in the Government's motion in turn.

#### A.    Scheduling Fact Witness Depositions Before Rule 30(b)(6) Depositions

As a preliminary matter, the Government has requested that fact witnesses—primarily

current and former USPS employees—testify prior to Rule 30(b)(6) witnesses so that the 30(b)(6)

witnesses can use the fact witnesses' deposition transcripts to prepare.  The Court enjoys broad

discretion to sequence discovery "for the parties' and witnesses' convenience and in the interests of justice." Fed. R. Civ. P. 26(d)(2).  The Court will order that the Rule 30(b)(6) witnesses be deposed after the fact witnesses as it is the most efficient and equitable way to enable Armstrong to obtain the information to which he is entitled while streamlining the Government's preparations for the numerous topics Armstrong has designated.  If necessary, the Court will grant a brief extension of discovery to accommodate this schedule.

> B.      Topic 8: Provisions of Sponsorship Agreements

The Government contends that Topic 8—which requests testimony regarding the provisions of the sponsorship agreements between the USPS and the cycling team—is overbroad and that the Government's interpretation of the contracts is a legal contention rather than a proper discovery topic.  But a request for "a party's understanding of a document's meaning or the intent of the parties" is permissible even if the "meaning of a document or the intent of the parties as to a contractual provision is the issue ultimately to be decided." Sigmund v. Starwood Urban Retail VI, LLC, 236 F.R.D. 43, 46 (D.D.C. 2006) (quoting Booth Oil Site Admin. Grp. V. Safety-Kleen Corp., 194 F.R.D. 76, 80 (W.D.N.Y. 2000)).  Accordingly, USPS's interpretation of the pertinent provisions of the sponsorship agreements, its intent with respect to those provisions, and the facts surrounding the development, negotiation, and execution of the agreements more generally are all proper subjects of a 30(b)(6) deposition.  The Court will therefore deny the Government's motion and allow Armstrong to inquire into those areas.

> C.      Topics 10 and 11: Identity of Persons Responsible for the Sponsorship
>
> Agreements and Claims and Payments Made Under the Agreements

The Government argues that it has already produced documents responsive to Topics 10 and 11—concerning the identity of persons with knowledge of the drafting and administration of the sponsorship agreements—and any new information could be more efficiently obtained through less

burdensome means, such as written discovery.  Yet there is no general prohibition on deposition topics that concern information "already received . . . via other discovery devices."  Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 125–26 (D.D.C. 2005).  Here, the identity of the relevant individuals as well as the identity of all claims and payments made under the sponsorship agreements relate directly to Armstrong's involvement in submitting claims under the agreements. Consequently, Armstrong is entitled to test the Government's allegations and prior written discovery through a Rule 30(b)(6) deposition.  The Court will therefore deny the Government's motion as to Topics 10 and 11.

D.      Topic 12: Materiality of Anti-Doping Provisions

The Government argues that Topic 12—which seeks testimony regarding the materiality of the anti-doping provisions in the sponsorship agreements to the USPS's payments—will stray inappropriately into its contentions or legal theories.  However, "questions requiring the application of law to fact would be appropriate questions at a Rule 30(b)(6) deposition," Sigmund, 236 F.R.D. at 46, and materiality is a required and strictly enforced element of liability under the False Claims Act ("FCA"), United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1270–71 (D.C. Cir. 2010) (calling for "strict enforcement of the Act's materiality and scienter requirements" and noting that liability requires the plaintiff to prove that "compliance with the legal requirement in question is material to the government's decision to pay").  Armstrong is therefore entitled to question the Government's 30(b)(6) representative regarding the materiality of the anti-doping provisions to USPS's decision to make payments under the agreements.   As a result, the Court will deny the Government's motion as to Topic 12.

E.      Topic 13: Statements by Any Person That Induced USPS to Enter Into the

Sponsorship Agreements

The Government contends that Topic 13—which seeks all statements that induced USPS to

enter into the sponsorship agreements with the cycling team—violates the "reasonable particularity"

requirement of Rule 30(b)(6).  In paragraphs 62–73 of its complaint, the Government alleges that

USPS relied on Armstrong's false denials of doping as well as certain other misstatements to USPS

and others in deciding to enter and renew the sponsorship agreements.  Armstrong is entitled to ask

the Government to identify and to inquire as to these representations and the effect they had on

USPS's decision to enter into and make payments under the sponsorship agreements.  The Court

will therefore grant the motion in part and deny it in part as to Topic 13.  Armstrong may inquire

about statements relied on by USPS employees with responsibility for entering into, overseeing, or

approving payments under the sponsorship agreements.

