# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA, ex rel.  )
   FLOYD LANDIS,                      )
                                      )
                    Plaintiffs,       )   Civil Action No.
                                      )
      v.                              )   1:10-cv-00976-CRC
                                      )
   TAILWIND SPORTS CORP., et al.,     )   Pages 1 - 73
                                      )
                    Defendants.       )
   _____)




                       TELEPHONE CONFERENCE

                       Keker & Van Nest LLP
                         633 Battery Street
                      San Francisco, California

                         December 19, 2014




   Reported by:
   CLARE MACY, RPR, CSR # 5256
   ----------------------------------------------------------
                     JAN BROWN & ASSOCIATES
          WORLDWIDE DEPOSITION & VIDEOGRAPHY SERVICES
   701 Battery Street, 3rd Floor, San Francisco, CA  94111
                 (415) 981-3498 or (800) 522-7096
```

1

```
 1              A P P E A R A N C E S
 2
    For the United States of America:
 3
            ROBERT E. CHANDLER, Attorney at Law
 4          UNITED STATES DEPARTMENT OF JUSTICE
            Civil Division, Fraud Section
 5          601 D Street NW
            Washington, DC 20530
 6          (202)514-4678
            Robert.chandler@usdoj.gov
 7          (appeared via telephone)

 8          DAVID M. FINKELSTEIN, Attorney at Law
            UNITED STATES DEPARTMENT OF JUSTICE
 9          Civil Fraud Section
            601 D Street, NW, Room 9605
10          Washington, DC 20004
            (202)616-2971
11          david.m.finkelstein@usdoj.gov
            (appeared via telephone)
12
13  For the Defendant Lance Armstrong:
14          SHARIF E. JACOB, Attorney at Law
            KEKER & VAN NEST LLP
15          633 Battery Street
            San Francisco, California 94111
16          (415) 391-5400
            sjacob@kvn.com
17
18                    --oOo--
19
20
21
22
23
24
25
                                                    2
```

1  for us, and we've been seeking ESI for a long time.  So
2  we would like the Government to run the search terms
3  that we've agreed on right away and to produce those
4  documents as soon as possible.  Those are a higher
5  priority than unredacted FOIA documents.
6          MR. CHANDLER:  What I'm talking about is
7  electronically stored information that is the same as
8  the previously produced FOIA documents.  So in other
9  words, emails that are in the FOIA collection that were
10 produced in PDF format, you know, we have the electronic
11 versions of those same emails.  Is that a high priority
12 for you to get those emails?
13         MR. JACOB:  Is -- I don't understand what
14 you're saying.  But if you are saying the following, is
15 it a high priority for us to get copies of documents we
16 already have in a different format?  No.
17         MR. CHANDLER:  Good.
18         MR. JACOB:  Anything else that we need to
19 discuss on this call?
20         MR. CHANDLER:  Yeah, a few things.
21         We also are in the process of collecting -- or
22 we have a few remaining custodians who really were at
23 the periphery of the sponsorship.  Again, is that the
24 category of documents that you would be willing to have
25 us deprioritize?  I haven't got the list of custodian

51

1  names here, but if you're willing to consider it, I can
2  send you names that fall into that category.
3            MR. JACOB:  Are these previously agreed-upon
4  custodians?
5            MR. CHANDLER:  They are on that list of 30 or
6  so current Postal Service employees, yes.
7            MR. JACOB:  And what is the factual basis for
8  believing that they don't have responsive documents?
9            MR. CHANDLER:  It's not that they don't have
10 responsive documents; in many cases they do have
11 responsive documents, but these are not people who were
12 key personnel in connection with the sponsorship
13 agreement.
14           MR. JACOB:  I don't even know who these people
15 are.  I don't know if I agree with your assessment.  I
16 certainly can't agree to deprioritize some body of
17 production that's, frankly, long overdue based solely on
18 that representation.
19           MR. CHANDLER:  But I've offered to provide you
20 more information.  If it's a nonstarter, then I won't go
21 to the trouble of sending the information.  If you would
22 be willing to consider moving these documents down on
23 your priority list, then I can send you that
24 information.
25           MR. JACOB:  I'm always willing to meet and

52

confer with the Government about the most efficient way to produce documents. And I'm not going to tell you not to send me a list. If you want to request something, you should. It appears that you're not prepared to do so on today's call.

But what I would say is that we agreed on that list of custodian months ago, and we're flummoxed at why it's taking so long to get those produced. And so we're concerned about delay tactics.

