UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES ex rel. LANDIS**, <br><br> Plaintiffs, <br><br> v. <br><br> **TAILWIND SPORTS CORP., et al.**, <br><br> Defendants. | Case No. 1:10-cv-00976 (CRC) |

**OPINION AND ORDER**

On January 12, 2016, the Court issued a Memorandum Opinion granting the CSE Defendants' Motion for Summary Judgment on Count 4 of Relator's Second Amended Complaint. See ECF No. 490. The Court held that Relator may not proceed under the pre-2009 False Claims Act's provision regarding "reverse" false claims, because the Sponsorship Agreement between USPS and Tailwind created no "obligation" to repay USPS sponsorship fees obtained as a result of materially false statements. In so doing, the Court reconsidered a portion of its Memorandum Opinion of June 19, 2014, ECF No. 174, which was issued by the judge who previously presided over the case.

The government now moves the Court to reconsider its decision yet again. The Court declines to do so.[1] The Court has already detailed the stringent standard for reconsidering interlocutory orders; it will not repeat itself here. In short, the government has not shown that "justice requires" reconsidering the Court's ruling on the reverse-false-claim issue. United States v.

---

[1] The CSE Defendants argue that the government was procedurally forbidden to file the present motion for reconsideration, since it has not yet intervened against the CSE Defendants in this *qui tam* case. The Court finds the government's motion to be procedurally proper, if only because the Court previously permitted Defendant Armstrong—against whom the government *has* intervened—to join the CSE Defendants' motion for summary judgment. See Minute Order of Nov. 30, 2015. Because Armstrong's joinder effectively brought the government into the fray, it was entitled to seek reconsideration.

Slough, 61 F. Supp. 3d 103, 107 (D.D.C. 2014) (quoting United States v. Coughlin, 821 F. Supp. 2d 8, 18 (D.D.C. 2011)).  The government principally reiterates arguments that it and Relator made in opposing the CSE Defendants' prior motion.  While these arguments were forceful and well-reasoned, the Court was not persuaded by them.  To the extent that the Court may not have explained why it was not persuaded by the arguments that were actually presented, for the parties' benefit it will do so now.  The Court will not, however, consider arguments raised for the first time here, for a motion for reconsideration cannot be "a vehicle for presenting theories or arguments that could have been advanced earlier."  Loumiet v. United States, 65 F. Supp. 3d 19, 24 (D.D.C. 2014) (quoting Estate of Gaither *ex rel.* Gaither v. District of Columbia, 771 F. Supp. 2d 5, 10 n.4 (D.D.C. 2011)).

The government argues, as it did in the statement of interest it filed in opposition to the CSE Defendants' motion, ECF No. 334, that "the Senate Report accompanying the 1986 amendments to the FCA stressed that reverse false claims liability extends to '*potential claims*' by the government against a person."  Govt.'s Mot. Reconsideration 5 (quoting S. Rep. No. 99-345, at 18 (1986), as reprinted in U.S.C.C.A.N. 5266, 5283).  The government overreads this fragment of legislative history.  In context, the Report stated as follows:  "The question of whether the False Claims Act covers situations where, by means of false financial statements or accounting reports, a person attempts to defeat or reduce the amount of a claim or potential claim by the United States against him, has been the subject of differing judicial interpretations."  S. Rep. No. 99-345, at 18.  In a case that the Senate Report considered "better reasoned," the defendant housing authority "was obligated to remit quarterly to [the Public Housing Administration] as rent the excess of [its] revenues . . . over its operation expenses."  Id. at 18–19. So the Senate Report hardly "stressed" that reverse-false-claim liability may exist in cases like this one, where the relevant legal instrument did *not* obligate a party to repay ill-gotten gains.  Even were that not so, the Court would not elevate this

pre-enactment rumination—appearing in one chamber's suggested "amendment in the nature of a substitute," id. at 1—over extensive contrary case law.  See, e.g., Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc., 190 F.3d 729, 735 (6th Cir. 1999) ("The obligation cannot be merely a potential liability: instead, . . . a defendant must have had a present duty to pay money or property *that was created by* a statute, regulation, contract, judgment, or acknowledgment of indebtedness." (emphasis added) (quoting United States v. Q Int'l Courier, Inc., 131 F.3d 770, 773 (8th Cir. 1997)).

