## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES <u>ex rel.</u> LANDIS**, <br><br> Plaintiff, <br><br> v. <br><br> **TAILWIND SPORTS CORP., <u>et al.</u>**, <br><br> Defendants. | Case No. 1:10-cv-00976 (CRC) |

## <u>OPINION AND ORDER</u>

The government served its Third Set of Interrogatories on Defendant Lance Armstrong on July 15, 2015.  On November 30, 2015, the Court granted the government's motion to compel Armstrong to supplement his responses to Interrogatories 15 through 22.  ECF No. 456.  Armstrong has since supplemented these responses two additional times, recently serving his Third Supplemental Responses on the government.  The government remains dissatisfied with four of his answers and has moved to compel "complete responses" to Interrogatories 16 through 19.  United States' Summ. Disc. Dispute 1, ECF No. 515.

Each of these interrogatories requires Armstrong to describe the monetary benefits that he contends accrued to the United States as a result of the U.S. Postal Service's ("USPS's") sponsorship of Armstrong's cycling team.  The government insists that it cannot adequately oppose Armstrong's pending motion for summary judgment—which seeks to establish that the USPS ultimately profited from the sponsorship—without full responses to the following four interrogatories:

**Interrogatory No. 16**: Identify the value of any earned media or ad equivalency you contend the USPS received in connection with the sponsorship.

**Interrogatory No. 17**: Identify the value of any improvement in employee morale you contend the USPS received in connection with the sponsorship.

**Interrogatory No. 18**: Identify the date, amount, and customer for any sale by USPS that you contend resulted from the sponsorship, and explain how the sponsorship contributed to the sale.

**Interrogatory No. 19**: If you contend that public perception of the USPS brand improved as a result of the sponsorship, identify all facts supporting your contention and state the value of any such improvement in public perception.

In the most recent iteration of his responses, Armstrong pointed the government to specified page ranges of the report of one of his experts, Doug Kidder.  For each of the four interrogatories, Armstrong then assured the government that "the answer to this interrogatory may be determined by examining Mr. Kidder's expert report, Mr. Kidder's reply report, Mr. [Erich] Joachimsthaler's [expert] report, and all documents cited and referenced therein."  United States' Summ. Disc. Dispute Ex. A, at 10, 15.[1]  He closed his response to each interrogatory as follows: "Information responsive to this request may also be located in previously-produced documents, including as set forth in Attachment A, and the burden of deriving or ascertaining the answer will be substantially the same for the government as it is for Armstrong."  Id. at 10, 13, 15, 17.  Attachment A contains identifying information for over two hundred deposition transcripts and for hundreds of other documents produced by the government in discovery.[2]

The government does not challenge those portions of Armstrong's responses that incorporate by reference designated page ranges of his experts' reports.  But it does contest his

---

[1]  Two be precise, for two of the interrogatories, Armstrong asserted that "[t]o the extent [he] has information responsive to this request, that information is contained in" those reports.  Id. at 13, 17.

[2]  Armstrong suggests in his briefing that the support for certain of his valuation contentions is limited to the analysis in his experts' reports.  See, e.g., Def. Armstrong's Opp'n Govt.'s Summ. Disc. Dispute ("Def.'s Opp'n"), ECF No. 519, at 1–2 (stating that "Doug Kidder quantified the value of the earned media the USPS received," and then insisting that "[b]ecause Armstrong has already identified the value of earned media the USPS received in connection with the sponsorship, there is no further answer Armstrong can provide").  Yet he has not withdrawn his boilerplate references to the materials described in Attachment A.

implicit effort to invoke Rule 33(d) of the Federal Rules of Civil Procedure, which allows a party

served with interrogatories to forgo a comprehensive narrative response in certain circumstances.

Under that Rule, "[i]f the answer to an interrogatory may be determined by examining, auditing,

compiling, abstracting, or summarizing a party's business records," and "if the burden of deriving

or ascertaining the answer will be substantially the same for either party," then the responding party

need only "specify the records that must be reviewed" and give the interrogating party a

"reasonable opportunity" to review them.  Fed. R. Civ. P. 33(d)(1)–(2).  Importantly, the

responding party must also identify the records to be reviewed "in sufficient detail to enable the

interrogating party to locate and identify them as readily as the responding party could."  Id.

