UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES ex rel. LANDIS**, **et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **TAILWIND SPORTS CORP.**, **et al.**, <br><br> Defendants. | Case No. 1:10-cv-00976 (CRC) |

**OPINION AND ORDER**

In October 2015, Relator Floyd Landis moved to compel Defendant Lance Armstrong to stipulate to the authenticity of portions of the Sony-produced documentary *The Armstrong Lie*—and corresponding lines of the official transcript—in which Armstrong was interviewed. The Court granted this motion, permitting Relator to pose the following interrogatory to Armstrong: "Do both the video footage of you in the 2013 documentary *The Armstrong Lie* and the transcript of that documentary previously provided to you accurately reflect the questions asked of you and the answers you gave?" Order of Oct. 29, 2015, at 3, ECF No. 447.

In responding to this interrogatory, Armstrong insisted that the documentary footage

> does not accurately reflect the questions asked of him and the answers he gave. Questions to which answers are given have been edited out. The content of the questions themselves ha[s] been edited, including deleting portions of the questions. Armstrong's answers have also been edited. Parts of his answers have been deleted. In other instances, multiple answers have been combined so as to appear to be a single answer.

Decl. Paul D. Scott Supp. Relator's Summ. Disc. Dispute ("Scott Decl.") Ex. A, at 5–6, ECF No. 478. Similarly, Armstrong asserted that the transcript of the documentary provided to him

> does not reflect the questions asked of Armstrong and the answers he gave. . . . Portions of Armstrong's answers that appear in the film do not appear in the transcript. Entire statements that Armstrong made in the film are missing from the transcript. The transcript contains words and phrases that Armstrong did not

utter in the film. Words that Armstrong uttered in the film have been replaced with words he did not.

Id. at 6. Dissatisfied with these responses, Relator now moves the Court to reopen Armstrong's deposition so that Relator can learn precisely which questions and answers in the video and transcript are contested. Alternatively, Relator requests that the Court order Armstrong to supplement his interrogatory response by specifying what he contends the disputed questions and answers actually were. Armstrong refuses to do so; he maintains that he has answered Relator's Court-drafted interrogatory in full.

Under Federal Rule of Evidence 901(a), in order to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This requirement can be satisfied by the testimony of a witness with knowledge "that an item is what it is claimed to be." Id. 901(b)(1). Under D.C. Circuit precedent, video or audio tapes may be authenticated "by testimony from parties to the conversation affirming that the tapes contained an accurate record of what was said." United States v. Strothers, 77 F.3d 1389, 1392 (D.C. Cir. 1996) (quoting United States v. Dale, 991 F.2d 819, 843 (D.C. Cir. 1993)) (internal quotation marks omitted). Relator's present motion is premised on the commonsense principle that third parties should not be unnecessarily burdened with subpoenas when the discovery sought can be obtained in a way that is "more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The thrust of Armstrong's interrogatory response is that relevant portions of *The Armstrong Lie* have been edited and spliced in a way that renders them too misleading to serve as reliable tools in a search for the truth. But addressing this concern is the function of two other Federal Rules of Evidence, not Rule 901. Rule 403 authorizes courts to exclude relevant evidence that carries too great a danger of "unfair prejudice" or "misleading the jury." And under Rule 106, when a party

introduces only part of a recorded statement, the opposing party may require the immediate introduction of any other part (or of another statement) "that in fairness ought to be considered at the same time."

Authorities amply bear out this distinction. As a leading Evidence treatise has explained, objections that a video or film "has been edited and is therefore misleading" are to be "resolved pursuant to Rule 403." 2 McCormick on Evidence § 216 (7th ed.). United States v. Damrah, 334 F. Supp. 967 (S.D. Ohio 2004), exemplifies this approach. In that case, the defendant argued that video tapes had not been sufficiently authenticated because they were "edited and spliced" and "may have therefore been misleading." Id. at 984. Regardless of whether deletions and rearrangements rendered the finished product misleading, the Court was "satisfied that the videos fairly depict the actual events that took place." Id. In short, "the tapes fairly and accurately (although perhaps not completely) depict the events they purport to depict, editing and splicing not to the contrary." Id. at 985. Affirming this decision on appeal, the Sixth Circuit noted that the defendant did "not question the fact that he and his words are depicted in the videotapes." United States v. Damrah, 412 F.3d 618, 628 (6th Cir. 2005). Similarly, in Asociación de Periodistas de Puerto Rico v. Mueller, 680 F.3d 70 (1st Cir. 2012), the plaintiffs described contested videos as "incomplete" and "extensively edited," but they did "no[t] . . . say that the videos do not show actual footage of the incident in question," id. at 79. For that reason, there was "no serious basis for disputing the authenticity of the videos." Id. at 80; see also Mills v. Riggsbee, Civ. No. 05:12–148–KKC, 2013 WL 6243951, at *3 (E.D. Ky. Dec. 3, 2013) ("[E]ven if the video could be sufficiently authenticated, it should be excluded from trial pursuant to Rule 403.").

Armstrong has cited no authority for the proposition that an otherwise authentic video clip may be rendered inauthentic because some actually spoken words have been omitted and others reordered. Of course, Armstrong may later move the Court to exclude certain video footage as

unduly misleading under Rule 403, and at trial he may invoke Rule 106 to introduce more-complete versions of any footage "that in fairness ought to be considered at the same time." Relator may well wish to obtain raw, unedited versions of the relevant footage in anticipation of such challenges. Moreover, based on the legal principles articulated in this Opinion and Order, the Court expects that Armstrong will in good faith stipulate to the authenticity of any video clips in which he appears to be speaking. Indeed, Armstrong's interrogatory response leaves him little room to do otherwise. See Scott Decl. Ex. A, at 5–6 (referring to "Armstrong's answers," "his answers," "statements that Armstrong made," and "[w]ords that Armstrong uttered"); see also Decl. Paul D. Scott Supp. Relator's Summ. Disc. Dispute Ex. B ("Lance Armstrong Deposition"), at 696:4-5, ECF No. 440 ("[I]f it's me and I'm talking and my mouth is moving, that's me."). But the Court will not require Armstrong to supplement his interrogatory response or to sit for further deposition time.

Nor will the Court order Armstrong to identify any alleged errors in the transcript of *The Armstrong Lie* provided to him by Relator on September 18, 2015. Relator is equally able to identify discrepancies between the words actually uttered in the documentary and the text of a corresponding transcript. If Relator wishes to include relevant portions of the transcript in his trial exhibits, the Court expects him to ensure their accuracy. If necessary, Armstrong may object to the accuracy of Relator's transcript designations in advance of trial.

For the foregoing reasons, it is hereby **ORDERED** that Relator's Motion to Compel, as reflected in his [478] Summary of Discovery Dispute, be **DENIED**.

**SO ORDERED**.

CHRISTOPHER R. COOPER  
United States District Judge

Date:     June 8, 2016