# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FLOYD LANDIS,<br><br>                    Plaintiffs,<br><br>v.<br><br>TAILWIND SPORTS CORP., *et al.*,<br><br>                    Defendants. | Civil Action No. 1:10-cv-00976-CRC<br><br>**ECF** |

# DEFENDANT LANCE ARMSTRONG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

        **Page**

I.    INTRODUCTION ..................................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................................2

III.  LEGAL STANDARD............................................................................................................3

IV.  ARGUMENT........................................................................................................................4

       A.    THE GOVERNMENT'S MOTION IS A PROCEDURALLY IMPROPER REQUEST TO ESTABLISH FACTS ...................................................................4

       B.    THE GOVERNMENT FAILS TO SUBMIT ANY FACTS SHOWING THAT ARMSTRONG CAUSED THE SUBMISSION OF FALSE CLAIMS ...................................................................................................................6

       C.    AFFIDAVITS SUBMITTED IN SUPPORT OF THE GOVERNMENT'S MOTION ARE INADMISSIBLE ..............................................................................7

            1.    The government cannot justify its failure to disclose three witnesses who each worked for the government for over a decade.............8

            2.    The government's conduct prevented Armstrong from deposing the newly-disclosed witnesses regarding the contents of their declarations. ......................................................................................10

V.   CONCLUSION...................................................................................................................12

i

1066585

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)...................................................................................................4

*Capitol Records v. Progress Record Distrib., Inc.*
   106 F.R.D. 25 (N.D.Ill. 1985)......................................................................................5

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986)....................................................................................................4

*Cobell v. Norton*
   260 F. Supp. 2d 110 (D.D.C. 2003).............................................................................4

*D'Iorio v. Winebow, Inc.*
   68 F. Supp. 3d 334 (E.D.N.Y. 2014)...........................................................................5

*Elion v. Jackson*
   544 F. Supp. 2d 1 (D.D.C. 2008)...........................................................................8, 11

*Fin. Res. Network, Inc. v. Brown & Brown, Inc.*
   930 F. Supp. 2d 287 (D. Mass. 2013).........................................................................5

*Gray v. Greyhound Lines*
   545 F.2d 169 (D.C. Cir. 1976)....................................................................................4

*LaPrade v. Abramson*
   2006 U.S. Dist. LEXIS 86431 (D.D.C. Nov. 29, 2006) .............................................4

*Londrigan v. FBI*
   670 F.2d 1164 (D.C. Cir. 1981)..................................................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio*
   475 U.S. 574 (1986)....................................................................................................4

*Minebea Co. Ltd. v. Papst*
   231 F.R.D. 3 (D.D.C. 2005)........................................................................................8

*NutraSweet Co. v. X-L Eng'g Co.*
   227 F. 3d 76 (7th Cir. 2000) .....................................................................................11

*SEC v. Thrasher*
   152 F. Supp. 2d 291 (S.D.N.Y. 2001) ........................................................................5

*Shatsky v. Syrian Arab Republic*
    312 F.R.D. 219 (D.D.C. 2015)..........................................................................................10

*Smith v. Henderson*
    54 F. Supp. 3d 58 (D.D.C. 2014)......................................................................................10

*Tao v. Freeh*
    27 F. 3d 635 (D.C. Cir. 1994)............................................................................................4

*Thomas v. Paulson*
    507 F. Supp. 2d 59 (D.D.C. 2007)....................................................................................10

*United States ex rel. Fago v. M&T Mortg. Corp.*
    No. Civ.A.03-1406(GK), 2006 WL 949899 (Apr. 11, 2006).............................................8

*United States ex rel. Harris v. Bernad*
    275 F. Supp. 2d 1 (D.D.C. 2003).......................................................................................6

*United States ex rel. Purcell v. MWI Corp.*
    824 F. Supp. 2d 12 (D.D.C. 2011).........................................................................8, 10, 11

*United States ex rel. Totten v. Bombardier Corp.*
    380 F.3d 488 (D.C. Cir. 2004)...........................................................................................6

