# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **UNITED STATES OF AMERICA** *ex rel.* **FLOYD LANDIS**, |
| Plaintiff, |
| v. |
| **TAILWIND SPORTS CORP.**, *et al.*, |
| Defendant. |

Case No. 10-cv-976 (CRC)

## MEMORANDUM OPINION AND ORDER

Before the Court are several motions in limine filed by the Government and Defendant Lance Armstrong. In this Order, the Court will resolve most of the parties' motions. A separate Memorandum Opinion and Order will address the remaining motions, specifically those concerning the admissibility of the Government's and Armstrong's proposed expert witnesses (ECF Nos. 557, 558, and 559).

   1. **Government's Motion in Limine to Exclude References to Treble Damages/Civil Penalties** (ECF No. 561)

The Government requests that the Court exclude any references at trial to the False Claim Act's treble damages or monetary penalties, see 31 U.S.C. § 3729(a). The Court agrees that information concerning treble damages or potential monetary penalties should be excluded because the jury plays no role in multiplying damages or setting monetary penalties. As the Supreme Court has explained, in a False Claims Act case the jury's "instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier, just as the court alone sets any separate penalty." Cook Cty. v. United States ex rel. Chandler, 538 U.S. 119, 132 (2003). In analogous statutory contexts, "[t]he majority rule is that it is error for a court to instruct a jury that it will subsequently treble any damages the jury awards." Brooks v. Cook,

938 F.2d 1048, 1052 (9th Cir. 1991); see also HBE Leasing Corp. v. Frank, 22 F.3d 41, 45 (2d Cir. 1994) ("[V]irtually every other jurisdiction views such mentioning of treble damage provisions, in both the RICO as well as the antitrust contexts, as improper."). Consistent with this principle, judges in this district ordinarily exclude references to treble damages or civil monetary penalties in False Claims Act cases. See, e.g., United States ex rel. Scutellaro v. Capitol Supply, Inc., No. 10-cv-1094, 2017 U.S. Dist. LEXIS 153654, at *3–5 (D.D.C. Sept. 20, 2017); United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., No. 95-cv-1231, 2007 WL 851868, at *1–2 (D.D.C. May 14, 2007). The Court will do so here too.

**2. Government's Motion to Exclude References to Selective Prosecution** (ECF No. 562)

The Government requests that the Court exclude references by Armstrong to selective prosecution. Armstrong has clarified that he does not intend to pursue a selective prosecution defense, so the Court will deny the Government's motion as moot.

**3. Government's Motion in Limine to Exclude References to Relator's Character or Motivation** (ECF No. 563)

The Government moves the Court to exclude references at trial to Relator Floyd Landis's character or his motivation for filing this *qui tam* action, including the fact that he stands to receive a share of any monetary award in this case. It contends that, because it does not plan to call Landis as a witness, Landis's character and motivation are not relevant to any issues in the case and, alternatively, that evidence of his character and motivation would be misleading, confusing, and prejudicial. Armstrong responds that *he* plans to call Landis because, as the original source of the allegations in the complaint, Landis can provide testimony relevant to the widespread nature of PED use in cycling, and evidence of Landis's bias is relevant to his credibility as a witness.

While the Court will not permit Armstrong to call Landis solely for the purpose of attacking his character or highlighting his motivation for filing the *qui tam* action, it will allow Armstrong to call Landis for other, non-character-related purposes. For example, the Court agrees that Landis can be called to testify about PED use by USPS riders other than Armstrong, which is relevant to Armstrong's statute of limitations defense. Depending on the substance of Landis's testimony, the Court will allow Armstrong some opportunity to impeach him on grounds of bias or truthfulness. See, e.g., Bill Harbet Int'l Constr., Inc., 2007 WL 851868, at *1 ("[T]he fact that relator has a significant financial interest in this litigation is fair game for cross-examination, as it pertains to relator's potential bias."); cf. Scutellaro, 2017 U.S. Dist. LEXIS 153654, at *3 (evidence of relator's credibility irrelevant where relator had no intention of testifying at trial). The Court will, however, carefully police the bounds of this cross-examination under Rule 403 and Rule 611.

**4. Government's Motion in Limine to Exclude Evidence of PED-Use by Non-USPS Riders** (ECF No. 565)

The Government seeks to exclude reference to PED use by non-USPS riders. Armstrong counters that this evidence is relevant and admissible under Rule 403. As the Court discusses at more length in its Memorandum Opinion and Order on the parties' expert witnesses, evidence of PED use by non-USPS riders is relevant to Armstrong's statute of limitations defense and materiality, but not to causation. Because this evidence is admissible for one purpose but not another, the Government will be entitled to a limiting instruction if it so desires. See Fed. R. Evid. 105.