F.      Topic 14: Armstrong's Knowledge of the Sponsorship Agreements

The Government argues that Topic 14—which seeks testimony regarding the Government's

characterization of Armstrong's knowledge of the sponsorship agreements—is improper both

because it seeks information supporting the Government's contentions regarding Armstrong's state

of mind and asks the Government to speculate about it.  The Government correctly notes that

depositions regarding a party's contentions can be inappropriate when the information would be

"filtered through an attorney's mental impressions."  EEOC v. Source One Staffing, Inc., No. 11 C

6754, 2013 WL 25033, at *3 (N.D. Ill. Jan. 2, 2013).  Moreover, Armstrong has not specified what

additional information he would obtain from testimony on this topic beyond the Government's

assessment of his own state of mind.  Accordingly, the Court will grant the Government's motion as

to Topic 14.

G.      Topics 15, 17, and 34: Benefits to the USPS Generated by the Sponsorship

and Harm Resulting from Armstrong's Doping

The Government contends that Topics 15, 17, and 34—which seek information regarding

the benefits, revenue, and negative publicity, respectively, to USPS as a result of the sponsorship

agreements—are too vague, unreasonably cumulative, and improper because they concern the

Government's theory of damages, which is a matter for expert testimony.  But there is no

prohibition on testimony regarding the factual underpinnings of an opposing party's alleged

damages and such testimony does not have to come from an expert witness.  See MP NexLevel,

LLC v. Codale Elec. Supply, Inc., No. 02:08-cv-727, 2012 U.S. Dist. LEXIS 86640, at *8–10 (D.

Utah June 20, 2012) (citing Fed R. Civ. P. 37(d)(2)) (holding that "expert testimony is not a

sufficient substitute for the testimony of a corporate representative . . . prepared to discuss the facts

underlying [plaintiff's] allegations of damages").  And the facts surrounding the benefits and value

of the sponsorship agreements are relevant to this case.  Accordingly, the Court will deny the

motion with respect to Topic 34 and grant the motion in part and deny it in part as to Topics 15 and

17: Armstrong may seek testimony regarding the Postal Service's assessment and tracking of the

economic benefits and harms that resulted from the sponsorship agreements, but may not ask the

Government's 30(b)(6) witnesses about the Government's theory and calculation of damages in this

litigation.

H.      Topics 16 and 22: All Communications or All Statements

The Government contends that Topics 16 and 22—which seek testimony on all statements

concerning the value of the sponsorship (Topic 16) and all communications with the USPS Board of

Governors relating to the cycling team sponsorship or Armstrong (Topic 22)—are overbroad.

Several courts have found analogous requests for *all* communications or statements to be too broad.

See Krieger v. Fadely, 199 F.R.D. 10, 13 (D.D.C. 2001) (holding that a request for "all

communications" was "fatally overbroad"); <u>Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.</u>,

No. 07-cv-15324, 2010 WL 4901181, at \*3 (E.D. Mich. Nov. 24, 2010) (denying plaintiff's request

for deposition testimony regarding "all communications" relating to an issue in the case because the

"burden of this far-reaching topic (all communications) far outweighs its likely benefit."). In his

opposition, however, Armstrong has identified several specific communications or statements, <u>see</u>

Jacob Decl. Exs. A, E–G, about which he is seeking testimony. The Court will therefore deny the

motion as to Topics 16 and 22 provided that the deposition covers only these communications and

statements and/or others that Armstrong specifically identifies in advance.

I.       <u>Topics 20 and 23: Evaluations of the Sponsorship and Consumer Surveys and
Studies Performed by the USPS Between 1995 and Present</u>

The Government objects to Topics 20 and 23—which seek evaluations of the cycling team

sponsorship and all USPS consumer surveys and studies since 1995—as being overbroad. While

Topic 20 is permissible for the same reasons as Topics 15 and 17, Armstrong has not established

how *all* consumer surveys and studies on the USPS brand are potentially relevant to the case.

Accordingly, the Court will deny the motion as to Topic 20 and grant the motion in part and deny it

in part as to Topic 23: Armstrong may seek information regarding USPS surveys since 1995 only to

the extent they relate to the sponsorship agreements. As with Topics 15 and 17, he may not ask the

Government's 30(b)(6) witnesses about the Government's theory or calculation of damages in this

litigation.

J.       <u>Topic 24: USPS's Knowledge of Pre-2004 Doping Allegations</u>

The Government argues that Topic 24—which concerns the USPS's knowledge of doping

allegations prior to 2004—is overbroad, and notes that Armstrong has already noticed the

depositions of the former USPS officials responsible for administering the agreements. While

Armstrong's depositions of these officials may diminish his need for additional testimony from the

Government's 30(b)(6) witnesses on this topic, it is nonetheless permissible because USPS's

knowledge about past allegations is relevant to establishing materiality.  See Sci. Applications Int'l

Corp., 626 F.3d at 1269 (noting that the Government can establish materiality "through testimony

demonstrating that both parties to the contract understood that payment was conditional on

compliance with the requirement at issue").  The Court will therefore grant the motion in part and

deny it in part as to Topic 24: Armstrong shall limit his questioning to the knowledge of USPS

employees responsible for or involved with the sponsorship agreements.