MR. CHANDLER: All right. The next category of documents: We have documents from the LeMond versus Trek litigation. I believe what we have is largely duplicative of what you've already got. I think what we produced to you already were the documents that were obtained by way of grand jury subpoena. We, during the course of our civil investigation, obtained them through a different channel. I don't think they are entirely duplicative. I'm not really sure offhand where the differences lie. We're happy to produce it all. We've got it in the pipeline to produce it all. But if it's something that you're willing to live without or postpone the production of, then that would make this a more efficient operation.

Is that something you are willing to consider?

MR. JACOB: Why -- why would it make it a more

53

efficient operation?  When I have documents that are ready to produce and then have been isolated, putting them on a shelf and letting them sit around for a few months does not make production more efficient.  It, in fact, slows down the process.  So what I need to understand from you is why it would make it more efficient to agree that those documents are going to come at a later time?

If you're asking me whether we have an objection to you producing them in February, we don't.  But what I don't understand is, what is the purpose of this discussion that we're having?  As soon as I identify documents that are responsive and relevant, I send them to our production staff and have them produced.  I don't put them on a shelf or call you and ask whether I should then at that point delay them for another month?

So what is the purpose of this discussion that we're having?

MR. CHANDLER:  Because our IT people can only do one thing at a time for you.  So to the extent that you've asked us to produce something else in the short run, they've got to turn their attention to that first.  That has to be loaded to the extent it hasn't been already or Bates-labeled, you know, processed for

54

1  production.  They can only do, you know, so much at any
2  given time.
3              So to the extent that you're willing to say
4  that there are some categories of documents that don't
5  require their attention right away or don't require our
6  attention right away, then it's going to make it more
7  likely that you're going to get the documents that do
8  require our attention right away.
9              MR. JACOB:  I just want you -- I want to
10 understand what is really going on.  Are you making a
11 factual representation on this call that your practice
12 support people are so jammed up getting Armstrong's
13 document productions out of the door, that you need me
14 to tell you in which order they should process the
15 documents for production?  Are you making that factual
16 representation?
17             MR. CHANDLER:  No, I'm not, but I'm saying it
18 would make it far more efficient if you could tell us
19 what you want first.
20             MR. JACOB:  Well, all -- Let me ask it this
21 way, then:  Will you commit to producing all of the
22 documents that are subject to the Court's
23 September 30th, 2014 motion to compel if I agree that a
24 second category of documents can wait until February for
25 production?

55

1  MR. CHANDLER: I mean, we're going to produce
2  what we are required to produce pursuant to the order.
3  MR. JACOB: So in other words, my answers have
4  no impact on the order of production that you're going
5  to produce documents. You're not actually willing to
6  agree to produce any documents earlier than you
7  otherwise would. And instead, we appear to be wasting
8  our time going through an activity that has no actual
9  bearing on the order of production. I'm flummoxed at
10 why the Government --
11 MR. CHANDLER: I don't understand --
12 MR. JACOB: Wait, wait, wait. I'm not done.
13 We are absolutely flummoxed at the
14 Government's behavior in this action. We have been
15 seeking the production of documents for over a year, a
16 year. And we have told you on call after call and in
17 letter after letter what documents are important to us.
18 In addition to that, we have filed numerous motions
19 seeking the production of documents.
20 Instead of actually proceeding to run the
21 search terms that we have agreed upon and instead of
22 producing those documents, the Government is asking me
23 to order production but then refusing to either commit
24 to producing documents in that order or to actually
25 agree to produce any of the documents I prioritize

56

1

2  STATE OF CALIFORNIA       )

3                            )  ss.

4  COUNTY OF CONTRA COSTA    )

5

6                 CERTIFICATE OF REPORTER

7     I hereby certify that the foregoing proceedings in

8  the within-entitled cause took place at the time and

9  place herein stated and were reported by me, Clare Macy,

10  a Certified Shorthand Reporter and disinterested person,

11  and were thereafter transcribed into typewriting.

12          And I further certify that I am not of counsel

13  or attorney for either or any of the parties, nor in any

14  way interested in the outcome of the cause named in said

15  caption.

16

17         DATED: January 2, 2014

18

19         *[signature: Clare Macy]*

20         _____

21         CLARE MACY

22

23

24

25

73