The real thrust of the government's motion—which amplifies an argument made in its earlier statement of interest—is that the Court failed to interpret the reverse-false-claim provision enacted in 1986 in light of amendments to that provision made in 2009.  Whereas Congress originally refrained from defining the term "obligation," twenty-three years later it specified that "the term 'obligation' means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."  31 U.S.C. § 3729(b)(3).  Moreover, the government observes, the Senate Judiciary Committee Report accompanying a draft version of the 2009 legislation expressed the "Committee's view"—which it claimed to have "held since the passage of the 1986 Amendments"—that an "obligation" to repay the government can arise from the types of relationships listed above.  S. Rep. No. 111-10, at 14 (2009).  These amendments professed to alleviate prior "confusion among the courts" on the proper meaning of "obligation."  Id.  Based on this legislative history, the Government appears to contend that the amended definition of "obligation" effectively applies to the original version of the statute and that it encompasses a duty to repay the government arising from *any* breach of a government contract—regardless of whether the contract itself creates a repayment obligation or whether the government has taken any action to enforce the purported duty.

The Court was not swayed by the government's argument, in part because legislators' *post hoc* assurances that a prior Congress desired ambiguous statutory language to be interpreted in a certain way are poor substitutes for courts' well-considered judgments about statutory meaning. Post-enactment legislative history is "inherently entitled to little weight," Cobell v. Norton, 428 F.3d 1070, 1075 (D.C. Cir. 2005), for it "provides 'an unreliable guide to legislative intent,'" Verizon v. FCC, 740 F.3d 623, 639 (D.C. Cir. 2014) (quoting N. Broward Hosp. Dist. v. Shalala, 740 F.3d 623, 639 (D.C. Cir. 1999)). In fact, the Supreme Court has squarely rejected a similar effort to retroactively impute meaning to the 1986 amendments to the False Claims Act. In 1999, the amendments' two "primary sponsors" wrote to Attorney General Reno to inform her of what "[w]e did intend" by including certain statutory language. Graham Cnty. Soil & Water Conservation Dist. v. United States *ex rel.* Wilson, 559 U.S. 280, 297 (2010) (quoting 145 Cong. Rec. 16032 (1999)). Justice Stevens's opinion for the Court refused to treat this missive "as legislative 'history,' given that it was written 13 years after the amendments were enacted." Id. at 298. Even two key participants' recollections were therefore "of scant or no value for our purposes." Id. Nor should the 2009 Judiciary Committee Report's backward-looking claim be accorded more than "scant" value—twenty-three years had passed since 1986, and fewer than half of the Committee's members were serving in Congress at that time. This is but one example of the broader principle that "subsequent legislative history provide[s] an extremely hazardous basis for inferring the meaning of a congressional enactment." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 118 n.13 (1980).

For whatever reason, the 111th Congress chose not to make its amendments to the False Claims Act retroactive. Accounting for the dire scenario the government posits—someone "totally breach[ing] a material term of a federal government contract, receiv[ing] payments, and conceal[ing] the breach . . . by lying," Govt.'s Mot. Reconsideration 2—may indeed have been one

4

purpose of the 2009 amendments.  An "established duty" may now arise from even informal ("implied") contractual relationships, after all; perhaps, in a similarly relaxed fashion, "the retention of *any* overpayment" from the government by those in contractual privity with it now generates an "established duty" sufficient to create an "obligation."  31 U.S.C. § 3729(b)(3) (2009) (emphasis added).  But this interpretation is far from obvious.  The statutory text and legislative history do not dictate whether the defendants' conduct would be actionable under the new reverse-false-claim provision, and the government has cited no post-2009 case interpreting the newly defined term "obligation."  In any event, that time has exposed perceived flaws in legislation does not mean that the statute and its accompanying legislative history must always have dictated a result contrary to the weight of case law.

    The government also contends—again—that long-established principles of contract and restitution law obligated Tailwind to repay any funds attributable to a breach of the Sponsorship Agreement.  The Court rejected this view after considerable briefing, and its analysis made plain why it felt compelled to reconsider its prior opinion on this score.  The Court apprehended the legal arguments advanced in support of the government's and Relator's position; it simply disagreed with them.  It bears repeating that "[q]ualms with the Court's logic . . . are not fertile grounds for reconsideration."  Casey v. Ward, 67 F. Supp. 3d 54, 58 (D.D.C. 2015).