33(d)(1).

For six separate reasons, Armstrong's Third Supplemental Responses to Interrogatories 16

through 19 vastly exceed what Rule 33(d) allows.  First, "courts have consistently held that [Rule

33(d)] cannot be used with respect to contention interrogatories," like those at issue here.  Fleming

v. Escort, Inc., No. CV 09–105–S–BLW, 2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011).  This is

because "documents normally reveal evidence, not a party's contentions or statement of facts which

a party contends supports the complaint."  SEC v. Elfindepan, S.A., 206 F.R.D. 574, 577

(M.D.N.C. 2002) (citing In re Savitt/Adler Litig., 176 F.R.D. 44, 49–50 (N.D.N.Y. 1997)); see also

Fleming, 2011 WL 573599, at *2 ("[T]he legal contentions of a party are not contained in old

business records, and so must be explained by counsel."); Cleveland Constr., Inc. v. Gilbane Bldg.

Co., No. Civ. A. 05-471-KSF, 2006 WL 2167238, at *5 (E.D. Ky. July 31, 2006) ("[O]nly [the

plaintiff] knows what facts and information it has relied upon to support the allegations made in its

complaint."); United Oil Co. v. Parts Assocs., Inc., 227 F.R.D. 404, 419 (D. Md. Mar. 4, 2005)

(observing that contention interrogatories "require the exercise of particular knowledge and

judgment on the part of the responding party").  This is especially true here, given that items

3

produced by the *government* account for most of the documents itemized in "Attachment A."  Of course, Armstrong's present legal contentions will not be found in the opposing party's records. The Court will not require the government to answer its own interrogatories by filtering a mass of documentary evidence through an adversary's legal lens.

Second, even assuming that Rule 33(d) could be applied to contention interrogatories, Armstrong is "more familiar with [his] contentions than is [the government], so the burden is not equal." Fresenius Med. Care Holding v. Baxter Int'l, 224 F.R.D. 644, 652 (N.D. Cal. Feb. 5, 2004). Rule 33(d) is "suited to those discovery requests requiring compilation or analysis"—"inquiries of an intensely objective nature." United Oil, 227 F.R.D. at 419.  Responding to Interrogatories 16 through 19 would hardly be a mechanical undertaking.  Armstrong could surely "deriv[e] or ascertain[] the answer[s]" more easily than the government, Fed. R. Civ. P. 33(d), especially since he has already filed a motion for summary judgment encompassing his contentions regarding these four interrogatories.

Third, and perhaps most glaringly, Armstrong has not described the relevant documents "in sufficient detail to enable [the government] to locate and identify them as readily as [he] could." Id. 33(d)(1).  When employing Rule 33(d), a responding party must "specifically identify the documents that contain the answers." Covad Commc'ns Co. v. Revonet, Inc., 258 F.R.D. 17, 20 (D.D.C. 2009).  "[M]aking only a general reference to a mass of documents or records" is an abuse of Rule 33(d). Hypertherm, Inc. v. Am. Torch Tip Co., Civ. No. 05–cv–373–JD, 2008 WL 5423833, at *3 (D. N.H. Dec. 29, 2008); see also Oleson v. Kmart Corp., 175 F.R.D. 560, 564 (D. Kan. 1997) (noting that a party "may not simply refer generically to past or future production of documents" when invoking Rule 33(d)).  This is precisely what Armstrong has done.  He asserts, for each interrogatory, that responsive information may be found in "previously-produced documents, including"—but not limited to—those listed in the exhibit labeled "Attachment A."

4

United States' Summ. Disc. Dispute Ex. A, at 10, 13, 15, 17.  Yet this sprawling spreadsheet does nothing to "specif[y]" which documents support Armstrong's valuation contentions.  Def.'s Opp'n 1–3.  Nor is the government's requested specification "make-work," id. at 1—it is an elementary requirement of Rule 33(d).  When deploying that rule's time-saving features, a responding party must "precisely specif[y] for *each* interrogatory . . . the actual documents where information will be found."  Elfindepan, S.A., 206 F.R.D. at 576 (emphasis added).