*United States ex rel Tran v. Comp. Scis. Corp., et al.*
    53 F. Supp. 3d 104 (D.D.C. 2014).....................................................................................6

*United States v. Toyobo Co. Ltd.*
    811 F. Supp. 2d 37 (D.D.C. 2011).....................................................................................6

*Ursulines, L.L.C. v. Regions Bank & ABC Ins. Co.*
    2015 U.S. Dist. LEXIS 82676 (E.D. La. June 25, 2015)...................................................5

**Federal Statutes**

31 U.S.C. § 3729(a)(1)..............................................................................................................6

**Federal Rules**

Fed. R. Civ. P. 26............................................................................................................7, 8, 11

Fed. R. Civ. P. 37.................................................................................................................8, 11

Fed. R. Civ. P. 56.........................................................................................................1, 3, 4, 5

## I.   INTRODUCTION

The government's motion is vanishingly narrow.  The government has not moved for summary judgment on any of its remaining counts.  It has not moved for summary judgment of liability or damages on any of those counts.  Nor has it moved for partial summary judgment that any invoices submitted to the United States Postal Service ("USPS") were false or contained false certifications, express or implied; that the USPS relied on any alleged certifications in paying the invoices; or that any alleged certification in the invoices were material.

Instead, the government moved the Court to find that Tailwind (and its predecessors) sent forty-two invoices to the USPS between 2000 and 2004, and to tabulate the amounts of those invoices, and to find that the USPS paid those amounts.  But Federal Rule of Civil Procedure 56 does not permit the government to move the Court to find facts.  The government's motion for summary judgment is a procedurally improper request to have the Court adopt a role best left to the jury.

The government does seek partial summary judgment "on the element . . . of the presentation of claims" against Lance Armstrong.  But the government has failed to introduce evidence sufficient to meet its prima facie burden to prove even this narrow element.  Other than noting that Armstrong rode for the USPS cycling team, the government failed to submit *any* evidence of Armstrong's conduct.  And, with his opposition, Armstrong has supplied testimony from the government's own witnesses establishing that he had nothing to do with the submission of Tailwind's invoices to the Postal Service and no role at all in the payment of those invoices.  Armstrong's Additional Material Facts ("AMF") at 1, 9.  Because the government has not and cannot prove that Armstrong had anything to do with the submission of Tailwind's invoices or the payment of those invoices, its motion for summary judgment of presentment fails.

The government's motion also fails because it rests upon disputed facts.  The government has attempted to prove no fewer than twenty-two material facts using inadmissible documents and testimony.  The government was notably casual in it submission of materials to the Court,

1

citing to a brief submitted by lawyers for a now-dismissed party, seeking to bind Armstrong to pleadings he never submitted or signed, and filing three affidavits from witnesses the government chose not to disclose during the course of discovery.

The government failed to meet it initial burden to establish the facts material to even the narrow basis on which its motion rests. Even if it had met its burden, Armstrong has demonstrated that the facts on which the government relied are disputed, and that the materials it submitted to the Court are not evidence. Therefore, Armstrong respectfully requests that the Court deny the government's motion.

## II. STATEMENT OF FACTS

On October 1, 1995, the USPS entered into a sponsorship agreement ("1995 Sponsorship Agreement") with Montgomery Sports, Inc. ("Montgomery Sports"). Gov't Statement of Undisputed Material Facts ("SUMF") 2. Defendant Lance Armstrong was not a party to the 1995 Agreement, AMF 1, nor a member of the cycling team at the time it was executed. AMF 2. The 1995 Agreement expired on December 31, 1996, but could be renewed annually at the option of the USPS. SUMF 2. The USPS renewed the Agreement each year through 2000. SUMF 2. The Agreement and its modifications provided that the USPS would pay Montgomery Sports fees totaling $10,994,125 between 1996 and 2000. SUMF 3.

On December 26, 2000, the USPS entered into a four-year sponsorship agreement with DFP Cycling LLC ("2000 Sponsorship Agreement"). SUMF 4. Armstrong was neither a party nor a signatory to that agreement. AMF 1, 3. The 2000 Agreement called for the USPS to pay sponsorship fees of $31,593,000 over its four-year term. SUMF 5.