The Court also reiterates the discussion in its expert-witness ruling on the time period of PED use by non-USPS riders. While PED use contemporaneous with the Government's sponsorship and subsequent events is probative of the statute of limitations defense and does not

3

pose a risk of unfair prejudice or undue delay that substantially outweighs that probative value, non-contemporaneous PED use has a much lower probative value and poses a significant risk of undue delay and unfair prejudice. As such, at trial the Court will carefully enforce the limits of Rule 403 with respect to this category of evidence. See Fed. R. Evid. 403 (allowing for exclusion of relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, undue delay, or wasting time).

**5. Armstrong's Motion in Limine to Exclude Evidence Regarding Actual Damages** (ECF No. 566)

Armstrong also seeks to exclude evidence regarding the Government's actual damages. He contends that the Government continues to rely on a prohibited theory of damages and has failed to present sufficient evidence to provide a non-speculative basis for the jury to calculate the Government's actual damages. The Court discusses the relevant case law on proof of damages in its Memorandum Opinion and Order on the parties' expert witnesses and incorporates that discussion here. In short, the Government has provided a sufficiently non-speculative framework for the jury to calculate damages under the theory of damages outlined in the Court's summary judgment ruling. The Court will therefore deny Armstrong's motion.

**6. Armstrong's Motion in Limine to Exclude the USADA Decision** (ECF No. 566)

Armstrong seeks to exclude the decision of the U.S. Anti-Doping Agency ("USADA") barring him from professional cycling, arguing that the decision is inadmissible hearsay and, even if it were admissible, should be excluded under Rule 403. The Government responds that it intends to use the USADA decision only for cross-examination, impeachment, or refreshing the recollections of witnesses. Because the Government has said it does not intend to use the USADA decision in its case-in-chief, the Court will defer resolution of any objections to the Government's use of the USADA decision until such time as the Government seeks to use it.

### 7. Armstrong's Motion in Limine to Exclude Evidence Contradicting USPS's Rule 30(b)(6) Testimony (ECF No. 566)

Armstrong seeks to preclude the Government from introducing any evidence that contradicts deposition testimony of a witness—a DOJ paralegal named Brett Elliot—who the Government designated as its representative under Federal Rule of Civil Procedure 30(b)(6). He contends that the Government was bound by this testimony and that Rule 30(b)(6) bars the introduction of any evidence inconsistent with that testimony. The Government insists that it plans to introduce no such contradictory evidence and that, even if it did, Rule 30(b)(6) does not prevent the introduction of evidence that differs from the designee's testimony.

The Court will deny Armstrong's motion. For one, there is no general principle that the Government may not introduce evidence that contradicts or expands on Rule 30(b)(6) testimony. In arguing to the contrary, Armstrong relies primarily on Rainey v. American Forest & Paper Ass'n, 26 F. Supp. 2d 82 (D.D.C. 1998). In that case, after two designees of the defendant corporation had been deposed, the defendant submitted an affidavit from a former employee that contradicted the deposition testimony on a crucial factual issue. Id. at 93–94. The court declined to consider that affidavit on summary judgment, explaining that, "[u]nless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." Id. at 94.

Notwithstanding the *holding* of Rainey, the broad principle that testimony of a Rule 30(b)(6) representative binds the designating entity has been expressly repudiated by every court of appeals to consider the issue. See Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc., 839 F.3d 1251, 1261 (10th Cir. 2016); Keepers, Inc. v. City of Milford, 807 F.3d 24, 34–35 (2d Cir. 2015); S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control, 731 F.3d 799, 811–12 (8th Cir. 2013); A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001). Rather, as a

leading commentator has explained, "the testimony of the representative designated to speak for the corporation are admissible against it. But as with any other party statement, they are not 'binding' in the sense that the corporate party is forbidden to call the same or another witness to offer different testimony at trial." 8A Charles Alan Wight & Arthur R. Miller, Federal Practice and Procedure § 2103 (3d ed. 2017).