K.      Topic 26: USPS's Attendance at Cycling Team Events

The Government contends that Topic 26—which seeks testimony on the attendance of

USPS employees at cycling team events—is cumulative and overbroad because (1) the Government

has already produced documents relating to travel schedules of USPS employees responsible for the

agreements and (2) Armstrong has no legitimate interest in USPS employees' travel itineraries or

receipts.  Because the presence of these employees would be relevant to Armstrong's Government

knowledge defense, the Court will deny the Government's motion as to Topic 26, but Armstrong

should limit inquiries on this topic to USPS employees who were involved with the sponsorship

agreements.

L.      Topics 27 and 28: All Persons Who Produced Documents or Were
        Interviewed as Part of the Case

The Government argues that Topics 27 and 28—which seek testimony on the identity of all

persons who produced documents or were interviewed as part of the case—improperly strays into

the Government's pre-suit investigation.  See Source One Staffing, Inc., 2013 WL 25033, at *3

(holding that the details of a law enforcement agency's pre-suit investigation were "not a proper

subject of discovery").  The Court agrees.  Armstrong has not explained how such testimony is

necessary, particularly in light of the information already produced regarding individuals who

produced documents or who were interviewed in connection with the case.  The Court will

therefore grant the Government's motion as to Topics 27 and 28.

> M.       Topic 30: Persons Who Disclosed Relator's Complaint While It Was Still
>
> Under Seal

The Government argues that Topic 30—which seeks information regarding persons who

disclosed the existence of Relator's *qui tam* complaint while it was still under seal—is inappropriate

because the sealing provisions of the FCA are intended to benefit the Government, not defendants.

Armstrong responds by insisting that this information is relevant because violation of the sealing

requirements would mandate dismissal.  But the Government is correct that the purpose of the

FCA's confidentiality provisions is "to give the government an opportunity to decide whether to

intervene in an action before the defendant or the public is made aware of the *qui tam* allegations."

United States ex rel. Kusner v. Osteopathic Medical Center of Philadelphia, No. CIV. A. 88-9753,

1996 WL 287259, at *5 (E.D. Pa. May 28, 1996).  Violation of the confidentiality provisions by the

Relator would not mandate dismissal when the Government has already decided whether to

intervene.  See id.; see also United States ex rel. Milam v. Regents of the University of California,

912 F. Supp. 868, 889-90 (D. Md. 1995) (holding that relator's public filing of an amended *qui tam*

complaint did not require dismissal because the government had already decided whether to

intervene).  Because the Government has already decided to intervene in this case, a violation of the

sealing provisions by the Relator would not mandate dismissal.  The Court will therefore grant the

Government's motion as to Topic 30.

      N.     Topics 29, 31, and 32: Communications with USADA, Relator's Deferred

           Prosecution Agreements, and Government Allegations Against Relator in

           Prior Criminal Case

The Government contends that Topics 29, 31, and 32—which cover, respectively, all

communications with the U.S. Anti-Doping Agency in connection with the case (Topic 29),

information regarding Relator's deferred prosecution agreements (Topic 31), and the Government's

allegations against Relator in a criminal case in the Southern District of California (Topic 32)—are

inappropriate because depositions of attorneys—who would most naturally possess the information

sought—are disfavored where the information can be obtained from other sources.  The Court

agrees.  Courts generally presume that depositions of attorneys create "an inappropriate burden or

hardship."  Coleman v. District of Columbia, 284 F.R.D. 16, 18-19 (D.D.C. 2012).  Because

Armstrong has not shown that the relevant information about the Government's pre-suit

investigation could "only be obtained" by deposing the Government's witnesses, see id., and

because it would be far easier for Armstrong to obtain much of the same information from Relator

directly, the Court will grant the Government's motion as to Topics 29, 31, and 32.

      O.     Topic 33: Persons Knowledgeable About Previous Topics

Finally, the Government objects to Topic 33, in which Armstrong seeks testimony on

persons knowledgeable about the previous topics.  Because the effect of this request would merely

be to have the Government summarize evidence already in Armstrong's possession, and Armstrong

has not established how questioning on this topic will result in additional useful information, the

burdens of the request outweigh its benefits.  See Fed. R. Civ. P. 26(b)(2)(C)(iii) (The court can

limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit");

Yeda Research and Dev. Co., Ltd. v. Abbott GmbH & Co. KG, 292 F.R.D. 97, 115 (D.D.C. 2013)

(denying a request under 26(b)(2)(C)(iii) because the requesting party had "all of the information it

could want" about the topic and the request was "*per se* cumulative").  Accordingly, the Court will grant the Government's motion as to Topic 33.

**III.     Conclusion**

For the foregoing reasons, it is hereby **ORDERED** that the Government's Motion for a Protective Order [ECF No. 313] is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**

<br>

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: ___July 2, 2015_____