    That brings us to the points the government did *not* make previously.  The government has now briefed the reverse-false-claim issue three separate times in this case: in its opposition to Defendant Armstrong's motion to dismiss, ECF No. 114; in its statement of interest in response to the CSE Defendants' motion for summary judgment, ECF No. 334; and in the present motion for reconsideration, ECF No. 486.  Only now has it presented select arguments or observations to bolster its broader contention that Tailwind owed an "obligation" to the government.  Among them are that (1) the statutory subsection immediately preceding the original reverse-false-claim

provision refers disjunctively to "an obligation or debt," Govt.'s Mot. Reconsideration 5, 10; 31 U.S.C. § 3729(a)(6) (1986); (2) various dictionary definitions of "obligation," "duty," and "debt" suggest that an "obligation" can arise from the retention of overpayments from the government, Govt.'s Mot. Reconsideration 9–10; (3) the word "avoid" in the phrase "to conceal, avoid, or decrease an obligation" necessarily means to "prevent[] the occurrence of something that has not yet occurred," id. at 10; (4) Congress's deletion of "contingent duty" from the definition of "obligation" in a draft version of the 2009 amendments—which might otherwise support the Court's interpretation of the definition—clarified only that possible exposure to discretionary fines or penalties did not constitute an obligation, id. at 12; (5) the relevant section of the 2009 amendments is entitled "Clarifications to the False Claims Act to Reflect the Original Intent of the Law," id. at 6, 11; Pub. L. No. 111-21, § 4, 123 Stat. 1625 (2009), which lends more weight to the amended statute's legislative history than it would otherwise bear; (6) judgments cannot create legal duties, but instead function to affirm or deny their existence, Govt.'s Mot. Reconsideration 14; (7) a long list of circuit cases recognizes the government's extra-statutory authority to recoup "a wide variety of overpayments," id. at 15–16; and (8) the government's alleged right to recover erroneously paid funds entails a correlative legal duty to repay the government, id. at 9, 15.

None of these theories depends on information made available only since the government's earlier briefing on this issue. If the Court were to consider these points now—on the government's *third try*—there would be no principled end to, and no coherent rationale for, the practice of moving courts to reconsider their decisions. Such motions serve to "enable courts to correct their own errors, not the litigants' errors." Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V., 79 F. Supp. 3d 60, 72 (D.D.C. 2015); see also Kennedy v. District of Columbia, No. 13-cv-01384 (CRC), 2015 WL 7274027, at *3 (D.D.C. Nov. 16, 2015) ("A motion for reconsideration is emphatically not the proper place to raise new legal arguments."). The government cites Wultz v.

Islamic Republic of Iran, 762 F. Supp. 2d 18 (D.D.C. 2011), for the proposition that "reconsideration is appropriate where the court has not squarely addressed a statutory argument," Govt.'s Reply Supp. Mot. Reconsideration 3. But the Wultz Court reconsidered its previous decision because it "patently misunderstood the thrust of [the defendant's] jurisdictional argument, rendering its opinion incomplete." Id. at 24. The government has not similarly shown that the Court misunderstood the nature or import of its arguments about the scope of an actionable "obligation." It simply disagrees with the Court's interpretive reasoning, and seeks to augment its position with arguments that were fully at its disposal in the prior two rounds of briefing on this issue.

Finally, Count 4 of the government's Complaint in Intervention was also brought under the pre-2009 reverse-false-claim provision. In its Order of January 12, 2016, ECF No. 475, the Court ordered the government to show cause why summary judgment should not be granted on this count, as well. Because the government has offered no reason why the Court's Memorandum Opinion would not "logically dictate the entry of summary judgment . . . on Count 4 of the Government's Complaint," Mem. Op. Jan. 12, 2016, at 30, the Court will enter that relief in favor of all intervened defendants.

For the foregoing reasons, it is hereby

**ORDERED** that [483] the government's Motion for Reconsideration be **DENIED**.  It is further

**ORDERED** that summary judgment be **GRANTED** in favor of Defendants Lance Armstrong, Tailwind Sports Corporation, and Johan Bruyneel on Count 4 of the government's Complaint in Intervention.

**SO ORDERED**.

                                                CHRISTOPHER R. COOPER
                                                United States District Judge

Date:   March 7, 2016