Fourth, and relatedly, Armstrong may not waste the government's time by stating that responsive information "may" be found in certain locations.  United States' Summ. Disc. Dispute Ex. A, at 10, 13, 15, 17.  When a Rule 33(d) response is contested, the responding party "must show that a review of the documents will actually reveal answers to the interrogatories."  Elfindepan, S.A., 206 F.R.D. at 575.  It is not enough to claim that "[t]o the extent Armstrong has information responsive" to the government's interrogatories, it will be found in certain locations.  United States' Summ. Disc. Dispute Ex. A, at 13, 17.  The Court has been given no basis for assessing whether "the documents, in fact, contain all of the information sought by the interrogatories."  Elfindepan, S.A., 206 F.R.D. at 577.

Fifth, Rule 33(d) cannot be used for documents other than "business records."  Fed. R. Civ. P. 33(d).  Whatever that term's precise scope in this context, it does not encompass deposition transcripts or discovery materials generally.  In re Savitt/Adler, 176 F.R.D. at 49; Elfindepan, S.A., 206 F.R.D. at 577–78.  Armstrong's Attachment A nonetheless identifies 222 deposition transcripts. It goes on to list hundreds of other documents by Bates number only.  The Court has no way of knowing whether these faceless materials are business records eligible for Rule 33(d) treatment.

Finally, "courts and commentators have long agreed that Rule 33(d) applies 'only where the answers to the interrogatories may be found in the business records of the party upon whom the interrogatories have been served.'"  McSwiggin v. Limousine, No. 2:14-cv-02172-JCM-NJK, 2016

WL 1030053, at *6 (D. Nev. Mar. 10, 2016) (quoting Calhoun v. Liberty Nw. Ins. Corp., 789 F.

Supp. 1540, 1549–50 (W.D. Wash. 1992)); see also 1970 Advisory Comm. Note to Fed. R. Civ. P.

33(c) (now 33(d)) ("This is a new subdivision . . . relating especially to interrogatories which

require a party to engage in burdensome or expensive research into *his own* business records in

order to give an answer." (emphasis added)).  After all, the interrogating party need not be afforded

"a reasonable opportunity to examine" its own documents, which it can review whenever it wishes.

Fed. R. Civ. P. 33(d)(2).  Armstrong acknowledges that Attachment A's index consists principally

of "USPS documents and testimony," Def.'s Opp'n 1–3—the *government*'s business records, if

they are business records at all.  For all of these reasons, Armstrong's Third Supplemental

Responses to Interrogatories 16 through 19 fail to satisfy the baseline obligation to answer each

interrogatory "fully."  Fed. R. Civ. P. 33(b)(3).

Armstrong's continued failure to comply with this discovery obligation places the

government and the Court in an awkward procedural position.  At this late stage, he has responded

to Interrogatories 16 through 19 by incorporating certain portions of Mr. Kidder's expert report.

But that report did not exist when Armstrong's initial responses were due.  And Armstrong has

already filed his motion for summary judgment on the issue of damages and supported that motion

with relevant exhibits.  The motion treats each of the contested issues more exhaustively than does

his most recent set of supplemental responses, filed around the same time.

In light of the foregoing, it is hereby **ORDERED** that Armstrong submit a set of Fourth

Supplemental Responses to Interrogatories 16 through 19 by **Friday, May 27, 2016**.  Armstrong

must respond in full or risk exclusion of responsive but unidentified evidence at trial.  To comply

with this directive, Armstrong may incorporate by reference specific page ranges of any expert

reports that address the issues covered in Interrogatories 16 through 19.  If—but only if—an entire

expert report addresses an issue, Armstrong may cite the entire page range in his response.

Armstrong will be considered to have identified evidence contained in footnotes that appear in cited page ranges.[3]  Armstrong may not incorporate by reference any other type of document; if responsive information is not contained in an expert report, Armstrong must provide a full narrative answer, stating his contentions regarding such information, or risk exclusion of this evidence at trial.[4]

       **SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   __May 20, 2016___

---

[3]  But, for example, if a footnote in an expert report cites only pages 10 through 12 of a particular document and pages 13 through 15 also contain responsive information, Armstrong will risk exclusion of the information contained in pages 13 through 15 if he does not disclose it elsewhere in his Fourth Supplemental Responses.

[4]  He may, of course, cite other types of documents to *substantiate* his narrative contentions.  But he may not answer that responsive information is located (for example) in a particular deposition transcript or in a document bearing a certain Bates number.