Pursuant to the 1995 and 2000 Agreements, three individuals submitted invoices to the USPS on behalf of Tailwind and its predecessors between December 1999 and September 2004: Patricia Koskie of Montgomery Securities, Sue Tabler of Disson Furst & Partners, and Laura

2

Ritts of Capital Sports & Entertainment, Inc. SUMF 19, 26, 30. During that same period, three USPS employees were responsible for reviewing and approving invoices submitted by Koskie, Tabler, and Ritts. SUMF 37-40. Between 1998 and 2002, Lynda Zelnick was the contracting officer for the Sponsorship Agreements. SUMF 37. Beginning in 1996, Robert McKenna was the contracting officer's representative for the cycling team sponsorship. SUMF 38. One of McKenna's responsibilities was to review and approve invoices submitted by Tailwind and then to submit invoices for payment. SUMF 40. In 2002, Joseph Porporino replaced McKenna as the contracting officer's representative, and took over McKenna's duties in reviewing and approving invoices. SUMF 39-40. Porporino served in that role until 2004. SUMF 39.

The undisputed evidence confirms that Armstrong had zero involvement with the submission of invoices to the USPS for payment under either the 1995 or 2000 Sponsorship Agreements. AMF at 4, 13-14. None of the three USPS employees with responsibility for reviewing and approving invoices relating to the Sponsorship Agreements ever communicated, consulted, or relied on any statement by Armstrong. Armstrong's AMF 4-8. McKenna testified that after looking at each invoice relating to the Sponsorship Agreements, he didn't do anything further before stamping it and certifying it for payment. AMF 6. Porporino testified that he never had any communication with Armstrong (or anyone on the USPS team, including riders and coaches) about either the 2000 Sponsorship Agreement or any of the invoices submitted pursuant to that Agreement. AMF 7-11. Finally, Zelnick confirmed that she never had any communications with Armstrong at all. AMF 5.

### III.   LEGAL STANDARD

Summary judgment is inappropriate unless the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.

3

R. Civ. Proc. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Tao v. Freeh*, 27 F. 3d 635, 638 (D.C. Cir. 1994). A plaintiff seeking partial summary judgment on its claims has an initial burden to show the absence of a genuine issue of fact as to each material fact on which it bears the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Cobell v. Norton*, 260 F. Supp. 2d 110, 119 (D.D.C. 2003). The burden to set forth facts showing that there is a genuine issue for trial ***only shifts*** to the nonmoving party if the motion for summary judgment is properly supported. *Gray v. Greyhound Lines*, 545 F.2d 169, 174 (D.C. Cir. 1976) ("The moving party bears the burden of presenting evidence which demonstrates the nonexistence of any issue of material fact. Until the movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence." (internal citations and quotations omitted)). In particular, declarations or other documents supporting the motion must contain admissible evidence. Fed. R. Civ. P. 56(c)(4); *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### IV.  ARGUMENT

#### A.  THE GOVERNMENT'S MOTION IS A PROCEDURALLY IMPROPER REQUEST TO ESTABLISH FACTS

"Judgment may not be entered as to a fact . . . ." *LaPrade v. Abramson*, 2006 U.S. Dist. LEXIS 86431, *23-24 (D.D.C. Nov. 29, 2006). And Rule 56 does not allow a party to move the Court to find certain facts. *Id.* ("There is no such thing as an independent motion under Rule

56[(g)][1]." (internal quotations and citations omitted)). "[T]o permit such requests would result in numerous and repetitive motions seeking to resolve limited factual issues in a piecemeal fashion which would waste judicial resources in almost every case." *SEC v. Thrasher*, 152 F. Supp. 2d 291, 296 (S.D.N.Y. 2001) (quoting *Capitol Records v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 29 (N.D.Ill. 1985)) (internal quotation marks and alterations omitted). Therefore, courts routinely deny motions for summary judgment of discrete facts. *See, e.g.*, *Fin. Res. Network, Inc. v. Brown & Brown, Inc.*, 930 F. Supp. 2d 287, 318-19 (D. Mass. 2013); *D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356, 358-59 (E.D.N.Y. 2014); *Ursulines, L.L.C. v. Regions Bank & ABC Ins. Co.*, 2015 U.S. Dist. LEXIS 82676, *16-18 (E.D. La. June 25, 2015).