To the extent that some courts in this district have relied on Rainey to exclude evidence that contradicts Rule 30(b)(6) testimony, they have never done so on the ground that the party was bound by its testimony. Rather, they have excluded evidence for the narrower purpose of avoiding "ambush-by-declaration"— late-stage attempts to introduce affidavits that directly contradict prior Rule 30(b)(6) testimony. Beck v. Test Masters Educ. Servs., Inc., No. 04-cv-1391, 2012 WL 10817176, at *5 (D.D.C. Sept. 25, 2012); see also Rainey, 26 F. Supp. 2d at 95 (explaining that Rule 30(b)(6) was designed to "prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case"). The few possible inconsistencies that Armstrong identifies in his briefing are subtle and, even if manifest at trial, would in no way resemble an "ambush." See Weinstein v. D.C. Hous. Auth., 931 F. Supp. 2d 178, 186 (D.D.C. 2013) (declining to exclude declarations where no sign that Rule 30(b)(6) deponent "feign[ed] ignorance during his deposition"). If at trial the Government seeks to introduce evidence that directly contradicts testimony from its designee, Armstrong may object specifically to its introduction, and the Court will consider whether that particular evidence should be excluded as inconsistent with Rule 30(b)(6).

8. **Armstrong's Motion in Limine to Exclude Evidence of Former Sponsors**
   (ECF No. 566)

Armstrong further seeks to exclude evidence regarding Armstrong's relationship with Trek, Nike, Giro, and other former sponsors. He argues this evidence is not relevant and, even if

6

it were, that it should be excluded under Rule 403. The Government counters the evidence is relevant both to its damages argument and to Armstrong's statute of limitations defense, and is admissible under Rule 403.

The Court agrees with the Government that the evidence at issue here is relevant to both purposes. As to the Government's theory of damages, as discussed in more detail in the Court's Memorandum Order and Opinion on the parties' expert witnesses, the Government intends to prove that a company's association with a tainted athlete harms that company's brand. A reasonable inference to draw from other companies canceling their sponsorship agreements with Armstrong is that those companies believed it was not to their benefit to be associated with him, which supports the inference that they thought such an association harmed them.

This evidence is also relevant to Armstrong's statute of limitations defense. As explained in the Court's Memorandum Opinion and Order on the parties' expert witnesses, this defense focuses on when the Government knew or should have known of Armstrong's PED use and whether the Government exercised due diligence in investigating it. What other companies that sponsored Armstrong knew about his PED use and the actions they took to investigate any possible PED use sheds light on what the Government reasonably should have known about Armstrong's PED use and whether it acted reasonably in investigating.

Finally, Rule 403 does not bar the admission of this evidence. It is probative of damages and it is highly probative of the statute of limitations defense because the actions of similarly positioned companies speaks to what was reasonable for the Government to do or know. Nor does it pose a risk of prejudice or of confusing or misleading the jury that substantially outweighs its probative value. To the extent that Armstrong contends the other sponsors are not similarly situated, he is free to argue that to the jury. Any concerns as to undue delay can be

addressed by the Court during trial. As such, the Court will deny Armstrong's motion. However, the Court will again warn the parties that it intends to strictly enforce the limits of Rule 403 with respect to this category of evidence. See Fed. R. Evid. 403 (excluding relevant evidence if the probative value is substantially outweighed by a risk of undue delay, wasting time, or cumulativeness).

> **9. Armstrong's Motion in Limine to Exclude Evidence of 2014 Car Accident, Betsy Andreu, and Greg Lemond** (ECF No. 566)

Armstrong seeks to exclude, on relevance grounds, (1) evidence related to a December 2014 car accident involving Armstrong in Aspen, Colorado, and (2) the testimony of Betsy Andreu, the wife of a former USPS rider, and Greg LeMond, a former *Tour de France* winner and longtime critic of Armstrong. The Court will deny this motion.

First, the Government has indicated that it will not introduce evidence about the car accident during its case-in-chief. Rather, it will do so only on cross-examination, and only if Armstrong's character for truthfulness is put in issue. If Armstrong and his passenger decided to falsely inform police that Armstrong was not driving at the time of the accident, that fact would be relevant to Armstrong's character for truthfulness. Some inquiry into the incident on cross-examination is therefore permissible under Rule 608. The Court will ensure that this evidence is limited to specific instances of conduct that are probative as to truthfulness, and will not permit wide-ranging inquiry aimed to impugn Armstrong's character more generally.

Second, as for Andreau and LeMond, both appear poised to provide relevant testimony. The Government explains that "[b]oth Andreu and LeMond, on multiple occasions, heard first-hand, directly from Armstrong, statements that he made regarding PED-use, allegations of PED-use and his efforts to conceal PED-use." Pl.'s Opp. to Mots. in Limine at 23 (ECF No. 573). At a minimum, Armstrong's statements about concealing PED use are relevant to his statute of

limitations defense, and they are admissible as statements of a party-opponent. And while Armstrong argues that these two "combustible witnesses" should be excluded on Rule 403 grounds, he has not persuaded the Court that either witness's testimony would be unduly prejudicial.