Here, the government's motion is procedurally improper because it seeks a Court order establishing facts. The government does not seek summary judgment on any of its four remaining claims. Instead, the government seeks to have the Court sit as a factfinder and conclude that "Tailwind and its predecessor DFP Cycling LLC presented forty-one claims for payment to the United States between June 10, 2000 and October 31, 2004 under the 1995 and 2000 Sponsorship Agreements, for which the USPS paid Tailwind and its predecessor DFP Cycling LLC a total of $32,267,279.85." Mot. at 2; *see also id.* at 1 ("Plaintiff United States moves for the entry of partial summary judgment . . . [on] the amount paid by the United States to Tailwind for those claims]"). The government's request that the Court enter an order establishing facts circumvents the clear directive of Federal Rule of Civil Procedure 56. Therefore, the Court should deny the government's motion.

---

[1] Prior to December 1, 2010, Federal Rule of Civil Procedure 56(g) was codified as Rule 56(d).

### B. THE GOVERNMENT FAILS TO SUBMIT ANY FACTS SHOWING THAT ARMSTRONG CAUSED THE SUBMISSION OF FALSE CLAIMS

In addition to asking the Court to find certain, discrete facts, the government also seeks summary judgment on the "element of the presentation of claims." Mot. at 1. The False Claims Act ("FCA") imposes civil liability against a defendant who: (1) presented a claim to the federal government for payment, (2) which was false, and (3) which the defendant knew was false. *See* 31 U.S.C. § 3729(a)(1); *United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 5-6 (D.D.C. 2003); Mot. at 6. Presentment is a requirement for liability under 31 U.S.C. § 3729(a)(1) and for all claims pursuant to the FCA prior to its amendment by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111–21, 123 Stat. 1617.[2] *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 491 (D.C. Cir. 2004). To satisfy the element of presentment, the plaintiff must show that the defendant's conduct was "at least a substantial factor in causing, if not the but-for cause of, submission of false claims." Mot. at 6 (quoting *United States ex rel Tran v. Comp. Scis. Corp., et al.,* 53 F. Supp. 3d 104, 126 (D.D.C. 2014) (hereinafter *Tran*)); *see also United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 48 (D.D.C. 2011).

There is no question that the government has failed to meet its burden on presentment. The government neglected to set forth ***any*** evidence regarding Armstrong's conduct, much less evidence showing that he caused the submission of false claims to the USPS. Therefore, the motion for summary judgment of presentment as to Armstrong fails because the government has not met its prima facie burden.

Had the government made some effort to meet its burden on summary judgment, it would have been unable to do so. The evidence is crystal clear: Armstrong had no role in causing the submission of invoices to the USPS for payment under the Sponsorship Agreements, nor did he

---

[2] The government's conspiracy claim relies upon the law as it existed prior to amendment by FERA. To the extent that the government is moving on presentment on the false statements claim, that motion fails for the same reason. The government has not identified any additional element upon which it moves as to the false statements claim.

have any role in the government's payment of those invoices. AMF4, 13-14. None of the USPS employees with responsibility for reviewing and approving invoices relating to the Sponsorship Agreements ever communicated with Armstrong or relied on any statement by Armstrong in processing or paying any invoice. Zelnick, the contracting officer for the 2000 Agreement, never communicated with Armstrong. AMF 5. Porporino, the contracting officer's representative for the 2000 Agreement, never communicated with Armstrong[3] about either the 2000 Agreement or any of the invoices he approved for payment. AMF 7-8. Armstrong did not send any invoices to Porporino for payment; he had no role in the payment or processing of Tailwind's invoices. AMF 12-14. Because the government has failed its burden to prove that Armstrong had anything to do with the submission of Tailwind's invoices or the payment of those invoices, its motion for summary judgment of presentment fails.