**10. Armstrong's Motion to Exclude *The Armstrong Lie* (ECF No. 566)**

Armstrong seeks to prevent the Government from introducing any portion of the 2013 documentary film *The Armstrong Lie*. He contends that the film is not relevant to any legal issue because, though it does contain statements from Armstrong about PED use, it does not present information about Armstrong's relationship with USPS and instead captures statements made after the sponsorship ended. Armstrong further argues that, even if some of these statements were relevant, the film is unduly prejudicial.

The Court disagrees. Even if Armstrong's statements were recorded for the film subsequent to the sponsorship period, the Government has identified several of the statements that discuss *conduct during* the sponsorship period. The conduct discussed is relevant to Armstrong's statute of limitations defense and to his knowledge of the materiality of any false statements. As the Court explained in its summary judgment ruling, statements need not be made directly to USPS to be relevant to Armstrong's liability under the False Claims Act. Rather, public statements can support a theory of fraudulent inducement if made "for the purpose of getting a false or fraudulent claim paid or approved by the Government," and "the government is entitled to have a jury consider whether one of" the purposes of Armstrong's denial "was to preserve the team's sponsorship payments." United States ex rel. Landis v. Tailwind Sports Corp., 234 F. Supp. 3d 180, 196 n.9 (D.D.C. 2017) (quoting Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662, 671 (2008) (quotation omitted)). And though the title and tenor of

the film may be hostile to Armstrong, having viewed the film, the Court does not believe that every piece of footage (particularly those containing Armstrong's own statements) is unduly prejudicial so as to warrant exclusion of the film in its entirety. To the extent that Armstrong contends that statements made in the documentary are not authentic, or are cumulative, or that an individual segment's probative value is outweighed by a danger of prejudice, the Court will be in a better position to evaluate those objections at trial.

**11. Armstrong's Motion to Exclude non-PED Related Evidence Regarding Armstrong's Past** (ECF No. 566)

Armstrong seeks to exclude any non-PED related evidence concerning events in his past as irrelevant and inadmissible under Rule 403. The Government, in response, argues that Armstrong's motion is too sweeping and that issues as to the admissibility of particular evidence can be dealt with at trial. The Court agrees, and will reserve resolution of this issue to trial. The Court cautions the parties, however, that it does not intend to allow them to make this a trial primarily about Armstrong's character and that the Court will carefully enforce the limits of Rule 403 with respect to this category of evidence. See Fed. R. Evid. 403 (excluding relevant evidence relevant evidence if the probative value is substantially outweighed by a risk of unfair prejudice, undue delay, or cumulativeness).

**12. Government's Motion in Limine to Exclude the FCB and Campbell Ewald Reports** (ECF No. 567)

The Government seeks to exclude four reports that USPS commissioned from two advertising agencies—Foote, Cone & Belding ("FCB") and Campbell Ewald—on the grounds that they will confuse the jury and that they are inadmissible hearsay. Armstrong contends that the reports are highly relevant, as they provide estimates of the value of Tailwind's sponsorship to USPS, and that they are admissible as USPS's adoptive admissions or as business records.

Taking these contentions in turn: First, the Court agrees with Armstrong that the four reports are relevant to the issue of damages. And, particularly when combined with testimony that Armstrong plans to introduce, their contents are straightforward and their methodology digestible. USPS sponsored Tailwind to increase its media exposure and hired the advertising agencies to measure the value of that exposure. One way to estimate the value of media exposure is to calculate what that exposure would cost if purchased through advertisements. The agencies began with the price of a certain type of advertisement—say, a thirty-second spot on CBS during the *Tour de France* ($30,000, according to FCB's 2002 report)—and "factored" that price to account for the fact that live coverage is less targeted than a dedicated advertisement. They then multiplied that factored price by the duration of USPS's exposure. The value of editorial coverage—for example, an article that mentioned Armstrong alongside references to USPS—was similarly estimated. This valuation methodology can be readily explained by expert and non-expert witnesses alike. The Court therefore declines to exclude the reports under Rule 403.