### C. AFFIDAVITS SUBMITTED IN SUPPORT OF THE GOVERNMENT'S MOTION ARE INADMISSIBLE

The government's motion fails for the independently sufficient reason that the material facts underlying it are disputed. In particular, the government attempts to prove numerous facts using inadmissible documents, such as litigation briefs and the pleadings of other parties. A complete list of the material and disputed facts are set forth in Armstrong's Statement of Genuine Issues of Fact, which accompanies this motion. But one dispute merits further elaboration. In support of its motion for partial summary judgment, the government submitted three declarations from witnesses who were not timely listed on its Rule 26(a)(1) disclosures: Michael Kiely, Jose Posada, and Michael Pugliese. Armstrong respectfully requests that the Court strike their declarations.

---

[3] Porporino never had any communications with anyone on the USPS cycling team about any of the invoices he approved for payment. AMF 9-11.

Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure requires parties to timely disclose the identity of "each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26.  Failure to abide by this rule leads to sanctions under Rule 37(c)(1); the party may not use the witness to provide evidence on a motion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37.  The Rule provides a "self-executing sanction and the motive or reason for the failure is irrelevant." *Elion v. Jackson*, 544 F. Supp. 2d 1, 5 (D.D.C. 2008).

A party may not use a witness it failed to timely disclose to provide evidence on a motion unless it can prove that its "failure was substantially justified or is harmless." Fed. R. Civ. P. 37.  If it is unable to meet this burden, the remedy is to strike the witness's declaration from the record.  *See, e.g.*, *United States ex rel. Fago v. M&T Mortg. Corp.*, No. Civ.A.03-1406(GK), 2006 WL 949899, *1 (Apr. 11, 2006) (striking three declarations submitted with summary judgment pleadings because party "failed to disclose the names of the three declarants in conformity with Rule 26(a)(1)").

> **1.   The government cannot justify its failure to disclose three witnesses who each worked for the government for over a decade.**

Where a party was "on notice" of the need to present specific evidence, it cannot argue that its failure to disclose was substantially justified.  *United States ex rel. Purcell v. MWI Corp.*, 824 F. Supp. 2d 12, 19 (D.D.C. 2011), *rev'd and remanded on other grounds*, 807 F. 3d 281 (D.C. Cir. 2015). As a corollary, where a party "could reasonably have anticipated" the need for testimony, no substantial justification exists for its untimely submission. *Minebea Co. Ltd. v. Papst*, 231 F.R.D. 3, 6-7 (D.D.C. 2005); *see also Purcell*, 824 F. Supp. 2d at 19 (striking two declarations submitted with summary judgment pleadings where party had "been on notice" of

the need to present specific evidence "from the moment the government filed its complaint").

Here, the government does not even attempt to prove that its omissions were substantially justified. The government has been on notice since June 10, 2010—when relator filed the complaint under seal and served it on the government—that it needed to introduce evidence regarding the submission and payment of false claims. The government has provided no justification for its six-year delay in disclosing the witnesses it intended to call for that purpose, nor could it in light of their long tenures with the government:

- Kiely has been a USPS attorney for over twelve years. Kiely Decl. ¶ 1. Beginning in 2010, he assisted the United States Department of Justice ("DOJ") with its investigation of potential claims arising from USPS's sponsored cycling team.

- Posada has been a USPS employee since 1984. Posada Decl. ¶ 1. He has occupied several roles supervising accounts payable for USPS contracts, including the contracts between USPS and its sponsored cycling team. *Id.*

- Pugliese has been a special agent with the USPS Office of Inspector General for the last ten years. Pugliese Decl. ¶ 1. Pugliese has supported the DOJ's investigation of potential claims arising from the USPS's sponsored cycling team. *Id.*

When the government's initial disclosures were due, each of the foregoing witnesses had been government employees for over ten years. Two of the witnesses had been assisting government counsel with this particular litigation. Given the government's longstanding knowledge of and unique access to these witnesses, it cannot justify its failure to disclose them to Armstrong.

### 2. The government's conduct prevented Armstrong from deposing the newly-disclosed witnesses regarding the contents of their declarations.