That leaves the question of whether any of the reports are admissible in their entirety notwithstanding the rule against hearsay. The Court finds that they are not. None qualify as business records. Among other requirements, to be admissible a business record must be "kept in the course of a regularly conducted activity of a business." Fed. R. Evid. 803(6)(B). In other words, the record must be "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." Palmer v. Hoffman, 318 U.S. 109, 113 (1943). Even if FCB and Campbell Ewald regularly produce advertising-value reports, and even if the agencies followed standard methodologies in producing the reports at issue here, commissioned studies generated for clients are not

11

sufficiently "systematic[]" or "routine" to fall within the business-records exception. In fact, they are just the sorts of documents that give rise to the concerns underlying the hearsay rule. Unlike with records "offered to prove routine facts" like names, dates, or sales figures, a report that describes a methodology and then applies that methodology to extrinsic facts necessarily involves "judgment." N.Y. Life Ins. Co. v. Taylor, 147 F.2d 297, 300–01 (D.C. Cir. 1944) (before Rule 803 expressly allowed introduction of diagnoses, holding that hospital records were inadmissible under Supreme Court's decision in Palmer). The reports may not have been prepared in anticipation of litigation, but they were prepared with a particular client and goal in mind, which raises similar concerns about their trustworthiness. See Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258–59 (9th Cir. 1984) (holding audit firm's reports inadmissible under Rule 803(6)).

Moreover, when compiling these reports, the agencies relied on and interpreted data from several third-party firms. Whether or not this third-party data raises problems of "double hearsay," it shows that the studies do not involve routine, standardized recording. Cf. Fed. R. Evid. 803 advisory committee's note to paragraph (6) of 1972 proposed rules (1972) ("If . . . the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.").

The closer question is whether any of the reports qualify as USPS's "adoptive admissions." An out-of-court statement is admissible against a party if the statement "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). A party's mere possession of a document is not sufficient to render it an admission. Rather, the party or one of its agents "must have 'understood and unambiguously assented to [the] statement.'"

12

United States v. Beckham, 968 F.2d 47, 52 (D.C. Cir. 1992) (quoting Naples v. United States, 344 F.2d 508, 511 (D.C. Cir. 1964)). This "understanding and assent may be established through conduct as well as through words." Id.

Under those standards, USPS's commission of the studies is far from sufficient, and there is no statement from USPS in the record that unambiguously assents to the entirety of any report. USPS did, however, adopt certain *conclusions* from the reports—for example, the total valuations from each of the 2001–2003 reports appear in a document attached to a 2004 email between two USPS employees, Def.'s Opp. to Mots. in Limine Ex. 30, and another email between higher-level employees approvingly cites FCB's $18.45 million valuation from the 2001 report, id. Ex. 26. Those individual statements are admissions of USPS and therefore admissible. See, e.g., Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 821 (9th Cir. 2002) (holding internal memorandum admissible as adoptive admission where employee forwarded memorandum along with approving prefatory comment to another employee). But, again, there is nothing in the record suggesting that USPS embraced any of the reports in their entirety.

So to the extent that the Government seeks exclusion of the reports themselves, the Court will grant its motion in limine, but will allow Armstrong to introduce specific statements from the reports that USPS unambiguously assented to. The Court also notes that, in its Memorandum Opinion and Order on the parties' expert witnesses, it denied the Government's motion to exclude expert testimony of Douglas Kidder, who in reaching his conclusions relied in part on the Campbell Ewald and FCB reports. Armstrong will therefore be able to introduce evidence based on the reports notwithstanding the Court's exclusion of the reports themselves. See Fed. R. Evid. 703 (allowing expert witnesses to rely on hearsay in forming opinions).

* * *

For the foregoing reasons, it is hereby:

**ORDERED** that [561] Government's Motion in Limine to Exclude References to Treble Damages/Civil Penalties is GRANTED. It is further

**ORDERED** that [562] Government's Motion in Limine to Exclude References to Selective Prosecution is DENIED AS MOOT. It is further

**ORDERED** that [563] Government's Motion in Limine to Exclude References to Relator's Character or Motivation is DENIED. It is further

**ORDERED** that [565] Government's Motion to Exclude Evidence of PED-Use by Non-USPS Riders is GRANTED IN PART and DENIED IN PART as detailed above. It is further

**ORDERED** that [566] Defendant Armstrong's Motion in Limine is GRANTED IN PART and DENIED IN PART as detailed above. It is further

**ORDERED** that [567] Government's Motion to Exclude FCB and Campbell Ewald Reports is GRANTED IN PART and DENIED IN PART as detailed above.

**SO ORDERED**.

                                                                                    CHRISTOPHER R. COOPER
                                                                                    United States District Judge

Date: November 28, 2017