A discovery violation "is prejudicial when it prevents the opposing party from timely reviewing relevant evidence." *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 226 (D.D.C. 2015). Untimely disclosures require the prejudiced party "to unexpectedly gather rebuttal evidence at a moment's notice, which could cause substantial harm to its case." *Smith v. Henderson*, 54 F. Supp. 3d 58, 66 (D.D.C. 2014).   A finding that a disclosure was harmful does not require a firm trial date. *See Purcell*, 824 F. Supp. 2d at 18-19 (rejecting defendant's argument that its violations were harmless "in the absence of a looming trial date").

The government's violations are particularly prejudicial because it used the improper declarations to support its case in chief on summary judgment. *See Smith*, 54 F. Supp. at 66 (holding that untimely expert testimony was not harmless because "[p]laintiffs have robbed the District of the opportunity to depose or otherwise rebut the new evidence prior to summary judgment").  Moreover, because the government failed to timely disclose the witnesses despite "ample opportunity" to do so, the declarations are "inherently unfair" to the prejudiced party. *Thomas v. Paulson*, 507 F. Supp. 2d 59, 80-81 (D.D.C. 2007) (finding that "it is clear" that affidavit of undisclosed witness could not be considered in connection with motion for summary judgment).

The government's conduct effectively prevented Armstrong from deposing these witnesses about the contents of their declarations.  Discovery closed in this action over nine months ago.  Armstrong had no opportunity to depose Kiely or Posada prior to the filing of filing the government's motion.  Armstrong was thus "robbed…of the opportunity to depose or otherwise rebut the new evidence prior to summary judgment." *See Smith*, 54 F. Supp. at 66.

Despite Posada's 30-year tenure as a government employee, the government failed to disclose him until December 16, 2015, over four months after the close of discovery. Filing an untimely disclosure does not cure a violation of Rule 26(a)(1). *See Purcell*, 824 F. Supp. 2d at 19 (striking two declarations submitted with summary judgment pleadings where one witness was never disclosed and one witness was untimely disclosed after the close of discovery).

The government's failure to disclose Pugliese is not rendered harmless by his appearance as the government's 30(b)(6) witness. Absent any notice that the government would rely on Pugliese's personal knowledge to support its motion for summary judgment, Armstrong had no reason to ask questions outside the agreed-upon topics of his deposition. Indeed, the government furnished an entirely different witness—Brett Elliott—to testify regarding "claims for payment and payments made under the sponsorship agreement"—the topic on which Mr. Pugliese has now submitted an affidavit. Declaration of Elizabeth K. McCloskey, Ex. N at Topic No. 11. Elliott had no personal knowledge regarding that topic, unlike Pugliese, as Armstrong has now learned. The government's misdirection prevented Armstrong from deposing Pugliese regarding the contents of his newly-disclosed declaration.

Because the government's omissions were neither substantially justified nor harmless, the "sanction of exclusion of a witness is 'automatic and mandatory.'" *Elion*, 544 F. Supp. 2d at 6 (quoting *NutraSweet Co. v. X-L Eng'g Co.*, 227 F. 3d 76, 785-86 (7th Cir. 2000)). As a result, the Kiely, Posada, and Pugliese declarations should be struck from the record pursuant to Rule 37(c)(1). Fed. R. Civ. P. 37.

//
//
//

## V. CONCLUSION

For the reasons set forth above, the Court should deny the government's motion for partial summary judgment against Armstrong.

          Respectfully submitted,

          KEKER & VAN NEST LLP

Dated: July 11, 2016

By: s/ *Elliot R. Peters*
JOHN W. KEKER (*pro hac vice*)
ELLIOT R. PETERS (*pro hac vice*)
R. JAMES SLAUGHTER (*pro hac vice*)
SHARIF E. JACOB (*pro hac vice*)
ELIZABETH K. MCCLOSKEY (*pro hac vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

ROBERT D. LUSKIN (D.C. Bar # 293621)
PAUL HASTINGS LLP
875 15TH St., NW
Washington, DC 20037
Telephone: (202) 551-1966
Facsimile: (202) 551-0466

Attorneys for Defendant
LANCE ARMSTRONG